**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| GETTY IMAGES HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-11643 ([__]) |
| Debtors. | ) | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) REDACT OR WITHHOLD CERTAIN CONFIDENTIAL INFORMATION OF CUSTOMERS, (B) REDACT CERTAIN PERSONALLY IDENTIFIABLE INFORMATION OF INDIVIDUALS AND (C) SERVE PARTIES IN INTEREST BY EMAIL; (II) APPROVING THE FORM AND MANNER OF SERVICE OF NOTICES; (III) WAIVING THE REQUIREMENT TO FILE A LIST OF EQUITY SECURITY HOLDERS; AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (this "Motion"):[2]

**Relief Requested**

1. By this Motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and the "Final Order," and, collectively, the "Orders"): (a) authorizing, but not directing, the Debtors

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Craig Peters, Chief Executive Officer of Getty Images Holdings, Inc. and Its Debtor Subsidiaries, in Support of the Debtors' Chapter 11 Petitions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

to (i) redact or withhold certain confidential information of customers; (ii) redact certain personally identifiable information of individuals from their consolidated list of creditors (the "Creditor Matrix"), the Debtors' schedules of assets and liabilities and statements of financial affairs (if any) (the "Schedules and Statements"), and other documents filed in these chapter 11 cases,[3] and (iii) serve parties in interest by email; (b) approving the form and manner of service of notices; (c) waiving the requirement to file a list of, and to provide notice directly to, the equity security holders of Debtor Getty Images Holdings, Inc.; and (d) granting related relief. In addition, the Debtors request that the Court schedule a final hearing approximately twenty-one (21) days from the Petition Date.

## Jurisdiction and Venue

2. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 105(a), 107(b), 107(c), and 521 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy

[3] The Debtors also seek authority to redact individuals' home and email addresses from affidavits of service filed in these chapter 11 cases.

Code”), rules 1007, 2002, 9007, and 9018 of the Federal Rules of Bankruptcy Procedure (the “Bankruptcy Rules”), and Local Rules 1001-1(c), 1007-2, 2002-1, 9013-1(m), and 9018-1(d).

## Background

1. On October 21, 2026 (the “Petition Date”), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

## Basis for Relief

### I. Cause Exists to Redact Certain Confidential Information of Customers Pursuant to Section 107(b)(1) of the Bankruptcy Code.

2. Section 107(b)(1) of the Bankruptcy Code requires bankruptcy courts, on request of a party in interest, to “protect an entity with respect to a trade secret or confidential research, development, or commercial information.” 11 U.S.C. § 107(b)(1). Pursuant to Bankruptcy Rule 9018, upon motion, “the court may make any order which justice requires . . . to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information.” Fed. R. Bankr. P. 9018. The Court has broad authority to issue such an order. *See In re Glob. Crossing Ltd.*, 295 B.R. 720, 724 (Bankr. S.D.N.Y. 2003) (“When the requirements of Rule 9018 are satisfied, the authority to issue the resulting order is broad—‘any order which justice requires.’ The Court notes that the authority goes not just to the protection of confidential documents, but to other confidentiality restrictions that are warranted in the interests of justice.”).

3. Courts frequently define "commercial information" as information that would provide "an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *In re Faucett*, 438 B.R. 564, 567 (Bankr. W.D. Tex. 2010) (citing *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994)); *see also In re Altegrity, Inc.*, No. 15-10226 (LSS), 2015 WL 10963572, at *3 (Bankr. D. Del. July 6, 2015); *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75–76 (Bankr. D. Del. 2006); *In re Glob. Crossing Ltd.*, 295 B.R. at 725 ("The whole point of [Fed. R. Bankr. P. 9018(1)] is to protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury.").

4. Cause exists pursuant to section 107(b)(1) of the Bankruptcy Code to authorize the Debtors to redact from any paper filed or to be filed with the Court or otherwise made public in these chapter 11 cases, including the Creditor Matrix and Schedules and Statements, the names and all associated identifying information of the Debtors' customers. As set forth in the First Day Declaration and the Customer Programs Motion, the Debtors license content to over 630,000 customers.[4] The Debtors' customer list and related data is a valuable asset, which is comprised of the names of individuals and entities, and their email addresses (collectively, the "Customer List"). Customer lists constitute confidential "commercial information" as used in section 107(b)(1) of the Bankruptcy Code. *See, e.g.*, *In re FTX Trading Ltd.*, No. 23-682 (CFC), 2024 WL 4948827, at *8–9 (D. Del. Dec. 3, 2024) (finding that the debtors' customer list fell within the ambit of section 107(b)(1)); *In re Genesis Glob. Holdco, LLC,* 652 B.R. 618, 632 (Bankr. S.D.N.Y. 2023) (authorizing the same and collecting cases where courts have held that customer lists constitute confidential commercial information).

