**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| GETTY IMAGES HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-11643(___) |
| Debtors. | ) | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) SCHEDULING COMBINED HEARING ON ADEQUACY OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN; (II) FIXING DEADLINE TO OBJECT TO DISCLOSURE STATEMENT AND THE PLAN; (III) CONDITIONALLY APPROVING PREPETITION SOLICITATION PROCEDURES AND FORM AND MANNER OF NOTICE OF COMMENCEMENT, COMBINED HEARING AND OBJECTION DEADLINE; (IV) CONDITIONALLY APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (V) CONDITIONALLY (A) DIRECTING THE UNITED STATES TRUSTEE NOT TO CONVENE SECTION 341 MEETING OF CREDITORS AND (B) WAIVING REQUIREMENT OF FILING STATEMENTS OF FINANCIAL AFFAIRS AND SCHEDULES OF ASSETS AND LIABILITIES AND RULE 2015.3 REPORTS; AND (VI) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (this "Motion"):[2]

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Craig Peters, Chief Executive Officer of Getty Images Holdings, Inc. and its Debtor Subsidiaries, in Support of the Debtors' Chapter 11 Petitions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration, the *Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* (as may be amended, supplemented or otherwise modified from time to time, the "Plan"), or the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor*

## **Preliminary Statement**

1. On October 12, 2026, the Debtors and the Consenting Stakeholders executed a Restructuring Support Agreement (as may be amended, supplemented, or otherwise modified from time to time in accordance with its terms, and including all annexes, exhibits and schedules thereto, the "Restructuring Support Agreement"), pursuant to which the Consenting Stakeholders agreed, among other things, to support and vote in favor of the Plan. The Restructuring Support Agreement also sets forth the principal terms of the Restructuring Transactions which, subject to approval by the United States Bankruptcy Court for the District of Delaware (the "Court"), will be effectuated through the Plan. As contemplated by the Restructuring Support Agreement, on October 20, 2026, prior to filing these Chapter 11 Cases, the Debtors commenced solicitation of votes on the Plan.

2. On October 21, 2026 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

## **Relief Requested**

3. By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"):

---

*Subsidiaries* (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"), both of which have been filed contemporaneously herewith and are incorporated by reference herein.

(a) scheduling a combined hearing (the "Combined Hearing") on (i) the adequacy of the Disclosure Statement and (ii) confirmation of the Plan;

(b) establishing a deadline of November 30, 2026, at 5:00 p.m., prevailing Eastern Time, for filing objections to the adequacy of the Disclosure Statement and confirmation of the Plan (the "Objection Deadline"), and approving related procedures;

(c) conditionally approving the prepetition solicitation procedures regarding votes to accept or reject the Plan (the "Solicitation Procedures");

(d) approving the form and manner of the notice of commencement of these chapter 11 cases, the Combined Hearing, and the assumption of Executory Contracts and Unexpired Leases (the "Combined Notice"), substantially in the form attached to the Order as **Exhibit 1**;

(e) approving (i) the form of notice applicable to Holders of Claims in Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan (the "Classes 1 (Other Secured Claims) and 2 (Other Priority Claims) Notice of Non-Voting Status"); (ii) the form of notice applicable to Holders of Claims in Class 6 (General Unsecured Claims) that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan (the "Class 6 (General Unsecured Claims) Notice of Non-Voting Status"); (iii) the form of notice to Holders of Interests in Class 9 (Holdings Interests) that are Impaired under the Plan and who are, pursuant to section 1126(g) of the Bankruptcy Code, conclusively deemed to reject the Plan (the "Class 9 (Holdings Interests) Notice of Non-Voting Status"); and (iv) the form of notice to Holders or potential Holders of Class 10 Section 510(b) Claims that are Impaired under the Plan and who are, pursuant to section 1126(g) of the Bankruptcy Code, conclusively deemed to reject the Plan (the "Class 10 (Section 510(b) Claims) Notice of Non-Voting Status" and, together with the Classes 1 (Other Secured Claims) and 2 (Other Priority Claims) Notice of Non-Voting Status, the Class 6 (General Unsecured Claims) Notice of Non-Voting Status, and the Class 9 (Holdings Interests) Notice of Non-Voting Status, the "Notices of Non-Voting Status," and each a "Notice of Non-Voting Status"); and (v) the applicable opt-in form as attached to the Classes 1 (Other Secured Claims) and 2 (Other Priority Claims) Notice of Non-Voting Status, the Class 9 (Holdings Interests) Notice of Non-Voting Status, and the Class 10 (Section 510(b) Claims) Notice of Non-Voting Status (the "Opt-In Form" and, together with the Notices of Non-Voting Status, collectively, the "Notices of Non-Voting Status and Opt-In Form"), substantially in the forms attached to the Order as **Exhibit 2A**, **Exhibit 2B**, **Exhibit 2C** and **Exhibit 2D**;

(f) approving the form and manner of the publication notice of commencement of these chapter 11 cases and the Combined Hearing (the "Publication Notice") substantially in the form attached to the Order as **Exhibit 3**;

(g) approving the form and manner of the Solicitation Cover Letter (as defined below), substantially in the form attached to the Order as **Exhibit 4**;

(h) conditionally approving the form and manner of: (i) the Ballot for Holders of Class 3 Revolving Loan Claims, substantially in the form attached to the Order as **Exhibit 5**; (ii) the Ballots for Holders of Class 4 Secured Funded Debt Claims, substantially in the forms attached to the Order as **Exhibit 6A**, **Exhibit 6B**, and **Exhibit 6C**; and (iii) the Ballots for Holders of Class 5 Unsecured Notes Claims substantially in the forms attached to the Order as **Exhibit 7A** and **Exhibit 7B** (collectively, the "Ballots");

(i) conditionally approving the notice and objection procedures, including the applicable objection deadline (the "Executory Contract Assumption Objection Deadline"), for the assumption of Executory Contracts and Unexpired Leases under the Plan (the "Executory Contract Procedures");

(j) conditionally approving the procedures and assumptions for tabulating votes to accept or reject the Plan as set forth herein and in the Ballots;

(k) conditionally waiving the requirement that the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") convene a meeting of creditors (the "Creditors' Meeting") under section 341(a) of the Bankruptcy Code; provided that the Plan is confirmed and the Effective Date occurs on or before the Waiver Deadline (as defined herein);

(l) conditionally waiving the requirement that the Debtors file: (i) statements of financial affairs ("SOFAs") and schedules of assets and liabilities ("Schedules") and (ii) the periodic reports of financial information with respect to entities in which the Debtors' estates hold a controlling or substantial interest pursuant to Bankruptcy Rule 2015.3 (the "Rule 2015.3 Reports");

(m) waiving the requirements of Local Rule 3017-3 to permit the Debtors to exceed the page limit applicable to the Debtors' memorandum of law in support of approval of the adequacy of the Disclosure Statement and confirmation of the Plan (the "Confirmation Brief");

(n) allowing the notice periods for approval of the adequacy of the Disclosure Statement and for confirmation of the Plan to run concurrently;

(o) waiving the requirement that the Debtors mail copies of the Solicitation Package (as defined herein) to Holders of Claims and Interests presumed to accept or deemed to reject the Plan, provided that the Debtors distribute the Combined Notice and the applicable Notice of Non-Voting Status (and,

where applicable, Opt-In Form) via email (where available) or hard-copy mail to Holders of Claims and Interests in the Non-Voting Classes (as defined herein) except Classes 7 (Intercompany Claims) and 8 (Intercompany Interests); and

(p) granting such other relief as the Court deems appropriate.

4. The Debtors request that the approval of the Solicitation Procedures, the Ballots, the procedures for tabulating votes, and the Executory Contract Procedures (including the Executory Contract Assumption Objection Deadline) be granted on a conditional basis, pending final approval through the Confirmation Order, with the rights of parties in interest to object thereto in connection with confirmation of the Plan reserved. The Debtors request that all other relief requested herein, including the scheduling of the Combined Hearing, the establishment of the Objection Deadline, the approval of the Confirmation Schedule, the approval of the Notices (as defined in the Order) and the form and manner of service, distribution, and publication thereof, the waiver of the requirement to transmit the Plan and Disclosure Statement to Non-Voting Holders, and the waiver of Local Rule 3017-3, be granted on a final basis upon entry of the Order, and that the deferral of the Creditors' Meeting and the extension and excusal of the requirement to file SOFAs, Schedules, and Rule 2015.3 Reports be granted subject to confirmation of the Plan and occurrence of the Effective Date on or before the Waiver Deadline (as defined below). For the avoidance of doubt, the Debtors do not seek approval of the adequacy of the Disclosure Statement, on a conditional or final basis, by this Motion; the Debtors will seek such approval at the Combined Hearing.

5. For ease of reference, the following table summarizes the attachments and exhibits cited in this Motion:

| Pleading | Exhibit |
|---|---|
| Order | **Exhibit A** to this Motion |
| Combined Notice | **Exhibit 1** to the Order |
| Proposed Notices of Non-Voting Status | |
| • Proposed Classes 1 (Other Secured Claims) and 2 (Other Priority Claims) Notice of Non-Voting Status and Opt-In Form (Unimpaired) | **Exhibit 2A** to the Order |
| • Proposed Class 6 (General Unsecured Claims) Notice of Non-Voting Status (Unimpaired) | **Exhibit 2B** to the Order |
| • Proposed Class 9 (Holdings Interests) Notice of Non-Voting Status and Opt-In Form (Impaired) | **Exhibit 2C** to the Order |
| • Proposed Class 10 (Section 510(b) Claims) Notice of Non-Voting Status and Opt-In Form (Impaired) | **Exhibit 2D** to the Order |
| Publication Notice | **Exhibit 3** to the Order |
| Solicitation Cover Letter | **Exhibit 4** to the Order |
| Ballots | |
| • Form of Class 3 General Ballot – Revolving Loan Claims | **Exhibit 5** to the Order |
| • Form of Class 4 General Ballot – Secured Funded Debt Claims | **Exhibit 6A** to the Order |
| • Form of Class 4 (Secured Funded Debt Claims) Beneficial Holder Ballot | **Exhibit 6B** to the Order |
| • Form of Class 4 (Secured Funded Debt Claims) Master Ballot | **Exhibit 6C** to the Order |
| • Form of Class 5 (Unsecured Notes Claims) Beneficial Holder Ballot | **Exhibit 7A** to the Order |
| • Form of Class 5 (Unsecured Notes Claims) Master Ballot | **Exhibit 7B** to the Order |

6. In connection with the foregoing, the Debtors request that the Court approve the following schedule of proposed dates (the "Confirmation Schedule"), subject to the Court's availability.