---

[4] *See Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain and Administer Their Customer Programs and (B) Honor Prepetition Obligations, and (II) Granting Related Relief* (the "Customer Programs Motion"), filed contemporaneously herewith.

5. Providing the Customer List publicly, for free, would be harmful to the prospect of a going-concern reorganization that maximizes value for the Debtors' stakeholders. The Debtors operate a leading platform for premium visual content, and the customers who license that content are among the Debtors' most valuable commercial relationships. Revealing the identity of such customers at this critical juncture may put these relationships at risk and jeopardize the Debtors' go-forward business. If the Debtors' Customer List is made public, and the Debtors' competitors seize the opportunity to poach their customers, the Debtors' going-concern value will face immediate and irreparable harm. The Debtors' Customer List, and related data, is an important and valuable asset of the Debtors and it is vital that the Debtors maintain their Customer List in strict confidence. As such, the Debtors' Customer List is instrumental to the Debtors' short-term success in these chapter 11 cases and their long-term success post-emergence. Accordingly, the Debtors seek redaction to prevent concrete and ongoing damages that would result from the Customer List's unnecessary disclosure.

6. Recently, as cited above, in *In re FTX Trading Ltd.*, the United States District Court of the District for Delaware, in affirming the Bankruptcy Court's ruling to permanently redact the names and home and email addresses of the debtors' customers, found that (a) the debtors' customer list fell within the ambit of section 107(b)(1) of the Bankruptcy Code, (b) the Bankruptcy Court's determination to protect the customer list was not an abuse of discretion, and (c) sealing the information preserved the debtors' business assets. 2024 WL 4948827, at *8–9. And in *In re JOANN Inc.*, the Bankruptcy Court approved the same relief that is requested here. No. 25-10068 (CTG) (Bankr. D. Del. Feb. 10, 2025); *see also In re Am. Tire Distribs., Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024) (authorizing the debtors to redact the names, street addresses, and email addresses of customers from any filings with the court or made publicly

available); *In re SunPower Corp.*, No. 24-11649 (CTG) (Bankr. D. Del. Aug. 28, 2024) (authorizing the debtors to redact the street and email addresses of the debtors' customers from any filings with the court or made publicly available).

7. The Debtors will make the unredacted version of the Creditor Matrix, Schedules and Statements, and any other applicable filings redacted pursuant to the proposed Orders available to the Court, the U.S. Trustee, counsel to the Plan Sponsors, counsel to the Consenting Secured Lenders, and counsel to any official committee appointed in these chapter 11 cases and, upon Court order, to any other party.

8. Bankruptcy courts in this district and others have authorized debtors to redact the names and other identifying information of parties whose commercial relationships are valuable and competitively sensitive. *See In re Altegrity, Inc.*, 2015 WL 10963572, at *3-4 (Bankr. D. Del. 2015) (authorizing the debtors to file under seal confidential commercial information) (*citing In re Frontier Grp., LLC*, 256 B.R. 771, 773-74 (Bankr. E.D. Tenn. 2000) (list of physician names that brokerage agency used to staff hospitals was commercial information); *In re Northstar Energy, Inc.*, 315 B.R. 425, 430 (Bankr. E.D. Tex. 2004) (list of investors critical to debtor's business was commercial information); *In re Cred Inc., et al.*, No. 20-12836 (JTD) (Bankr. D. Del. Dec. 21, 2020) (authorizing debtors to redact or withhold publication of customer names and addresses); *In re Loot Crate, Inc.*, No. 19-11791 (BLS) (Bankr. D. Del. Oct, 1, 2019) (authorizing debtors to file all lists of customer creditors under seal); *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. Jan. 20, 2023), Docket No. 545 (authorizing debtors to redact names, addresses, and email addresses of their non-natural person customers for 90 days from the entry of the final order); *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 8, 2022), Docket No. 113 (authorizing debtor to redact the names of "Confidential Parties,"

including customers, from professional retention applications). As such, cause exists to authorize the Debtors to redact from any paper filed or to be filed the names and all associated identifying information of the Debtors' customers.

## II. Redacting Certain Confidential Information of Individuals Is Warranted.

9. Section 107(c)(1) of the Bankruptcy Code provides that the Court:

> for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:
>
> i. Any means of identification . . . contained in a paper filed, or to be filed, in a case under [the Bankruptcy Code].
>
> ii. Other information contained in a paper described in subparagraph (A).