| Event | Date/Deadline |
|---|---|
| Voting Record Date | October 9, 2026 |
| Commencement of Solicitation | October 20, 2026 |
| Petition Date | October 21, 2026 |
| Service of Combined Notice, Classes 1 (Other Secured Claims) and 2 (Other Priority Claims) Notice of Non-Voting Status and Opt-In Form, Class 6 (General Unsecured Claims) Notice of Non-Voting Status, and Class 9 (Holdings Interests) Notice of Non-Voting Status and Opt-In Form | Within three (3) business days after entry of the Order, or as soon as reasonably practicable thereafter (on or about October 27, 2026) |
| Service of Class 10 (Section 510(b) Claims) Notice of Non-Voting Status and Opt-In Form | Within six (6) business days after entry of the Order, or as soon as reasonably practicable thereafter (on or about October 30, 2026) |
| Initial Plan Supplement Filing Deadline | November 23, 2026 at 11:59 p.m. (prevailing Eastern Time), seven (7) days prior to the Objection Deadline |
| Voting Deadline, Objection Deadline, Opt-In Deadline, and Executory Contract Assumption Objection Deadline | November 30, 2026, at 5:00 p.m. (prevailing Eastern Time) |
| Deadline to File Voting Report | Seven (7) calendar days prior to the Combined Hearing (on or about December 7, 2026) |
| Deadline to File Proposed Confirmation Order | December 9, 2026, at 4:00 p.m. (prevailing Eastern Time), or three (3) business days prior to the Combined Hearing. |
| Deadline to File Confirmation Brief and Reply (including, to the extent applicable, replies to any Executory Contract Assumption Objections) | December 9, 2026, at 4:00 p.m. (prevailing Eastern Time), or three (3) business days prior to the Combined Hearing. The Debtors request that the Court modify Local Rule 9006-1(d), which governs the time for filing reply papers, to the extent necessary to permit the Debtors to file the Confirmation Brief and any reply to objections to the adequacy of the Disclosure Statement or confirmation of the Plan concurrently with the filing of their agenda for the Combined Hearing. |
| Combined Hearing | December 14, 2026, at a time to be determined, subject to Court availability |

## **Jurisdiction and Venue**

7. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the Amended Standing Order of Reference from the United States District Court, for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory bases for the relief requested herein are sections 105(d)(2)(B)(vi), 341, 1125, 1126 and 1128(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 1007, 2002, 2003, 2015.3, 3016, 3017, 3018, 3020(b)(1) and 9006(c)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 1007-1, 2002-1, 3017-1 and 9006-1.

## **Basis for Relief**

### **I. Scheduling a Combined Hearing.**

10. The Debtors seek a Combined Hearing to consider approval of the Disclosure Statement and confirmation of the Plan to be held, subject to the Court's calendar, on December 14, 2026, as set forth in the Confirmation Schedule. This request is consistent with the practice for prepackaged cases in this District and applicable statutes and rules and will facilitate an expeditious reorganization on a schedule consistent with the dates contemplated by the Restructuring Support Agreement. The Debtors further request that the notice periods for approval

of the adequacy of the Disclosure Statement and for confirmation of the Plan be permitted to run concurrently. Running these periods concurrently is appropriate because the Debtors seek a single Combined Hearing on both matters, and courts in this district have routinely permitted these notice periods to run simultaneously in prepackaged cases. The Debtors further request that the Order provide that the Combined Hearing may be adjourned from time to time by the Court or by the Debtors (subject to the consent rights set forth in the Restructuring Support Agreement) without further notice other than adjournments announced in open court or by the filing of a notice or hearing agenda in these Chapter 11 Cases, with notice of such adjourned date(s) to be made available on the electronic case filing docket and the website maintained by Kroll Restructuring Administration LLC ("Kroll" or the "Claims and Noticing Agent" or "the Solicitation Agent")[3] at https://restructuring.ra.kroll.com/GettyImages.

11. Bankruptcy Rule 3017(a) requires that creditors and other parties in interest receive twenty-eight (28) days' notice of the hearing to consider a proposed disclosure statement, and, additionally, Bankruptcy Rule 2002(b) requires that creditors and other parties in interest have twenty-eight (28) days' notice of the time fixed for filing objections to approval of a disclosure statement or confirmation of a plan of reorganization, subject to the Court's discretion to shorten such period under Bankruptcy Rule 9006(c)(1). However, Local Rule 3017-1(a) expands upon the notice period provided by the Bankruptcy Rules, and requires thirty-five (35) days' notice of the hearing to consider a proposed disclosure statement and at least twenty-eight (28) days' notice of the deadline to object to approval of the disclosure statement. *See* Del. Bankr. L.R. 3017-1(a).

---

[3] Contemporaneously herewith, the Debtors filed the *Application of Debtors for Entry of an Order (I) Authorizing the Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief*. The Debtors also anticipate filing a separate retention application for the employment of the Claims and Noticing Agent as administrative advisor for the Debtors.

Section 1128(a) of the Bankruptcy Code provides, "[a]fter notice, the court shall hold a hearing on confirmation of a plan." In addition, Bankruptcy Rule 3017(c) provides, "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation." Section 105(d)(2)(B)(vi) of the Bankruptcy Code provides that the Court may combine the hearing on approval of a disclosure statement with the hearing on confirmation of the related plan. 11 U.S.C. § 105(d)(2)(B)(vi). Bankruptcy Rule 2002(d) requires notice to equity security holders of the time to object to, and the hearing to consider, approval of a disclosure statement and confirmation of a plan. Fed. R. Bankr. P. 2002(d).[4]

12. Prior to the filing of these Chapter 11 Cases, the Debtors accomplished the time-consuming and difficult task required to effectuate a successful reorganization—the negotiation of a consensual restructuring transaction and execution of the Restructuring Support Agreement with the Consenting Stakeholders. Likewise, the Debtors have already negotiated, formulated, and commenced the solicitation of the Plan. As set forth in the Restructuring Support Agreement, the Consenting Stakeholders are bound to vote to accept the Plan, which votes are expected to satisfy the acceptance requirements of section 1126(c) of the Bankruptcy Code. Accordingly, a Combined Hearing in these Chapter 11 Cases will promote judicial economy and will allow the Debtors to expeditiously effectuate their consensual restructuring and maximize value.

13. Emerging from these Chapter 11 Cases on the schedule set forth above, which complies with all applicable rules and the milestones set forth in the Restructuring Support

[4] Here, the Debtors do not seek separate approval of the Disclosure Statement under section 1125(b) of the Bankruptcy Code. Such approval is not required at the present time because the Disclosure Statement and the balance of the Solicitation Packages were transmitted prepetition in accordance with section 1125(g) of the Bankruptcy Code. The Debtors will seek approval of the adequacy of the Disclosure Statement at the Combined Hearing.

Agreement, will maximize the value of the Debtors' estates for the benefit of all stakeholders. The Restructuring Support Agreement requires that the Solicitation Commencement Date (as defined in the Restructuring Support Agreement) and the Petition Date each occur no later than October 21, 2026, that the Confirmation Order be entered within fifty-five (55) calendar days after the Petition Date (*i.e.*, by December 15, 2026), and that the Effective Date occur within seventy-five (75) calendar days after the Petition Date (*i.e.*, by January 4, 2027), subject to a potential thirty (30) day extension in accordance with the Restructuring Support Agreement. The Debtors commenced solicitation on October 20, 2026, and filed these Chapter 11 Cases on October 21, 2026, satisfying the first milestone, and the proposed Combined Hearing on December 14, 2026—fifty-four (54) days after the Petition Date—leaves one (1) calendar day before the confirmation milestone. As described in the First Day Declaration, the Debtors operate in a competitive and public-facing industry, and every day in chapter 11 can negatively impact their business and operations. Any adverse effects of these Chapter 11 Cases upon the Debtors' business and going-concern value will be minimized, and the benefit to creditors and other stakeholders maximized, through the effectuation of the Restructuring Transactions, including the prompt distributions pursuant to the terms of the Plan. Likewise, an expeditious restructuring will serve to minimize administrative expenses attendant to these Chapter 11 Cases. Such benefits are the hallmarks of a prepackaged plan of reorganization. In addition to the reasons set forth above, it is appropriate to enter the Order at this time so that parties in interest may be informed as promptly as possible of the anticipated schedule of events for confirmation of the Plan.

14. The proposed schedule is rule-compliant and affords creditors, equity interest holders, and all other parties in interest ample notice of these Chapter 11 Cases and the Combined Hearing. Specifically, the Debtors will serve the Combined Notice and the applicable Notices of

Non-Voting Status on or about October 27, 2026, providing thirty-four (34) days' notice of the November 30, 2026 Objection Deadline and forty-eight (48) days' notice of the December 14, 2026 Combined Hearing. Even the Class 10 (Section 510(b) Claims) Notice of Non-Voting Status, to be served on or about October 30, 2026, will provide thirty-one (31) days' notice of the Objection Deadline and forty-five (45) days' notice of the Combined Hearing. These periods exceed the twenty-eight (28) day notice periods required by Bankruptcy Rules 2002(b) and 3017(a) and the thirty-five (35) day notice periods required by Local Rule 3017-1(a) (thirty-five (35) days' notice of the Combined Hearing and at least twenty-eight (28) days' notice of the Objection Deadline), without any need to shorten notice under Bankruptcy Rule 9006(c)(1). As a result, parties will have sufficient time to evaluate their rights in respect of the Plan prior to the proposed Combined Hearing and, therefore, no party in interest will be prejudiced by the requested relief.

15. Accordingly, the Debtors respectfully request entry of the Order, pursuant to section 105(d)(2)(B)(vi) of the Bankruptcy Code, setting December 14, 2026, as the date for the Combined Hearing, subject to the Court's availability. The proposed date provides a fourteen (14) day period following the Voting Deadline and the Objection Deadline, which will permit the Claims and Noticing Agent to complete tabulation and file the voting report and will permit the Debtors and other parties in interest to evaluate, respond to, and seek to consensually resolve any timely objections before the Combined Hearing.

## II. Approval of the Disclosure Statement.

16. At the Combined Hearing, the Debtors will seek approval of the Disclosure Statement. Under section 1125(a) of the Bankruptcy Code, a plan proponent must provide holders of impaired claims and interests with "adequate information" regarding a debtor's proposed plan of reorganization, which is defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

17. Whether a disclosure statement contains adequate information is intended by Congress to be a flexible, fact-specific inquiry left within the discretion of the bankruptcy court:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection. There will be a balancing of interests in each case. In reorganization cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest.

H.R. REP. NO. 95-595, at 409 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6365. *See also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (observing that "adequate information will be determined by the facts and circumstances of each case"); *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) (opining that what constitutes adequate information is "subjective," "made on a case by case basis," and "largely in the discretion of the bankruptcy court").