11 U.S.C. § 107(c)(1).

10. In addition, privacy and data protection regulations have been enacted in key jurisdictions in which the Debtors do business. The United Kingdom Data Protection Act of 2018 and the United Kingdom General Data Protection Regulation (together, the "UK GDPR"), the European General Data Protection Regulation (the "EU GDPR"), and similar laws in other jurisdictions, impose significant constraints on the processing (which includes the transferring or disclosing) of information relating to identified or identifiable individuals (which includes names and home addresses of individuals and individual business contacts) ("Personal Data"). The UK GDPR and EU GDPR apply to the processing of Personal Data in the context of an establishment of a controller or processor in the United Kingdom, regardless of whether the processing takes place in the United Kingdom, or the European Economic Area, regardless of whether the processing takes place in the European Economic Area (and, in some circumstances, organizations established in other countries when processing Personal Data relating to individuals located in the United Kingdom or European Economic Area).

11. The UK GDPR and EU GDPR require a legal basis for any processing (including disclosure) of Personal Data. The only possible legal basis that may apply for disclosing the Personal Data in this instance would be the "legitimate interests" ground (Article 6(1)(f) UK GDPR and EU GDPR). This ground, however, will only apply where the processing is necessary for a relevant purpose. Such processing will not be necessary where there is a less intrusive way of achieving that purpose. This ground will also not apply if, when balanced against each other, the rights and freedoms of the relevant individuals override the legitimate interest in question. The legal basis of "compliance with a legal obligation" (Article 6(1)(c) UK GDPR and EU GDPR) would not be applicable in this situation because the legal obligation must exist under UK or EU law, which is not the case in the context of these chapter 11 cases.

12. In addition, processing (including disclosure) under the UK GDPR and EU GDPR must comply with certain key principles, including the principle of data minimization, which requires that any processing must be necessary in relation to its purpose. Disclosing the unredacted names and home addresses (or other Personal Data) of individual creditors on the public docket is not necessary for the purpose of reviewing the claim amounts of individual creditors in connection with a plan of reorganization or administering these chapter 11 cases, and the proposed redaction would be a less intrusive way of achieving this purpose. The right of individual creditors not to have their unredacted names and home addresses disclosed on the public docket would also override the legitimate interest of disclosing such information to facilitate these chapter 11 cases. Disclosure in an unredacted form therefore risks breaching the UK GDPR and EU GDPR on account of (a) having no legal basis and (b) breaching the minimization principle.

13. Violators of the UK GDPR and EU GDPR risk severe penalties. If an organization is found to have processed information in breach of the UK GDPR, the organization may be fined

up to the higher of £17,500,000 or 4% of worldwide annual turnover—i.e., total annual revenues—of the preceding financial year. *See* United Kingdom Data Protection Act 2018, section 157(5)(a) (as amended by Data Protection, Privacy and Electronic Communications (Amendments etc.) (EU Exit) Regulations 2019). Similarly, for a breach of the EU GDPR, the organization may be fined up to the higher of €20,000,000 or 4% of worldwide annual turnover—i.e., total annual revenues—of the preceding financial year. *See* General Data Protection Regulation (EU) 2016/679, art. 83(5). The processing of information includes transferring or disclosing it to others. The UK GDPR and EU GDPR may apply to the Debtors, specifically, as certain of the Debtors may be processing data relating to their creditors in the context of an establishment in the United Kingdom or in a member state of the European Economic Area.

14. Furthermore, privacy and data protection regulations have been enacted in key jurisdictions where the Debtors are domiciled and operate and conduct business. For example, in 2025, the Delaware Personal Data Privacy Act (the "DPDPA") took effect. The DPDPA provides individuals domiciled in Delaware the right to request that their collected personal information be deleted by entities subject to the regulation. *See* Del. H.B. 154, 152d Gen. Assem. § 12D-104(a)(3) (Del. June 30, 2023). Violators would risk injunctions and civil penalties of up to $10,000 for each violation, with additional penalties for intentional violations. Del. H.B. § 12D-111(a); 29 Del. C. § 2522. The DPDPA would apply to all business entities that produce products or services targeted to residents of Delaware that satisfy either of the following criteria: (a) "[c]ontrolled or processed the personal data of not less than 35,000 consumers;" or (b) "[c]ontrolled or processed the personal data of not less than 10,000 consumers and derived more than 20 percent of their gross revenue from the sale of personal data." Del. H.B. § 12D-103(a). The Debtors may be subject to the DPDPA because the Debtors have operations in, and sell products and services to,

Delaware residents and control and process such residents' personal data. Additionally, in 2018, the state of California enacted the California Consumer Privacy Act of 2018 (the "CCPA"), which provides individuals domiciled in California the right to, among other things, request that their collected personal information, including postal addresses, be deleted by entities subject to the regulation and opt out of the sale of personal information by such entities to third parties. Violators risk injunctions and civil penalties of up to $2,500 for each violation and up to $7,500 for *each intentional* violation. Cal. Civ. Code § 1798.155. The CCPA applies to all for-profit entities doing business in California that collect and process consumers' personal data and satisfy one of the following criteria: (a) annual gross revenue in excess of $25 million; (b) buys, shares, receives, or sells the personal information of more than 100,000 consumers, households, or devices for commercial purposes; or (c) receives 50% or more of their annual revenues from selling consumers' personal information. Cal. Civ. Code § 1798.140(d)(1). The Debtors may be subject to the CCPA because the Debtors do business in California and collect and process California consumers' personal data.