18. The Disclosure Statement is extensive and comprehensive. It contains descriptions of, among other things: (i) the Plan; (ii) the operation of the Debtors' business; (iii) the reasons for, and circumstances leading up to, the restructuring; (iv) the Debtors' prepetition indebtedness; (v) the proposed capital structure of the Reorganized Debtors; (vi) financial information relevant to creditors' determinations of whether to accept or reject the Plan; (vii) securities law matters

relevant to the restructuring; (viii) a liquidation analysis setting forth the estimated return that Holders of Claims and Interests would receive in a hypothetical chapter 7 liquidation; (ix) risk factors regarding the Debtors and the Plan; and (x) federal tax law consequences of the Plan.

19. Based on the foregoing, the Debtors will request at the Combined Hearing that the Court approve the Disclosure Statement as meeting the requirements for "adequate information" under section 1125(a) of the Bankruptcy Code.

## III. Conditional Approval of the Solicitation Procedures and Forms of Solicitation Materials.

20. The Debtors also request that the Court conditionally approve the Solicitation Procedures, including the solicitation, balloting, tabulation, and related activities undertaken in connection with the Plan. As set forth below, the Debtors submit that the Solicitation Procedures comply with the various applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and should be conditionally approved.

### A. Non-Solicitation of Classes Presumed to Accept or Deemed to Reject the Plan.

21. Pursuant to section 1126(f) of the Bankruptcy Code, each holder of a claim or interest in an unimpaired class is "conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class. . . is not required." 11 U.S.C. § 1126(f). Section 1126(g) of the Bankruptcy Code provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests." 11 U.S.C. § 1126(g).

22. Under the terms of the Plan, the following Classes of Claims against, or Interests in, the Debtors are presumed to accept or deemed to reject the Plan (and the Holders of Claims and Interests therein, collectively, the "Non-Voting Holders"): Class 1 (Other Secured Claims),

Class 2 (Other Priority Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Claims), Class 8 (Intercompany Interests), Class 9 (Holdings Interests), and Class 10 (Section 510(b) Claims). As a result, the Debtors did not solicit votes from the Non-Voting Holders.

23. The Debtors are requesting a waiver of the requirement that they mail copies of the Plan and Disclosure Statement to Non-Voting Holders. *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders). The Debtors submit that Bankruptcy Rule 3017(d) does not apply here because the Debtors solicited acceptances and rejections of the Plan on a prepetition basis, and, thus, there is no disclosure statement that was "approved by the court" to transmit. Alternatively, the Court should order that the Debtors are not required to provide copies of the Plan and Disclosure Statement to Non-Voting Holders as it would be an expensive and unnecessary administrative burden on the Debtors to transmit such materials to the Non-Voting Holders.

24. In lieu of furnishing each of the Non-Voting Holders with a copy of the Plan and Disclosure Statement, the Debtors propose to send to such Non-Voting Holders (other than Holders of Claims and Interests in Classes 7 (Intercompany Claims) and 8 (Intercompany Interests)) via email (where available) or mail the Combined Notice, attached as **Exhibit 1** to the Order, which sets forth, among other things, a summary of the Plan and the treatment of such Non-Voting Holders' Claims or Interests, as well as how a copy of the Plan and the Disclosure Statement may be obtained. The Debtors have made the Combined Notice, the Disclosure Statement and the Plan available at no cost on the Claims and Noticing Agent's website at https://restructuring.ra.kroll.com/GettyImages. Additionally, for the Non-Voting Holders (other than Holders of Claims and Interests in Classes 7 (Intercompany Claims) and 8 (Intercompany

Interests)), the Debtors propose to send via email (where available) or mail the applicable Notice of Non-Voting Status, attached as **Exhibit 2A**, **Exhibit 2B**, **Exhibit 2C** or **Exhibit 2D** to the Order, which will explain the effects of the releases contained in the Plan and, other than in the case of the Class 6 (General Unsecured Claims) Notice of Non-Voting Status, instruct the Non-Voting Holders on how to opt in to such releases should they choose to do so, and include an Opt-In Form.

25. The Solicitation Procedures undertaken by the Debtors and described herein with respect to the Non-Voting Holders comply with the Bankruptcy Code and Bankruptcy Rules and should be conditionally approved. Accordingly, the Debtors respectfully request that the Court conditionally approve the Solicitation Procedures with respect to these Classes and parties, pending final approval through the Confirmation Order.

**B. Approval of the Notices of Non-Voting Status and Opt-In Forms.**

26. The Debtors request approval of the notices applicable to Holders of Claims that are Unimpaired and conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and to Holders of Claims and Interests that are Impaired and conclusively deemed to reject the Plan under section 1126(g) of the Bankruptcy Code, substantially in the forms attached to the Order as **Exhibit 2A**, **Exhibit 2B**, **Exhibit 2C** and **Exhibit 2D**, in the case of **Exhibit 2A**, **Exhibit 2C** and **Exhibit 2D**, with the applicable Opt-In Form annexed.

27. Each such notice informs recipients of their status as Holders or potential Holders of Claims or Interests in the Classes that are not entitled to vote on the Plan because they are either Unimpaired and conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired and conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, namely Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 6 (General Unsecured Claims), Class 9 (Holdings Interests), and Class 10

(Section 510(b) Claims) (collectively, the "Non-Voting Classes"); *provided* that the Non-Voting Classes shall not include Class 7 (Intercompany Claims) or Class 8 (Intercompany Interests), which are excluded because Holders of Claims and Interests in such Classes will not receive a Notice of Non-Voting Status or other notice of the Plan. Each such notice also provides the full text of the release, exculpation, and injunction provisions of the Plan, and each such notice (other than the Class 6 (General Unsecured Claims) Notice of Non-Voting Status) includes a prominently featured and clearly labeled box by which a Holder may elect to opt in to the Third-Party Release. The Opt-In Forms may be submitted in hard copy or electronically through the applicable online portal maintained by the Claims and Noticing Agent.

28. The Opt-In Forms must be actually received by the Claims and Noticing Agent no later than November 30, 2026 at 5:00 p.m. (prevailing Eastern Time) (the "Opt-In Deadline"), which affords Holders in the Non-Voting Classes adequate time to consider the Plan and the Disclosure Statement and, if applicable, to elect whether to opt in to the releases. The Opt-In Deadline may be extended by the Debtors, subject to the consent rights set forth in the Restructuring Support Agreement.

**C. Solicitation of Impaired Classes Entitled to Vote to Accept or Reject the Plan.**

29. Holders of Revolving Loan Claims in Class 3 (Revolving Loan Claims), Holders of Secured Funded Debt Claims in Class 4 (Secured Funded Debt Claims), and Holders of Unsecured Notes Claims in Class 5 (Unsecured Notes Claims) (collectively, the "Voting Classes") are entitled to vote to accept or reject the Plan.

30. On October 20, 2026, prior to the filing of these Chapter 11 Cases, the Debtors commenced soliciting votes on the Plan from Holders of Claims in the Voting Classes in accordance with the Solicitation Procedures described herein, the Bankruptcy Code, Bankruptcy Rules, and the Local Rules by causing copies of the solicitation package (the "Solicitation

Package") to be distributed to Holders of Claims in the Voting Classes by mail or email. The Solicitation Package included copies of the Disclosure Statement and the exhibits thereto, including the Plan, and the applicable Ballot for each Holder of a Claim in a Voting Class. The Solicitation Package also included a solicitation cover letter (the "Solicitation Cover Letter"), substantially in the form attached to the Order as **Exhibit 4**, describing the Plan, the Restructuring Support Agreement, and the Debtors' recommendation that Holders vote to accept the Plan. As a cost-saving measure, in instances where the Debtors served the Solicitation Package via hard copy, the Plan and Disclosure Statement were included on a flash drive and could be accessed electronically by Holders in the Voting Classes.

31. The Solicitation Cover Letter (a) describes the contents of the Solicitation Package, (b) summarizes the Restructuring Support Agreement and the Restructuring Transactions contemplated by the Plan, (c) explains the Debtors' recommendation that Holders in the Voting Classes vote to accept the Plan, and (d) directs Holders to the Claims and Noticing Agent for questions and additional copies of the solicitation materials. The Solicitation Cover Letter thus provides Holders in the Voting Classes with a concise overview of the Plan and the voting process, and the Debtors respectfully request that the Court approve the form and manner of the Solicitation Cover Letter, substantially in the form attached to the Order as **Exhibit 4**.

32. The Solicitation Package advised recipients, among other things, of the November 30, 2026 at 5:00 p.m. (prevailing Eastern Time) deadline to vote on the Plan (the "Voting Deadline"). The Solicitation Package further advised recipients that Ballots must be properly executed, completed, and returned to the Claims and Noticing Agent in the manner specified on the Ballots so as to be actually received prior to the Voting Deadline. Each Ballot also contained detailed instructions on how to complete it, including how to cast a vote to accept or reject the

Plan, and specified that Ballots must be returned either online through the Claims and Noticing Agent's E-Ballot Portal (as defined below), via first-class mail using the enclosed pre-addressed, postage prepaid return envelope or via personal delivery/overnight carrier to the address specified on the Ballot. Consistent with the Disclosure Statement, the Voting Deadline may be extended by the Debtors, subject to the consent rights set forth in the Restructuring Support Agreement.

33. As previewed above, in addition to accepting hard copy Ballots and Opt-In Forms via first-class mail, overnight courier, and hand delivery, the Debtors request authorization to accept Ballots and Opt-In Forms via electronic, online transmissions, solely through a customized online balloting portal maintained by the Claims and Noticing Agent (the "E-Ballot Portal"). Parties entitled to vote or opt in may cast an electronic Ballot or Opt-In Form and electronically sign and submit a Ballot or Opt-In Form instantly by utilizing the E-Ballot Portal (which allows a Holder to submit an electronic signature). Instructions for electronic, online transmission of Ballots and Opt-In Forms through the E-Ballot Portal are set forth on the forms of the Ballot and Opt-In Form. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot or Opt-In Form submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective. The E-Ballot Portal shall be the sole method by which a creditor may submit a Ballot or Opt-In Form electronically, provided that Master Ballots (as defined below) and "pre-validated" Beneficial Ballots (as defined below) may be submitted via email to GettyImagesBallots@ra.kroll.com. For the avoidance of doubt, Holders of Holdings Interests who hold their equity positions through a bank, broker, mailing agent, or other financial institution (a "Nominee") in "street name" at The Depository Trust Company ("DTC") cannot submit their Opt-In Form through the E-Ballot Portal, and must click on the Public Equity Opt-In Portal link on the left-hand navigation panel of the

Claims and Noticing Agent's website to submit an electronic copy of their Opt-In Form. Similarly, Holders of Warrant Claims whose Warrants are held through a Nominee must click on the Warrant Opt-In Portal link on the left-hand navigation panel of the Claims and Noticing Agent's website to submit an electronic copy of their Opt-In Form.