15. It is appropriate to authorize the Debtors to redact from any paper filed or to be filed with the Court in these chapter 11 cases, including the Creditor Matrix and Schedules and Statements, (a) the home and email addresses of individual creditors—including the Debtors' employees and contract workers—who are citizens of the United States and located in the United States and (b) the names, home and email addresses, and other Personal Data of any natural person to the extent they are processed subject to the UK GDPR, EU GDPR, DPDPA, or CCPA because, respectively, (x) such information can be used to perpetrate identity theft, and phishing scams or to locate survivors of domestic violence, harassment, or stalking under 11 U.S.C. § 107(c)(1), and

(y) disclosure risks violating the UK GDPR, EU GDPR, DPDPA, and CCPA, exposing the Debtors to potential civil liability and significant financial penalties.

16. Redaction is necessary to protect information that would create "undue risk of identity theft or other unlawful injury to the individual or the individual's property." 11 U.S.C. § 107(c)(1). The risk related to section 107(c)(1) of the Bankruptcy Code is real and not merely speculative. In at least one chapter 11 case in Delaware, the abusive former partner of a debtor's employee used the publicly accessible creditor and employee information filed in the chapter 11 case to track the employee at her new address that had not been publicly available until then, forcing the employee to change addresses again.[5] More recently, in a chapter 11 case in the Southern District of New York, at least four phishing scams have been uncovered,[6] including two where scammers first posed as associates of debtors' counsel using fake email accounts purportedly from debtors' counsel and requested that individual creditors reply with their account and other personal information and another where scammers posed as the debtor's claims agent and requested the same information from individual creditors. These events also suggest that disclosure of individuals' identifying information would not satisfy a legitimate interests assessment and would not be compliant with the minimization principle under the UK GDPR and EU GDPR.

17. The Debtors propose to provide, on a confidential basis, an unredacted version of the Creditor Matrix, Schedules and Statements, and any other filings redacted pursuant to the proposed Interim and Final Orders, respectively, to (a) the Court, (b) the U.S. Trustee, (c) counsel

---

5 The incident, which took place during the first Charming Charlie chapter 11 proceedings in 2017, is described in the "creditor matrix motion" filed in *Charming Charlie Holdings Inc.*, No. 19-11534 (CSS) (Bankr. D. Del. July 11, 2019) [Docket No. 4].

6 *See In re Celsius Network, LLC*, No. 22-10964 (MG), Docket Nos. 1527, 1904, 1992, 2082.

the Plan Sponsors, (d) counsel to the Consenting Secured Lenders, (e) counsel to the Credit Agreement Agent, (f) counsel to any official committee appointed in these chapter 11 cases, and (g) the Debtors' proposed claims and noticing agent (the "Claims and Noticing Agent"). The unredacted versions of the Creditor Matrix, the Schedules and Statements, and any other applicable filings redacted pursuant to the Interim Order and the Final Order shall not be made available to any other party without the consent of the Debtors or further order of the Court.

18. In each case, any such disclosure shall be subject to a review of whether such disclosure, on a case-by-case basis, would violate any obligations under the UK GDPR, EU GDPR, or any other privacy or data protection law or regulation. Nothing herein precludes a party in interest's right to file a motion requesting that the Court unseal the information redacted by the Interim and Final Orders, respectively. In addition, the Debtors will distribute, as applicable, any notices that are received at the Debtors' corporate headquarters and are intended for a current employee.