**D. Form of Ballots.**

34. Bankruptcy Rule 3017(d) requires that the Debtors use a form of ballot substantially conforming to Official Form No. 314. Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." The Ballots, copies of which are annexed as **Exhibit 5**, **Exhibit 6A**, **Exhibit 6B**, **Exhibit 6C**, **Exhibit 7A**, and **Exhibit 7B** to the Order, are based on Official Form No. 314, but modified to address the particular aspects of these Chapter 11 Cases and the Plan. The Ballots are tailored to each of the Voting Classes. Each Ballot also includes a clearly labeled box by which the applicable Holder may elect to opt in to the Third-Party Release. As set forth herein, all Holders of Claims entitled to vote on the Plan were transmitted Ballots. The Debtors respectfully submit that the forms of Ballots comply with the Bankruptcy Rules and, therefore, should be conditionally approved pending final approval through the Confirmation Order.

**E. Voting Tabulation.**

35. The Debtors' procedures and standard assumptions for tabulating Ballots, Master Ballots, and Beneficial Ballots include:

| | |
|---|---|
| **Votes Not Counted** | • any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim or Interest; |

- any Ballot that is not actually received by the Solicitation Agent by the Voting Deadline (unless the Debtors determined otherwise or as permitted by the Court);
- any Ballot that does not contain a signature (*provided* that signatures contained in electronic Ballots submitted via the Debtors' E-Ballot Portal and Master Ballots and "pre-validated" Beneficial Ballots submitted by electronic mail will be deemed to be immediately legally effective);
- any Ballot that partially rejects and partially accepts the Plan;
- any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan;
- any Ballot superseded by a later, timely submitted valid Ballot;
- any improperly submitted Ballot, or any form of ballot other than the official form of Ballot sent by the Solicitation Agent (unless the Debtors determined otherwise or as permitted by the Court);
- any Ballot that was cast by a person or entity that does not hold a Claim in a Class that is entitled to vote on the Plan; and
- any Ballot submitted by fax or electronic mail unless approved by the Debtors in writing or otherwise ordered by the Court. For the avoidance of doubt, Master Ballots and "pre-validated" Beneficial Ballots may be submitted via email to GettyImagesBallots@ra.kroll.com.

**No Vote Splitting**

- Holders were required to vote all of their Claims or Interests within a particular Class either to accept or reject the Plan and were not permitted to split any votes. While the Plan is a separate plan with respect to each Debtor, each vote to accept or reject the Plan will be counted as a vote to accept or reject the Plan with respect to each Debtor against which such Holder holds a Claim in such Class.

**Aggregation of Claims for Numerosity**

- For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Creditor in a particular Class may be aggregated and treated as if such Creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; provided, however, that if separate affiliated entities hold Claims in a particular Class, such Claims will not be aggregated and will not be treated as if such Creditor held

one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

**Master Ballots**

- Votes cast by Holders of Claims through a broker, dealer, commercial bank, trust company, savings and loan, financial institution, mailing agent or other such party in whose name a party's beneficial ownership in the Secured Funded Debt Claims or the Unsecured Notes Claims was registered or held on behalf of, in each case, as of the Voting Record Date (a "Nominee," and such ballots used by the Nominee, the "Master Ballot") will be applied to applicable positions held by such Nominees as of the Voting Record Date, as evidenced by the record and depository listings. If conflicting votes or "over-votes" are submitted by a Nominee, the Solicitation Agent will use reasonable efforts to reconcile discrepancies with the applicable Nominee.

- If "over-votes" are submitted by a Nominee that are not reconciled prior to the preparation of the certification of vote results, the votes to accept and to reject the Plan will be applied in the same proportion as the votes to accept and to reject the Plan submitted by such Nominee, but only to the extent of the Nominee's Voting Record Date position in the applicable securities based on the securities position report provided by DTC.

- Each beneficial holder of such Claims (each, a "Beneficial Holder") that received a ballot (each, a "Beneficial Ballot") will be deemed to have voted only the principal amount of its public securities; any principal amounts thus voted may be thereafter adjusted by the Solicitation Agent on a proportionate basis, with a view to the amount of securities actually voted, so as to reflect the corresponding claim amount, including any accrued but unpaid prepetition interest with respect to the securities voted.

- If a Nominee delivers multiple Master Ballots to the Solicitation Agent on account of the same Claims, the last properly executed, valid, timely received Master Ballot will supersede and revoke any earlier received Master Ballot.

**Retention of Ballots**

- The Solicitation Agent is required to retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon the Solicitation Agent is authorized to destroy and/or otherwise dispose of all paper copies of Ballots, printed solicitation materials

including unused copies of the Solicitation Package and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the clerk of the Court in writing within such one (1) year period.

- Nominees were directed, and, pursuant to Master Ballot Certifications, have agreed, to maintain the Beneficial Ballots returned by their Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline and to provide copies of such Beneficial Ballots to the Court or the Debtors if so ordered.

**Establishing Claim Amounts**

- Claim amounts for voting purposes as to votes cast by Beneficial Holders of the Debtors' public securities were as evidenced in the records of the applicable indenture trustee and/or securities depository and applied to applicable positions held by the relevant Nominee as of the Voting Record Date, as evidenced by the record and depository listings of the applicable securities depository. With respect to Revolving Loan Claims and Secured Funded Debt Claims held outside of DTC, each Claim asserted in currency other than U.S. dollars will be automatically deemed converted to the equivalent U.S. dollar value using the conversion rate for the applicable currency as published in *The Wall Street Journal* (national edition) as of the closing of the market on the Voting Record Date.

- With respect to Revolving Loan Claims, the amount of such Claims for voting purposes only was established based on the principal amounts of the applicable Revolving Loan positions held by each Holder of Revolving Loan Claims, as of the Voting Record Date, as evidenced by the applicable books and records maintained by the administrative agent under the Credit Agreement, which were provided to the Debtors or the Solicitation Agent in electronic Microsoft Excel format no later than one business day following the Voting Record Date. With respect to Term Loan Claims in Class 4 (Secured Funded Debt Claims), the amount of such Claims for voting purposes only was established based on the principal amounts of the applicable term loan positions held by each Holder of Term Loan Claims, as of the Voting Record Date, as evidenced by the applicable books and records maintained by the administrative agent, which were provided to the Debtors or the Solicitation Agent in electronic Microsoft Excel format no later than one business day following the Voting Record Date.

> With respect to Unsecured Notes Claims, the amount of such Claims for voting purposes only was established based on the principal amount outstanding under the 9.75% Notes Indenture and the 14.00% Notes Indenture, as applicable, as of the Voting Record Date, as evidenced by the records of the applicable indenture trustee and securities depository.

36. The Debtors also reserve the right to reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, be improper or unlawful. The Debtors further reserve the right to allow for the cure of any defects or irregularities or conditions of delivery as to any Ballot. The interpretation of all balloting rules and procedures (including the Ballot and the respective instructions thereto) by the Claims and Noticing Agent and the Debtors, unless otherwise directed by the Court, is final and binding on all parties. Any defects or irregularities in connection with deliveries of Ballots must have been cured within such time as the Debtors (or the Court) determined. To assist in the solicitation process, the Debtors request that the Court grant the Claims and Noticing Agent the authority to contact parties who submit a defective Ballot to make a reasonable effort to cure such deficiencies, *provided* that neither the Debtors nor the Claims and Noticing Agent is required to contact such parties to provide notification of defects or irregularities with respect to completion or delivery of Ballots, nor will any of them incur any liability for failure to provide such notification. The Debtors also request that the Court give authorization to the Debtors and/or their Claims and Noticing Agent, as applicable, to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of defective Ballots, which determination will be final and binding. Unless otherwise directed by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities were cured. Ballots previously furnished, and as to which any irregularities were not theretofore cured, will be invalidated.

37. The Debtors believe that the procedures set forth above for tabulating votes for the Plan are consistent with section 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a). These tabulation procedures are also consistent with those previously used in cases in this district. See, e.g., *In re Wheel Pros, LLC*, No. 24-11939 (JTD) (Bankr. D. Del. Sept. 10, 2024) (approving prepackaged solicitation procedures); *In re Appgate, Inc.*, No. 24-10956 (CTG) (Bankr. D. Del. May 8, 2024) (same); *In re Lannett Co. Inc.*, No. 23-10559 (JKS) (Bankr. D. Del. May 4, 2023) (same); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022) (same); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (same).

38. The Debtors directed the Nominees to immediately distribute to their Beneficial Holder clients (or to make available through their customary methods) the Beneficial Ballot and Solicitation Package and to compile the votes and relevant information of each Beneficial Holder returning a properly executed vote (whether on a Beneficial Ballot or otherwise according to the Nominee's customary methods for collecting votes, such as via e-mail, telephone, file-sharing site, voter information form, or other accepted methods in lieu of forwarding a paper copy Beneficial Ballot) on a Master Ballot and to submit such Master Ballot to the Claims and Noticing Agent by the Voting Deadline. As applicable, as an alternative to submitting a Master Ballot, Nominees are authorized to "pre-validate" the Beneficial Ballot and forward it with the Solicitation Package to the Beneficial Holder with instructions to submit the pre-validated Beneficial Ballot directly to the Claims and Noticing Agent. Nominees will be directed to maintain a list of the Beneficial Holders to whom "pre-validated" Beneficial Ballots were delivered for inspection for at least one year from the Effective Date. Beneficial Holders will be instructed to follow the voting instructions of their Nominee and to abide by the submission deadlines set by their Nominee so as to allot sufficient

time for their Nominee to process votes and/or opt-ins received and forward such votes and/or opt-ins to the Claims and Noticing Agent by the Voting Deadline.

39. Bankruptcy Rule 3017(e) provides that the court must determine the adequacy of the procedures for transmitting the documents and information required by Bankruptcy Rule 3017(d) to beneficial holders of stock, bonds, debentures, notes, and other securities, and issue any appropriate orders. Fed. R. Bankr. P. 3017(e). As set forth herein, the procedures the Debtors employed to transmit the Solicitation Packages to Beneficial Holders through their Nominees, including the authorization for Nominees to pre-validate Beneficial Ballots or to compile votes on Master Ballots and to use their customary means of transmitting materials, are adequate and satisfy Bankruptcy Rule 3017(e).