19. Courts in this jurisdiction have granted the relief requested herein in comparable chapter 11 cases: *See, e.g., In re Performance Powersports Grp. Investor, LLC*, No. 23-10047 (LSS) (Bankr. D. Del. Feb. 9, 2023) (authorizing the debtors to redact the home addresses of individual creditors and interest holders listed on the creditor matrix and other pleadings filed with the court); *In re Indep. Pet Partners Holdings, LLC*, No. 23-10153 (LSS) (Bankr. D. Del. Feb. 7, 2023) (authorizing the debtors to redact the home addresses of individual creditors and interest holders listed on the creditor matrix and other pleadings filed with the court); *In re Gigamonster Networks, LLC*, No. 23-10051 (JKS) (Bankr. D. Del. Jan. 18, 2023) (authorizing the debtors to redact the home addresses of individual creditors and interest holders listed on the creditor matrix, schedules and statements, and other pleadings filed with the court); *In re Tricida, Inc.*,

No. 23-10024 (JTD) (authorizing the debtors to redact the personal mailing addresses of individual creditors and interest holders listed on the creditor matrix and other documents filed with the court); *In re FTX Trading Ltd, et al.*, No. 22-11068 (JTD) (Bankr. D. Del. Nov. 23, 2022) (authorizing the debtors, on an interim basis, to redact the names, addresses, and email addresses of individual creditors and individual equity holders in both the United States and citizens of the United Kingdom or any European Economic Area member state).[7]

20. In addition to granting the requested relief, courts in this district have also expounded on the importance of authorizing debtors to redact individual creditors' personally identifiable information, including home addresses. In *Art Van Furniture*, in overruling the objection of the U.S. Trustee to the same redaction relief proposed here, Judge Sontchi noted that the proposed redaction is not a "burden of proof" issue so "much as a common sense issue." Hr'g Tr. at 25:6–7, *In re Art Van Furniture, LLC*, No. 20-10533 (CSS) (Bankr. D. Del. Mar. 2020).[8] Judge Sontchi found that "at this point and given the risks associated with having any kind of private information out on the internet, [redaction] has really become routine [and] I think obvious relief." *Id*. at 25:13–16. Similarly, in *Clover*, Judge Owens overruled the U.S. Trustee's objection, noting that "[t]o me it is common sense. I don't need evidence that there is, at best, a risk of identity theft and worse a risk of personal injury from listing someone's name and address on the internet

[7] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

[8] Similarly, Judge Sontchi previously overruled the Delaware U.S. Trustee's objection to the redaction of individuals' information and found that "it's just plain common sense in 2019—soon-to-be 2020—to put as little information out as possible about people's personal lives to present [sic] scams . . . [Identity theft] is a real-life issue, and, of course, the issue of domestic violence is extremely important." Hr'g Tr. at 48:20–22, 49:3–5, *In re Anna Holdings*, No. 19-12551 (CSS) (Bankr. D. Del. Dec. 3, 2019). Notably, Chief Judge Sontchi acknowledged that "the world is very different from [the 1980s] when you and I started practice with the problems of identity theft" and that his perspective had evolved in that he was not previously aware of "the dangers with this kind of information becoming public." *See* Hr'g Tr. at 45:25–46:2, 47:22–24. The Debtors reserve the right to supplement the record with respect to such risks insofar as they are not self-evident in this instance.

by way of the court's electronic case filing system and, of course, the claims agent's website. . . . The court can completely avoid contributing to the risk by redacting the addresses. And while there is, of course, an important right of access we routinely redact sensitive and confidential information for corporate entities and redact individuals' home addresses." Hr'g Tr. at 24:21–25, 25:9–10, *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Jan. 22, 2020). And, in *Forever 21*, in overruling the U.S. Trustee's objection, Judge Gross found that "[w]e live in a new age in which the theft of personal identification is a real risk, as is injury to persons who, for personal reasons, seek to have their addresses withheld." Hr'g Tr. at 60:22–25, *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Dec. 19, 2019).

21. Furthermore, Judge Gross found that it was not necessary to the effective administration of the debtors' bankruptcy estates to disclose the personally identifiable information of the debtors' stakeholders who are European Economic Area citizens, which therefore created risk that the debtors could be fined under the UK GDPR or EU GDPR for unnecessary disclosures of personal information.

> But I'll say the GDPR contains a necessity test in its guidelines. Is disclosure necessary for the legal proceedings at hand? Clearly, disclosing home addresses is not necessary for the conduct of the bankruptcy case and the absence of the address does not prejudice anyone; indeed, there's been no objection from any creditor in this case.

Hr'g Tr. at 62:16–22, *In re Forever 21, Inc.*, No. 19-12122 (KG).

22. For these reasons, cause exists to authorize the Debtors to redact, pursuant to section 107(c)(1) of the Bankruptcy Code and in compliance with the UK GDPR and EU GDPR, the home and email addresses of individuals (and, where such information has been provided to, and is being processed by, an organization with an establishment located in the United Kingdom or a member state of the European Economic Area, the names, home addresses and other Personal Data of any individual) listed on the Creditor Matrix, Schedules and Statements, or any other

document filed with the Court. Absent such relief, the Debtors (a) may be in violation of applicable data privacy law, thereby exposing them to severe monetary penalties that could threaten the value of the Debtors' estate during this sensitive stage of their restructuring, (b) would unnecessarily render individuals more susceptible to identity theft and phishing scams, and (c) could jeopardize the safety of employees and other individual creditors who, unbeknownst to the Debtors, are survivors of domestic violence, harassment, or stalking by publishing their home addresses without any advance notice or opportunity to opt out or take protective measures.