40. With respect to those Ballots applicable to Holders of the 11.25% Secured Notes in Class 4 (Secured Funded Debt Claims) and the Unsecured Notes in Class 5 (Unsecured Notes Claims), and the Opt-In Forms applicable to Holders of Holdings Interests in Class 9 (Holdings Interests) and to Holders or potential Holders of Section 510(b) Claims in Class 10 (Section 510(b) Claims), the Debtors request that the Court authorize the Nominees to use their customary means of transmitting materials, including via e-mail, file-sharing platform, voter information form, or other accepted methods, to transmit the contents of the Solicitation Packages (or a summary thereof) or Opt-In Form to their Beneficial Holder clients in lieu of hard copies. Moreover, if it is the Nominee's customary internal practice to provide to Beneficial Holders an electronic link to the solicitation materials (including, but not limited to, the Disclosure Statement and the Plan) or Opt-In Form, the Nominee is authorized to follow such customary practice in lieu of forwarding flash drives or paper copies of the applicable materials to their Beneficial Holder clients. In such

instances, the Nominee is authorized to return any excess or unused flash drives or paper copies of the Solicitation Package or Opt-In Form to the Claims and Noticing Agent.

41. For purposes of serving the solicitation materials, the Debtors seek authorization to rely on the address information (for voting and non-voting parties alike) maintained by the Debtors and provided by the Debtors to the Claims and Noticing Agent as of the Voting Record Date. To that end, the Debtors seek the waiver of any obligation for the Debtors or the Claims and Noticing Agent to conduct any additional research for updated addresses based on undeliverable Solicitation Packages (including undeliverable Ballots, Opt-In Forms, and Combined Notices) and will not be required to resend Solicitation Packages or other materials, including Opt-In Forms and Combined Notices, that are returned as undeliverable.

**F. Voting Record Date and Voting Deadline.**

42. Bankruptcy Rule 3018(b) provides that, in a prepetition solicitation, the holders of record of the applicable Claims or Interests entitled to receive Ballots and related solicitation materials are determined "on the date specified in the solicitation." Fed. R. Bankr. P. 3018(b). Bankruptcy Rule 3018(b) further provides that prepetition acceptances or rejections of a plan are valid only if the plan was "transmitted to substantially all creditors and equity security holders of the same class" and the time for voting was not "unreasonably short." Bankruptcy Rule 3017(d) further provides that, for purposes of soliciting votes in connection with confirmation of a plan, creditors and equity security holders include holders of stock, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing. Fed. R. Bankr. P. 3017(d).

43. The Solicitation Packages were distributed on October 20, 2026 to all Holders of Claims in the Voting Classes as of October 9, 2026 (the "Voting Record Date"). The Solicitation Cover Letter, the Disclosure Statement, the Combined Notice, and the Ballots each clearly

identified October 9, 2026 as the Voting Record Date. The Ballots require each Holder completing a Ballot to certify the amount of its Claim as of the Voting Record Date. Because Bankruptcy Rule 3018(a) otherwise looks to the date of entry of the order approving the disclosure statement, the Debtors request that the Court approve October 9, 2026, as the Voting Record Date for cause. Using the record date specified in the prepetition solicitation materials is consistent with Bankruptcy Rule 3018(b) and the 1983 Advisory Committee Note to Bankruptcy Rule 3018, which contemplates that, in a prepackaged case, the appropriate record date is the date used in the prepetition solicitation. Further, as clearly set forth in the Solicitation Packages, the Voting Deadline was set for November 30, 2026 at 5:00 p.m. (prevailing Eastern Time), a period which provides for forty-one (41) days to consider and return votes with respect to the Plan.

44. The Debtors respectfully submit that Holders of Claims in the Voting Classes have adequate time to consider the Plan and Disclosure Statement and submit a Ballot before the Voting Deadline. The forty-one (41) day solicitation period is not "unreasonably short" within the meaning of Bankruptcy Rule 3018(b), is consistent with the solicitation period in other prepackaged chapter 11 cases, and is in compliance with the time periods required by the Bankruptcy Rules. In addition, although Local Rule 3017-2 does not apply to prepackaged plans, the Voting Deadline falls fourteen (14) days before the Combined Hearing, exceeding the ten (10) day benchmark set forth in Local Rule 3017-2(b)(v)(C), and the Debtors will file the voting report on or about December 7, 2026, seven (7) calendar days before the Combined Hearing, as provided in the Confirmation Schedule. Similar postpetition voting deadlines following a prepetition solicitation have been approved in other chapter 11 cases in this district. See, e.g., *In re Appgate, Inc.*, No. 24-10956 (CTG) (Bankr. D. Del. May 8, 2024); *In re Lannett Co. Inc.*, No. 23-10559 (JKS) (Bankr. D. Del. May 4, 2023); *In re APC Auto. Techs. Intermediate Holdings, LLC*, No. 20-

11466 (CSS) (Bankr. D. Del. June 4, 2020); *In re Longview Power, LLC*, No. 20-10951 (BLS) (Bankr. D. Del. Apr. 5, 2020); *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Dec. 19, 2019). Further, the Restructuring Transactions proposed in the Plan are the product of extensive arm's-length negotiations among the Debtors and the Consenting Stakeholders, and, prior to the commencement of solicitation, the Plan and Disclosure Statement were subject to review and comment by representatives of the Consenting Stakeholders. For these reasons, the Debtors believe that the solicitation period is sufficient and appropriate for Holders of Claims entitled to vote on the Plan to make an informed decision to vote to accept or reject the Plan.

### G. The Debtors' Prepetition Solicitation Was Exempt from Registration and Disclosure Requirements Otherwise Applicable Under Nonbankruptcy Law.

45. Section 1125(g) of the Bankruptcy Code provides that "an acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law." 11 U.S.C. § 1125(g). Further, section 1126(b) of the Bankruptcy Code provides that:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if—(1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

11 U.S.C. § 1126(b)

46. Prepetition solicitations must therefore either comply with generally applicable federal and state securities laws and regulations (including the registration and disclosure requirements thereof) or, if such laws and regulations do not apply, the solicited Holders must

receive "adequate information" under section 1125 of the Bankruptcy Code. The Debtors respectfully submit that, to the extent their prepetition solicitation involved an offer of securities, such solicitation is exempt from the registration requirements of the Securities Act of 1933 (the "Securities Act"), under one or more of the exemptions from registration provided thereunder.

47. In general, the Securities Act requires an issuer to file a registration statement with the U.S. Securities and Exchange Commission prior to commencing a public offering. 15 U.S.C. § 77e(c). The Debtors, however, were not required to file a registration statement under one or more of the exemptions to the registration requirements of the Securities Act, state "Blue Sky" laws, and similar statutes, rules, and regulations. In particular, the Debtors relied on section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or Regulation S under the Securities Act for offers made outside the United States to investors that are not "U.S. persons" (as defined in Rule 902(k) of Regulation S under the Securities Act) which create an exemption from the Securities Act's registration requirements and otherwise applicable state laws for transactions not involving a "public offering." 15 U.S.C. § 77r(b)(4)(F) (preempting state law in offerings conducted pursuant to regulations under section 4(a)(2) of the Securities Act). Consistent with the legend on the cover of the Disclosure Statement, the solicitation of votes from Holders of Claims in Class 3 (Revolving Loan Claims) and Class 4 (Secured Funded Debt Claims) was made only to Holders that are (a) institutional "accredited investors" within the meaning of Rule 501(a)(1), (2), (3), (7), (8), (9), (12), or (13) under the Securities Act, in each case having (or being a direct or indirect wholly-owned subsidiary of an entity having) total assets in excess of $10 million, (b) "qualified institutional buyers" (as defined in Rule 144A under the Securities Act), or (c) persons other than "U.S. persons" (as defined in Rule 902(k) of Regulation S under the Securities Act). Based upon the requirements of the debt agreements governing the Claims in

Class 3 (Revolving Loan Claims) and Class 4 (Secured Funded Debt Claims), the Debtors believe that each Holder of Claims in Class 3 (Revolving Loan Claims) and Class 4 (Secured Funded Debt Claims) that received the Solicitation Package prior to the Petition Date falls within one of the foregoing categories and that there was no general solicitation in connection with the offer to Holders of Claims in Class 3 and Class 4 of the New Notes, the New Term Loans, and, with respect to the Plan Sponsors, the Equitization New Interests prior to the Petition Date, including in connection with the prepetition solicitation process. Accordingly, the Debtors were not required to file a registration statement regarding the prepetition offer of such securities of the Reorganized Debtors to Holders of Claims in Class 3 (Revolving Loan Claims) and Class 4 (Secured Funded Debt Claims), and the requirements of section 1126(b)(1) of the Bankruptcy Code are satisfied by the Debtors' prepetition solicitation process.

48. The consideration distributed to each of the Voting Classes under the Plan differs, and the registration analysis therefore differs by Class. Each Holder of a Revolving Loan Claim in Class 3 (Revolving Loan Claims) receives obligations under the New RCF in a principal amount equal to the outstanding principal amount of its Revolving Loans by means of a dollar-for-dollar, cashless conversion, together with payment in full in Cash on account of accrued and unpaid interest, fees, and other amounts due on account of its Allowed Revolving Loan Claim. Each Holder of a Secured Funded Debt Claim in Class 4 (Secured Funded Debt Claims) receives New Notes on account of its 11.25% Secured Notes Claims and USD Term Loan Claims (or, solely to the extent a Holder of USD Term Loan Claims does not agree to receive New Notes, New USD Term Loans), New EUR Term Loans on account of its EUR Term Loan Claims if it is not a Plan Sponsor and its EUR Term Loan Claims are not subject to the Equitization Commitment, and, if it is a Plan Sponsor and its EUR Term Loan Claims are subject to the Equitization Commitment,

the Equitization New Interests in accordance with the Equitization Commitment and the ECL, in each case together with payment in full in Cash on account of accrued and unpaid interest, fees, costs, and other amounts due and owing under the Credit Agreement and the 11.25% Secured Notes Indenture, as applicable. Each Holder of an Unsecured Notes Claim in Class 5 (Unsecured Notes Claims) receives its *Pro Rata* share of the Unsecured Notes Recovery, which is payable in full in Cash and does not involve an offer of securities. Accordingly, the securities offered to Holders of Claims in Class 3 and Class 4 on account of their Claims prior to the Petition Date are the New Notes, the New Term Loans, and, with respect to Plan Sponsors holding EUR Term Loan Claims in Class 4 (Secured Funded Debt Claims), the Equitization New Interests, each of which was offered in reliance on section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or Regulation S under the Securities Act.