**III. Authorization to Provide Service via Email Is Appropriate.**

23. The Bankruptcy Rules provide mechanisms for the Court to address the form and manner of certain notices. *See* Fed. R. Bankr. P. 2002(m), 9007. Rule 2002(m) addresses the Court's authority concerning notices under Rule 2002, and Rule 9007 permits the Court to specify notice procedures to the extent not otherwise prescribed by the Bankruptcy Rules. Rule 9036 separately addresses electronic notice and service, including applicable consent requirements. *See* Fed. R. Bankr. P. 9036. And section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In light of these provisions and the circumstances described below, the Debtors submit that approval of the proposed email notice procedures is appropriate.

24. In complex chapter 11 cases in this district, courts have permitted debtors to provide email service to creditors. *See, e.g., In re GoHealth, Inc.*, No. 26-10914 (TMH) (Bankr. D. Del. July 1, 2026) (authorizing the debtors to serve all pleadings and papers, including the publication notice, via email on all parties listed on the creditor matrix except when a party to be served both (a) had a mailing address in the Debtors' books, records, and files or had designated a mailing address under Bankruptcy Rules 2002(g)(l) or 5003(e) and (b) had requested hard copy U.S. first class mail service); *In re West Marine, Inc.*, No. 26-10794 (Bankr. D. Del. May 19, 2026) (same);

*In re Claire's Holdings LLC*, No. 25-11454 (Bankr. D. Del. Sept. 8, 2025) (same); *In re Marelli Auto. Lighting USA LLC*, No. 25-11034 (CTG) (Bankr. D. Del. July 16, 2025) (same); *In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. June 17, 2025) (same).

25. The Debtors operate a leading platform for premium visual content. As set forth in the First Day Declaration, the Content Contributors Motion,[9] and the Customer Programs Motion, the Debtors license content from more than 600,000 content contributors (the "Content Contributors") from almost every country in the world, then license such content to more than 630,000 customers (the "Customers") around the world, and many of these Content Contributors and Customers may hold claims against the Debtors that will be satisfied in the ordinary course of business without requiring such parties to file proofs of claim. Here, serving notices by traditional mail is cost-prohibitive given the size of the Debtors' creditor matrix. Serving notices by traditional mail would drain a material amount of the Debtors' available cash at a time when such funds could instead be used to support the Debtors' restructuring efforts. With the assistance of the Claims and Noticing Agent, the Debtors determined that serving each of the anticipated filings to the necessary parties during these chapter 11 cases would cost the Debtors more than $7 million.

26. Furthermore, given the nature of the Debtors' business as a digital content provider, in the ordinary course of business, the Debtors communicate and transact with their Content Contributors and Customers almost exclusively through electronic means such as email. Content Contributors and Customers generally establish their relationships with the Debtors through online accounts registered to an email address, and that email address is the primary, and often the only, contact information the Debtors maintain for them. Accordingly, the Debtors do not have physical

9 *See Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay or Honor Prepetition Claims and Obligations of Content Contributors and (II) Granting Related Reli*ef (the "Content Contributors Motion"), filed contemporaneously herewith.

mailing addresses for many of their Content Contributors and Customers. Thus, a significant majority of the parties on the Debtors' creditor matrix traditionally receive communications from the Debtors by electronic means and may not be expecting to receive important communications by traditional forms of mail, thereby increasing the need to provide notice to parties electronically. For these parties, email is not merely an adequate substitute for mail service; it is the means of notice most likely to actually reach them.

27. Moreover, many of the Debtors' Customers and Content Contributors have agreed to receive ordinary-course business communications from the Debtors by email. Although these ordinary-course arrangements do not necessarily constitute consent to electronic service for purposes of Bankruptcy Rule 9036, they demonstrate that email is an established and effective means of communicating with these parties. The Debtors submit that this course of dealing supports approval of the proposed notice procedures.

28. Email service will help alleviate administrative burdens, is likely the most efficient and cost-effective manner by which service of all interested parties can be completed and is also the most likely to facilitate creditor responses.