49. Moreover, debtors in this district have utilized section 4(a)(2) of the Securities Act to exempt their prepetition solicitation from the registration and disclosure requirements otherwise applicable under nonbankruptcy law. *See, e.g., In re Appgate, Inc.*, No. 24-10956 (CTG) (Bankr. D. Del. May 8, 2024) (approving solicitation procedures that included section 4(a)(2) exemption); *In re Lannett Co. Inc.*, No. 23-10559 (JKS) (Bankr. D. Del. May 4, 2023) (same); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022) (same); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (same); *In re APC Auto. Techs. Intermediate Holdings, LLC*, No. 20-11466 (CSS) (Bankr. D. Del. June 4, 2020) (same).

50. The foregoing exemptions address the Debtors' prepetition solicitation. With respect to the offering, issuance, and distribution of securities under the Plan after the Petition Date, the Plan provides that the New Interests, and any other debt or equity securities contemplated by the Plan, are exempt from the registration requirements of section 5 of the Securities Act and

any other applicable federal, state, or local law requiring registration pursuant to section 1145 of the Bankruptcy Code, section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration. The Disclosure Statement contains a corresponding disclosure.

51. In addition, section 1125(e) of the Bankruptcy Code provides that "[a] person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities." 11 U.S.C. § 1125(e). Consistent with section 1125(e), Article VIII.E of the Plan provides that the Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, including the issuance of securities thereunder, and, therefore, are not, and on account of such solicitation, distributions, or issuance shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan. In addition, Article XII.L of the Plan provides that, upon entry of the Confirmation Order, the Debtors, the Consenting Stakeholders, the DIP Lenders, the New Equity Investors, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith

and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan. As set forth herein, the Debtors conducted the prepetition solicitation in good faith, in compliance with applicable nonbankruptcy law, and in accordance with sections 1125(g) and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018(b). Accordingly, the Debtors will request at the Combined Hearing that the Court find that the Debtors, the Consenting Stakeholders, the DIP Lenders, the New Equity Investors, and their respective representatives are entitled to the protections of section 1125(e) of the Bankruptcy Code.

52. Further, as discussed more fully above, the Debtors will seek a determination from this Court at the Combined Hearing that all solicited Holders of Claims in the Voting Classes received "adequate information" as defined by section 1125(a)(1) of the Bankruptcy Code, in accordance with section 1126(b)(2) of the Bankruptcy Code.

53. Accordingly, the Debtors respectfully submit that the Solicitation Procedures satisfy sections 1125(g) and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018(b) because the prepetition solicitation complied with applicable non-bankruptcy law and all Holders of Claims in the Voting Classes received "adequate information" as that term is used in section 1125(a) of the Bankruptcy Code, that the Debtors are entitled to the protections of section 1125(e) of the Bankruptcy Code, and, accordingly, that the Solicitation Procedures should be conditionally approved, pending final approval through the Confirmation Order.

### H. Deadline and Procedures for Objections to the Disclosure Statement and Confirmation of the Plan.

54. Bankruptcy Rule 3017(a) authorizes the Court to fix a time for filing objections to the adequacy of a disclosure statement and Bankruptcy Rule 3020(b)(1) authorizes the Court to fix a time for filing objections to a plan of reorganization. Further, Bankruptcy Rule 2002(b) requires at least twenty-eight (28) days' notice be given by mail to all creditors of the time fixed

for filing objections to approval of a disclosure statement and confirmation of a plan of reorganization. Local Rule 3017-1(a) similarly requires at least twenty-eight (28) days' notice to be given to all creditors of the time fixed for filing objections to approval of a disclosure statement.

55. Bankruptcy Rule 2002(d) requires notice to equity security holders of the time to object to, and the hearing to consider, approval of a disclosure statement and confirmation of a plan. Fed. R. Bankr. P. 2002(d).

56. The Debtors request that the Court set November 30, 2026, at 5:00 p.m. (prevailing Eastern Time), as the Objection Deadline for filing objections to the adequacy of the Disclosure Statement and confirmation of the Plan (including, to the extent applicable, any objections to the Executory Contract Procedures, with Executory Contract Assumption Objections subject to the Executory Contract Assumption Objection Deadline as further discussed below). As set forth above, the Objection Deadline will be noticed well in excess of the twenty-eight (28) days required by Bankruptcy Rule 2002(b) and Local Rule 3017-1(a). The Objection Deadline also falls fourteen (14) days before the Combined Hearing, which satisfies the requirement of Local Rule 9006-1(c)(ii) that objections be due no later than seven (7) days before the hearing. The proposed Objection Deadline provides creditors and equity interest holders with sufficient notice of the deadline for filing objections to the Disclosure Statement and Plan, while still affording the Debtors and any parties in interest time to file a responsive brief and resolve consensually as many of those objections as possible.

57. The Debtors further request that the Court direct that any responses or objections to the adequacy of the Disclosure Statement or confirmation of the Plan must: (i) be in writing; (ii) conform to the applicable Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party, the amount and nature of such party's Claim or Interest, the basis for the objection

and the specific grounds thereof; and (iv) be filed with the Court, together with proof of service. In addition to being filed with the Court, any such responses or objections must be served on the following parties (collectively, the "Notice Parties") so as to be received by the Objection Deadline: (a) the Debtors, Getty Images Holdings, Inc., 605 5th Ave. S. Suite 400, Seattle, Washington 98104, Attn.: Kjelti Kellough (kjelti.kellough@gettyimages.com); (b) proposed counsel to the Debtors, (i) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attn.: Brian E. Schartz (brian.schartz@stblaw.com), Elisha D. Graff (egraff@stblaw.com), Rachael L. Foust (rachael.foust@stblaw.com), Dov Gottlieb (dov.gottlieb@stblaw.com), and Olivia F. Acuña (olivia.acuna@stblaw.com); and (ii) Cole Schotz P.C., 500 Delaware Avenue, Suite 600, Wilmington, Delaware 19801, Attn.: Seth Van Aalten (svanaalten@coleschotz.com), Justin R. Alberto (jalberto@coleschotz.com), Sarah A. Carnes (scarnes@coleschotz.com), and Jack M. Dougherty (jdougherty@coleschotz.com); (c) counsel to the Credit Agreement Agent, Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn.: Evan Fleck (efleck@milbank.com), Lauren Doyle (ldoyle@milbank.com), and Arden Ham (aham@milbank.com); (d) counsel to the Plan Sponsors, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn.: John Weber (jweber@paulweiss.com), Robert Britton (rbritton@paulweiss.com), and Chloe Nanfara (cnanfara@paulweiss.com), (ii) Jones Day, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114, Attn.: Carl E. Black (ceblack@jonesday.com), and Jones Day, 250 Vesey Street, New York, New York 10281, Attn.: Nicholas J. Morin (nmorin@jonesday.com) and Nick Buchta (nbuchta@jonesday.com), and (iii) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, Delaware 19801, Attn.: Zachary I. Shapiro (shapiro@rlf.com); (e) counsel to the Unsecured Noteholders Ad Hoc Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant

Park, New York, New York 10036, Attn.: Michael Stamer (mstamer@AkinGump.com), Brad Kahn (bkahn@akingump.com), and Stephen B. Kuhn (skuhn@akingump.com); (f) counsel to the Consenting Secured Lenders, (i) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166, Attn.: Matthew M. Roose (mroose@gibsondunn.com), Rob E. Fitzgerald (rfitzgerald@gibsondunn.com), Francis Petrie (fpetrie@gibsondunn.com), and Alex Xiao (axiao@gibsondunn.com); and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, Wilmington, Delaware 19801, Attn.: Laura Davis Jones (ljones@pszjlaw.com); (g) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Benjamin A. Hackman (Benjamin.A.Hackman@usdoj.gov); (h) the United States Securities and Exchange Commission, 100 Pearl Street, Suite 20-100, New York, New York 10004; and (i) any statutory committee appointed in these chapter 11 cases.

58. The Debtors further request that they and any other parties supporting confirmation of the Plan be authorized to file replies to any objections or responses to confirmation (including, to the extent applicable, any Executory Contract Assumption Objections and any objections to the Executory Contract Procedures) received by the Objection Deadline or the Executory Contract Assumption Objection Deadline, as applicable, by 4:00 p.m. (prevailing Eastern Time) on December 9, 2026, or three (3) business days prior to the Combined Hearing. This deadline is consistent with Local Rule 9006-1(d), which permits replies to be filed by 4:00 p.m. (prevailing Eastern Time) on the day before the deadline for filing the agenda, which, under Local Rule 9029-3(a)(i), is due at 12:00 p.m. (prevailing Eastern Time) two (2) business days before the hearing. To the extent necessary, the Debtors request that the Court modify Local Rule 9006-1(d), as permitted by Local Rule 1001-1(d), to permit the filing of the Confirmation Brief and any such replies concurrently with the agenda for the Combined Hearing.

### I. Approval of Form and Manner of Notice of the Commencement of these Chapter 11 Cases, the Combined Hearing and the Objection Deadline.

59. The Debtors propose to email (where available)[5] or otherwise mail via hard copy, no later than three (3) business days following the entry of the Order or as soon as reasonably practicable thereafter, to all known Holders of Claims against or Interests in the Debtors, other than Holders or potential Holders of Section 510(b) Claims (including Holders of Warrant Claims) and Holders of Claims and Interests in Classes 7 (Intercompany Claims) and 8 (Intercompany Interests), the Combined Notice, substantially in the form annexed as **Exhibit 1** to the Order, setting forth, among other things, (i) the notice of commencement of these Chapter 11 Cases; (ii) the date, time and place of the Combined Hearing; (iii) instructions for obtaining copies of the Disclosure Statement and Plan; and (iv) the Objection Deadline and procedures for filing objections to the adequacy of the Disclosure Statement and/or confirmation of the Plan. Additionally, for the Non-Voting Holders, the Combined Notice will include the Classes 1 (Other Secured Claims) and 2 (Other Priority Claims) Notice of Non-Voting Status and Opt-In Form, the Class 6 (General Unsecured Claims) Notice of Non-Voting Status, or the Class 9 (Holdings Interests) Notice of Non-Voting Status and Opt-In Form, as applicable. With respect to Holders or potential Holders of Section 510(b) Claims, if any (including Holders of Warrant Claims), the Debtors propose to email (or, where email addresses are unavailable, mail or cause to be mailed) the Combined Notice and the Class 10 (Section 510(b) Claims) Notice of Non-Voting Status and Opt-In Form no later than six (6) business days following entry of the Order or as soon as

---

[5] By separate motion, the Debtors have requested authority to serve parties in interest via email, subject to limited exceptions. *See Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Redact or Withhold Certain Confidential Information of Customers, (B) Redact Certain Personally Identifiable Information of Individuals and (C) Serve Parties in Interest by Email; (II) Approving the Form and Manner of Service of Notices; (III) Waiving the Requirement to File a List of Equity Security Holders; and (IV) Granting Related Relief*, filed contemporaneously herewith.

reasonably practicable thereafter. Consistent with Article III.J of the Plan, the Class 10 (Section 510(b) Claims) Notice of Non-Voting Status will advise recipients that Confirmation will constitute a final determination of the classification, priority, and subordination of each Warrant Claim under section 510(b) of the Bankruptcy Code, and that any Holder disputing such classification, priority, or subordination must do so by filing a timely objection to confirmation of the Plan by the Objection Deadline.