29. Accordingly, the Debtors request authority to serve all pleadings and papers via email, on all parties listed on the Creditor Matrix, except when a party to be served both (a) has a mailing address in the Debtors' books, records, and files or has designated a mailing address under Bankruptcy Rules 2002(g)(l) or 5003(e) and (b) has requested hard copy U.S. first class mail service, in which case, such party shall be served by mail at such mailing address. Further, if notice is provided to any party by hard copy U.S. first class mail service, the Debtors request authority, but not direction, to provide such notice in a form and manner not to exceed one page if such notice includes a website URL that links directly to the document(s) to which such notice

relates. Implementation of the procedures requested herein is appropriate in these chapter 11 cases and well within the Court's authority under the Bankruptcy Rules and equitable powers under section 105(a) of the Bankruptcy Code.

## IV. Service of Notices to Parties in Interest by the Claims and Noticing Agent Is Warranted.

30. Bankruptcy Rule 2002(a) provides, in relevant part, that "the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of . . . the meeting of creditors under § 341 or § 1104(b) of the Bankruptcy Code." Fed. R. Bankr. P. 2002(a). Subsection (f) provides that notice of the order for relief shall be sent by mail to all creditors. *See* Fed. R. Bankr. P. 2002(f).

31. The Debtors request that the Claims and Noticing Agent undertake all mailings and email service, as applicable, directed by the Court or the U.S. Trustee or as required in section 342(a) of the Bankruptcy Code and Bankruptcy Rules 2002(a) and (f), including, when applicable, serving the Combined Hearing Notice (as defined in the Scheduling Motion), on all parties listed on the Creditor Matrix and all counterparties to executory contracts to advise them of (i) the commencement of these chapter 11 cases, (ii) the date and time of the Combined Hearing (as defined in the Scheduling Motion), and (iii) the proposed assumption of executory contracts.[10] Service of the Combined Hearing Notice on the Creditor Matrix and executory contract counterparties will not only avoid confusion among creditors but will also prevent the Debtors'

---

[10] *See Motion of Debtors for Entry of an Order (I) Scheduling Combined Hearing on Adequacy of the Disclosure Statement and Confirmation of the Plan; (II) Fixing Deadline to Object to Disclosure Statement and the Plan; (III) Approving Prepetition Solicitation Procedures and Form and Manner of Notice of Commencement, Combined Hearing and Objection Deadline; (IV) Conditionally Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (V) Conditionally (A) Directing the United States Trustee not to Convene Section 341(a) Meeting of Creditors and (B) Waiving Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities and Rule 2015.3 Reports; and (VI) Granting Related Relief* (the "Scheduling Motion"), filed contemporaneously herewith.

estates from incurring unnecessary costs associated with serving multiple notices to the parties listed on the Debtors' voluminous Creditor Matrix.

32. The Debtors believe that using the Claims and Noticing Agent to promptly provide notices to all applicable parties will maximize efficiency in administering these chapter 11 cases and will ease administrative burdens that would otherwise fall upon the Court and the U.S. Trustee. Additionally, the Claims and Noticing Agent will assist the Debtors in preparing creditor lists and mailing initial notices, and, therefore, it is more efficient to authorize the Claims and Noticing Agent to mail or email, as applicable, all notices, including the Combined Hearing Notice. Accordingly, the Claims and Noticing Agent should undertake such mailings and email service, and the form and manner of service of notices should be approved.

## V. Waiver of the Requirements to File a List of and to Provide Notice Directly to the Equity Security Holders Is Warranted.

33. The Bankruptcy Rules contain certain requirements with respect to a debtor's equity security holders. Bankruptcy Rule 1007(a)(3) requires a debtor to file, within fourteen days after the petition date, a list of the debtor's equity security holders. Bankruptcy Rule 2002(d) requires that equity security holders be provided notice of, among other things, the commencement of the bankruptcy case and the confirmation hearing. Bankruptcy courts have authority to modify or waive the requirements under both rules. Fed. R. Bankr. P. 1007(a)(3) ("[U]nless the court orders otherwise, the debtor shall file . . . a list of the debtor's equity security holders . . . ."); Fed. R. Bankr. P. 2002(d) ("[U]nless otherwise ordered by the court, the clerk . . . shall in the manner and form directed by the court give notice to all equity security holders . . . ."); *see also* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); Fed. R. Bankr. P. 9007 ("When notice is to be given under

these rules, the court shall designate, if not otherwise specified herein, the time within which, the entities to whom, and the form and manner in which the notice shall be given.”).

34. The requirements to file a list of, and to provide notice directly to, equity security holders should be waived as to Debtor Getty Images Holdings, Inc. Debtor Getty Images Holdings, Inc.’s common stock is publicly traded on the New York Stock Exchange, with approximately 421 million outstanding shares of common stock as of the Petition Date and those shares cannot be readily traced to specific individual holders. Debtor Getty Images Holdings, Inc. only maintains a list of its registered equity security holders and therefore must obtain the names and addresses of its beneficial shareholders from a securities agent. Preparing and submitting such a list with last known addresses for each equity security holder and sending notices to all such parties will create undue expense and administrative burden with limited corresponding benefit to the estates or parties in interest.