60. The Debtors request that the Court establish November 23, 2026 at 11:59 p.m. (prevailing Eastern Time) as the deadline by which the Debtors shall file the initial Plan Supplement (the "Initial Plan Supplement Filing Deadline"). The Initial Plan Supplement Filing Deadline falls seven (7) days before the Voting Deadline and the Objection Deadline and therefore complies with Local Rule 3016-3, which requires a plan supplement to be filed at least seven (7) days before the earlier of the deadline to vote on, and the deadline to object to confirmation of, the plan. The Plan defines "Plan Supplement" to mean the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms thereof and in accordance with the Bankruptcy Code and Bankruptcy Rules). *See* Plan at Art. I.A. The Plan Supplement will include, as applicable, (a) the New Organizational Documents (if necessary); (b) to the extent known, the identity of the members of the New Board; (c) the New Preferred Interests Documents; (d) the Exit Facility Documents; (e) the Restructuring Transaction Steps; (f) the Schedule of Retained Causes of Action; (g) the Schedule of Rejected Executory Contracts and Unexpired Leases; and (h) any additional documents Filed with the Court prior to the Effective Date as exhibits, supplements, or amendments to the Plan Supplement. Each document included

in the Plan Supplement, and any alteration, amendment, modification, or supplement thereto, shall be subject to the consent rights set forth in the Restructuring Support Agreement and the Plan.

61. To ensure that all Holders of Claims and Interests receive notice of the Debtors' filing of the Plan Supplement, the Debtors will file and serve on the parties who receive the Combined Notice a notice of filing of the Plan Supplement, which will advise parties in interest of the filing of the Plan Supplement and how to obtain copies from the Claims and Noticing Agent's website at https://restructuring.ra.kroll.com/GettyImages.

62. Bankruptcy Rule 2002(f)(1) provides that notice of "the order for relief" shall be sent by mail to all creditors. Bankruptcy Rule 2002(d) similarly provides that, unless otherwise ordered by the court, notice of the "order for relief" shall be given to all of the Debtors' equity security holders.

63. In addition, Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." The Debtors request that the Court authorize them, in their sole discretion, to publish the Publication Notice of the Combined Hearing, attached as **Exhibit 3** to the Order, as soon as reasonably practicable following the entry of the Order (and in any event no later than twenty-eight (28) days before the Objection Deadline) in the national edition of *The New York Times* or another world-wide and/or nationally circulated newspaper and/or regional newspapers and electronically on the Debtors' case information website (located at https://restructuring.ra.kroll.com/GettyImages/), and file the same on the Court's docket. The Debtors believe that the publication of certain of the contents of the Combined Notice in this manner would provide sufficient notice of the date, time and place of the Combined Hearing and the Objection Deadline (and related procedures) to persons who may not otherwise receive the

Combined Notice by mail. Accordingly, the Debtors respectfully request that this Court approve the form and manner of service of publication of the Publication Notice in the foregoing manner.

64. To provide another layer of notice to parties in interest in these Chapter 11 Cases, the Debtors will post to the Claims and Noticing Agent's website various chapter 11 documents, including the following: (i) the Plan; (ii) the Disclosure Statement; (iii) this Motion and any orders entered in connection with this Motion; and (iv) the Combined Notice.

65. The proposed service of the Combined Notice will provide sufficient notice to all parties in interest in these Chapter 11 Cases of the commencement of such cases, the date, time and place of the Combined Hearing and the procedures for objecting to the adequacy of the Disclosure Statement or the confirmation of the Plan. In addition, the Publication Notice will provide sufficient notice to persons who did not otherwise receive notice pursuant to the Combined Notice.

### J. Procedures in Respect of the Assumption of Executory Contracts or Unexpired Leases Pursuant to the Plan.

66. The Plan provides that, except as otherwise provided in the Plan, as of the Effective Date, the Debtors shall be deemed to have assumed each Executory Contract and Unexpired Lease to which they are a party in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Court, unless such Executory Contract or Unexpired Lease: (i) was previously assumed, assumed and assigned, or rejected by the Debtors; (ii) is identified on the Schedule of Rejected Executory Contracts and Unexpired Leases which may be amended by the Debtors or the Reorganized Debtors, as applicable (with the consent of each Plan Sponsor, not to be unreasonably withheld, conditioned, or delayed, and subject to the consent rights set forth in the Restructuring Support Agreement), at any time up to forty-five (45) days after the Effective

Date, subject to the applicable counterparty's right to object, to add or remove Executory Contracts and Unexpired Leases (such amendments to be filed and served on a further Plan Supplement from time to time), in which case such Executory Contracts and Unexpired Leases shall be deemed rejected on the Effective Date; (iii) is the subject of a motion to reject that is pending on the Effective Date; (iv) has an ordered or requested effective date of rejection that is after the Effective Date; or (v) expired or terminated pursuant to its own terms prior to the Effective Date. The assumption of Executory Contracts and Unexpired Leases provides that all Executory Contracts and Unexpired Leases are to be assumed as of the Effective Date, except as otherwise provided in the Plan. The Confirmation Order will constitute an order of the Court approving the above-described assumptions and assignments.

67. For the avoidance of doubt, through various first and second day pleadings, the Debtors are seeking relief to pay certain General Unsecured Claims against the Debtors in the ordinary course of business. Moreover, the Debtors are paying, and the Reorganized Debtors will continue to pay, all amounts owed under each Executory Contract and Unexpired Lease in the ordinary course of business. Notwithstanding anything to the contrary herein or in the Order, none of the Cure, objection, deemed consent, or schedule amendment procedures set forth herein or in Article V of the Plan shall apply to the Trademark Option Agreement, which shall be assumed on an "as is" basis and shall be governed exclusively by Article V.K of the Plan. The Executory Contract Procedures are as follows:

(a) The Combined Notice will notify all counterparties to Executory Contracts and Unexpired Leases (i) that such Executory Contracts and Unexpired Leases will be assumed under the Plan (other than those identified on the Schedule of Rejected Executory Contracts and Unexpired Leases or otherwise excluded under the Plan), (ii) that the Debtors are paying all amounts owed thereunder in full and in the ordinary course of business and that any Cure will be paid in accordance with Article V.C of the Plan, and

(iii) of the Executory Contract Assumption Objection Deadline (as defined above).

(b) If a counterparty to any Executory Contract or Unexpired Lease objects to the assumption of such Executory Contract or Unexpired Lease under the Plan, including on the basis of (i) any Cure, (ii) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) or (iii) an alleged non-monetary default that is required to be cured under section 365(b) of the Bankruptcy Code (each, an "Executory Contract Assumption Objection"), it may file an Executory Contract Assumption Objection against the Debtors or Reorganized Debtors, as applicable, subject to all defenses the Debtors or Reorganized Debtors may have with respect to such Executory Contract Assumption Objection. Consistent with Article V.C of the Plan, no counterparty shall be required to file or otherwise submit a request for payment of Cure, any undisputed portion of Cure shall be paid in the ordinary course of business in accordance with the terms of the applicable Executory Contract or Unexpired Lease, and, if there is a timely filed Executory Contract Assumption Objection regarding any Cure, payment of the disputed portion of such Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute.

(c) The Debtors or the Reorganized Debtors, as applicable (in each case, subject to the consent rights set forth in the Restructuring Support Agreement and the Plan), may settle any Executory Contract Assumption Objections without any further notice to or action, order, or approval of the Court.

(d) Nothing in these Executory Contract Procedures shall modify, impair, or otherwise affect the obligations of the Debtors or Reorganized Debtors, or the rights of any counterparty, under the terms of any assumed Executory Contract or Unexpired Lease, all of which shall continue to be performed and paid in the ordinary course of business in accordance with such terms.

(e) Any Executory Contract Assumption Objection must be filed with the Court on or before the Executory Contract Assumption Objection Deadline of **5:00 p.m. (prevailing Eastern Time) on November 30, 2026**, or such other deadline as may be established by the Court.

(f) The Debtors also request that the Court direct that any Executory Contract Assumption Objections:

i. be in writing;

ii. conform to the applicable Bankruptcy Rules and the Local Rules;

iii. set forth the name of the objecting party, the basis for the objection and the specific grounds therefor;

iv. be filed with the Court, together with a proof of service, on or before the Executory Contract Assumption Objection Deadline;

v. be served on the Notice Parties; and

vi. state with specificity any disputed Cure Amount, adequate-assurance concern, or non-monetary default asserted and the facts supporting such Executory Contract Assumption Objection.

(g) The Debtors (with the consent of each Plan Sponsor, not to be unreasonably withheld, conditioned, or delayed) or Reorganized Debtors, as applicable, reserve the right at any time up to forty-five (45) days after the Effective Date to move to reject any Executory Contract or Unexpired Lease based upon the existence of any unresolved dispute regarding the assumption of such Executory Contract or Unexpired Lease (including any unresolved Executory Contract Assumption Objection) or these Executory Contract Procedures, or upon a resolution of such dispute that is unfavorable to the Debtors or Reorganized Debtors.

(h) Finally, the Debtors request that the Court authorize the Debtors and any other party supporting confirmation of the Plan to file replies to any timely-filed objections or responses by **4:00 p.m. (prevailing Eastern Time) on December 9, 2026**, or three (3) business days prior to the Combined Hearing.

68. Any counterparty to an Executory Contract or Unexpired Lease (other than the Trademark Option Agreement) that did not timely object to the proposed assumption of such Executory Contract or Unexpired Lease by the Executory Contract Assumption Objection Deadline will be deemed to have consented to such assumption and to the payment of any Cure in accordance with Article V.C of the Plan. Because all amounts owed under assumed Executory Contracts and Unexpired Leases are being paid in the ordinary course, any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Court, without prejudice to the counterparty's right to payment in the ordinary course in accordance with the terms of such assumed Executory Contract or Unexpired Lease.