35. Debtor Getty Images Holdings, Inc. has taken or will take several actions to inform its equity security holders of the commencement of these chapter 11 cases. On or about the date hereof, the Debtors will issue a press release announcing the filing. Debtor Getty Images Holdings, Inc. also filed with its petition a list of persons and entities with significant holdings of its outstanding common stock. As soon as is practicable following the date hereof, the Debtors intend to cause the notices required under Bankruptcy Rule 2002(d) to be served on registered and nominee holders of Debtor Getty Images Holdings, Inc.’s common stock with instructions to serve such notices down to the beneficial holders of equity securities and to publish them in full in *The New York Times* (national edition). The Debtors shall also publish the Combined Hearing Notice on the Debtors’ case website located at https://restructuring.ra.kroll.com/GettyImages and file a Form 8-K with the SEC within five business days following the Petition Date, notifying their

investors and other parties of the commencement of these chapter 11 cases. The Debtors request that the requirements to file a list of and to provide notice directly to Debtor Getty Images Holdings, Inc.'s equity security holders (other than registered holders of Debtor Getty Images Holdings, Inc.'s common stock) be waived.

36. Courts in this district have granted similar relief to the relief requested herein. *See, e.g.*, *In re BioXcel Therapeutics, Inc.*, No. 26-11360 (TMH) (Bankr. D. Del. Sep. 17, 2026) (authorizing the debtors to (i) file a list of all known registered holders of the debtors' common stock in satisfaction of Bankruptcy Rule 1007(a)(3) and (ii) provide notice to all equity holders via first class mail service on registered and nominee holders of the debtors' common and preferred stock, publishing on the debtors' case website, and filing an 8-K); *In re Express, Inc.*, No. 24-10831 (KBO) (Bankr. D. Del. Apr. 24, 2024) (waiving the requirement under Bankruptcy Rule 1007(a)(3) to file a list of equity security holders and provide notice directly thereto); *In re JOANN Inc.*, No. 24-10418 (CTG) (Bankr. D. Del. Mar. 19, 2024) (same); *In re Lannett Co., Inc.*, No. 23-10559 (JKS) (Bankr. D. Del. Aug. 11, 2023) (same); *In re Virgin Orbit Holdings, Inc.*, No. 23-10405 (KBO) (Bankr. D. Del. Apr. 5, 2023) (same); *In re Hyrecar Inc.*, No. 23-10259 (JTD) (Bankr. D. Del. Feb. 28, 2023) (same).

**<u>Compliance with Local Rule 9018-1(d)(iv)</u>**

37. To the best of the knowledge, information, and belief of the undersigned proposed counsel to the Debtors, the documents that the Debtors are requesting to seal pursuant to the relief requested in this Motion do not contain information subject to the Confidentiality Rights of another Holder of Confidentiality Rights (each as defined in Local Rule 9018-1(d)(iii)).

**<u>Notice</u>**

38. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the Office of the United States Trustee for the District of Delaware; (b) the

holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the office of the attorney general for each of the states in which the Debtors operate; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the United States Department of Justice; (h) the Credit Agreement Agent; (i) counsel to the Credit Agreement Agent; (j) counsel to the Plan Sponsors; (k) counsel to the Unsecured Noteholders Ad Hoc Committee; (l) counsel to the Consenting Secured Lenders; and (m) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). As this Motion is seeking "first day" relief, the Debtors will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request entry of the Interim Order and the Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: October 21, 2026
Wilmington, Delaware

*/s/ Justin R. Alberto*
**COLE SCHOTZ P.C.**
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (DE Bar No. 5126)
Patrick J. Reilley (DE Bar No. 4451)
Sarah A. Carnes (*pro hac vice* pending)
Jack M. Dougherty (DE Bar No. 6784)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: svanaalten@coleschotz.com
jalberto@coleschotz.com
preilley@coleschotz.com
scarnes@coleschotz.com
jdougherty@coleschotz.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**SIMPSON THACHER & BARTLETT LLP**
Brian E. Schartz (*pro hac vice* pending)
Elisha D. Graff (*pro hac vice* pending)
Rachael L. Foust (*pro hac vice* pending)
Dov Gottlieb (*pro hac vice* pending)
Olivia F. Acuña (*pro hac vice* pending)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-3702
Facsimile: (212) 455-2502
Email: brian.schartz@stblaw.com
egraff@stblaw.com
rachael.foust@stblaw.com
dov.gottlieb@stblaw.com
olivia.acuna@stblaw.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*