69. The Debtors respectfully submit that the Executory Contract Procedures are appropriate under the circumstances. Pursuant to the Executory Contract Procedures, the Debtors' Claims and Noticing Agent will serve the Combined Notice on all known counterparties to Executory Contracts and Unexpired Leases within three (3) business days following the entry of the Order (or as soon as reasonably practicable thereafter). The Combined Notice will alert such counterparties that all Executory Contracts and Unexpired Leases with the Debtors will be assumed under the Plan (other than those excluded under the Plan), that the Debtors are paying all amounts owed thereunder in full and in the ordinary course of business, and that any Cure will be paid in the ordinary course of business in accordance with Article V.C of the Plan. Consistent with Article V.C of the Plan, the Executory Contract Assumption Objection Deadline coincides with the Objection Deadline, and service of the Combined Notice on or about October 27, 2026 will provide counterparties with thirty-four (34) days' notice of that deadline. This process is designed to facilitate a prompt and efficient completion of the restructuring while also affording counterparties adequate time to voice any concerns regarding the assumption of their Executory Contracts and Unexpired Leases.

## IV. Extension and Conditional Waiver of the Creditors' Meeting and the Filing of SOFAs and Schedules and Rule 2015.3 Reports.

70. The Debtors also submit that the circumstances of these Chapter 11 Cases merit an extension, and, ultimately, a waiver, of the requirements that (i) the U.S. Trustee convene the Creditors' Meeting; (ii) the Debtors file the SOFAs and Schedules; and (iii) the Debtors file Rule 2015.3 Reports. This relief is appropriate under the circumstances because the Debtors began soliciting acceptance of the Plan prepetition and anticipate the near-term confirmation of the Plan and subsequent emergence from chapter 11.

**A. Creditors' Meeting.**

71. While section 341 of the Bankruptcy Code requires the U.S. Trustee to convene and preside at a meeting of creditors, it also allows a court to excuse the requirement of a meeting of creditors or equity holders if a debtor has filed a plan on the petition date and commences solicitation of a plan prior to the commencement of a chapter 11 case. Specifically, section 341(e) of the Bankruptcy Code provides that:

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

11 U.S.C. § 341(e).

72. Cause exists to grant an extension and conditional waiver of the Creditors' Meeting. The Debtors filed the Plan contemporaneously with this Motion on the Petition Date and, prior to the filing of these Chapter 11 Cases, the Debtors commenced solicitation of votes to accept or reject the Plan on October 20, 2026. As a result, the Debtors satisfy the threshold statutory requirement of section 341(e).

73. As discussed above, the Plan is the result of extensive negotiations with the Consenting Stakeholders, all of whom were represented by sophisticated counsel and advisors familiar with the chapter 11 process. As of the Petition Date, pursuant to the Restructuring Support Agreement, the Debtors have already received commitments of support from the Consenting Stakeholders. In addition, Holders of General Unsecured Claims will be paid in full or otherwise Unimpaired under the Plan and other contemplated "first day" relief sought by the Debtors. The Debtors therefore believe that no party in interest will be prejudiced by the lack of a Creditors' Meeting in these Chapter 11 Cases.

74. For these reasons, the Debtors submit that sufficient "cause" exists to grant an extension of the requirement of a Creditors' Meeting at the present time, with such extension to become a permanent waiver assuming the Plan is confirmed, and the Effective Date occurs, on or before the later of (i) the date that is seventy-five (75) days after the Petition Date and (ii) the deadline for the occurrence of the Effective Date under the Restructuring Support Agreement, as such deadline may be extended in accordance with its terms (the "Waiver Deadline").

**B. Schedules and Statements.**

75. In addition, for similar reasons as those discussed above, the Debtors also request that the time for filing their SOFAs and Schedules be extended until the Waiver Deadline and to be excused in the event the Plan is confirmed and the Effective Date occurs on or before the Waiver Deadline. As noted above, all Holders of Allowed General Unsecured Claims will be Unimpaired. Consequently, the Debtors do not plan to establish a general bar date in these Chapter 11 Cases. Accordingly, the SOFAs and Schedules would not serve their traditional purpose in these Chapter 11 Cases and would be of limited utility to most parties in interest.

76. As a matter of course, pursuant to Local Rule 1007-1(b), the Debtors are already entitled to an extension to twenty-eight (28) days from the Petition Date because the Debtors' Claims and Noticing Agent is maintaining the consolidated creditor matrix as of the Petition Date, and the Debtors have over 200 creditors. The Court has authority to grant a further extension for cause under Bankruptcy Rule 1007(c) and Local Rule 1007-1(b). Bankruptcy Rule 9006(b)(1) also provides the Court with authority to extend the time to file the SOFAs, Schedules, and Rule 2015.3 Reports for cause. Sufficient cause exists here because requiring the Debtors to file Schedules in the first twenty-eight (28) days of these Chapter 11 Cases would divert management's time and attention from ensuring a smooth transition into chapter 11. The SOFAs and Schedules, even if filed on the current deadline, would be of no real benefit to most parties in interest in these

Chapter 11 Cases at that point, but would require a substantial expenditure of time and resources by the Debtors to prepare and file.

77. Therefore, the Court should only require the Debtors to file SOFAs and Schedules if the Plan is not confirmed or the Effective Date does not occur on or before the Waiver Deadline. Courts in this district have frequently conditionally waived the requirements that the U.S. Trustee convene a Creditors' Meeting and that a debtor file Schedules, SOFAs, and Rule 2015.3 Reports in prepackaged chapter 11 cases. See, e.g., *In re Wheel Pros, LLC*, No. 24-11939 (JTD) (Bankr. D. Del. Sept. 10, 2024); *In re Appgate, Inc.*, No. 24-10956 (CTG) (Bankr. D. Del. May 8, 2024); *In re Lannett Co. Inc.*, No. 23-10559 (JKS) (Bankr. D. Del. May 4, 2023); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021).

**C. Rule 2015.3 Reports.**

78. Finally, the Debtors request that the time for filing the first Rule 2015.3 Report be extended until the Waiver Deadline and waived in the event that the Plan is confirmed and the Effective Date occurs on or before the Waiver Deadline. Bankruptcy Rule 2015.3(a) provides that a debtor must file periodic financial reports regarding the value, operations, and profitability of non-debtor entities in which the debtor holds a substantial or controlling interest no later than seven (7) days before the Creditors' Meeting under section 341 of the Bankruptcy Code. Subsequent Rule 2015.3 Reports are to be filed not less frequently than every six months thereafter until the effective date of a plan or dismissal or conversion of the case. The purpose of Bankruptcy Rule 2015.3 is "to assist parties in interest [in] taking steps to ensure that the debtor's interest" in an entity in which the debtor holds a substantial or controlling interest "is used for the payment of allowed claims against the debtor." Pub. L. No. 109-8 § 419(b) (2005). Bankruptcy Rule 2015.3(d) permits the Court, after notice and a hearing, to modify the reporting requirements for

cause, including where the debtor is not able after a good-faith effort to comply or where the required information is publicly available.

79. The Debtors submit that cause exists to extend the deadline to file the first Rule 2015.3 Report and to waive the reporting requirements of Bankruptcy Rule 2015.3 if the Plan is confirmed and the Effective Date occurs on or before the Waiver Deadline. As noted above, the Debtors have already received the support of the Consenting Stakeholders pursuant to the Restructuring Support Agreement. As such, requiring the Debtors to file the Rule 2015.3 Reports would be burdensome to the Debtors and their management without serving the stated purpose of Bankruptcy Rule 2015.3.

80. The Debtors reserve the right to supplement this Motion and request that any relief granted be without prejudice to the Debtors' ability to seek further extension or modification of the requirements (a) to file Schedules and SOFAs and Rule 2015.3 Reports and (b) for the U.S. Trustee to convene the Creditors' Meeting. In this regard, the Debtors request that the Court authorize the Debtors to further extend the Waiver Deadline (including the deadlines to file SOFAs, Schedules, and Rule 2015.3 Reports and the deferral of the Creditors' Meeting) without filing a supplemental motion, upon further order of the Court.

**V. Waiver of Local Rule 3017-3.**

81. The Debtors seek entry of an order waiving the requirements of Local Rule 3017-3 to permit them to exceed the page limit applicable to the Confirmation Brief.

82. Local Rule 3017-3 limits a confirmation brief to sixty (60) pages absent leave of the Court. Local Rule 1001-1(d) permits the Court to modify application of the Local Rules in the interest of justice.

83. Cause exists because the Confirmation Brief will address in a single brief both the adequacy of the Disclosure Statement and confirmation of the Plan, which are typically addressed in two separate briefs.

**Reservation of Rights**

84. Nothing in this Motion or any order granting the relief requested herein shall be construed as: (a) an admission as to the validity, priority, or amount of any Claim against or Interest in the Debtors; (b) a waiver of the Debtors' or any other party in interest's right to dispute any Claim or Interest; (c) an approval, assumption, or rejection of any Executory Contract or Unexpired Lease under section 365 of the Bankruptcy Code; (d) a determination of the adequacy of the Disclosure Statement or of the confirmability of the Plan, each of which the Debtors will seek at the Combined Hearing; or (e) a waiver, modification, or limitation of any right of any party under the Restructuring Support Agreement or the Plan, including any consent, consultation, notice, or information right set forth therein. The Debtors and all parties in interest reserve all rights with respect to the foregoing.

**Notice**

85. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the office of the attorney general for each of the states in which the Debtors operate; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) counsel to the Plan Sponsors; (g) counsel to the Consenting Secured Lenders; (h) counsel to the Credit Agreement Agent and the Consenting RCF Lenders; (i) counsel to the Unsecured Noteholders Ad Hoc Committee; (j) the DIP Agent; (k) the Trustees; (l) the Securities and Exchange Commission; and (m) any other party entitled to notice pursuant to Bankruptcy Rule 2002. As this Motion is

seeking "first day" relief, the Debtors will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: October 21, 2026
Wilmington, Delaware

*/s/ Justin R. Alberto*
**COLE SCHOTZ P.C.**
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (DE Bar No. 5126)
Patrick J. Reilley (DE Bar No. 4451)
Sarah A. Carnes (*pro hac vice* pending)
Jack M. Dougherty (DE Bar No. 6784)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: svanaalten@coleschotz.com
jalberto@coleschotz.com
preilley@coleschotz.com
scarnes@coleschotz.com
jdougherty@coleschotz.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**SIMPSON THACHER & BARTLETT LLP**
Brian E. Schartz (*pro hac vice* pending)
Elisha D. Graff (*pro hac vice* pending)
Rachael L. Foust (*pro hac vice* pending)
Dov Gottlieb (*pro hac vice* pending)
Olivia F. Acuña (*pro hac vice* pending)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-3702
Facsimile: (212) 455-2502
Email: brian.schartz@stblaw.com
egraff@stblaw.com
rachael.foust@stblaw.com
dov.gottlieb@stblaw.com
olivia.acuna@stblaw.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*