# EXHIBIT A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| GETTY IMAGES HOLDINGS, INC., *et al.*,[6] | ) | Case No. 26-11643 (___) |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. __** |

**ORDER (I) SCHEDULING COMBINED HEARING ON ADEQUACY OF DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN; (II) FIXING DEADLINE TO OBJECT TO THE DISCLOSURE STATEMENT AND THE PLAN; (III) CONDITIONALLY APPROVING PREPETITION SOLICITATION PROCEDURES AND FORM AND MANNER OF NOTICE OF COMMENCEMENT, COMBINED HEARING AND OBJECTION DEADLINE; (IV) CONDITIONALLY APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (V) CONDITIONALLY (A) DIRECTING THE UNITED STATES TRUSTEE NOT TO CONVENE SECTION 341(A) MEETING OF CREDITORS AND (B) WAIVING REQUIREMENT OF FILING STATEMENTS OF FINANCIAL AFFAIRS AND SCHEDULES OF ASSETS AND LIABILITIES AND RULE 2015.3 REPORTS; AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[7] of the debtors and debtors in possession (collectively, the "Debtors") for the entry of an order (this "Order"), (i) scheduling the Combined Hearing; (ii) establishing the Objection Deadline; (iii) conditionally approving the Solicitation Procedures and the Ballots, and approving the Combined Notice, the Classes 1 (Other Secured Claims) and 2 (Other Priority Claims) Notice of Non-Voting Status, the Class 6 (General Unsecured Claims) Notice of Non-Voting Status, the Class 9 (Holdings Interests) Notice of

[6] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

[7] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Non-Voting Status, the Class 10 (Section 510(b) Claims) Notice of Non-Voting Status, the Publication Notice, and the Solicitation Cover Letter; (iv) conditionally approving the Executory Contract Procedures, including the Executory Contract Assumption Objection Deadline; (v) conditionally (a) directing the U.S. Trustee to not convene the Creditors' Meeting and (b) excusing the requirement that the Debtors file SOFAs and Schedules and Rule 2015.3 Reports; and (vi) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The Combined Hearing (at which time this Court will consider, among other things, the adequacy of the Disclosure Statement and confirmation of the Plan) will be held, **on ________ ________, 2026 at ___________ (prevailing Eastern Time)**. The Combined

Hearing may be continued from time to time by the Court or by the Debtors (subject to the consent rights set forth in the Restructuring Support Agreement) without further notice other than adjournments announced in open court or by the filing of a notice or hearing agenda in these Chapter 11 Cases and providing notice of such adjourned date(s) on the electronic case filing docket and the website maintained by the Claims and Noticing Agent at https://restructuring.ra.kroll.com/GettyImages.

3. Any responses or objections to the adequacy of the Disclosure Statement or confirmation of the Plan must: (i) be in writing; (ii) conform to the applicable Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party, the amount and nature of such party's Claim or Interest, the basis for the objection and the specific grounds thereof; and (iv) be filed with this Court, together with proof of service, no later than **5:00 p.m. (prevailing Eastern Time) on November 30, 2026** (the "Objection Deadline"). Subject to paragraph 15 of this Order, any Executory Contract Assumption Objection (including any objection regarding Cure) must: (i) be in writing; (ii) conform to the applicable Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof, including any disputed Cure amount and the facts supporting the asserted Cure dispute, adequate-assurance concern or non-monetary default; and (iv) be filed with this Court, together with proof of service, no later than **5:00 p.m. (prevailing Eastern Time) on November 30, 2026** (the "Executory Contract Assumption Objection Deadline"). In addition to being filed with this Court, any responses or objections must be served on the following parties so as to be received by such deadlines: (a) the Debtors, Getty Images Holdings, Inc., 605 5th Ave. S. Suite 400, Seattle, Washington 98104, Attn.: Kjelti Kellough (kjelti.kellough@gettyimages.com); (b) proposed counsel to the Debtors, (i) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attn.: Brian E. Schartz (brian.schartz@stblaw.com), Elisha D. Graff (egraff@stblaw.com),

Rachael L. Foust (rachael.foust@stblaw.com), Dov Gottlieb (dov.gottlieb@stblaw.com), and Olivia F. Acuña (olivia.acuna@stblaw.com); and (ii) Cole Schotz P.C., 500 Delaware Avenue, Suite 600, Wilmington, Delaware 19801, Attn.: Seth Van Aalten (svanaalten@coleschotz.com), Justin R. Alberto (jalberto@coleschotz.com), Sarah A. Carnes (scarnes@coleschotz.com), and Jack M. Dougherty (jdougherty@coleschotz.com); (c) counsel to the Credit Agreement Agent, Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn.: Evan Fleck (efleck@milbank.com), Lauren Doyle (ldoyle@milbank.com), and Arden Ham (aham@milbank.com); (d) counsel to the Plan Sponsors, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn.: John Weber (jweber@paulweiss.com), Robert Britton (rbritton@paulweiss.com), and Chloe Nanfara (cnanfara@paulweiss.com), (ii) Jones Day, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114, Attn.: Carl E. Black (ceblack@jonesday.com), and Jones Day, 250 Vesey Street, New York, New York 10281, Attn.: Nicholas J. Morin (nmorin@jonesday.com) and Nick Buchta (nbuchta@jonesday.com), and (iii) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, Delaware 19801, Attn.: Zachary I. Shapiro (shapiro@rlf.com); (e) counsel to the Unsecured Noteholders Ad Hoc Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn.: Michael Stamer (mstamer@AkinGump.com), Brad Kahn (bkahn@akingump.com), and Stephen B. Kuhn (skuhn@akingump.com); (f) counsel to the Consenting Secured Lenders, (i) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166, Attn.: Matthew M. Roose (mroose@gibsondunn.com), Rob E. Fitzgerald (rfitzgerald@gibsondunn.com), Francis Petrie (fpetrie@gibsondunn.com), and Alex Xiao (axiao@gibsondunn.com); and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, Wilmington, Delaware 19801, Attn.: Laura Davis Jones (ljones@pszjlaw.com); (g) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.:

Benjamin A. Hackman (Benjamin.A.Hackman@usdoj.gov); (h) the United States Securities and Exchange Commission, 100 Pearl Street, Suite 20-100, New York, New York 10004; and (i) any statutory committee appointed in these chapter 11 cases (collectively, the "Notice Parties"). Objections not timely filed and served in the manner set forth in this Order shall not be considered and shall be overruled.

4. The Confirmation Schedule, as set forth below, is hereby approved in its entirety, and this Court hereby finds the Confirmation Schedule is consistent with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

| Event | Date/Deadline |
|---|---|
| Voting Record Date | October 9, 2026 |
| Commencement of Solicitation | October 20, 2026 |
| Petition Date | October 21, 2026 |
| Service of Combined Notice, Classes 1 (Other Secured Claims) and 2 (Other Priority Claims) Notice of Non-Voting Status and Opt-In Form, Class 6 (General Unsecured Claims) Notice of Non-Voting Status, and Class 9 (Holdings Interests) Notice of Non-Voting Status and Opt-In Form | Within three (3) business days after entry of this Order, or as soon as reasonably practicable thereafter (on or about October 27, 2026) |
| Service of Class 10 (Section 510(b) Claims) Notice of Non-Voting Status and Opt-In Form | Within six (6) business days after entry of this Order, or as soon as reasonably practicable thereafter (on or about October 30, 2026) |
| Initial Plan Supplement Filing Deadline | November 23, 2026, at 11:59 p.m. (prevailing Eastern Time) |
| Opt-In Deadline | November 30, 2026, at 5:00 p.m. (prevailing Eastern Time) |
| Executory Contract Assumption Objection Deadline | November 30, 2026, at 5:00 p.m. (prevailing Eastern Time) |
| Plan/Disclosure Statement Objection Deadline | November 30, 2026, at 5:00 p.m. (prevailing Eastern Time) |
| Voting Deadline | November 30, 2026, at 5:00 p.m. (prevailing Eastern Time) |
| Deadline to File Voting Report | Seven (7) calendar days prior to the Combined Hearing (on or about December 7, 2026) |
| Deadline to File Proposed Confirmation Order | December 9, 2026, at 4:00 p.m. (prevailing Eastern Time), or three (3) business days prior to the Combined Hearing |

| | |
|---|---|
| Deadline to File Brief in Support of Confirmation, Including Plan/Disclosure Statement Replies (including, to the extent applicable, replies to any Executory Contract Assumption Objections) | December 9, 2026, at 4:00 p.m. (prevailing Eastern Time), or three (3) business days prior to the Combined Hearing |
| Combined Hearing | December 14, 2026, at a time to be determined, subject to Court availability |

5. The Debtors are authorized to file the Confirmation Brief, and the Debtors and any other party supporting confirmation of the Plan are authorized to file any reply to objections to the adequacy of the Disclosure Statement or confirmation of the Plan concurrently with the filing of the Debtors' agenda for the Combined Hearing, pursuant to a modification of Local Rule 9006-1(d).

6. The Debtors are authorized to combine the notice of the Combined Hearing and the Objection Deadline (and related procedures) with the notice of commencement of these Chapter 11 Cases. Further, the Combined Notice (including the applicable notice of assumption of Executory Contracts and Unexpired Leases), substantially in the form attached hereto as **Exhibit 1**; the Class 6 (General Unsecured Claims) Notice of Non-Voting Status, substantially in the form attached hereto as **Exhibit 2B**; the Class 10 (Section 510(b) Claims) Notice of Non-Voting Status and Opt-In Form, substantially in the form attached hereto as **Exhibit 2D**; the Classes 1 (Other Secured Claims) and 2 (Other Priority Claims) Notice of Non-Voting Status and the Class 9 (Holdings Interests) Notice of Non-Voting Status, together with the applicable Opt-In Form, substantially in the forms attached hereto as **Exhibit 2A** and **Exhibit 2C**, including the Opt-In Deadline; the Publication Notice, substantially in the form attached hereto as **Exhibit 3**; and the Solicitation Cover Letter, substantially in the form attached hereto as **Exhibit 4** (collectively, the "Notices"), and the form and manner of service, distribution, and publication of the Notices as described in the Motion and herein, including to the extent such Notices have already been served or distributed, comply with the requirements of the Bankruptcy Code and the Bankruptcy Rules and are hereby approved. The Notices shall

be deemed good and sufficient notice of the commencement of the Chapter 11 Cases, the Combined Hearing, the Objection Deadline, the assumption of Executory Contracts and Unexpired Leases pursuant to the Plan, and the procedures for objecting to the adequacy of the Disclosure Statement and to confirmation of the Plan, and no other or further notice need be given.

7. In instances where a Nominee coordinates service of the Class 9 (Holdings Interests) Notice of Non-Voting Status and Opt-In Form or the Class 10 (Section 510(b) Claims) Notice of Non-Voting Status and Opt-In Form, if it is such Nominee's customary internal practice to provide to Beneficial Holders an electronic link to such materials, such Nominee is authorized to follow such customary practice in lieu of forwarding paper copies of such materials to its Beneficial Holder clients.

8. The Debtors shall cause the Claims and Noticing Agent to mail or email (where available) a copy of the Combined Notice and Notices of Non-Voting Status to the Holders of Claims and Interests in Classes 1 (Other Secured Claims), 2 (Other Priority Claims), 6 (General Unsecured Claims), and 9 (Holdings Interests), and a copy of the Combined Notice to all other parties entitled to receive the Combined Notice (including Holders of Claims in the Voting Classes and all known counterparties to Executory Contracts and Unexpired Leases), as set forth in the Motion by no later than three (3) business days following the entry of this Order or as soon as reasonably practicable thereafter; *provided that* the Debtors shall cause the Claims and Noticing Agent to mail or email (where available) a copy of the Combined Notice and Class 10 (Section 510(b) Claims) Notice of Non-Voting Status to the Holders or potential Holders of Section 510(b) Claims as set forth in the Motion by no later than six (6) business days following the entry of this Order or as soon as reasonably practicable thereafter.

9. The Debtors are authorized to mail and/or email the Combined Notice and the Classes 1 (Other Secured Claims) and 2 (Other Priority Claims) Notice of Non-Voting Status

and Opt-In Form, the Class 6 (General Unsecured Claims) Notice of Non-Voting Status, the Class 9 (Holdings Interests) Notice of Non-Voting Status and Opt-In Form, or the Class 10 (Section 510(b) Claims) Notice of Non-Voting Status and Opt-In Form, as applicable, in lieu of sending such Non-Voting Holders a copy of the Plan or the Disclosure Statement, and the requirements under the Bankruptcy Rules or the Local Rules, including Bankruptcy Rule 3017(d), to transmit a copy of the Plan and the Disclosure Statement to Non-Voting Holders are hereby waived with respect to such Non-Voting Holders; *provided*, *however*, that the Debtors shall provide copies of the Plan and Disclosure Statement to any such Non-Voting Holder upon request.

10. The Debtors are granted a waiver of the strict notice requirement with respect to Holders of Intercompany Claims and Intercompany Interests in Classes 7 (Intercompany Claims) and 8 (Intercompany Interests).

11. The Debtors are authorized, but not directed, pursuant to Bankruptcy Rule 2002(l), to provide the Publication Notice of the Combined Hearing and Objection Deadline as soon as reasonably practicable following the entry of this Order (and in any event no later than twenty-eight (28) days before the Objection Deadline) in the national edition of *The New York Times* or another world-wide and/or nationally circulated newspaper and/or regional newspapers and electronically on the Debtors' case information website (located at https://restructuring.ra.kroll.com/GettyImages), and file the same on this Court's docket, which Publication Notice shall constitute good and sufficient notice of the Combined Hearing and the Objection Deadline (and related procedures) to persons who do not otherwise receive the Combined Notice by mail.

12. The Solicitation Procedures utilized by the Debtors for distribution of the Solicitation Packages in soliciting acceptances and rejections of the Plan as set forth in the Motion satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local

Rules and are conditionally approved pending final approval through the Confirmation Order, and the rights of parties in interest to object to the Solicitation Procedures in connection with confirmation of the Plan are reserved.

13. The Ballots, substantially in the forms attached hereto as **Exhibit 5**, **Exhibit 6A**, **Exhibit 6B**, **Exhibit 6C**, **Exhibit 7A**, and **Exhibit 7B**, are conditionally approved pending final approval through the Confirmation Order, and the rights of parties in interest to object to the Ballots in connection with confirmation of the Plan are reserved.

14. The procedures and assumptions used for tabulating votes to accept or reject the Plan as set forth in the Motion and as provided by the Ballots are conditionally approved pending final approval through the Confirmation Order, and the rights of parties in interest to object to such procedures and assumptions in connection with confirmation of the Plan are reserved.

15. The Executory Contract Procedures are conditionally approved pending final approval through the Confirmation Order, and the rights of parties in interest to object to the Executory Contract Procedures in connection with confirmation of the Plan are reserved; *provided* that none of the Cure, objection, deemed consent, or schedule amendment procedures set forth in the Motion, this Order, or Article V of the Plan shall apply to the Trademark Option Agreement, which shall be governed exclusively by Article V.K of the Plan.

16. The Creditors' Meeting shall be deferred, and the U.S. Trustee shall not be required to convene a Creditors' Meeting, provided that the Plan is confirmed and the Effective Date occurs on or before the Waiver Deadline.

17. Cause exists to extend, and the Court hereby extends, the time by which the Debtors must file SOFAs and Schedules and Rule 2015.3 Reports until the Waiver Deadline, without prejudice to the Debtors' rights to request further extensions thereof; *provided*, that the requirement that the Debtors file SOFAs and Schedules and Rule 2015.3 Reports shall be

permanently excused upon the occurrence of the Effective Date, provided that the Plan is confirmed and the Effective Date occurs on or before the Waiver Deadline.

18. Without limiting the foregoing, the Debtors may further extend the deadline to convene the Creditors' Meeting and file Schedules and SOFAs and Rule 2015.3 Reports without filing a supplemental motion, upon further order from this Court submitted on certification of counsel filed on the docket and served on the Notice Parties, with prior notice to the U.S. Trustee (which notice may be by email); *provided* that this relief is without prejudice to the Debtors' rights to request further extensions thereof by motion.

19. The requirements of Local Rule 3017-3 are hereby waived to permit the Debtors to exceed the page limit applicable to the Confirmation Brief.

20. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion.

21. Nothing in the Motion or this Order waives, modifies, or limits any right of any party under, or the requirements of, the Restructuring Support Agreement or the Plan, including, without limitation, the consent and consultation rights contained therein.

22. Notwithstanding anything to the contrary contained in the Motion or this Order, any payment to be made or obligation, relief or authorization granted hereunder shall be subject to the requirements imposed on the Debtors under the terms of any interim or final (as applicable) order entered by the Court in these chapter 11 cases approving any postpetition financing entered into by the Debtors and/or the Debtors' use of cash collateral, including the adequate protection obligations contained therein (the "DIP Order"), the documentation in respect of any such postpetition financing facilities and/or the use of cash collateral, and any budget governing any such postpetition financing facilities and/or use of cash collateral. To the extent there is any conflict between this Order and the DIP Order, the DIP Order shall govern.

23. Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry; (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of relief granted in this Order; and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

24. This Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

25. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

# Exhibit 1

## Combined Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| GETTY IMAGES HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-11643(___) |
| Debtors. | ) | (Joint Administration Requested) |

**NOTICE OF**
**(I) COMMENCEMENT OF PREPACKAGED**
**CHAPTER 11 BANKRUPTCY CASES, (II) COMBINED**
**HEARING TO CONSIDER THE ADEQUACY OF THE DISCLOSURE**
**STATEMENT AND CONFIRMATION OF THE JOINT PREPACKAGED**
**CHAPTER 11 PLAN, (III) ASSUMPTION OF EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES AND (IV) RELATED OBJECTION AND BRIEFING DEADLINES**

**NOTICE IS HEREBY GIVEN** as follows:

On October 21, 2026 (the "Petition Date"), the above captioned debtors and debtors in possession (collectively, the "Debtors" or the "Company") filed voluntary petitions for relief (collectively, the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). Contemporaneously therewith, the Debtors filed the *Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* [Docket No. [●]] (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") and the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* [Docket No. [●]] (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement"). Solicitation of the Plan commenced prior to the filing of these Chapter 11 Cases on October 20, 2026.[2]

[1] The anticipated Debtors in these chapter 11 cases, along with the last four digits of each anticipated Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the anticipated Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Craig Peters, Chief Executive Officer of Getty Images Holdings, Inc. and its Debtor Subsidiaries, in Support of the* Debtors' Chapter 11 Petitions [Docket No. [●]] (the "First Day Declaration"). Capitalized terms used but not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable. The statements contained herein are summaries of certain provisions contained in the Plan and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein. To the extent there is a discrepancy between the terms

**Copies of the Plan, the Disclosure Statement, and related documents may be obtained free of charge by visiting the Debtors' restructuring website maintained by Kroll Restructuring Administration LLC (the "Claims and Noticing Agent," the "Solicitation Agent," or "Kroll") at https://restructuring.ra.kroll.com/GettyImages, calling the Claims and Noticing Agent at (844) 408-3675 (Toll-free US / Canada) or +1 (646) 825-2402 (International), or emailing the Claims and Noticing Agent at GettyImagesInfo@ra.kroll.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: https://www.deb.uscourts.gov and are on file with the Clerk of the Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, where they are available for review between the hours of 8:00 a.m. to 4:00 p.m., prevailing Eastern Time**.

Chapter 11 is a section of the Bankruptcy Code that allows companies to reorganize while continuing to operate their businesses in the ordinary course. The filing is "prepackaged" and only impacts certain entities in the Getty organization. A prepackaged filing is advantageous, as it means that the Debtors have already reached agreement with key stakeholders regarding how the restructuring transactions contemplated by the Plan should be implemented. This not only ensures alignment and support among key stakeholders, but also means business can continue without interruption and that the Company will move through this process swiftly, with the goal of emerging from the court-supervised reorganization process in no more than 75 days, if not sooner.

This restructuring is a pure "balance sheet restructuring." The Company does not expect the transactions set forth in the Plan to have any impact on its content contributors, customers, vendors, employees or operations. Holders of General Unsecured Claims will be Unimpaired, and each Holder of an Allowed General Unsecured Claim will receive, at the Debtors' option with the consent of each Plan Sponsor, payment in full in Cash, Reinstatement, or such other treatment rendering such Allowed General Unsecured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code and the Plan.

## I. HEARING ON THE CONFIRMATION OF THE PLAN, ADEQUACY OF THE DISCLOSURE STATEMENT, AND ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The combined hearing to consider adequacy of the Disclosure Statement, any objections thereto, confirmation of the Plan, any objections thereto, any objections to the proposed assumption of Executory Contracts and Unexpired Leases, and any other matter that may properly come before the Court related to approval of the Disclosure Statement and confirmation of the Plan will be held before the Honorable [●], United States Bankruptcy Judge, in Courtroom [●] of the United States Bankruptcy Court, 824 North Market Street, [●]th Floor, Wilmington, Delaware 19801, on **December 14, 2026 at [●] [●].m. (prevailing Eastern Time)** or as soon thereafter as counsel may be heard (the "Combined Hearing"). The Combined Hearing may be continued from time to time by the Court or the Debtors (subject to the consent rights set forth in the Restructuring Support Agreement) without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Court and served on other parties entitled

herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control.

to receive notice and made available on the electronic case filing docket and the Solicitation Agent's website at https://restructuring.ra.kroll.com/GettyImages.

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

## II. INFORMATION REGARDING THE PLAN AND DISCLOSURE STATEMENT

On October 12, 2026, the Debtors and certain of their key stakeholders executed a restructuring support agreement (the "Restructuring Support Agreement" and the transactions contemplated thereby, the "Restructuring Transactions"). Subject to the Court's approval, the Restructuring Transactions will be implemented through the Plan.

The Plan provides for, among other things (i) each Holder of an Allowed General Unsecured Claim will be Unimpaired and will receive, at the Debtors' option with the consent of each Plan Sponsor, payment in full in Cash, Reinstatement, or such other treatment rendering such Allowed General Unsecured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code and the Plan, (ii) a cash equity investment by the Plan Sponsors, as New Equity Investors, in New Getty Images in an aggregate amount of $433,212,922.50, less the principal amount of the DIP Initial Loans and DIP Final Loans outstanding as of the Effective Date, in exchange for the Investment New Interests, (iii) up to $143 million DIP Facility which, on the Effective Date, will be converted into DIP New Interests and, to the extent of any DIP Delayed-Draw Loans outstanding under the DIP Facility, into New Preferred Interests, (iv) holders of claims subject to subordination under section 510(b) of the Bankruptcy Code, including Warrant Claims, will not receive any distribution on account of such claims, (v) on the Effective Date, in accordance with and subject to the terms of the Exit Term Sheet, the Revolving Loans and Revolving Credit Commitments in respect of Allowed Revolving Loan Claims will be converted into revolving loans and revolving commitments, respectively, under the New RCF in an equal amount, and accrued and unpaid interest, fees, and other amounts due on account of such Allowed Revolving Loan Claims will be paid in full in Cash, (vi) each Holder of an Allowed Unsecured Notes Claim will receive its Pro Rata share of the Unsecured Notes Recovery (Cash in an aggregate amount equal to $170,212,922.50) on the Effective Date, (vii) the cancellation of all Holdings Interests, including the common stock of, and the Warrants issued by, Holdings, with no distribution to holders thereof on account of such interests, (viii) on the Effective Date, Holders of Allowed Secured Funded Debt Claims will receive New Notes in an equal principal amount on account of their 11.25% Secured Notes Claims and USD Term Loan Claims (or, solely to the extent a Holder of USD Term Loan Claims does not agree to receive New Notes, New USD Term Loans in an equal principal amount), on account of EUR Term Loan Claims held by a Holder that is not a Plan Sponsor and that are not subject to the Equitization Commitment, New EUR Term Loans in an equal principal amount (measured by the principal amount of EUR Term Loans held by such Holder as of the Distribution Record Date), and payment in full in Cash of accrued and unpaid interest, fees, costs, and other amounts due and owing, (ix) the EUR Term Loan Claims held by the Plan Sponsors that are subject to the Equitization Commitment will be converted into Equitization New Interests on the Effective Date, and (x) the incurrence of the Exit Facilities by the Reorganized Debtors.

**Voting Record Date**. The voting record date was October 9, 2026 (the "Voting Record Date"), which was the date for determining which Holders of Claims were entitled to vote on the Plan.

**Objections to the Plan, Disclosure Statement, and Assumption of Executory Contracts and Unexpired Leases**. Responses or objections to the Disclosure Statement and/or the Plan must (i) be in writing; (ii) conform to the applicable Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); (iii) set forth the name of the objecting party, the amount and nature of such party's Claim or Interest, the basis for the objection and the specific grounds thereof; and (iv) be filed with the Court, together with proof of service, and served so as to be **actually received** no later than **November 30, 2026 at 5:00 p.m. (prevailing Eastern Time)** by those parties who have filed a notice of appearance in the Debtors' chapter 11 cases and the following parties (the "Notice Parties"): (a) **the Debtors**, Getty Images Holdings, Inc., 605 5th Ave. S. Suite 400, Seattle, Washington 98104, Attn: Kjelti Kellough (kjelti.kellough@gettyimages.com); (b) **Proposed co-counsel for the Debtors**, (i) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attn.: Brian E. Schartz (brian.schartz@stblaw.com), Elisha D. Graff (egraff@stblaw.com), Rachael L. Foust (rachael.foust@stblaw.com), Dov Gottlieb (dov.gottlieb@stblaw.com), and Olivia F. Acuña (olivia.acuna@stblaw.com); and (ii) Cole Schotz P.C., 500 Delaware Avenue, Suite 600, Wilmington, Delaware 19801, Attn.: Seth Van Aalten (svanaalten@coleschotz.com), Justin R. Alberto (jalberto@coleschotz.com), Sarah A. Carnes (scarnes@coleschotz.com), and Jack M. Dougherty (jdougherty@coleschotz.com); (c) **counsel to the Credit Agreement Agent and the Consenting RCF Lenders**, (i) Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn.: Evan Fleck (efleck@milbank.com); Lauren Doyle (ldoyle@milbank.com); and Arden Ham (aham@milbank.com); and (ii) Potter Anderson & Corroon LLP, 1313 N. Market Street, 7th Floor, Wilmington Delaware 19801-6108, Attn.: L. Katherine Good (kgood@potteranderson.com); (d) **counsel to the Plan Sponsors**, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn.: John Weber (jweber@paulweiss.com), Robert Britton (rbritton@paulweiss.com), and Chloe Nanfara (cnanfara@paulweiss.com), (ii) Jones Day, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114, Attn.: Carl E. Black (ceblack@jonesday.com), and Jones Day, 250 Vesey Street, New York, New York 10281, Attn.: Nicholas J. Morin (nmorin@jonesday.com) and Nick Buchta (nbuchta@jonesday.com), and (iii) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, Delaware 19801, Attn.: Zachary I. Shapiro (shapiro@rlf.com); (e) **counsel to the Unsecured Noteholders Ad Hoc Committee**, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn.: Michael Stamer (mstamer@AkinGump.com); Brad Kahn (bkahn@akingump.com); and Stephen B. Kuhn (skuhn@akingump.com); (f) **counsel to the Consenting Secured Lenders**, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166, Attn.: Matthew M. Roose (mroose@gibsondunn.com), Rob E. Fitzgerald (rfitzgerald@gibsondunn.com), Francis Petrie (fpetrie@gibsondunn.com), and Alex Xiao (axiao@gibsondunn.com); and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, Wilmington, Delaware 19801, Attn.: Laura Davis Jones (ljones@pszjlaw.com); (g) **the Office of the United States Trustee for the District of Delaware**, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Benjamin A. Hackman (Benjamin.A.Hackman@usdoj.gov); (h) **the United States**

**Securities and Exchange Commission**, 100 Pearl Street, Suite 20-100, New York, New York 10004; and (h) any statutory committee appointed in these chapter 11 cases.

Any brief in support of confirmation of the Plan and reply to any objections (including, to the extent applicable, replies to any Executory Contract Assumption Objections) shall be filed by **December 9, 2026, at 4:00 p.m. (prevailing Eastern Time)**, or such other date as the Court may direct.

**UNLESS AN OBJECTION OR REPLY IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT SHALL NOT BE CONSIDERED BY THE COURT.**

## Summary of Plan Treatment

The Plan classifies Claims against and Interests in the Debtors, and provides for the treatment of each Class as follows:[3]

| Class | Claims and Interests | Treatment | Status | Voting Rights |
|---|---|---|---|---|
| Class 1 | Other Secured Claims | Each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor or Reorganized Debtor with the consent of each Plan Sponsor, either: (i) payment in full in Cash of its Allowed Other Secured Claim; (ii) the collateral securing its Allowed Other Secured Claim; (iii) Reinstatement of its Allowed Other Secured Claim; or (iv) such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code. | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Each Holder of an Allowed Other Priority Claim shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code. | Unimpaired | Not Entitled to Vote (Presumed to Accept) |

[3] This summary is for ease of reference only and shall not limit, modify, or amend the proposed treatment set forth in the Plan, which, in the event of any inconsistency, shall govern. The classification of Claims and Interests set forth in the table shall apply separately to each of the Debtors, except for (1) Class 3 Revolving Loan Claims and Class 4 Secured Funded Debt Claims, which shall not apply to Holdings, (2) Class 5 Unsecured Notes Claims, which shall not apply to Griffey Midco (DE), LLC and Abe Investment Holdings, Inc., and (3) Class 9 Holdings Interests, which shall only apply to Holdings.

| Class | Claims and Interests | Treatment | Status | Voting Rights |
|---|---|---|---|---|
| Class 3 | Revolving Loan Claims | Each Holder of an Allowed Revolving Loan Claim shall receive in accordance with and subject to the terms of the Exit Term Sheet (i) on account of its Allowed Revolving Loan Claim representing the outstanding principal amount of Revolving Loans, conversion of the Revolving Loans and Revolving Credit Commitments to revolving loans and revolving commitments, respectively, under the New RCF in an equal amount and (ii) on account of accrued and unpaid interest, fees, and other amounts due on account of its Allowed Revolving Loan Claim as of the Effective Date, payment in full in Cash. | Impaired | Entitled to Vote |
| Class 4 | Secured Funded Debt Claims | Each Holder of an Allowed Secured Funded Debt Claim shall receive: (i) on account of its 11.25% Secured Notes Claims representing the principal amount of the 11.25% Secured Notes, New Notes in an equal principal amount; (ii) on account of its USD Term Loan Claims representing the principal amount of the USD Term Loans, New Notes in an equal principal amount or, solely to the extent the Holder of such USD Term Loan Claims does not agree to receive New Notes, New USD Term Loans in an equal principal amount; (iii) on account of its EUR Term Loan Claims representing the principal amount of EUR Term Loans, if it is not a Plan Sponsor and its EUR Term Loan Claims are not subject to the Equitization Commitment, New EUR Term Loans in an equal principal amount (measured by the principal amount of EUR Term Loans held by such Holder as of the Distribution Record Date); (iv) on account of its EUR Term Loan Claims representing the principal amount of EUR Term Loans, if it is a Plan Sponsor and its EUR Term Loan Claims are otherwise subject to the Equitization Commitment, the Equitization New Interests in accordance with the Equitization Commitment and the ECL (which treatment each such Holder has agreed to accept in lieu of the treatment set forth in the immediately preceding clause, and which agreement shall constitute such Holder's agreement to less favorable treatment for purposes of section 1123(a)(4) of the Bankruptcy Code); and (v) on account of its Secured Funded Debt Claims representing accrued and unpaid interest, fees, costs, and other amounts due and owing under the Credit Agreement and the 11.25% Secured Notes Indenture, as applicable, as of the Effective Date, payment in full in Cash. | Impaired | Entitled to Vote |
| Class 5 | Unsecured Notes Claims | Each Holder of an Allowed Unsecured Notes Claim shall receive its Pro Rata share of the Unsecured Notes Recovery. | Impaired | Entitled to Vote |

| Class | Claims and Interests | Treatment | Status | Voting Rights |
|---|---|---|---|---|
| Class 6 | General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall receive, at the Debtors' option with the consent of each Plan Sponsor, (i) payment in full in Cash; (ii) Reinstatement; or (iii) such other treatment rendering such Allowed General Unsecured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code. | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 7 | Intercompany Claims | On the Effective Date, each Holder of an Allowed Intercompany Claim shall have such Claim (i) Reinstated or (ii) cancelled, released, and extinguished without receiving any distribution on account of such Claim, at the Debtors' election and in their reasonable discretion with the consent of each Plan Sponsor, such that such Allowed Intercompany Claims are treated in a tax-efficient manner to the extent reasonably practicable. | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| Class 8 | Intercompany Interests | On the Effective Date, each Holder of an Intercompany Interest shall have such Interest (i) Reinstated or (ii) cancelled, discharged, and extinguished without receiving any distribution on account of such Interest, or such other treatment as reasonably determined by the Debtors, at the Debtors' election and in their reasonable discretion with the consent of each Plan Sponsor, such that Intercompany Interests are treated in a tax-efficient manner to the extent reasonably practicable. | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| Class 9 | Holdings Interests | On the Effective Date, each Holder of an Allowed Holdings Interest shall have such Interest cancelled, discharged, and extinguished without receiving any distribution on account of such Interest. | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 10 | Section 510(b) Claims | On the Effective Date, each Holder of an Allowed Section 510(b) Claim shall have its Claim cancelled, released, and extinguished without receiving any distribution on account of such Claim. | Impaired | Not Entitled to Vote (Deemed to Reject) |

## <u>**Releases, Discharge, Injunctions, and Exculpation Under the Plan**</u>

Please be advised that the Plan contains certain release, exculpation, discharge, and injunction provisions. The relevant provisions contained in the Plan are as follows:

<u>**Relevant Definitions:**</u>

**Under the Plan, "Releasing Parties" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Holder of Claims or Interests that affirmatively opts in to the releases provided for in the Plan; (h) each current and former Affiliate of each Entity in clause (a) through clause (g) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan under applicable Law; and (i) each Related Party of each**

**Entity in clause (a) through clause (h) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable Law; *provided* that no Agent/Trustee shall be deemed to grant any release on behalf of, or to bind, any Holder for which it acts, and no Agent/Trustee shall be required to take any action in connection with the solicitation of opt-in elections.**

**Under the Plan, "Released Parties" means collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Releasing Party; (h) each current and former Affiliate of each Entity in clause (a) through clause (g); and (i) each Related Party of each Entity in clause (a) through clause (h); provided that, in each case, an Entity (other than the Debtors, the Reorganized Debtors, the Plan Sponsors, and their respective Related Parties) shall not be a Released Party if it does not affirmatively opt into the releases in the Plan by returning an "opt in" form.**

**Under the Plan, "Related Party" means, with respect to any Entity, (a) such Entity, (b) such Entity's predecessors, successors and assigns, parents, subsidiaries, Affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers, (c) with respect to each Plan Sponsor, its associated trusts (and its holding vehicles who are direct holders of interests in the applicable Plan Sponsor, its affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers) that are Holders of Interests in Holdings, (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's respective current and former officers, directors, principals, current or former equity holders (regardless of whether such interests are held directly or indirectly and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, managers, partners, employees, agents, trustees, beneficiaries, settlors, protectors, family offices, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (e) with respect to each of the foregoing in clauses (a)–(d), such Entity's respective heirs, executors, estates, servants, and nominees.**

**Under the Plan, "Exculpated Parties" means collectively, each of the following in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) members of the Special Committee; (d) each Unsecured Notes Trustee and Credit Agreement Agent, solely to the extent acting as a Disbursing Agent or otherwise making, directing, or facilitating distributions under, or taking any other action in the administration or consummation of, this Plan; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), (i) their respective current officers, their current and former directors, and limited liability company managers, who served in such capacity at any time between the Petition Date and the Effective Date, and (ii) each of their attorneys, financial advisors, investment bankers, consultants, and other professionals or advisors whose retentions were approved by the Bankruptcy Court pursuant to an order approving such professional's and advisor's retention application, as applicable .**

**RELEASES BY THE DEBTORS**

**[Except as expressly set forth in the Plan or the Confirmation Order, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights and remedies against the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the Debtors' evaluation and pursuit of strategic alternatives (including any process conducted by or under the direction of the Special Committee), the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring**

**Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Debtors do not, pursuant to the Debtor Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and the Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Debtors, their Estates, or the Reorganized Debtors asserting any Claim or Cause of Action released pursuant to the Debtor Release against any of the Released Parties.]**

**<u>RELEASES BY THE RELEASING PARTIES</u>**

**[Effective on the Effective Date, except as expressly set forth in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable Law, as such Law may be extended or interpreted after the date upon which the Bankruptcy Court enters the Confirmation Order, on or after the Effective Date, each Released Party is hereby deemed expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, remedies, or liabilities, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and**

**all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Releasing Parties do not, pursuant to the Third-Party Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which shall include by**

**reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Third-Party Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release against any of the Released Parties.]**

**EXCULPATION**

**[To the fullest extent permitted by applicable Law, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place between the Petition Date and the Effective Date related or relating to the foregoing, except for claims related to any act or omission that is determined in a final order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution**

**of consideration pursuant to the Plan, including the issuance of securities thereunder, and, therefore, are not, and on account of such solicitation, distributions, or issuance shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan, including the issuance of securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability.**

**Notwithstanding anything to the contrary in the foregoing, the exculpation set forth in the Plan shall not be construed as exculpating any party or Entity from its post-Effective Date obligations under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.]**

**INJUNCTION**

**Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation (in each case, as set forth in the above Discharge, Release, Third-Party Release, and Exculpation sections of the Plan), whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, affiliates, and Related Parties, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action unless such Holder has timely Filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise (*provided* that this clause (d) shall not apply to any Bank Product Provider in respect of the Bank Product Obligations, as set forth in Article VI.L of the Plan); and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action released or settled pursuant to the Plan.**

**By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above.**

**The injunctions set forth above shall extend to any successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property.**

**Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any post-Effective Date obligations of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

## III. NOTICE OF ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES (INCLUDING LICENSING AGREEMENTS)

You or one of your affiliates may be a counterparty to one or more contracts or leases that may be an Executory Contract or Unexpired Lease with one or more of the Debtors. In accordance with Article V.A of the Plan, on the Effective Date, except as otherwise provided in the Plan, any Executory Contract or Unexpired Lease of the Debtors is deemed to be assumed by the Debtors or Reorganized Debtors in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that: (1) were previously assumed, assumed and assigned, or rejected by the Debtors; (2) are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (3) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Effective Date; (4) have an ordered or requested effective date of rejection that is after the Effective Date; or (5) expired or terminated pursuant to their own terms prior to the Effective Date.

In accordance with Article V.L of the Plan, each License Agreement[4] shall be assumed by the applicable Debtor pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, subject to Article V.C of the Plan, and entry of the Confirmation Order shall constitute approval of such assumption. Each License Agreement shall be assumed by the same Debtor party to it and shall not be assigned.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination that the Reorganized Debtors have provided adequate assurance of future performance under each assumed Executory Contract and Unexpired Lease.

[4] As set forth in the Plan, "License Agreement" means each license, sublicense, or other agreement granting rights in intellectual property to which a Debtor is a party and that is not identified on the Schedule of Rejected Executory Contracts and Unexpired Leases.

Except as otherwise specifically set forth in the Plan, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or assumption and assignment, as applicable, of such Executory Contracts or Unexpired Leases as provided for in the Plan, pursuant to sections 365(a) and 1123 of the Bankruptcy Code effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

**RECEIPT OF THIS COMBINED NOTICE IS NOT AN ADMISSION OR CONCESSION BY THE DEBTORS THAT YOU ARE A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE.**

**Payment of Cure.** The Debtors are paying, and the Reorganized Debtors will continue to pay, all amounts owed under each Executory Contract and Unexpired Lease in full and in the ordinary course of business in accordance with its terms. Accordingly, any Cure will be paid in the ordinary course of business in accordance with Article V.C of the Plan, no counterparty is required to file or otherwise submit a request for payment of Cure, and counterparties to Executory Contracts or Unexpired Leases do not need to take any action to continue to receive payment under such Executory Contract or Unexpired Lease in the ordinary course.

**ANY COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT DOES NOT TIMELY OBJECT TO THE PROPOSED ASSUMPTION OF SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE ON OR BEFORE NOVEMBER 30, 2026, AT 5:00 P.M. (PREVAILING EASTERN TIME) WILL BE DEEMED TO HAVE CONSENTED TO SUCH ASSUMPTION AND TO THE PAYMENT OF ANY CURE IN ACCORDANCE WITH ARTICLE V.C OF THE PLAN.**

**Objections to the Assumption of Executory Contracts and Unexpired Leases.** If you wish to object to the assumption of an Executory Contract or Unexpired Lease under the Plan, including on the basis of (i) any Cure, (ii) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), or (iii) an alleged non-monetary default that is required to be cured under section 365(b) of the Bankruptcy Code (each, an "Executory Contract Assumption Objection"), you may assert an Executory Contract Assumption Objection against the Debtors or Reorganized Debtors, as applicable, subject to all defenses the Debtors or Reorganized Debtors may have with respect to such Executory Contract Assumption Objection. Your Executory Contract Assumption Objection must: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof, including any disputed Cure amount and the facts supporting the asserted Cure dispute, adequate-assurance concern, or non-monetary default; and (d) be filed with the Court, together with proof of service, and served on the Notice Parties so as to be received by **November 30, 2026 at 5:00 p.m. (prevailing Eastern Time)** (or such other date as may be established by the Court)

(the "Executory Contract Assumption Objection Deadline"). Any counterparty to an assumed Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of such Executory Contract or Unexpired Lease, including an objection regarding any Cure or the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), prior to the Executory Contract Assumption Objection Deadline (i) shall be deemed to have assented to such proposed assumption and to the payment of any Cure in accordance with Article V.C of the Plan and shall be deemed to have forever released and waived such Executory Contract Assumption Objection and shall be precluded from being heard at the Combined Hearing with respect to such objection; and (ii) shall be forever barred from imposing or charging against any Reorganized Debtor any accelerations, increases or any other fees as a result of any assumption pursuant to the Plan.

**UNLESS A RESPONSE OR AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT SHALL NOT BE CONSIDERED BY THE COURT.**

[*Remainder of Page Intentionally Left Blank*]

Dated: [DATE], 2026
Wilmington, Delaware

*/s/ DRAFT*

**COLE SCHOTZ P.C.**
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (DE Bar No. 5126)
Sarah A. Carnes (*pro hac vice* pending)
Jack M. Dougherty (DE Bar No. 6784)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: svanaalten@coleschotz.com
jalberto@coleschotz.com
scarnes@coleschotz.com
jdougherty@coleschotz.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**SIMPSON THACHER & BARTLETT LLP**
Brian E. Schartz (*pro hac vice* pending)
Elisha D. Graff (*pro hac vice* pending)
Rachael L. Foust (*pro hac vice* pending)
Dov Gottlieb (*pro hac vice* pending)
Olivia F. Acuña (*pro hac vice* pending)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-3702
Facsimile: (212) 455-2502
Email: brian.schartz@stblaw.com
egraff@stblaw.com
rachael.foust@stblaw.com
dov.gottlieb@stblaw.com
olivia.acuna@stblaw.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

# Exhibit 2A

## Notice of Non-Voting Status and Opt-In Form to Holders or Potential Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan

**(Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims))**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| GETTY IMAGES HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-11643(___) |
| Debtors. | ) | (Joint Administration Requested) |

**NOTICE OF NON-VOTING STATUS**
**TO HOLDERS OR POTENTIAL HOLDERS OF UNIMPAIRED**
**CLAIMS CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN (CLASS 1 AND CLASS 2)**

**PLEASE TAKE NOTICE THAT** on [●], the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. [●]] (the "Scheduling and Solicitation Order"): (a) conditionally approving the procedures pursuant to which the above-captioned debtors and debtors in possession (collectively, the "Debtors") solicited votes, prior to the commencement of these chapter 11 cases, on the *Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the solicitation materials and documents included in the solicitation packages; (c) conditionally approving procedures for soliciting, receiving, and tabulating votes on the Plan, and approving procedures for filing objections to the Plan; and (d) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim under the Plan, ***you are not entitled to vote on the Plan***. Specifically, under the terms of the Plan, as a Holder of a Claim (as currently asserted against the Debtors) that is not Impaired and conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, you are ***not*** entitled to vote on the Plan. Your treatment under the Plan will be consistent with the other Holders of Claims that are in one of the below Classes:

[1] The anticipated Debtors in these chapter 11 cases, along with the last four digits of each anticipated Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the anticipated Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

[2] Capitalized terms used but not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

| Class | Treatment |
| --- | --- |
| Class 1 – Other Secured Claims | Each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor or Reorganized Debtor with the consent of each Plan Sponsor, either: (i) payment in full in Cash of its Allowed Other Secured Claim; (ii) the collateral securing its Allowed Other Secured Claim; (iii) Reinstatement of its Allowed Other Secured Claim; or (iv) such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code. |
| Class 2 – Other Priority Claims | Each Holder of an Allowed Other Priority Claim shall receive treatment in a manner consistent with section 1129(a)(9) of the Bankruptcy Code. |

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and the adequacy of the Disclosure Statement (the "Combined Hearing") will commence on **December 14, 2026, at [●], prevailing Eastern Time**, before the Honorable Judge [●], in the United States Bankruptcy Court for the District of Delaware, located at 824 North Market Street, [●] Floor, Courtroom [●], Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan and the adequacy of the Disclosure Statement is **November 30, 2026, at 5:00 p.m., prevailing Eastern Time** (the "Objection Deadline"). All objections to the relief sought at the Combined Hearing ***must***: (a) be in writing; (b) conform to the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) set forth the name of the objecting party, the amount and nature of such party's Claim or Interest, the basis for the objection, and the specific grounds thereof; and (d) be filed with the Court, together with proof of service, and served on the Notice Parties (as defined in the Scheduling and Solicitation Order and identified in the combined notice served herewith) so as to be actually received on or before the Objection Deadline.

**PLEASE TAKE FURTHER NOTICE THAT** ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.D CONTAINS A THIRD PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER. Not consenting to the releases contained in Article VIII.D of the Plan is at your discretion. If you submit the Opt-In Form annexed hereto with the opt-in box checked, you will consent to the releases contained in Article VIII.D of the Plan to the maximum extent permitted by applicable law. If you do not submit the Opt-In Form, you will not be deemed to consent to the releases contained in Article VIII.D of the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a physical copy of the Disclosure Statement, the Plan, the Plan Supplement, the Opt-In Form, or related documents, you should contact Kroll Restructuring Administration LLC, the claims and noticing agent retained by the Debtors in these chapter 11 cases (the "Claims and Noticing Agent"), by: (a) writing via first-class mail, to Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232; (b) writing via electronic mail to GettyImagesInfo@ra.kroll.com (with "Getty

Images Holdings, Inc. Solicitation Inquiry" in the subject line); or (c) calling the Debtors' restructuring hotline at (844) 408-3675 (U.S./Canada, toll-free) or +1 (646) 825-2402 (International, toll). You may also obtain copies of any pleadings filed in these chapter 11 cases (i) for a fee via PACER at https://www.deb.uscourts.gov or (ii) at no charge from Kroll Restructuring Administration LLC by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/GettyImages. The initial Plan Supplement will be filed with the Court no later than November 23, 2026, at 11:59 p.m. (prevailing Eastern Time).

[*Remainder of page intentionally left blank*]

Dated: [DATE], 2026
Wilmington, Delaware


*/s/ DRAFT*

**COLE SCHOTZ P.C.**
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (DE Bar No. 5126)
Sarah A. Carnes (*pro hac vice* pending)
Jack M. Dougherty (DE Bar No. 6784)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: svanaalten@coleschotz.com
jalberto@coleschotz.com
scarnes@coleschotz.com
jdougherty@coleschotz.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**SIMPSON THACHER & BARTLETT LLP**
Brian E. Schartz (*pro hac vice* pending)
Elisha D. Graff (*pro hac vice* pending)
Rachael L. Foust (*pro hac vice* pending)
Dov Gottlieb (*pro hac vice* pending)
Olivia F. Acuña (*pro hac vice* pending)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-3702
Facsimile: (212) 455-2502
Email: brian.schartz@stblaw.com
egraff@stblaw.com
rachael.foust@stblaw.com
dov.gottlieb@stblaw.com
olivia.acuna@stblaw.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**OPTIONAL: RELEASE OPT-IN FORM**

You are receiving this optional opt-in form (the "Opt-In Form") because you are or may be a Holder of a Claim or Interest that is not entitled to vote on the *Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* [Docket No. [●]] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"). Holders of Claims or Interests may opt in to the Third-Party Release set forth in the Plan by completing and submitting this form by **November 30, 2026, at 5:00 p.m., prevailing Eastern Time** (as may be extended by the Debtors, subject to the consent rights set forth in the Restructuring Support Agreement, the "Opt-In Deadline"). Holders of Claims or Interests may affirmatively opt in by, no later than the Opt-In Deadline, submitting this form in accordance with the directions herein.

**If you believe you are a Holder of a Claim or Interest with respect to the Debtors and choose to opt in to the Third-Party Release set forth in Article VIII.D of the Plan, please either** (i) promptly complete, sign, and date this Opt-In Form and return it via first-class mail, overnight courier, or hand delivery to Kroll Restructuring Administration LLC (the "Claims and Noticing Agent") at the address set forth below or (ii) submit your Opt-In Form through the Claims and Noticing Agent's online portal (the "Opt-In Portal") in accordance with the directions provided below. Parties that submit their Opt-In Form using the Opt-In Portal should NOT also submit a paper Opt-In Form.

**THIS OPT-IN FORM MUST BE ACTUALLY RECEIVED (WHETHER A PHYSICAL COPY IS RETURNED OR THE OPT-IN FORM IS COMPLETED ONLINE) BY THE CLAIMS AND NOTICING AGENT BY THE OPT-IN DEADLINE. IF THE OPT-IN FORM IS RECEIVED AFTER THE OPT-IN DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1. Releases, Discharge, Injunctions, and Exculpation Under the Plan.**[1]

**Except as expressly set forth in the Plan or the Confirmation Order, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors,**

[1] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. Please read the Plan carefully before completing this Opt-In Form. Defined terms used but not defined herein shall have the meaning ascribed to such term as in the Plan.

**Reorganized Debtors, and their Estates, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights and remedies against the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the Debtors' evaluation and pursuit of strategic alternatives (including any process conducted by or under the direction of the Special Committee), the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Debtors do not, pursuant to the Debtor Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii)**

**any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and the Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Debtors, their Estates, or the Reorganized Debtors asserting any Claim or Cause of Action released pursuant to the Debtor Release against any of the Released Parties.**

<u>Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "Third-Party Release"):</u>

**Effective on the Effective Date, except as expressly set forth in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable Law, as such Law may be extended or interpreted after the date upon which the Bankruptcy Court enters the Confirmation Order, on or after the Effective Date, each Released Party is hereby deemed expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, remedies, or liabilities, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that**

**is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Releasing Parties do not, pursuant to the Third-Party Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Third-Party Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release against any of the Released Parties.**

**<u>Definitions Related to the Debtor Release and the Third-Party Release:</u>**

**Under the Plan, "*Causes of Action*" means any and all actions, Claims, interests, remedies, causes of action, controversies, demands, proceedings, agreements, rights, Liens, indemnities, contributions, guaranties, suits, obligations, liabilities, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Causes of Action also include: (a) any and all rights of setoff, counterclaim, or recoupment, and Claims for breach of contract or for breach of duties imposed by law or in equity; (b) any and all rights to dispute, object to, compromise, or seek to recharacterize, reclassify, subordinate, or disallow Claims against or Interests in the Debtors; (c) any and all Claims pursuant to section 362 or Avoidance Actions; (d) any and all Claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any and all state or foreign law fraudulent transfer or similar Claims.**

**Under the Plan, "*Released Parties*" means collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Releasing Party; (h) each current and former Affiliate of each Entity in clause (a) through clause (g); and (i) each Related Party of each Entity in clause (a) through clause (h); *provided* that, in each case, an Entity (other than the Debtors, the Reorganized Debtors, the Plan Sponsors, and their respective Related Parties) shall not be a Released Party if it does not affirmatively opt into the releases in the Plan by returning an "opt in" form.**

**Under the Plan, "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Holder of Claims or Interests that affirmatively opts in to the releases provided for in the Plan; (h) each current and former Affiliate of each Entity in clause (a) through clause (g) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan under applicable Law; and (i) each Related Party of each Entity in clause (a) through clause (h) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable Law; *provided* that no Agent/Trustee shall be deemed to grant any release on behalf of, or to bind, any Holder for which it acts, and no Agent/Trustee shall be required to take any action in connection with the solicitation of opt-in elections.**

**Under the Plan, "*Related Party*" means, with respect to any Entity, (a) such Entity, (b) such Entity's predecessors, successors and assigns, parents, subsidiaries, Affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers, (c) with respect to each Plan Sponsor, its associated trusts (and its holding vehicles who are direct holders of interests**

**in the applicable Plan Sponsor, its affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers) that are Holders of Interests in Holdings, (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's respective current and former officers, directors, principals, current or former equity holders (regardless of whether such interests are held directly or indirectly and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, managers, partners, employees, agents, trustees, beneficiaries, settlors, protectors, family offices, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (e) with respect to each of the foregoing in clauses (a)–(d), such Entity's respective heirs, executors, estates, servants, and nominees.**

**Under the Plan, "*Exculpated Parties*" means, collectively, each of the following in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) members of the Special Committee; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), (i) their respective current officers, their current and former directors, and limited liability company managers, who served in such capacity at any time between the Petition Date and the Effective Date, and (ii) each of their attorneys, financial advisors, investment bankers, consultants, and other professionals or advisors whose retentions were approved by the Bankruptcy Court pursuant to an order approving such professional's and advisor's retention application, as applicable.**

**OPTIONAL RELEASE ELECTION. YOU MAY ELECT TO OPT IN TO THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN ONLY IF YOU CHECK THE BOX BELOW:**

☐ **The Undersigned Holder of Claims elects to OPT IN to the Third-Party Release**

**Election to withhold consent is at your option. If you would otherwise be entitled to a release under the Plan but you do not elect to opt in to the Third-Party Release, you will not be granted a release from the Releasing Parties under the Plan.**

**Article VIII.E of the Plan provides for an exculpation of certain parties (the "Exculpation"):**

**To the fullest extent permitted by applicable Law, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the Debtors' in- or out-of-**

**court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place between the Petition Date and the Effective Date related or relating to the foregoing, except for claims related to any act or omission that is determined in a final order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

**The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, including the issuance of securities thereunder, and, therefore, are not, and on account of such solicitation, distributions, or issuance shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan, including the issuance of securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth in the Plan shall not be construed as exculpating any party or Entity from its post-Effective Date obligations under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Article VIII.F of the Plan establishes an injunction (the "Injunction"):**

**Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation (in each case, as set forth in the above Discharge, Release, Third-Party Release, and Exculpation sections of the Plan), whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, affiliates, and Related Parties, are permanently enjoined, from and**

**after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action unless such Holder has timely Filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise (*provided* that this clause (d) shall not apply to any Bank Product Provider in respect of the Bank Product Obligations, as set forth in Article VI.L of the Plan); and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action released or settled pursuant to the Plan.**

**By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above. The injunctions set forth above shall extend to any successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any post-Effective Date obligations of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**<u>Item 2</u>. Certifications.**

By signing this Opt-In Form, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a) as of the Voting Record Date, either: (i) the Entity is the Holder of a Claim; or (ii) the Entity is an authorized signatory for the Entity that is a Holder of a Claim;

(b) the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the *Notice of Non-Voting Status and Opt-In Form to Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan (Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims))* and that this Opt-In Form is made pursuant to the terms and conditions set forth therein;

(c) the Entity has submitted the same respective election concerning the releases with respect to all Claims or Interests in a single Class; and

(d) no other Opt-In Form has been submitted or, if any other Opt-In Forms have been submitted with respect to such Claims, then any such earlier Opt-In Forms are hereby revoked.

Name of Holder:________________________________________________
(*print or type*)

Signature: __________________________________________________

Name of Signatory: _____________________________________________
(*if other than Holder*)

Title: ______________________________________________________

Address:____________________________________________________

____________________________________________________

____________________________________________________

Telephone Number: _____________________________________________

Email: ____________________________________________________

Date Completed: _______________________________________________

**<u>If Submitting Your Opt-In Form Online through the Opt-In Portal:</u>**

**The Claims and Noticing Agent will accept Opt-In Forms if properly completed through the Opt-In Portal. To submit your customized electronic Opt-In Form via the Opt-In Portal, visit <u>https://restructuring.ra.kroll.com/gettyimages</u>, click on the "Submit E-Ballot" link located on the left-hand navigation panel of the landing page and follow directions provided therein to complete and submit your Opt-In Form.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Opt-In Form:**

**Unique E-Opt-In ID #:_____________________________________**

**Submission of your Opt-In Form via the Claims and Noticing Agent's Opt-In Portal is the sole manner in which Opt-In Forms will be accepted via electronic or**

**online transmission. Opt-In Forms submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.**

**If you cast an Opt-In Form using the Opt-In Portal you should NOT also submit the paper original of your Opt-In Form.**

---

**If Submitting Your Opt-In Form via First Class Mail, Overnight Courier or Hand Delivery:**

**Submit your completed and signed Opt-In Form by first-class mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:**

**Getty Images Holdings, Inc. Ballot Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

**(To arrange hand delivery of your Opt-In Form, please email GettyImagesBallots@ra.kroll.com (with "Getty Images Opt-In Form Submission" in the subject line) at least 24 hours prior to your arrival at the address above and provide the anticipated date and time of delivery.)**

**IF YOU HAVE MADE THE OPTIONAL OPT-IN ELECTION, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-IN FORM AND RETURN IT PROMPTLY BY ONLY ONE OF THE METHODS ABOVE.**

**THE OPT-IN DEADLINE IS NOVEMBER 30, 2026, AT 5:00 P.M., PREVAILING EASTERN TIME.**

THE CLAIMS AND NOTICING AGENT MUST ACTUALLY RECEIVE YOUR OPT IN ELECTION ON OR BEFORE THE OPT-IN DEADLINE. IF YOU HAVE ANY QUESTIONS REGARDING THIS OPT-IN FORM, PLEASE EMAIL GETTYIMAGESINFO@RA.KROLL.COM (WITH "GETTY IMAGES SOLICITATION INQUIRY" IN THE SUBJECT LINE) OR CALL (844) 408-3675 (U.S./CANADA, TOLL FREE) OR +1 (646) 825-2402 (INTERNATIONAL TOLL) FOR FURTHER ASSISTANCE.

# Exhibit 2B

**Notice of Non-Voting Status to Holders or Potential Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan**

**(Class 6 (General Unsecured Claims))**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| GETTY IMAGES HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-11643(___) |
| Debtors. | ) | (Joint Administration Requested) |

**NOTICE OF NON-VOTING STATUS**
**TO HOLDERS OR POTENTIAL HOLDERS OF UNIMPAIRED**
**CLAIMS CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN (CLASS 6)**

**PLEASE TAKE NOTICE THAT** on [●], the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. [●]] (the "Scheduling and Solicitation Order"): (a) conditionally approving the procedures pursuant to which the above-captioned debtors and debtors in possession (collectively, the "Debtors") solicited votes, prior to the commencement of these chapter 11 cases, on the *Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the solicitation materials and documents included in the solicitation packages; (c) conditionally approving procedures for soliciting, receiving, and tabulating votes on the Plan, and approving procedures for filing objections to the Plan; and (d) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim under the Plan, ***you are not entitled to vote on the Plan***. Specifically, under the terms of the Plan, as a Holder of a Claim (as currently asserted against the Debtors) that is not Impaired and conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, you are ***not*** entitled to vote on the Plan. Your treatment under the Plan will be consistent with the other Holders of Claims that are in the below Class:

[1] The anticipated Debtors in these chapter 11 cases, along with the last four digits of each anticipated Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the anticipated Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

[2] Capitalized terms used but not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

| Class | Treatment |
|---|---|
| Class 6 – General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall receive, at the Debtors' option with the consent of each Plan Sponsor, (i) payment in full in Cash; (ii) Reinstatement; or (iii) such other treatment rendering such Allowed General Unsecured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code. |

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and the adequacy of the Disclosure Statement (the "Combined Hearing") will commence on **December 14, 2026, at [●], prevailing Eastern Time**, before the Honorable Judge [●], in the United States Bankruptcy Court for the District of Delaware, located at 824 North Market Street, [●] Floor, Courtroom [●], Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan and the adequacy of the Disclosure Statement is **November 30, 2026, at 5:00 p.m., prevailing Eastern Time** (the "Objection Deadline"). All objections to the relief sought at the Combined Hearing ***must***: (a) be in writing; (b) conform to the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) set forth the name of the objecting party, the amount and nature of such party's Claim or Interest, the basis for the objection, and the specific grounds thereof; and (d) be filed with the Court, together with proof of service, and served on the Notice Parties (as defined in the Scheduling and Solicitation Order and identified in the combined notice served herewith) so as to be actually received on or before the Objection Deadline.

**PLEASE TAKE FURTHER NOTICE THAT** ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.D CONTAINS A THIRD PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a physical copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Kroll Restructuring Administration LLC, the claims and noticing agent retained by the Debtors in these chapter 11 cases (the "Claims and Noticing Agent"), by: (a) writing via first-class mail, to Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232; (b) writing via electronic mail to GettyImagesInfo@ra.kroll.com (with "Getty Images Holdings, Inc. Solicitation Inquiry" in the subject line); or (c) calling the Debtors' restructuring hotline at (844) 408-3675 (U.S./Canada, toll-free) or +1 (646) 825-2402 (International, toll). You may also obtain copies of any pleadings filed in these chapter 11 cases (i) for a fee via PACER at https://www.deb.uscourts.gov or (ii) at no charge from Kroll Restructuring Administration LLC by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/GettyImages. The initial Plan Supplement will be filed with the Court no later than November 23, 2026, at 11:59 p.m. (prevailing Eastern Time).

[*Remainder of page intentionally left blank*]

Dated: [DATE], 2026
Wilmington, Delaware

*/s/ DRAFT*
**COLE SCHOTZ P.C.**
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (DE Bar No. 5126)
Sarah A. Carnes (*pro hac vice* pending)
Jack M. Dougherty (DE Bar No. 6784)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: svanaalten@coleschotz.com
jalberto@coleschotz.com
scarnes@coleschotz.com
jdougherty@coleschotz.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**SIMPSON THACHER & BARTLETT LLP**
Brian E. Schartz (*pro hac vice* pending)
Elisha D. Graff (*pro hac vice* pending)
Rachael L. Foust (*pro hac vice* pending)
Dov Gottlieb (*pro hac vice* pending)
Olivia F. Acuña (*pro hac vice* pending)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-3702
Facsimile: (212) 455-2502
Email: brian.schartz@stblaw.com
egraff@stblaw.com
rachael.foust@stblaw.com
dov.gottlieb@stblaw.com
olivia.acuna@stblaw.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

# Exhibit 2C

**Notice of Non-Voting Status and Opt-In Form to Holders of Impaired Interests Conclusively Deemed to Reject the Plan (Class 9 (Holdings Interests))**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| GETTY IMAGES HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-11643(___) |
| Debtors. | ) | (Joint Administration Requested) |

**NOTICE OF NON-VOTING STATUS TO HOLDERS OF IMPAIRED INTERESTS CONCLUSIVELY DEEMED TO REJECT THE PLAN (CLASS 9)**

**PLEASE TAKE NOTICE THAT** on [●], the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. [●]] (the "Scheduling and Solicitation Order"): (a) conditionally approving the procedures pursuant to which the above-captioned debtors and debtors in possession (collectively, the "Debtors") solicited votes, prior to the commencement of these chapter 11 cases, on the *Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the solicitation materials and documents included in the solicitation packages; (c) conditionally approving procedures for soliciting, receiving, and tabulating votes on the Plan, and approving procedures for filing objections to the Plan; and (d) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Interest under the Plan, ***you are not entitled to vote on the Plan***. Specifically, under the terms of the Plan, as a Holder of an Interest that is Impaired and conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, you are ***not*** entitled to vote on the Plan. Your treatment under the Plan will be consistent with the other Holders of Interests that are in the below Class:

1 The anticipated Debtors in these chapter 11 cases, along with the last four digits of each anticipated Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the anticipated Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

2 Capitalized terms used but not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

| Class | Treatment |
| --- | --- |
| Class 9<br>Holdings Interests | On the Effective Date, each Holder of an Allowed Holdings Interest shall have such Interest cancelled, discharged, and extinguished without receiving any distribution on account of such Interest. |

| SECURITY DESCRIPTION | CUSIP / ISIN |
| --- | --- |
| **Common Stock** | **CUSIP - 374275105<br>/ ISIN - US3742751056** |

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and the adequacy of the Disclosure Statement (the "Combined Hearing") will commence on **December 14, 2026, at [●], prevailing Eastern Time**, before the Honorable Judge [●], in the United States Bankruptcy Court for the District of Delaware, located at 824 North Market Street, [●] Floor, Courtroom [●], Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan and the adequacy of the Disclosure Statement is **November 30, 2026, at 5:00 p.m., prevailing Eastern Time** (the "Objection Deadline"). All objections to the relief sought at the Combined Hearing ***must***: (a) be in writing; (b) conform to the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) set forth the name of the objecting party, the amount and nature of such party's Claim or Interest, the basis for the objection, and the specific grounds thereof; and (d) be filed with the Court, together with proof of service, and served on the Notice Parties (as defined in the Scheduling and Solicitation Order and identified in the combined notice served herewith) so as to be actually received on or before the Objection Deadline.

**PLEASE TAKE FURTHER NOTICE THAT** ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.D CONTAINS A THIRD PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER. Not consenting to the releases contained in Article VIII.D of the Plan is at your discretion. If you submit the Opt-In Form annexed hereto with the opt-in box checked, you will consent to the releases contained in Article VIII.D of the Plan to the maximum extent permitted by applicable law. If you do not submit the Opt-In Form, you will not be deemed to consent to the releases contained in Article VIII.D of the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a physical copy of the Disclosure Statement, the Plan, the Plan Supplement, the Opt-In Form, or related documents, you should contact Kroll Restructuring Administration LLC, the claims and noticing agent retained by the Debtors in these chapter 11 cases (the "Claims and Noticing Agent"), by: (a) writing via

first-class mail, to Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232; (b) writing via electronic mail to GettyImagesInfo@ra.kroll.com (with "Getty Images Holdings, Inc. Solicitation Inquiry" in the subject line); or (c) calling the Debtors' restructuring hotline at (844) 408-3675 (U.S./Canada, toll-free) or +1 (646) 825-2402 (International, toll). You may also obtain copies of any pleadings filed in these chapter 11 cases (i) for a fee via PACER at https://www.deb.uscourts.gov or (ii) at no charge from Kroll Restructuring Administration LLC by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/GettyImages. The initial Plan Supplement will be filed with the Court no later than November 23, 2026, at 11:59 p.m. (prevailing Eastern Time).

[*Remainder of page intentionally left blank*]

Dated: [DATE], 2026
Wilmington, Delaware

*<u>/s/ DRAFT</u>*

**COLE SCHOTZ P.C.**
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (DE Bar No. 5126)
Sarah A. Carnes (*pro hac vice* pending)
Jack M. Dougherty (DE Bar No. 6784)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: svanaalten@coleschotz.com
jalberto@coleschotz.com
scarnes@coleschotz.com
jdougherty@coleschotz.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**SIMPSON THACHER & BARTLETT LLP**
Brian E. Schartz (*pro hac vice* pending)
Elisha D. Graff (*pro hac vice* pending)
Rachael L. Foust (*pro hac vice* pending)
Dov Gottlieb (*pro hac vice* pending)
Olivia F. Acuña (*pro hac vice* pending)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-3702
Facsimile: (212) 455-2502
Email: brian.schartz@stblaw.com
egraff@stblaw.com
rachael.foust@stblaw.com
dov.gottlieb@stblaw.com
olivia.acuna@stblaw.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**OPTIONAL: RELEASE OPT-IN FORM**

You are receiving this optional opt-in form (the "Opt-In Form") because you are or may be a Holder of a Claim or Interest that is not entitled to vote on the *Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* [Docket No. [●]] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"). Holders of Claims or Interests may opt in to the Third-Party Release set forth in the Plan by completing and submitting this form by **November 30, 2026, at 5:00 p.m., prevailing Eastern Time** (as may be extended by the Debtors, subject to the consent rights set forth in the Restructuring Support Agreement, the "Opt-In Deadline"). Holders of Claims or Interests may affirmatively opt in by, no later than the Opt-In Deadline, submitting this form in accordance with the directions herein.

**If you believe you are a Holder of a Claim or Interest with respect to the Debtors and choose to opt in to the Third-Party Release set forth in Article VIII.D of the Plan, please either** (i) promptly complete, sign, and date this Opt-In Form and return it via first-class mail, overnight courier, or hand delivery to Kroll Restructuring Administration LLC (the "Claims and Noticing Agent") at the address set forth below or (ii) submit your Opt-In Form through the Claims and Noticing Agent's online portal (the "Opt-In Portal") or the online portal created for Holders of Holdings Interests held in "street name" through a Nominee (the "Public Equity Opt-In Portal") in accordance with the directions provided below. Parties that submit their Opt-In Form using the Opt-In Portal or the Public Equity Opt-In Portal should NOT also submit a paper Opt-In Form.

**THIS OPT-IN FORM MUST BE ACTUALLY RECEIVED (WHETHER A PHYSICAL COPY IS RETURNED OR THE OPT-IN FORM IS COMPLETED ONLINE) BY THE CLAIMS AND NOTICING AGENT BY THE OPT-IN DEADLINE. IF THE OPT-IN FORM IS RECEIVED AFTER THE OPT-IN DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1. Releases, Discharge, Injunctions, and Exculpation Under the Plan.**[1]

**Except as expressly set forth in the Plan or the Confirmation Order, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, that the Debtors, their Estates, or the Reorganized**

---

[1] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. Please read the Plan carefully before completing this Opt-In Form. Defined terms used but not defined herein shall have the meaning ascribed to such term as in the Plan.

**Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights and remedies against the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the Debtors' evaluation and pursuit of strategic alternatives (including any process conducted by or under the direction of the Special Committee), the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Debtors do not, pursuant to the Debtor Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan**

**Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and the Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Debtors, their Estates, or the Reorganized Debtors asserting any Claim or Cause of Action released pursuant to the Debtor Release against any of the Released Parties.**

**Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "Third-Party Release"):**

**Effective on the Effective Date, except as expressly set forth in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable Law, as such Law may be extended or interpreted after the date upon which the Bankruptcy Court enters the Confirmation Order, on or after the Effective Date, each Released Party is hereby deemed expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, remedies, or liabilities, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any**

**Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Releasing Parties do not, pursuant to the Third-Party Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Third-Party Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release against any of the Released Parties.**

**<u>Definitions Related to the Debtor Release and the Third-Party Release:</u>**

**Under the Plan, "*Causes of Action*" means any and all actions, Claims, interests, remedies, causes of action, controversies, demands, proceedings, agreements, rights, Liens, indemnities, contributions, guaranties, suits, obligations, liabilities, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Causes of Action also include: (a) any and all rights of setoff, counterclaim, or recoupment, and Claims for breach of contract or for breach of duties imposed by law or in equity; (b) any and all rights to dispute, object to, compromise, or seek to recharacterize, reclassify, subordinate, or disallow Claims against or Interests in the Debtors; (c) any and all Claims pursuant to section 362 or Avoidance Actions; (d) any and all Claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any and all state or foreign law fraudulent transfer or similar Claims.**

**Under the Plan, "*Released Parties*" means collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Releasing Party; (h) each current and former Affiliate of each Entity in clause (a) through clause (g); and (i) each Related Party of each Entity in clause (a) through clause (h); *provided* that, in each case, an Entity (other than the Debtors, the Reorganized Debtors, the Plan Sponsors, and their respective Related Parties) shall not be a Released Party if it does not affirmatively opt into the releases in the Plan by returning an "opt in" form.**

**Under the Plan, "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Holder of Claims or Interests that affirmatively opts in to the releases provided for in the Plan; (h) each current and former Affiliate of each Entity in clause (a) through clause (g) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan under applicable Law; and (i) each Related Party of each Entity in clause (a) through clause (h) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable Law; *provided* that no Agent/Trustee shall be deemed to grant any release on behalf of, or to bind, any Holder for which it acts, and no Agent/Trustee shall be required to take any action in connection with the solicitation of opt-in elections.**

**Under the Plan, "*Related Party*" means, with respect to any Entity, (a) such Entity, (b) such Entity's predecessors, successors and assigns, parents, subsidiaries, Affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers, (c) with respect to each Plan Sponsor, its associated trusts (and its holding vehicles who are direct holders of interests**

**in the applicable Plan Sponsor, its affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers) that are Holders of Interests in Holdings, (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's respective current and former officers, directors, principals, current or former equity holders (regardless of whether such interests are held directly or indirectly and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, managers, partners, employees, agents, trustees, beneficiaries, settlors, protectors, family offices, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (e) with respect to each of the foregoing in clauses (a)–(d), such Entity's respective heirs, executors, estates, servants, and nominees.**

**Under the Plan, "*Exculpated Parties*" means, collectively, each of the following in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) members of the Special Committee; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), (i) their respective current officers, their current and former directors, and limited liability company managers, who served in such capacity at any time between the Petition Date and the Effective Date, and (ii) each of their attorneys, financial advisors, investment bankers, consultants, and other professionals or advisors whose retentions were approved by the Bankruptcy Court pursuant to an order approving such professional's and advisor's retention application, as applicable.**

**<u>OPTIONAL RELEASE ELECTION</u>. YOU MAY ELECT TO OPT IN TO THE RELEASE CONTAINED IN <u>ARTICLE VIII.D</u> OF THE PLAN ONLY IF YOU CHECK THE BOX BELOW:**

☐ **The Undersigned Holder of Interests elects to <u>OPT IN to the Third-Party Release</u>**

**Election to withhold consent is at your option. If you would otherwise be entitled to a release under the Plan but you do not elect to opt in to the Third-Party Release, you will not be granted a release from the Releasing Parties under the Plan.**

**<u>Article VIII.E of the Plan provides for an exculpation of certain parties (the "Exculpation")</u>:**

**To the fullest extent permitted by applicable Law, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the Debtors' in- or out-of-**

**court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place between the Petition Date and the Effective Date related or relating to the foregoing, except for claims related to any act or omission that is determined in a final order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

**The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, including the issuance of securities thereunder, and, therefore, are not, and on account of such solicitation, distributions, or issuance shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan, including the issuance of securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth in the Plan shall not be construed as exculpating any party or Entity from its post-Effective Date obligations under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Article VIII.F of the Plan establishes an injunction (the "Injunction"):**

**Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation (in each case, as set forth in the above Discharge, Release, Third-Party Release, and Exculpation sections of the Plan), whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, affiliates, and Related Parties, are permanently enjoined, from and**

**after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action unless such Holder has timely Filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise (provided that this clause (d) shall not apply to any Bank Product Provider in respect of the Bank Product Obligations, as set forth in Article VI.L of the Plan); and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action released or settled pursuant to the Plan.**

**By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above. The injunctions set forth above shall extend to any successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any post-Effective Date obligations of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Item 2. Certifications.**

By signing this Opt-In Form, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a) as of the Voting Record Date, either: (i) the Entity is the Holder of an Interest; or (ii) the Entity is an authorized signatory for the Entity that is a Holder of an Interest;

(b) the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the *Notice of Non-Voting Status and Opt-In Form to Holders of Impaired Interests Conclusively Deemed to Reject the Plan (Class 9 (Holdings Interests))* and that this Opt-In Form is made pursuant to the terms and conditions set forth therein;

(c) the Entity has submitted the same respective election concerning the releases with respect to all Interests in a single Class; and

(d) no other Opt-In Form has been submitted or, if any other Opt-In Forms have been submitted with respect to such Interests, then any such earlier Opt-In Forms are hereby revoked.

Name of Holder:____________________________________________
(*print or type*)

Signature: ________________________________________________

Name of Signatory: __________________________________________
(*if other than Holder*)

Title: ____________________________________________________

Address:__________________________________________________

__________________________________________________

__________________________________________________

Telephone Number: __________________________________________

Email: ___________________________________________________

Date Completed: ___________________________________________

**<u>If Submitting Your Opt-In Form Online through the Opt-In Portal:</u>**

**The Claims and Noticing Agent will accept Opt-In Forms if properly completed through the Opt-In Portal. To submit your customized electronic Opt-In Form via the Opt-In Portal, visit <u>https://restructuring.ra.kroll.com/gettyimages</u>, click on the "Submit E-Ballot" link located on the left-hand navigation panel of the landing page and follow directions provided therein to complete and submit your Opt-In Form.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Opt-In Form:**

**Unique E-Opt-In ID #:__________________________________**

**Submission of your Opt-In Form via the Claims and Noticing Agent's Opt-In Portal (or, in the case of Beneficial Holders of Holdings Interests, the Public Equity Opt-In Portal described below) is the sole manner in which Opt-In Forms will be**

**accepted via electronic or online transmission. Opt-In Forms submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.**

**If you cast an Opt-In Form using the Opt-In Portal you should NOT also submit the paper original of your Opt-In Form.**

---

**If Submitting Your Opt-In Form via First Class Mail, Overnight Courier or Hand Delivery:**

**Submit your completed and signed Opt-In Form by first-class mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:**

**Getty Images Holdings, Inc. Ballot Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

**(To arrange hand delivery of your Opt-In Form, please email GettyImagesBallots@ra.kroll.com (with "Getty Images Opt-In Form Submission" in the subject line) at least 24 hours prior to your arrival at the address above and provide the anticipated date and time of delivery.)**

For all persons or entities who hold one or more positions in Class 9 (Holdings Interests) (as identified by the CUSIP and ISIN set forth below) in "street name" at a bank, broker, or other intermediary, through DTC or another similar depository (such Holders being "Beneficial Holders" of the Debtors' Holdings Interests):

**CUSIP 374275105 / ISIN US3742751056 (Common Stock) (Getty Images Holdings Inc)**

**By electronic, online submission:**

As a Beneficial Holder of the Debtors' Holdings Interests referenced above, you will not be issued a Unique E-Opt-In ID# to retrieve and submit the customized electronic version of your Opt-In Form. Instead, click on the "Public Equity Opt-In Portal" link located on the left-hand navigation panel of the Debtors' restructuring website at: https://restructuring.ra.kroll.com/gettyimages to upload a .pdf of your completed Opt-In Form. For the avoidance of doubt, only Holders of the above-referenced equity securities, whose ownership thereof is registered in the Holder's own name directly on the books and records of the Debtors and/or the Debtors' transfer agent, will receive a Unique E-Opt-In ID#, which will enable them to retrieve and submit a customized electronic version of their Opt-In Form through the Opt-In Portal.

**IF YOU HAVE MADE THE OPTIONAL OPT-IN ELECTION, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-IN FORM AND RETURN IT PROMPTLY BY ONLY ONE OF THE METHODS ABOVE.**

**THE OPT-IN DEADLINE IS NOVEMBER 30, 2026, AT 5:00 P.M., PREVAILING EASTERN TIME.**

THE CLAIMS AND NOTICING AGENT MUST ACTUALLY RECEIVE YOUR OPT IN ELECTION ON OR BEFORE THE OPT-IN DEADLINE. IF YOU HAVE ANY QUESTIONS REGARDING THIS OPT-IN FORM, PLEASE EMAIL GETTYIMAGESINFO@RA.KROLL.COM (WITH "GETTY IMAGES SOLICITATION INQUIRY" IN THE SUBJECT LINE) OR CALL (844) 408-3675 (U.S./CANADA, TOLL FREE) OR +1 (646) 825-2402 (INTERNATIONAL TOLL) FOR FURTHER ASSISTANCE.

# Exhibit 2D

**Notice of Non-Voting Status and Opt-In Form to Holders or Potential Holders of Class 10 Section 510(b) Claims Conclusively Deemed to Reject the Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| GETTY IMAGES HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-11643(___) |
| Debtors. | ) | (Joint Administration Requested) |

**NOTICE OF NON-VOTING STATUS AND OPT-IN FORM TO HOLDERS OR POTENTIAL HOLDERS OF CLASS 10 SECTION 510(B) CLAIMS CONCLUSIVELY DEEMED TO REJECT THE PLAN**

**PLEASE TAKE NOTICE THAT** on [●], the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. [●]] (the "Scheduling and Solicitation Order"): (a) conditionally approving the procedures pursuant to which the above-captioned debtors and debtors in possession (collectively, the "Debtors") solicited votes, prior to the commencement of these chapter 11 cases, on the *Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the solicitation materials and documents included in the solicitation packages; (c) conditionally approving procedures for soliciting, receiving, and tabulating votes on the Plan, and approving procedures for filing objections to the Plan; and (d) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim, if any, under the Plan, ***you are not entitled to vote on the Plan***. Receipt of this notice does not, by itself, mean that you hold a Section 510(b) Claim or any other Claim against the Debtors. Specifically, under the terms of the Plan, as a Holder of a Claim, if any (as currently asserted against the Debtors), that is Impaired and conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, you are ***not*** entitled to vote on the Plan. Your treatment under the Plan will be consistent with the other Holders of Claims that are in the below Class.

[1] The anticipated Debtors in these chapter 11 cases, along with the last four digits of each anticipated Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the anticipated Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

[2] Capitalized terms used but not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

| Class | Treatment |
|---|---|
| Class 10 – Section 510(b) Claims | On the Effective Date, each Holder of an Allowed Section 510(b) Claim shall have its Claim cancelled, released, and extinguished without receiving any distribution on account of such Claim. |

| SECURITY DESCRIPTION | CUSIP / ISIN |
|---|---|
| Warrants | CUSIP - 374275113 /<br>ISIN - US3742751130 |

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and the adequacy of the Disclosure Statement (the "Combined Hearing") will commence on **December 14, 2026, at [●], prevailing Eastern Time**, before the Honorable Judge [●], in the United States Bankruptcy Court for the District of Delaware, located at 824 North Market Street, [●] Floor, Courtroom [●], Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan and the adequacy of the Disclosure Statement is **November 30, 2026, at 5:00 p.m., prevailing Eastern Time** (the "Objection Deadline"). All objections to the relief sought at the Combined Hearing ***must***: (a) be in writing; (b) conform to the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) set forth the name of the objecting party, the amount and nature of such party's Claim or Interest, the basis for the objection, and the specific grounds thereof; and (d) be filed with the Court, together with proof of service, and served on the Notice Parties (as defined in the Scheduling and Solicitation Order and identified in the combined notice served herewith) so as to be actually received on or before the Objection Deadline.

**PLEASE TAKE FURTHER NOTICE THAT** ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.D CONTAINS A THIRD PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER. Not consenting to the releases contained in Article VIII.D of the Plan is at your discretion. If you submit the Opt-In Form annexed hereto with the opt-in box checked, you will consent to the releases contained in Article VIII.D of the Plan to the maximum extent permitted by applicable law. If you do not submit the Opt-In Form, you will not be deemed to consent to the releases contained in Article VIII.D of the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a physical copy of the Disclosure Statement, the Plan, the Plan Supplement, the Opt-In Form, or related documents, you should contact Kroll Restructuring Administration LLC, the claims and noticing agent retained by the Debtors in these chapter 11 cases (the "Claims and Noticing Agent"), by: (a) writing via first-class mail, to Kroll Restructuring Administration LLC, 850 3rd Avenue, Suite 412, Brooklyn, New York 11232; (b) writing via electronic mail to GettyImagesInfo@ra.kroll.com (with "Getty Images Holdings, Inc. Solicitation Inquiry" in the subject line); or (c) calling the Debtors' restructuring hotline at (844) 408-3675 (U.S./Canada, toll-free) or +1 (646) 825-2402

(International, toll). You may also obtain copies of any pleadings filed in these chapter 11 cases (i) for a fee via PACER at https://www.deb.uscourts.gov or (ii) at no charge from Kroll Restructuring Administration LLC by accessing the Debtors' restructuring website at https://restructuring.ra.kroll.com/GettyImages. The initial Plan Supplement will be filed with the Court no later than November 23, 2026, at 11:59 p.m. (prevailing Eastern Time).

Dated: [DATE], 2026
Wilmington, Delaware

*/s/ DRAFT*

**COLE SCHOTZ P.C.**
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (DE Bar No. 5126)
Sarah A. Carnes (*pro hac vice* pending)
Jack M. Dougherty (DE Bar No. 6784)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: svanaalten@coleschotz.com
jalberto@coleschotz.com
scarnes@coleschotz.com
jdougherty@coleschotz.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**SIMPSON THACHER & BARTLETT LLP**
Brian E. Schartz (*pro hac vice* pending)
Elisha D. Graff (*pro hac vice* pending)
Rachael L. Foust (*pro hac vice* pending)
Dov Gottlieb (*pro hac vice* pending)
Olivia F. Acuña (*pro hac vice* pending)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-3702
Facsimile: (212) 455-2502
Email: brian.schartz@stblaw.com
egraff@stblaw.com
rachael.foust@stblaw.com
dov.gottlieb@stblaw.com
olivia.acuna@stblaw.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**OPTIONAL: RELEASE OPT-IN FORM**

You are receiving this optional opt-in form (the "Opt-In Form") because you are or may be a Holder of a Claim or Interest that is not entitled to vote on the *Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* [Docket No. [●]] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"). Holders of Claims or Interests may opt in to the Third-Party Release set forth in the Plan by completing and submitting this form by **November 30, 2026, at 5:00 p.m., prevailing Eastern Time** (as may be extended by the Debtors, subject to the consent rights set forth in the Restructuring Support Agreement, the "Opt-In Deadline"). Holders of Claims or Interests may affirmatively opt in by, no later than the Opt-In Deadline, submitting this form in accordance with the directions herein.

**If you believe you are a Holder of a Claim or Interest with respect to the Debtors and choose to opt in to the Third-Party Release set forth in Article VIII.D of the Plan, please either** (i) promptly complete, sign, and date this Opt-In Form and return it via first-class mail, overnight courier, or hand delivery to Kroll Restructuring Administration LLC (the "Claims and Noticing Agent") at the address set forth below or (ii) submit your Opt-In Form through the Claims and Noticing Agent's online portal created for Holders of Warrant Claims held in "street name" through a Nominee (the "Warrant Opt-In Portal") in accordance with the directions provided below. Parties that submit their Opt-In Form using the Warrant Opt-In Portal should NOT also submit a paper Opt-In Form.

**THIS OPT-IN FORM MUST BE ACTUALLY RECEIVED (WHETHER A PHYSICAL COPY IS RETURNED OR THE OPT-IN FORM IS COMPLETED ONLINE) BY THE CLAIMS AND NOTICING AGENT BY THE OPT-IN DEADLINE. IF THE OPT-IN FORM IS RECEIVED AFTER THE OPT-IN DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1. Releases, Discharge, Injunctions, and Exculpation Under the Plan.**[1]

**Except as expressly set forth in the Plan or the Confirmation Order, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, that the Debtors, their Estates, or the Reorganized**

[1] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. Please read the Plan carefully before completing this Opt-In Form. Defined terms used but not defined herein shall have the meaning ascribed to such term as in the Plan.

**Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights and remedies against the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the Debtors' evaluation and pursuit of strategic alternatives (including any process conducted by or under the direction of the Special Committee), the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Debtors do not, pursuant to the Debtor Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan**

**Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and the Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Debtors, their Estates, or the Reorganized Debtors asserting any Claim or Cause of Action released pursuant to the Debtor Release against any of the Released Parties.**

**Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "Third-Party Release"):**

**Effective on the Effective Date, except as expressly set forth in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable Law, as such Law may be extended or interpreted after the date upon which the Bankruptcy Court enters the Confirmation Order, on or after the Effective Date, each Released Party is hereby deemed expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, remedies, or liabilities, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any**

**Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Releasing Parties do not, pursuant to the Third-Party Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Third-Party Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release against any of the Released Parties.**

**<u>Definitions Related to the Debtor Release and the Third-Party Release:</u>**

**Under the Plan, "*Causes of Action*" means any and all actions, Claims, interests, remedies, causes of action, controversies, demands, proceedings, agreements, rights, Liens, indemnities, contributions, guaranties, suits, obligations, liabilities, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Causes of Action also include: (a) any and all rights of setoff, counterclaim, or recoupment, and Claims for breach of contract or for breach of duties imposed by law or in equity; (b) any and all rights to dispute, object to, compromise, or seek to recharacterize, reclassify, subordinate, or disallow Claims against or Interests in the Debtors; (c) any and all Claims pursuant to section 362 or Avoidance Actions; (d) any and all Claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any and all state or foreign law fraudulent transfer or similar Claims.**

**Under the Plan, "*Released Parties*" means collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Releasing Party; (h) each current and former Affiliate of each Entity in clause (a) through clause (g); and (i) each Related Party of each Entity in clause (a) through clause (h); *provided* that, in each case, an Entity (other than the Debtors, the Reorganized Debtors, the Plan Sponsors, and their respective Related Parties) shall not be a Released Party if it does not affirmatively opt into the releases in the Plan by returning an "opt in" form.**

**Under the Plan, "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Holder of Claims or Interests that affirmatively opts in to the releases provided for in the Plan; (h) each current and former Affiliate of each Entity in clause (a) through clause (g) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan under applicable Law; and (i) each Related Party of each Entity in clause (a) through clause (h) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable Law; *provided* that no Agent/Trustee shall be deemed to grant any release on behalf of, or to bind, any Holder for which it acts, and no Agent/Trustee shall be required to take any action in connection with the solicitation of opt-in elections.**

**Under the Plan, "*Related Party*" means, with respect to any Entity, (a) such Entity, (b) such Entity's predecessors, successors and assigns, parents, subsidiaries, Affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers, (c) with respect to each Plan Sponsor, its associated trusts (and its holding vehicles who are direct holders of interests in the applicable Plan Sponsor, its affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors,**

**or managers) that are Holders of Interests in Holdings, (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's respective current and former officers, directors, principals, current or former equity holders (regardless of whether such interests are held directly or indirectly and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, managers, partners, employees, agents, trustees, beneficiaries, settlors, protectors, family offices, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (e) with respect to each of the foregoing in clauses (a)–(d), such Entity's respective heirs, executors, estates, servants, and nominees.**

**Under the Plan, "*Exculpated Parties*" means, collectively, each of the following in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) members of the Special Committee; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), (i) their respective current officers, their current and former directors, and limited liability company managers, who served in such capacity at any time between the Petition Date and the Effective Date, and (ii) each of their attorneys, financial advisors, investment bankers, consultants, and other professionals or advisors whose retentions were approved by the Bankruptcy Court pursuant to an order approving such professional's and advisor's retention application, as applicable.**

**OPTIONAL RELEASE ELECTION. YOU MAY ELECT TO OPT IN TO THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN ONLY IF YOU CHECK THE BOX BELOW:**

☐ **The Undersigned Holder of Claims elects to OPT IN to the Third-Party Release**

**Election to withhold consent is at your option. If you would otherwise be entitled to a release under the Plan but you do not elect to opt in to the Third-Party Release, you will not be granted a release from the Releasing Parties under the Plan.**

**Article VIII.E of the Plan provides for an exculpation of certain parties (the "Exculpation"):**

**To the fullest extent permitted by applicable Law, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan**

**Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place between the Petition Date and the Effective Date related or relating to the foregoing, except for claims related to any act or omission that is determined in a final order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

**The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, including the issuance of securities thereunder, and, therefore, are not, and on account of such solicitation, distributions, or issuance shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan, including the issuance of securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth in the Plan shall not be construed as exculpating any party or Entity from its post-Effective Date obligations under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Article VIII.F of the Plan establishes an injunction (the "Injunction"):**

**Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation (in each case, as set forth in the above Discharge, Release, Third-Party Release, and Exculpation sections of the Plan), whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, affiliates, and Related Parties, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on**

**account of or in connection with or with respect to any such claims, interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action unless such Holder has timely Filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise (provided that this clause (d) shall not apply to any Bank Product Provider in respect of the Bank Product Obligations, as set forth in Article VI.L of the Plan); and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action released or settled pursuant to the Plan.**

**By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above. The injunctions set forth above shall extend to any successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any post-Effective Date obligations of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Item 2. Certifications.**

By signing this Opt-In Form, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a) as of the Voting Record Date, either: (i) the Entity is the Holder of a Section 510(b) Claim; or (ii) the Entity is an authorized signatory for the Entity that is a Holder of a Section 510(b) Claim;

(b) the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the *Notice of Non-Voting Status and Opt-In Form to Holders or Potential Holders of Class 10 Section 510(b) Claims Conclusively Deemed to Reject the Plan* and that this Opt-In Form is made pursuant to the terms and conditions set forth therein;

(c) the Entity has submitted the same respective election concerning the releases with respect to all Claims in a single Class; and

(d) no other Opt-In Form has been submitted or, if any other Opt-In Forms have been submitted with respect to such Claims, then any such earlier Opt-In Forms are hereby revoked.

Name of Holder:________________________________________
(*print or type*)

Signature: ________________________________________

Name of Signatory: ____________________________________
(*if other than Holder*)

Title: ____________________________________________

Address:__________________________________________

____________________________________________

____________________________________________

Telephone Number: ____________________________________

Email: ____________________________________________

Date Completed: ______________________________________

**If Submitting Your Opt-In Form Online through the Warrant Opt-In Portal:**

**The Claims and Noticing Agent will accept Opt-In Forms if properly completed through the Warrant Opt-In Portal. To submit your electronic Opt-In Form via the Public Securities Opt-In Portal, visit https://restructuring.ra.kroll.com/gettyimages, click on the "Warrant Opt-In Portal" link located on the left-hand navigation panel of the landing page and follow directions provided therein to complete and submit your Opt-In Form.**

**Submission of your Opt-In Form via the Claims and Noticing Agent's Warrant Opt-In Portal is the sole manner in which Opt-In Forms will be accepted via electronic or online transmission. Opt-In Forms submitted by facsimile, e-mail, or other means of electronic transmission will not be counted.**

**If you cast an Opt-In Form using the Warrant Opt-In Portal you should NOT also submit the paper original of your Opt-In Form.**

**If Submitting Your Opt-In Form via First Class Mail, Overnight Courier or Hand Delivery:**

**Submit your completed and signed Opt-In Form by first-class mail using the return envelope included in the Solicitation Package (or otherwise), or by hand delivery or overnight courier to:**

**Getty Images Holdings, Inc. Ballot Processing Center**
**c/o Kroll Restructuring Administration LLC**
**850 3rd Avenue, Suite 412**
**Brooklyn, NY 11232**

**(To arrange hand delivery of your Opt-In Form, please email GettyImagesBallots@ra.kroll.com (with "Getty Images Opt-In Form Submission" in the subject line) at least 24 hours prior to your arrival at the address above and provide the anticipated date and time of delivery.)**

**IF YOU HAVE MADE THE OPTIONAL OPT-IN ELECTION, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-IN FORM AND RETURN IT PROMPTLY BY ONLY ONE OF THE METHODS ABOVE.**

**THE OPT-IN DEADLINE IS NOVEMBER 30, 2026, AT 5:00 P.M., PREVAILING EASTERN TIME.**

THE CLAIMS AND NOTICING AGENT MUST ACTUALLY RECEIVE YOUR OPT IN ELECTION ON OR BEFORE THE OPT-IN DEADLINE. IF YOU HAVE ANY QUESTIONS REGARDING THIS OPT-IN FORM, PLEASE EMAIL GETTYIMAGESINFO@RA.KROLL.COM (WITH "GETTY IMAGES OPT-IN INQUIRY" IN THE SUBJECT LINE) OR CALL (844) 408-3675 (U.S./CANADA, TOLL FREE) OR +1 (646) 825-2402 (INTERNATIONAL TOLL) FOR FURTHER ASSISTANCE.

# **Exhibit 3**

## **Publication Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| GETTY IMAGES HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-11643(___) |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. [●]** |

**PLEASE BE ADVISED THAT ARTICLE VIII OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, INCLUDING THOSE SET FORTH BELOW. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE VIII OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED. HOLDERS OF CLAIMS WHO ARE UNIMPAIRED BUT DO NOT TIMELY OPT IN TO THE RELEASES BY SUBMITTING THE OPT-IN ELECTION FORM ATTACHED TO THE APPLICABLE NOTICE OF NON-VOTING STATUS SHALL NOT PROVIDE OR RECEIVE SUCH RELEASES. HOLDERS OF CLAIMS OR INTERESTS WHO ARE DEEMED TO REJECT THE PLAN BUT DO NOT TIMELY OPT IN TO THE RELEASES BY SUBMITTING THE OPT-IN ELECTION FORM ATTACHED TO THE APPLICABLE NOTICE OF NON-VOTING STATUS SHALL NOT PROVIDE OR RECEIVE SUCH RELEASES. HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN THAT DO NOT TIMELY OPT IN TO THE RELEASES BY SUBMITTING THE OPT-IN ELECTION ON THEIR RESPECTIVE BALLOTS MAY NOT PROVIDE OR RECEIVE SUCH RELEASES.**

Please note that, under the Plan, an Entity that timely objects to the releases contained in the Plan, where such objection is not resolved before entry of the Confirmation Order, shall not be a Released Party.

[1] The anticipated Debtors in these chapter 11 cases, along with the last four digits of each anticipated Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the anticipated Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

# NOTICE OF (I) COMMENCEMENT OF PREPACKAGED CHAPTER 11 BANKRUPTCY CASES, (II) COMBINED HEARING TO CONSIDER THE ADEQUACY OF THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER 11 PLAN, (III) ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (IV) RELATED OBJECTION AND BRIEFING DEADLINES

**NOTICE IS HEREBY GIVEN** as follows:

On October 21, 2026 (the "Petition Date"), Getty Images Holdings, Inc. and certain of its affiliates (collectively, the "Debtors") each commenced a case under chapter 11 (collectively, the "Chapter 11 Cases") of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

On the Petition Date, the Debtors filed a joint "prepackaged" plan of reorganization (the "Plan") and a proposed disclosure statement (the "Disclosure Statement") pursuant to sections 1125 and 1126 of the Bankruptcy Code. Solicitation of the Plan commenced prior to the filing of these Chapter 11 Cases on October 20, 2026. Copies of the Plan, the Disclosure Statement, and related documents may be obtained free of charge by visiting the website maintained by the Debtors' notice, claims and solicitation agent, Kroll Restructuring Administration LLC (the "Solicitation Agent"), at https://restructuring.ra.kroll.com/GettyImages. Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.

## I. HEARING ON THE CONFIRMATION OF THE PLAN, ADEQUACY OF THE DISCLOSURE STATEMENT, AND ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A combined hearing to consider adequacy of the Disclosure Statement, confirmation of the Plan, the assumption of Executory Contracts and Unexpired Leases and any objections to any of the foregoing, and any other matter that may properly come before the Court, will be held before the Honorable [●], United States Bankruptcy Judge, in Courtroom No. [●] of the United States Bankruptcy Court, 824 North Market Street, [●]th Floor, Wilmington, Delaware 19801, on **December 14, 2026** at [●] [●].m. (prevailing Eastern Time) or as soon thereafter as counsel may be heard (the "Combined Hearing"). The Combined Hearing may be adjourned from time to time without further notice other than adjournments announced in open court or in the filing of a notice or hearing agenda in the Chapter 11 Cases, and will be available on the electronic case filing docket and the Solicitation Agent's website at https://restructuring.ra.kroll.com/GettyImages.

Any responses or objections to the Disclosure Statement and/or the Plan must (i) be in writing; (ii) conform to the applicable Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); (iii) set forth the name of the objecting party, the amount and nature of such party's Claim or Interest, the basis for the objection and the specific grounds thereof; and (iv) be filed with the Court, together with proof of service, no later than **5:00 p.m. (prevailing Eastern Time) on November 30, 2026**. In addition to being filed with the Court, any responses or

objections must be served on the following parties (the "Notice Parties") so as to be received by such deadline:

(a) the Debtors, Getty Images Holdings, Inc., 605 5th Ave. S. Suite 400, Seattle, Washington 98104, Attn.: Kjelti Kellough (kjelti.kellough@gettyimages.com);

(b) proposed counsel to the Debtors, (i) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attn.: Brian E. Schartz (brian.schartz@stblaw.com), Elisha D. Graff, (egraff@stblaw.com); Rachael L. Foust (rachael.foust@stblaw.com), Dov Gottlieb (dov.gottlieb@stblaw.com), and Olivia F. Acuña (olivia.acuna@stblaw.com); and (ii) Cole Schotz P.C., 500 Delaware Avenue, Suite 600, Wilmington, Delaware 19801, Attn.: Seth Van Aalten (svanaalten@coleschotz.com), Justin R. Alberto (jalberto@coleschotz.com), Sarah A. Carnes (scarnes@coleschotz.com), and Jack M. Dougherty (jdougherty@coleschotz.com);

(c) counsel to the Credit Agreement Agent and the Consenting RCF Lenders, (i) Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn.: Evan Fleck (efleck@milbank.com); Lauren Doyle (ldoyle@milbank.com); and Arden Ham (aham@milbank.com); and (ii) Potter Anderson & Corroon LLP, 1313 N. Market Street, 7th Floor, Wilmington Delaware 19801-6108, Attn.: L. Katherine Good (kgood@potteranderson.com);

(d) counsel to the Plan Sponsors, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn.: John Weber (jweber@paulweiss.com), Robert Britton (rbritton@paulweiss.com), and Chloe Nanfara (cnanfara@paulweiss.com), (ii) Jones Day, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114, Attn.: Carl E. Black (ceblack@jonesday.com), and Jones Day, 250 Vesey Street, New York, New York 10281, Attn.: Nicholas J. Morin (nmorin@jonesday.com) and Nick Buchta (nbuchta@jonesday.com), and (iii) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, Delaware 19801, Attn.: Zachary I. Shapiro (shapiro@rlf.com);

(e) counsel to the Unsecured Noteholders Ad Hoc Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Attn.: Michael Stamer (mstamer@AkinGump.com); Brad Kahn (bkahn@akingump.com); and Stephen B. Kuhn (skuhn@akingump.com);

(f) counsel to the Consenting Secured Lenders, (i) Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166, Attn.: Matthew M. Roose (mroose@gibsondunn.com), Rob E. Fitzgerald (rfitzgerald@gibsondunn.com), Francis Petrie (fpetrie@gibsondunn.com), and Alex Xiao (axiao@gibsondunn.com); and (ii) Pachulski Stang Ziehl &

Jones LLP, 919 North Market Street, Wilmington, Delaware 19801, Attn.: Laura Davis Jones (ljones@pszjlaw.com);

(g) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Benjamin A. Hackman (Benjamin.A.Hackman@usdoj.gov);

(h) the United States Securities and Exchange Commission, 100 Pearl Street, Suite 20-100, New York, New York 10004; and

(i) any statutory committee appointed in these chapter 11 cases.

**UNLESS A RESPONSE OR AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT SHALL NOT BE CONSIDERED BY THE COURT.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS IN ARTICLE VIII OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

## II. NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES

You or one of your affiliates may be a counterparty to one or more contracts or leases that may be an Executory Contract or Unexpired Lease with one or more of the Debtors. In accordance with Article V.A of the Plan, on the Effective Date, except as otherwise provided in the Plan, any Executory Contract or Unexpired Lease of the Debtors is deemed to be assumed by the Debtors or Reorganized Debtors in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that: (1) were previously assumed, assumed and assigned, or rejected by the Debtors; (2) are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (3) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Effective Date; (4) have an ordered or requested effective date of rejection that is after the Effective Date; or (5) expired or terminated pursuant to their own terms prior to the Effective Date.

In accordance with Article V.L of the Plan, each License Agreement[2] shall be assumed by the applicable Debtor pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, subject to Article V.C of the Plan, and entry of the Confirmation Order shall constitute approval of such assumption. Each License Agreement shall be assumed by the same Debtor party to it and shall not be assigned.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts

[2] As set forth in the Plan, "License Agreement" means each license, sublicense, or other agreement granting rights in intellectual property to which a Debtor is a party and that is not identified on the Schedule of Rejected Executory Contracts and Unexpired Leases.

or Unexpired Leases as set forth in the Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination that the Reorganized Debtors have provided adequate assurance of future performance under each assumed Executory Contract and Unexpired Lease.

Except as otherwise specifically set forth in the Plan, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or assumption and assignment, as applicable, of such Executory Contracts or Unexpired Leases as provided for in the Plan, pursuant to sections 365(a) and 1123 of the Bankruptcy Code effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

**ANY COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT DOES NOT TIMELY OBJECT TO THE PROPOSED ASSUMPTION OF SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE BY THE EXECUTORY CONTRACT ASSUMPTION OBJECTION DEADLINE WILL BE DEEMED TO HAVE CONSENTED TO SUCH ASSUMPTION. ANY PROOF OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, WITHOUT PREJUDICE TO PAYMENT IN THE ORDINARY COURSE IN ACCORDANCE WITH THE TERMS OF SUCH CONTRACT OR LEASE.**

**Payment of Cure.** The Debtors are paying, and the Reorganized Debtors will continue to pay, all amounts owed under each Executory Contract and Unexpired Lease in full and in the ordinary course of business in accordance with its terms. Accordingly, any Cure will be paid in the ordinary course of business in accordance with Article V.C of the Plan, no counterparty is required to file or otherwise submit a request for payment of Cure, and counterparties to Executory Contracts or Unexpired Leases do not need to take any action to continue to receive payment under such Executory Contract or Unexpired Lease in the ordinary course.

**ANY COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT DOES NOT TIMELY OBJECT TO THE PROPOSED ASSUMPTION OF SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE ON OR BEFORE NOVEMBER 30, 2026, AT 5:00 P.M. (PREVAILING EASTERN TIME) WILL BE DEEMED TO HAVE CONSENTED TO SUCH ASSUMPTION AND TO THE PAYMENT OF ANY CURE IN ACCORDANCE WITH ARTICLE V.C OF THE PLAN.**

**Objections to the Assumption of Executory Contracts and Unexpired Leases.** If you wish to object to the assumption of an Executory Contract or Unexpired Lease under the Plan, including on the basis of (i) any Cure, (ii) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy

Code), or (iii) an alleged non-monetary default that is required to be cured under section 365(b) of the Bankruptcy Code (each, an "Executory Contract Assumption Objection"), you may assert an Executory Contract Assumption Objection against the Debtors or Reorganized Debtors, as applicable, subject to all defenses the Debtors or Reorganized Debtors may have with respect to such Executory Contract Assumption Objection. Your Executory Contract Assumption Objection must: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof, including any disputed Cure amount and the facts supporting the asserted Cure dispute, adequate-assurance concern, or non-monetary default; and (d) be filed with the Court, together with proof of service, and served on the Notice Parties so as to be received by **November 30, 2026 at 5:00 p.m. (prevailing Eastern Time)** (or such other date as may be established by the Court) (the "Executory Contract Assumption Objection Deadline"). Any counterparty to an assumed Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of such Executory Contract or Unexpired Lease, including an objection regarding any Cure or the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), prior to the Executory Contract Assumption Objection Deadline (i) shall be deemed to have assented to such proposed assumption and to the payment of any Cure in accordance with Article V.C of the Plan and shall be deemed to have forever released and waived such Executory Contract Assumption Objection and shall be precluded from being heard at the Combined Hearing with respect to such objection; and (ii) shall be forever barred from imposing or charging against any Reorganized Debtor any accelerations, increases or any other fees as a result of any assumption pursuant to the Plan.

**UNLESS A RESPONSE OR AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT SHALL NOT BE CONSIDERED BY THE COURT.**

## III. NOTICE REGARDING CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN

**PLEASE BE ADVISED THAT ARTICLE VIII OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE VIII OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**BINDING NATURE OF THE PLAN: UPON THE OCCURRENCE OF THE EFFECTIVE DATE, THE TERMS OF THE PLAN (INCLUDING, FOR THE AVOIDANCE OF DOUBT, THE PLAN SUPPLEMENT) SHALL BE IMMEDIATELY EFFECTIVE AND ENFORCEABLE AND DEEMED BINDING UPON THE DEBTORS, THE REORGANIZED DEBTORS, AND ANY AND ALL HOLDERS OF CLAIMS OR INTERESTS (IRRESPECTIVE OF WHETHER SUCH CLAIMS OR INTERESTS HAVE OR ARE DEEMED TO HAVE ACCEPTED THE PLAN), ALL ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THIS PLAN, EACH ENTITY ACQUIRING PROPERTY UNDER THIS PLAN, AND ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH**

**THE DEBTORS. ALL CLAIMS AND INTERESTS SHALL BE AS FIXED, ADJUSTED, OR COMPROMISED, AS APPLICABLE, PURSUANT TO THIS PLAN REGARDLESS OF WHETHER ANY HOLDER OF A CLAIM OR INTEREST HAS VOTED ON THE PLAN.**

**IF YOU HAVE ANY QUESTIONS ABOUT WHETHER YOU HAVE A CLAIM AGAINST A DEBTOR, PLEASE CALL THE SOLICITATION AGENT AT (844) 408-3675 (U.S./CANADA, TOLL FREE) OR +1 (646) 825-2402 (INTERNATIONAL, TOLL) OR EMAIL GETTYIMAGESINFO@RA.KROLL.COM.**

[*Remainder of page intentionally left blank*]

# **EXHIBIT 4**

**Solicitation Cover Letter**

gettyimages®

October 20, 2026

VIA ELECTRONIC MAIL AND FIRST CLASS OR OVERNIGHT MAIL

**RE**: **Getty Images Holdings, Inc., *et al.* — Solicitation of Votes on the Joint Prepackaged Chapter 11 Plan of Reorganization**

To the Holders of Claims in Class 3 (Revolving Loan Claims), Class 4 (Secured Funded Debt Claims), and Class 5 (Unsecured Notes Claims):

Getty Images Holdings, Inc. and certain of its subsidiaries (collectively, the "Debtors" or the "Company") are soliciting votes to accept the *Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* (as may be amended, modified, or supplemented from time to time and including all exhibits and supplements thereto, the "Plan"). The Debtors have commenced this solicitation before the commencement of the Chapter 11 Cases. Accordingly, as of the commencement of this solicitation, the Debtors have not filed the motion seeking, among other things, approval of the solicitation procedures and the scheduling of a combined hearing on the adequacy of the Disclosure Statement and confirmation of the Plan (the "Scheduling and Solicitation Motion"), and the Bankruptcy Court has not entered any order granting that relief (the "Scheduling and Solicitation Order"); the Debtors expect to seek, and the Bankruptcy Court to consider, that relief only after the commencement of the Chapter 11 Cases. The Plan, and the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* (the "Disclosure Statement") to which the Plan is attached, are enclosed with this letter. Capitalized terms used but not otherwise defined in this letter have the meanings given to such terms in the Plan or the Disclosure Statement, as applicable.

Prior to the commencement of the Chapter 11 Cases, the Company entered into a restructuring support agreement (the "Restructuring Support Agreement") with the Consenting Stakeholders, pursuant to which the Company and the Consenting Stakeholders agreed to a comprehensive restructuring of the Company's balance sheet (the "Restructuring"). The Plan implements the Restructuring and provides, among other things, for: (a) a new-money equity investment in New Getty Images by the Plan Sponsors, as New Equity Investors, in an aggregate amount of $433,212,922.50 less the principal amount of DIP Initial Loans and DIP Final Loans outstanding as of the Effective Date, on the terms set forth in the ECL; (b) the exchange of 11.25% Secured Notes Claims and USD Term Loan Claims for New Notes in an equal principal amount (or, solely to the extent a Holder of USD Term Loan Claims does not agree to receive New Notes, New USD Term Loans), and of EUR Term Loan Claims for New EUR Term Loans in an equal principal amount or, in the case of a Plan Sponsor whose EUR Term Loan Claims are subject to the Equitization Commitment, for the Equitization New Interests; (c) the payment to each Holder of an Unsecured Notes Claim of its *Pro Rata* share of the Unsecured Notes Recovery in Cash; (d) the conversion, in accordance with and subject to the terms of the Exit Term Sheet, of the Revolving Loans and Revolving Credit Commitments in respect of Allowed Revolving Loan Claims into revolving loans and revolving commitments, respectively, under the New RCF in an equal amount on a dollar-for-dollar, cashless basis, together with payment in full in Cash of accrued and unpaid interest, fees, and other amounts due on account of such Claims; (e) the conversion of the DIP Facility, provided by the Plan Sponsors as DIP Lenders, into the DIP New Interests and,

to the extent any DIP Delayed-Draw Loans are outstanding on the Effective Date, the New Preferred Interests; (f) the incurrence by the Reorganized Debtors of the Exit Facilities, consisting of up to approximately $580,000,000 in principal amount of New Notes, any New USD Term Loans issued to Holders of USD Term Loan Claims that do not agree to receive New Notes, approximately €313,900,000 in principal amount of New EUR Term Loans, and the New RCF with commitments of $150,000,000, into which the Revolving Loans and Revolving Credit Commitments will be converted in an equal amount; and (g) each Holder of an Allowed General Unsecured Claim receiving, at the Debtors' option with the consent of each Plan Sponsor, payment in full in Cash, Reinstatement, or such other treatment rendering such Claim Unimpaired. On the Effective Date, the Plan Sponsors will receive 100% of the New Interests issued under the Plan (subject only to dilution by the MIP Interests) and no other Holder of Claims or Interests will receive or retain any New Interests on account of such Claims or Interests.

The Restructuring will reduce the Company's funded indebtedness by over $500 million and its annual interest expense by approximately $65 million, and will provide the Company with incremental liquidity to continue to invest in its business. The Company expects to continue to operate in the ordinary course throughout the Chapter 11 Cases and to emerge from chapter 11 on an expedited basis.

**THE DEBTORS BELIEVE THAT THE PLAN REPRESENTS THE BEST AVAILABLE ALTERNATIVE FOR THE DEBTORS AND THEIR STAKEHOLDERS AND THAT CONFIRMATION AND CONSUMMATION OF THE PLAN IS IN THE BEST INTERESTS OF ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS. ACCORDINGLY, THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN AND SUPPORT CONFIRMATION OF THE PLAN.**

Copies of the following documents are enclosed with this letter for your review (collectively, together with this letter, the "Solicitation Package"): (a) the Disclosure Statement, including the Plan, which is attached to the Disclosure Statement as Exhibit A; and (b) the Ballot applicable to the Class in which you hold a Claim, together with the voting instructions set forth therein and, where applicable, a pre-addressed, postage pre-paid return envelope.

To have your vote counted, you must complete, sign, and return your Ballot in accordance with the instructions set forth in that Ballot so that it is **actually received** by the Solicitation Agent on or before **November 30, 2026 at 5:00 p.m.** (prevailing Eastern Time) (as may be extended by the Debtors, subject to the consent rights set forth in the Restructuring Support Agreement, the "Voting Deadline"). If you are a Beneficial Holder of the 11.25% Secured Notes, the 9.75% Notes, or the 14.00% Notes, you should return your Beneficial Ballot in accordance with the instructions provided by your Nominee and with sufficient time to permit your Nominee to submit a Master Ballot reflecting your vote before the Voting Deadline.

**PLEASE BE ADVISED THAT ARTICLE VIII OF THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS. YOU ARE ADVISED AND ENCOURAGED TO REVIEW AND CONSIDER THE PLAN CAREFULLY, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS SET FORTH IN ARTICLE VIII OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED. VOTING TO ACCEPT THE PLAN DOES NOT, BY ITSELF, MAKE YOU A "RELEASING PARTY" UNDER THE PLAN. WHETHER YOU VOTE TO ACCEPT THE PLAN, ABSTAIN FROM VOTING ON THE PLAN, ARE PRESUMED TO ACCEPT OR DEEMED TO REJECT THE PLAN, OR VOTE TO REJECT THE PLAN, YOU WILL BE A "RELEASING PARTY" UNDER THE PLAN ONLY IF YOU**

**AFFIRMATIVELY OPT IN TO THE THIRD-PARTY RELEASE IN ITEM 3 OF YOUR BALLOT, UNLESS YOU ARE OTHERWISE A "RELEASING PARTY" UNDER THE PLAN. IF YOU VOTE TO ACCEPT THE PLAN AND WISH TO GRANT THE THIRD-PARTY RELEASE, PLEASE CHECK BOTH THE "ACCEPT" BOX IN ITEM 2 AND THE OPT-IN BOX IN ITEM 3 OF YOUR BALLOT.**

If you have any questions regarding this letter, your Ballot, or the Solicitation Package, or if you need additional copies of the Disclosure Statement, the Plan, or any Ballot, please contact the Debtors' proposed notice, claims, and solicitation agent, Kroll Restructuring Administration LLC (the "Solicitation Agent"), by: (a) calling (844) 408-3675 (U.S./CANADA, TOLL FREE) OR +1 (646) 825-2402 (INTERNATIONAL, TOLL); (b) emailing GettyImagesInfo@ra.kroll.com and referencing "GETTY IMAGES BALLOT PROCESSING" in the subject line; or (c) visiting the Debtors' restructuring website at https://restructuring.ra.kroll.com/GettyImages. Completed Ballots must be submitted to in accordance with the instructions included within your Ballot. Please note that the Solicitation Agent is not authorized to, and will not, provide legal advice.

Thank you for your continued support of Getty Images.

Sincerely,

/s/ Craig Peters________
Craig Peters
Chief Executive Officer
Getty Images Holdings, Inc.

# EXHIBIT 5

## Form of Ballot for Holders of Class 3 Revolving Loan Claims

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

**IMPORTANT**: NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF THE DISTRIBUTION OF THIS BALLOT. THE DEBTORS INTEND TO FILE CHAPTER 11 CASES IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE AND SEEK CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT SHORTLY THEREAFTER AS DESCRIBED IN GREATER DETAIL IN THE ACCOMPANYING DISCLOSURE STATEMENT.

| | | |
|---|---|---|
| In re:<br><br>GETTY IMAGES HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | ) | Chapter 11<br><br>**IMPORTANT:** No chapter 11 case has been commenced as of the date of the distribution of this ballot. This ballot is being distributed to you as a part of a prepetition solicitation of votes on a prepackaged plan of reorganization. The Voting Deadline is November 30, 2026 at 5:00 p.m. (prevailing Eastern Time). |

**BALLOT FOR VOTING**
**ON THE JOINT PREPACKAGED**
**CHAPTER 11 PLAN OF REORGANIZATION OF**
**GETTY IMAGES HOLDINGS, INC. AND ITS DEBTOR SUBSIDIARIES**

**CLASS 3 – REVOLVING LOAN CLAIMS**

PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.

THIS BALLOT MUST BE ACTUALLY RECEIVED BY KROLL RESTRUCTURING ADMINISTRATION LLC (THE "SOLICITATION AGENT" OR "KROLL") ON OR BEFORE **NOVEMBER 30, 2026 AT 5:00 P.M. (PREVAILING EASTERN TIME)** (AS MAY BE EXTENDED BY THE DEBTORS, SUBJECT TO THE CONSENT RIGHTS SET FORTH IN THE RESTRUCTURING SUPPORT AGREEMENT, THE "VOTING DEADLINE"). IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE YOUR BALLOT BEFORE THE VOTING DEADLINE, AND UNLESS THE DEBTORS DETERMINE OTHERWISE OR AS PERMITTED BY THE BANKRUPTCY COURT, YOUR VOTE WILL NOT BE COUNTED.

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE VOTING PROCEDURES, OR ANY OF THE SOLICITATION MATERIALS YOU HAVE RECEIVED, OR YOU NEED TO OBTAIN ADDITIONAL SOLICITATION MATERIALS, PLEASE

[1] The anticipated Debtors in the Chapter 11 Cases, along with the last four digits of each anticipated Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the anticipated Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

| |
|---|
| CONTACT KROLL BY: (1) CALLING (844) 408-3675 (U.S./CANADA, TOLL FREE) OR +1 (646) 825-2402 (INTERNATIONAL TOLL), (2) EMAILING GETTYIMAGESBALLOTS@RA.KROLL.COM AND REFERENCING "GETTY IMAGES BALLOT PROCESSING" IN THE SUBJECT LINE, (3) VISITING THE DEBTORS' SOLICITATION WEBSITE AT HTTPS://RESTRUCTURING.RA.KROLL.COM/GETTYIMAGES, AND/OR (4) WRITING TO THE SOLICITATION AGENT AT THE FOLLOWING ADDRESS: GETTY IMAGES BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 THIRD AVENUE, SUITE 412, BROOKLYN, NEW YORK 11232. |

This ballot (this "Ballot") is being sent to you in connection with the *Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* (as may be amended, modified, or supplemented from time to time in accordance with its terms and including all exhibits or supplements thereto, the "Plan") because the books and records maintained by the administrative agent under the Credit Agreement indicate that you are a Holder of a Class 3 Revolving Loan Claim as of October 9, 2026 (the "Voting Record Date"), and, accordingly, you may have a right to vote to accept or reject the Plan. This Ballot may not be used for any purpose other than for submitting votes with respect to the Plan. If you believe you have received this Ballot in error, please contact the Solicitation Agent at the email address or telephone number set forth above.

**Your receipt of this Ballot does not indicate that your Claim has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance of, or distribution on account of, any Claim.**

Your rights are described in the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement"). The solicitation procedures are described in the *Motion of Debtors for Entry of an Order (I) Scheduling Combined Hearing on Adequacy of the Disclosure Statement and Confirmation of the Plan; (II) Fixing Deadline to Object to Disclosure Statement and the Plan; (III) Conditionally Approving Prepetition Solicitation Procedures and Form and Manner of Notice of Commencement, Combined Hearing and Objection Deadline; (IV) Conditionally Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (V) Conditionally (A) Directing the United States Trustee not to Convene Section 341(A) Meeting of Creditors and (B) Waiving Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities and Rule 2015.3 Reports; and (VI) Granting Related Relief*, which the Debtors intend to file on the Petition Date (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Scheduling and Solicitation Motion"), pursuant to which the Debtors will request that the Bankruptcy Court conditionally approve the solicitation procedures (any order granting the Scheduling and Solicitation Motion, the "Scheduling and Solicitation Order"). The Plan and the Disclosure Statement are included in the packet you are receiving together with this Ballot (collectively, with a pre-addressed, postage pre-paid return envelope, the "Solicitation Package"). Upon request, the Solicitation Agent will provide paper copies of the Plan and the Disclosure Statement at the Debtors' expense.

You should carefully and thoroughly review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and classification and treatment of

your Claim under the Plan. Your Claim has been placed in Class 3 (Revolving Loan Claims) under the Plan.

The Debtors intend to commence voluntary cases under chapter 11 of the Bankruptcy Code. The Plan can thereafter be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by at least one impaired Class of creditors and if the Plan otherwise satisfies the applicable requirements of sections 1129(a) and (if not accepted by all Classes of creditors) 1129(b) of the Bankruptcy Code. A Class of creditors accepts the Plan if the Holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims in such Class vote to accept the Plan (the "Requisite Acceptances").

Creditors with Claims sufficient to satisfy the Requisite Acceptances for all impaired Classes entitled to vote have signed a Restructuring Support Agreement obligating such creditors to accept the Plan. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you regardless of whether you vote to accept or reject the Plan.

**YOUR COMPLETED, SIGNED, AND DATED BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BEFORE 5:00 P.M. (PREVAILING EASTERN TIME) ON NOVEMBER 30, 2026 (AS MAY BE EXTENDED BY THE DEBTORS, SUBJECT TO THE CONSENT RIGHTS SET FORTH IN THE RESTRUCTURING SUPPORT AGREEMENT, THE "VOTING DEADLINE") VIA ONE OF THE METHODS LISTED BELOW.**

**IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE YOUR BALLOT BEFORE THE VOTING DEADLINE, AND UNLESS THE DEBTORS DETERMINE OTHERWISE OR AS PERMITTED BY THE BANKRUPTCY COURT, YOUR VOTE WILL NOT BE COUNTED.**

**PLEASE CHOOSE ONLY ONE METHOD TO RETURN YOUR BALLOT.**

(I) Online submission, through the E-Ballot Portal:

To submit your Ballot online via Kroll's E-Ballot Portal, please visit: https://restructuring.ra.kroll.com/GettyImages, click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot ID#:** ______________________________

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Holders that submit a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.

OR

(II) Hard copy submission or otherwise by regular mail, overnight courier or hand delivery to:

Getty Images Holdings, Inc. Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

(to arrange hand-delivery, please email GettyImagesBallots@ra.kroll.com (with "Getty Images Ballot Processing" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery)

**Item 1. Principal Amount of Class 3 Revolving Loan Claim(s).**

The undersigned hereby certifies that, as of the Voting Record Date, it is the Holder (or is an authorized signatory for a Holder) of Class 3 Revolving Loan Claim(s) in the following aggregate unpaid principal amount:[2]

| |
|---|
| $____________________ |

**Item 2. Vote of Class 3 Revolving Loan Claim(s).**

The undersigned Holder of the Class 3 Revolving Loan Claim(s) set forth in Item 1 votes to (*please check only one*):

| **ACCEPT the Plan** | **REJECT the Plan** |
|---|---|
| ☐ | ☐ |

**BECAUSE THE REVOLVING LOANS ARE BORROWED OR GUARANTEED BY CERTAIN OF THE DEBTORS UNDER THE CREDIT AGREEMENT, YOUR VOTE ON THIS BALLOT WILL BE TABULATED AGAINST EACH DEBTOR THAT IS A BORROWER OR A GUARANTOR UNDER THE CREDIT AGREEMENT. CLASS 3 DOES NOT APPLY TO DEBTOR GETTY IMAGES HOLDINGS, INC.**

**Item 3. Important Information Regarding the Releases by Holders of Claims of the Debtors, Exculpation and Injunction Provisions, and Option to Opt-In to Releases.**

**VOTING TO ACCEPT THE PLAN IN ITEM 2 DOES NOT, BY ITSELF, MAKE YOU A "RELEASING PARTY" UNDER THE PLAN. IF YOU VOTE TO ACCEPT THE PLAN AND WISH TO GRANT THE THIRD-PARTY RELEASE, YOU MUST CHECK BOTH THE "ACCEPT" BOX IN ITEM 2 AND THE OPT-IN BOX IN THIS ITEM 3.**

**IF YOU (I) VOTE TO ACCEPT THE PLAN, (II) ABSTAIN FROM VOTING ON THE PLAN, (III) ARE DEEMED TO REJECT OR PRESUMED TO ACCEPT THE PLAN, OR**

[2] Only the aggregate unpaid principal amount of your Class 3 Revolving Loan Claim(s) is reflected in the box above. Under Article III.B.3 of the Plan, the Revolving Loan Claims are Allowed in the aggregate principal amount of the Revolving Loans outstanding under the Credit Agreement, plus accrued and unpaid interest at the non-default rate, fees, premiums, expenses, costs, non-contingent indemnification obligations, and other amounts owed under the Credit Agreement outstanding as of the Effective Date. The Solicitation Agent may therefore adjust the amount entered above during its tabulation of votes to reflect accrued but unpaid prepetition interest, fees, and costs, and the amount tabulated for voting purposes may differ from the amount entered above. For voting purposes, the amount of each Revolving Loan Claim was established based on the applicable Revolving Loan positions held by each Holder of Revolving Loan Claims as of the Voting Record Date, as evidenced by the books and records maintained by the administrative agent under the Credit Agreement. Please note that if your Revolving Loan Claim was asserted in a currency other than U.S. dollars in the administrative agent's books and records, such amount has been conv*erted to the equival*ent U.S. dollar value using the conversion rate for the applicable currency as published in the *Wall Street Journal* (national edition) as of the closing of the market on the Voting Record Date.

**(IV) VOTE TO REJECT THE PLAN, YOU WILL BE A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> YOU AFFIRMATIVELY OPT IN TO THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII.D OF THE PLAN BY CHECKING THE BOX BELOW, UNLESS YOU ARE OTHERWISE A "RELEASING PARTY" UNDER THE PLAN.**

**IF YOU ARE A RELEASING PARTY, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE PROVISIONS CONTAINED IN THE PLAN. YOUR DECISION ON THIS ELECTION DOES NOT AFFECT THE AMOUNT OF THE DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

**<u>Important Information Regarding the Releases.</u>** Voting to accept the Plan in Item 2 does not, by itself, make you a Releasing Party under the Plan. Whether you vote to accept the Plan, abstain from voting on the Plan, are presumed to accept or deemed to reject the Plan, or vote to reject the Plan, the election to grant the Third-Party Release contained in Article VIII.D of the Plan is at your option and is made only by checking the opt-in box in this Item 3, unless you are otherwise a Releasing Party under the Plan. If you vote to accept the Plan and wish to grant the Third-Party Release, please check both boxes. If you do not make that election, you will forgo the benefit of obtaining the releases set forth in Article VIII of the Plan if you would otherwise be a Released Party in connection therewith, because the Plan's definition of Released Parties, subject to the exceptions set forth therein, excludes an Entity that does not affirmatively opt into the releases in the Plan. You will receive the same treatment on account of your Claim under the Plan regardless of whether you make that election.

Please note that, under the Plan, an Entity that timely objects to the releases contained in the Plan, where such objection is not resolved before entry of the Confirmation Order, shall not be a Released Party.

| **The Holder of the Class 3 (Revolving Loan Claims) Claims Against the Debtors Set Forth in Item 1 Elects to (check the box below to indicate your Opt-In election):** |
|---|
| ☐ **Opt In** to the Third-Party Release set forth below |

The Plan contains a series of releases that are part of the overall restructuring set forth in the Plan and described in greater detail in the Disclosure Statement. In that respect, parties should be aware that, if the Plan is confirmed and the Effective Date occurs, certain parties may be getting releases and certain parties may be giving releases as set forth in Article VIII of the Plan. For your convenience, excerpts of the release provisions from the Plan are set forth below, however, you should carefully read the enclosed Disclosure Statement and Plan with respect to the releases.

**EACH OF THE RELEASING PARTIES EXPRESSLY ACKNOWLEDGES THAT THE RELEASES AND COVENANTS NOT TO SUE CONTAINED IN THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS OR RELEASED CLAIMS OR CAUSES OF ACTION ARE PRESENTLY KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, OR FORESEEN OR UNFORESEEN.**

**<u>Relevant Definitions:</u>**

**Under the Plan, "Releasing Parties" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New**

**Equity Investor; (g) each Holder of Claims or Interests that affirmatively opts in to the releases provided for in the Plan; (h) each current and former Affiliate of each Entity in clause (a) through clause (g) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan under applicable Law; and (i) each Related Party of each Entity in clause (a) through clause (h) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable Law; *provided* that no Agent/Trustee shall be deemed to grant any release on behalf of, or to bind, any Holder for which it acts, and no Agent/Trustee shall be required to take any action in connection with the solicitation of opt-in elections.**

**Under the Plan, "Released Parties" means collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Releasing Party; (h) each current and former Affiliate of each Entity in clause (a) through clause (g); and (i) each Related Party of each Entity in clause (a) through clause (h); *provided* that, in each case, an Entity (other than the Debtors, the Reorganized Debtors, the Plan Sponsors, and their respective Related Parties) shall not be a Released Party if it does not affirmatively opt into the releases in the Plan by returning an "opt in" form.**

**Under the Plan, "Related Party" means, with respect to any Entity, (a) such Entity, (b) such Entity's predecessors, successors and assigns, parents, subsidiaries, Affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers, (c) with respect to each Plan Sponsor, its associated trusts (and its holding vehicles who are direct holders of interests in the applicable Plan Sponsor, its affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers) that are Holders of Interests in Holdings, (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's respective current and former officers, directors, principals, current or former equity holders (regardless of whether such interests are held directly or indirectly and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, managers, partners, employees, agents, trustees, beneficiaries, settlors, protectors, family offices, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (e) with respect to each of the foregoing in clauses (a)–(d), such Entity's respective heirs, executors, estates, servants, and nominees.**

**Under the Plan, "Exculpated Parties" means collectively, each of the following in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) members of the Special Committee; (d) each Unsecured Notes Trustee and Credit Agreement Agent, solely to the extent acting as a Disbursing Agent or otherwise making, directing, or facilitating distributions under, or taking any other action in the administration or consummation of, this Plan; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), (i) their respective current officers, their current and former directors, and limited liability company managers, who served in such capacity at any time between the Petition Date and the Effective Date, and (ii) each of their attorneys, financial advisors, investment bankers, consultants, and other professionals or advisors whose retentions were approved by the Bankruptcy Court pursuant to an order approving such professional's and advisor's retention application, as applicable.**

**<u>RELEASES BY THE DEBTORS</u>**

**Except as expressly set forth in the Plan or the Confirmation Order, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights and remedies against the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the Debtors' evaluation and pursuit of strategic alternatives (including any process conducted by or under the direction of the Special Committee), the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or**

**distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Debtors do not, pursuant to the Debtor Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and the Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Debtors, their Estates, or the Reorganized Debtors asserting any Claim or Cause of Action released pursuant to the Debtor Release against any of the Released Parties.**

**RELEASES BY THE RELEASING PARTIES**

**Effective on the Effective Date, except as expressly set forth in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable Law, as such Law may be extended or interpreted after the date upon which the Bankruptcy Court enters the Confirmation Order, on or after the Effective Date, each Released Party is hereby deemed expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, remedies, or liabilities, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole**

**or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Releasing Parties do not, pursuant to the Third-Party Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Third-Party Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release against any of the Released Parties.**

**EXCULPATION**

**To the fullest extent permitted by applicable Law, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place between the Petition Date and the Effective Date related or relating to the foregoing, except for claims related to any act or omission that is determined in a final order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, including the issuance of securities thereunder, and, therefore, are not, and on account of such solicitation, distributions, or issuance shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan, including the issuance of securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability.**

**Notwithstanding anything to the contrary in the foregoing, the exculpation set forth in the Plan shall not be construed as exculpating any party or Entity from its post-Effective Date obligations under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**INJUNCTION**

**Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation (in each case, as set forth in the above Discharge, Release, Third-Party Release, and Exculpation sections of the Plan), whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, affiliates, and Related Parties, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action unless such Holder has timely Filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise (*provided* that this clause (d) shall not apply to any Bank Product Provider in respect of the Bank Product Obligations, as set forth in Article VI.L of the Plan); and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action released or settled pursuant to the Plan.**

**By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above. The injunctions set forth above shall extend to any successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any post-Effective Date obligations of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Item 4. Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

1. as of the Voting Record Date, it is the Holder (or an authorized signatory for a Holder) of the Class 3 Revolving Loan Claim(s) set forth in Item 1;

2. it is eligible to be treated as the Holder of the Class 3 Revolving Loan Claim(s) set forth in Item 1 for the purposes of voting on the Plan;

3. it has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

4. it has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package materials;

5. it has cast the same vote with respect to each of the Holder's Class 3 Revolving Loan Claims;

6. it understands the treatment provided for its Class 3 Revolving Loan Claim(s) under the Plan;

7. it understands the recoveries provided for in the Plan are expressly conditioned upon confirmation and consummation of the Plan;

8. it acknowledges and agrees that the Debtors may make conforming changes to the Plan as may be reasonably necessary, subject to section 1127 of the Bankruptcy Code and in accordance with the terms and conditions set forth in the Restructuring Support Agreement; provided that the Debtors will not resolicit acceptances or rejections of the Plan in the event of such conforming changes unless otherwise required to by the Bankruptcy Court;

9. it understands and acknowledges that only the last properly executed, valid ballot actually received by the Solicitation Agent prior to the Voting Deadline with respect to the Class 3 Revolving Loan Claim(s) set forth in Item 1 will be counted, and, if any other ballot has been previously received with respect to the Class 3 Revolving Loan Claim(s) set forth in Item 1, such other ballot shall be deemed revoked and defective;

10. it understands that, whether or not it votes to accept the Plan in Item 2, it or the Holder on whose behalf it is submitting this Ballot, as applicable, shall not be a "Releasing Party" under the Plan unless it completes the Opt-In election in Item 3 (or is otherwise a "Releasing Party" as defined under the Plan, including as an Affiliate or Related Party of an Entity that opts in to the releases contained in the Plan and is legally entitled to bind it to such releases under applicable law);

11. it has full and complete authority to execute and submit this Ballot;

12. it consents to the disclosure of the information set forth in this Ballot among the Solicitation Agent, the Debtors and their agents, and the Bankruptcy Court, to the extent required for the purposes of the Plan; and

13. it understands and acknowledges that any Claims it holds in Classes other than Class 3 (Revolving Loan Claims), and any Class 3 Revolving Loan Claims it holds in other accounts or record names, will be voted on a separate Ballot, and that this Ballot votes only the Class 3 Revolving Loan Claim(s) set forth in Item 1.

**Item 5. Holder Information and Signature.**

**BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION (type or print)**

Name of Holder: ______________________________

Signature: ______________________________

Signatory Name
(If other than Holder): ______________________________

Title: ______________________________

Address: ______________________________

Email Address: ______________________________

Telephone Number: ______________________________

Date Completed: ______________________________

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT PRIOR TO THE VOTING DEADLINE ON NOVEMBER 30, 2026 AT 5:00 P.M. (PREVAILING EASTERN TIME).**

[*Remainder of page intentionally left blank*]

**INSTRUCTIONS FOR COMPLETING THIS BALLOT**

1. The Debtors are soliciting the votes of Holders of Class 3 Revolving Loan Claims with respect to the Plan. The Plan and Disclosure Statement are included in the packet you are receiving with this Ballot. Capitalized terms used and not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Class that votes on the Plan and if the Plan otherwise satisfies the requirements of section 1129(a) of the Bankruptcy Code. If the Requisite Acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

3. To ensure that your vote is counted, you must deliver this Ballot directly to the Solicitation Agent by regular mail, overnight courier or hand delivery or via the Solicitation Agent's E-Ballot Portal so as to be actually received by the Solicitation Agent before the Voting Deadline.

4. Any ballot received by the Solicitation Agent after the Voting Deadline will not be counted unless the Debtors determine otherwise or as permitted by the Bankruptcy Court. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent actually receives the executed ballot. In all cases, Holders should allow sufficient time to assure timely delivery. No ballot should be sent to the Debtors or the Debtors' financial or legal advisors. The method of delivery of this Ballot to the Solicitation Agent is at your election and risk.

5. If you deliver multiple ballots to the Solicitation Agent, as applicable, the last properly executed, valid ballot timely received by the Solicitation Agent will supersede and revoke any earlier received ballot.

6. This Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with this Ballot.

7. This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim.

8. You must vote all of your Claims within a particular Class either to accept or reject the Plan (i.e., you may not split your vote).

9. If you hold Claims in more than one Class under the Plan, or in multiple accounts, you will receive more than one ballot coded for each different Class or account. Each ballot votes only your Claims indicated on that ballot. Please complete and return each ballot you receive.

10. For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Holder in Class 3 (Revolving Loan Claims) may be

aggregated and treated as if such Holder held one Claim in Class 3 (Revolving Loan Claims), and all votes related to such Claim shall be treated as a single vote to accept or reject the Plan; provided that if separate affiliated entities hold Claims in Class 3 (Revolving Loan Claims), such Claims shall not be aggregated and shall not be treated as if such Holder held one Claim in Class 3 (Revolving Loan Claims), and the vote of each affiliated entity shall be counted separately as a vote to accept or reject the Plan.

11. Please be sure to sign and date this Ballot. If you are signing this Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by the Solicitation Agent or the Debtors, must submit proper evidence of such capacity to the requesting party. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to this Ballot.

12. The following ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (b) any ballot not actually received by the Solicitation Agent before the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Bankruptcy Court; (c) any unsigned ballot; (d) any ballot that partially rejects and partially accepts the Plan; (e) any ballot not marked to either accept or reject the Plan, or marked to both accept and reject the Plan; (f) any ballot superseded by a later, timely received valid ballot; and (g) any ballot submitted by a party who did not hold a Revolving Loan Claim as of the Voting Record Date.

13. If you believe you have received the wrong ballot, you should contact the Solicitation Agent.

14. If (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

15. Nothing contained in this Ballot or in the enclosed documents renders you or any other person an agent of the Debtors or the Solicitation Agent, or authorizes you or any other person to use any document or make any statement on behalf of any of them with respect to the Plan, except for the statements contained in the Solicitation Materials.

**PLEASE MAIL YOUR BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE PROCEDURE FOR VOTING ON THE PLAN, OR IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT, DISCLOSURE STATEMENT, PLAN, OR OTHER RELATED MATERIALS, PLEASE CONTACT KROLL RESTRUCTURING ADMINISTRATION LLC (THE DEBTORS' SOLICITATION AGENT) AT: (844) 408-3675 (U.S./CANADA, TOLL FREE) OR +1 (646) 825-2402 (INTERNATIONAL TOLL) OR VIA EMAIL: GETTYIMAGESINFO@RA.KROLL.COM, SUBJECT LINE: "GETTY IMAGES BALLOT PROCESSING".**

# EXHIBIT 6A

**Form of General Ballot for Holders of Class 4 Secured Funded Debt Claims**

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

**IMPORTANT**: NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF THE DISTRIBUTION OF THIS BALLOT. THE DEBTORS INTEND TO FILE CHAPTER 11 CASES AND SEEK CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT SHORTLY THEREAFTER AS DESCRIBED IN GREATER DETAIL IN THE ACCOMPANYING DISCLOSURE STATEMENT.[1]

| | | |
|---|---|---|
| In re:<br><br>GETTY IMAGES HOLDINGS, INC., *et al.*,[2]<br><br>Debtors. | ) | Chapter 11<br><br>**IMPORTANT:** No chapter 11 case has been commenced as of the date of the distribution of this ballot. This ballot is being distributed to you as a part of a prepetition solicitation of votes on a prepackaged plan of reorganization. The Voting Deadline is November 30, 2026 at 5:00 p.m. (prevailing Eastern Time). |

**BALLOT FOR VOTING ON THE JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF GETTY IMAGES HOLDINGS, INC. AND ITS DEBTOR SUBSIDIARIES**

**CLASS 4 – SECURED FUNDED DEBT CLAIMS**

PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.

THIS BALLOT MUST BE ACTUALLY RECEIVED BY KROLL RESTRUCTURING ADMINISTRATION LLC (THE "SOLICITATION AGENT" OR "KROLL") ON OR BEFORE **NOVEMBER 30, 2026 AT 5:00 P.M. (PREVAILING EASTERN TIME)** (AS MAY BE EXTENDED BY THE DEBTORS, SUBJECT TO THE CONSENT RIGHTS SET FORTH IN THE RESTRUCTURING SUPPORT AGREEMENT, THE "VOTING DEADLINE"). IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE YOUR BALLOT BEFORE THE VOTING DEADLINE, AND UNLESS THE DEBTORS

[1] Capitalized terms used but not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

[2] The anticipated Debtors in the Chapter 11 Cases, along with the last four digits of each anticipated Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the anticipated Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

DETERMINE OTHERWISE OR AS PERMITTED BY THE BANKRUPTCY COURT, YOUR VOTE WILL NOT BE COUNTED.

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE VOTING PROCEDURES, OR ANY OF THE SOLICITATION MATERIALS YOU HAVE RECEIVED, OR YOU NEED TO OBTAIN ADDITIONAL SOLICITATION MATERIALS, PLEASE CONTACT KROLL BY: (1) CALLING (844) 408-3675 (U.S./CANADA, TOLL-FREE) OR +1 (646) 825-2402 (INTERNATIONAL, TOLL), (2) EMAILING GETTYIMAGESINFO@RA.KROLL.COM AND REFERENCING "GETTY IMAGES BALLOT PROCESSING" IN THE SUBJECT LINE, (3) VISITING THE DEBTORS' SOLICITATION WEBSITE AT HTTPS://RESTRUCTURING.RA.KROLL.COM/GETTYIMAGES, AND/OR (4) WRITING TO THE SOLICITATION AGENT AT THE FOLLOWING ADDRESS: GETTY IMAGES BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 THIRD AVENUE, SUITE 412, BROOKLYN, NEW YORK 11232.

On October 20, 2026, Getty Images Holdings, Inc. and certain of its affiliates (collectively, the "Debtors") commenced solicitation of votes on the *Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").

In connection with the solicitation process, the Debtors distributed the Plan and the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* (as may be amended, supplemented, or otherwise modified from time to time and including all exhibits or supplements thereto, the "Disclosure Statement") to: (i) Holders of Revolving Loan Claims (Class 3 under the Plan), (ii) Holders of Secured Funded Debt Claims (Class 4 under the Plan), and (iii) Holders of Unsecured Notes Claims (Class 5 under the Plan), in each case as of October 9, 2026 (the "Voting Record Date"). As explained in further detail in the Disclosure Statement, on October 12, 2026, after engaging in extensive, arm's-length, good-faith negotiations, the Debtors entered into a restructuring support agreement (as may be amended, supplemented, or modified from time to time, and including all exhibits and supplements thereto, the "Restructuring Support Agreement" and the transactions contemplated thereby, the "Restructuring Transactions") with certain of the Debtors' key stakeholder groups.

The Debtors are soliciting votes on the Plan from Holders of Class 3 Revolving Loan Claims, Holders of Class 4 Secured Funded Debt Claims, and Holders of Class 5 Unsecured Notes Claims.

The Debtors intend to implement the Restructuring Transactions by commencing voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court and seeking confirmation and consummation of the Plan. The Debtors anticipate that such Chapter 11 Cases will be commenced in the Bankruptcy Court on or about October 21, 2026. The deadline to (i) vote to accept or reject the Plan and (ii) opt in to the releases set forth in Article VIII.D of the Plan (including if you vote to accept the Plan) is November 30, 2026, at 5:00 p.m., prevailing Eastern Time.

**You are receiving this ballot (the "Ballot") because you are a Holder of a Class 4 Secured Funded Debt Claim as of the Voting Record Date.**

**Your receipt of this Ballot does not indicate that your Claim has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance of, or distribution on account of, any Claim.**

Your rights are described in the Disclosure Statement. The solicitation procedures are described in the *Motion of Debtors for Entry of an Order (I) Scheduling Combined Hearing on Adequacy of the Disclosure Statement and Confirmation of the Plan; (II) Fixing Deadline to Object to Disclosure Statement and the Plan; (III) Conditionally Approving Prepetition Solicitation Procedures and Form and Manner of Notice of Commencement, Combined Hearing and Objection Deadline; (IV) Conditionally Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (V) Conditionally (A) Directing the United States Trustee not to Convene Section 341(A) Meeting of Creditors and (B) Waiving Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities and Rule 2015.3 Reports; and (VI) Granting Related Relief*, which the Debtors intend to file on the Petition Date (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Scheduling and Solicitation Motion"), pursuant to which the Debtors will request that the Bankruptcy Court conditionally approve the solicitation procedures (any order granting the Scheduling and Solicitation Motion, the "Scheduling and Solicitation Order"). The Plan and the Disclosure Statement are included in the packet you are receiving together with this Ballot (collectively, with a pre-addressed, postage pre-paid return envelope, the "Solicitation Package"). Upon request, the Solicitation Agent will provide paper copies of the Plan and the Disclosure Statement at the Debtors' expense.

You should carefully and thoroughly review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan. Your Claim has been placed in Class 4 (Secured Funded Debt Claims) under the Plan.

The Debtors intend to commence voluntary cases under chapter 11 of the Bankruptcy Code. The Plan can thereafter be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by at least one impaired Class of creditors and if the Plan otherwise satisfies the applicable requirements of sections 1129(a) and (if not accepted by all Classes of creditors) 1129(b) of the Bankruptcy Code. A Class of creditors accepts the Plan if the Holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims in such Class vote to accept the Plan (the "Requisite Acceptances").

Creditors with Claims sufficient to satisfy the Requisite Acceptances for all impaired Classes have signed a Restructuring Support Agreement obligating such creditors to accept the Plan. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you regardless of whether you vote to accept or reject the Plan.

**YOUR COMPLETED, SIGNED, AND DATED BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BEFORE 5:00 P.M. (PREVAILING EASTERN TIME) ON NOVEMBER 30, 2026 (AS MAY BE EXTENDED BY THE DEBTORS, SUBJECT TO THE CONSENT RIGHTS SET FORTH IN THE RESTRUCTURING SUPPORT AGREEMENT, THE "VOTING DEADLINE") VIA ONE OF THE METHODS LISTED BELOW.**

**IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE YOUR BALLOT BEFORE THE VOTING DEADLINE, AND UNLESS THE DEBTORS DETERMINE OTHERWISE OR AS PERMITTED BY THE BANKRUPTCY COURT, YOUR VOTE WILL NOT BE COUNTED.**

**PLEASE CHOOSE ONLY ONE METHOD TO RETURN YOUR BALLOT.**

(I) Online submission, through the E-Ballot Portal:

To submit your Ballot online via Kroll's E-Ballot Portal, please visit: https://restructuring.ra.kroll.com/GettyImages, click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:

**Unique E-Ballot ID#:** ______________________________

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Holders that submit a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.

OR

(II) Hard copy submission in the business reply envelope provided or otherwise by regular mail, overnight courier or hand delivery to:

Getty Images Holdings, Inc. Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

(to arrange hand-delivery, please email GettyImagesBallots@ra.kroll.com (with "Getty Images Ballot Processing" in the subject line) at least 24 hours prior to your arrival at the Kroll address above and provide the anticipated date and time of delivery)

**Item 1. Principal Amount of Class 4 Secured Funded Debt Claim(s).**

The undersigned hereby certifies that, as of the Voting Record Date, it is the Holder (or is an authorized signatory for a Holder) of Class 4 Secured Funded Debt Claim(s) in the following aggregate unpaid principal amount (*insert amount in box below*):[3]

**Item 2. Vote of Class 4 Secured Funded Debt Claim(s).**

| |
|---|
| $____________________ |

The undersigned Holder of the Class 4 Secured Funded Debt Claim(s) set forth in Item 1 votes to (*please check only one*):

| **ACCEPT the Plan** | **REJECT the Plan** |
|---|---|
| ☐ | ☐ |

**BECAUSE THE TERM LOANS ARE BORROWED OR GUARANTEED BY CERTAIN OF THE DEBTORS UNDER THE CREDIT AGREEMENT, YOUR VOTE ON THIS BALLOT WILL BE TABULATED AGAINST EACH DEBTOR THAT IS A BORROWER OR A GUARANTOR UNDER THE CREDIT AGREEMENT. CLASS 4 DOES NOT APPLY TO GETTY IMAGES HOLDINGS, INC., AND CLASS 9 (HOLDINGS INTERESTS) APPLIES ONLY TO GETTY IMAGES HOLDINGS, INC.**

**Item 3. Optional Opt-In to Releases.**

**VOTING TO ACCEPT THE PLAN IN ITEM 2 DOES NOT, BY ITSELF, MAKE YOU A "RELEASING PARTY" UNDER THE PLAN. IF YOU (I) VOTE TO ACCEPT THE PLAN, (II) ABSTAIN FROM VOTING ON THE PLAN, (III) ARE PRESUMED TO ACCEPT OR DEEMED TO REJECT THE PLAN, OR (IV) VOTE TO REJECT THE PLAN, YOU WILL BE A "RELEASING PARTY" UNDER THE PLAN ONLY IF YOU AFFIRMATIVELY OPT IN TO THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII.D OF THE PLAN BY CHECKING THE BOX BELOW, UNLESS YOU ARE OTHERWISE A "RELEASING PARTY" UNDER THE PLAN. IF YOU VOTE TO ACCEPT THE PLAN AND WISH TO GRANT THE THIRD-PARTY RELEASE, YOU MUST CHECK BOTH THE "ACCEPT" BOX IN ITEM 2 AND THE OPT-IN BOX IN THIS ITEM 3. IF YOU ARE A RELEASING PARTY, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE PROVISIONS CONTAINED IN THE PLAN. YOUR DECISION ON THIS ELECTION**

[3] Only the aggregate unpaid principal amount of your Class 4 Secured Funded Debt Claim(s) should be entered above. Under Article III.B.4 of the Plan, the Secured Funded Debt Claims are Allowed in the aggregate principal amount outstanding under the Credit Agreement and the 11.25% Secured Notes Indenture, as applicable, plus accrued and unpaid interest at the non-default rate, fees, costs, and other amounts due and owing thereunder as of the Effective Date (but excluding any prepayment premium, make-whole, call protection, or similar amount). The Solicitation Agent may therefore adjust the amount entered above during its tabulation of votes to reflect accrued but unpaid prepetition interest, fees, and costs, and the amount tabulated for voting purposes may differ from the amount entered above.

**DOES NOT AFFECT THE AMOUNT OF THE DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

**Important Information Regarding the Releases.** Voting to accept the Plan in Item 2 does not, by itself, make you a Releasing Party under the Plan. Whether you vote to accept the Plan, abstain from voting on the Plan, are presumed to accept or deemed to reject the Plan, or vote to reject the Plan, the election to grant the Third-Party Release contained in Article VIII.D of the Plan is at your option and is made only by checking the opt-in box in this Item 3, unless you are otherwise a Releasing Party under the Plan. If you vote to accept the Plan and wish to grant the Third-Party Release, please check both boxes. If you do not make that election, you will forgo the benefit of obtaining the releases set forth in Article VIII of the Plan if you would otherwise be a Released Party in connection therewith, because the Plan's definition of Released Parties, subject to the exceptions set forth therein, excludes an Entity that does not affirmatively opt into the releases in the Plan. You will receive the same treatment on account of your Claim under the Plan regardless of whether you make that election.

Please note that, under the Plan, an Entity that timely objects to the releases contained in the Plan, where such objection is not resolved before entry of the Confirmation Order, shall not be a Released Party.

| |
|---|
| **The Holder of the Class 4 (Secured Funded Debt Claims) Claims Against the Debtors Set Forth in Item 1 Elects to (check the box below to indicate your Opt-In election):** |
| ☐ **OPT-IN** to the Third-Party Release set forth below |

The Plan contains a series of releases that are part of the overall restructuring set forth in the Plan and described in greater detail in the Disclosure Statement. In that respect, parties should be aware that, if the Plan is confirmed and the Effective Date occurs, certain parties may be getting releases and certain parties may be giving releases as set forth in Article VIII of the Plan. For your convenience, excerpts of the release provisions from the Plan are set forth below, however, you should carefully read the enclosed Disclosure Statement and Plan with respect to the releases.

**EACH OF THE RELEASING PARTIES EXPRESSLY ACKNOWLEDGES THAT THE RELEASES AND COVENANTS NOT TO SUE CONTAINED IN THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS OR RELEASED CLAIMS OR CAUSES OF ACTION ARE PRESENTLY KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, OR FORESEEN OR UNFORESEEN.**

**Relevant Definitions:**

**Under the Plan, "Releasing Parties" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Holder of Claims or Interests that affirmatively opts in to the releases provided for in the Plan; (h) each current and former Affiliate of each Entity in clause (a) through clause (g) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan under applicable Law; and (i) each Related Party of each Entity in clause (a) through clause (h) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable**

**Law; *provided* that no Agent/Trustee shall be deemed to grant any release on behalf of, or to bind, any Holder for which it acts, and no Agent/Trustee shall be required to take any action in connection with the solicitation of opt-in elections.**

**Under the Plan, "Released Parties" means collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Releasing Party; (h) each current and former Affiliate of each Entity in clause (a) through clause (g); and (i) each Related Party of each Entity in clause (a) through clause (h); provided that, in each case, an Entity (other than the Debtors, the Reorganized Debtors, the Plan Sponsors, and their respective Related Parties) shall not be a Released Party if it does not affirmatively opt into the releases in the Plan by returning an "opt in" form.**

**Under the Plan, "Related Party" means, with respect to any Entity, (a) such Entity, (b) such Entity's predecessors, successors and assigns, parents, subsidiaries, Affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers, (c) with respect to each Plan Sponsor, its associated trusts (and its holding vehicles who are direct holders of interests in the applicable Plan Sponsor, its affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers) that are Holders of Interests in Holdings, (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's respective current and former officers, directors, principals, current or former equity holders (regardless of whether such interests are held directly or indirectly and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, managers, partners, employees, agents, trustees, beneficiaries, settlors, protectors, family offices, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (e) with respect to each of the foregoing in clauses (a)–(d), such Entity's respective heirs, executors, estates, servants, and nominees.**

**Under the Plan, "Exculpated Parties" means, collectively, each of the following in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) members of the Special Committee; (d) each Unsecured Notes Trustee and Credit Agreement Agent, solely to the extent acting as a Disbursing Agent or otherwise making, directing, or facilitating distributions under, or taking any other action in the administration or consummation of, this Plan; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), (i) their respective current officers, their current and former directors, and limited liability company managers, who served in such capacity at any time between the Petition Date and the Effective Date, and (ii) each of their attorneys, financial advisors, investment bankers, consultants, and other professionals or advisors whose retentions were approved by the Bankruptcy Court pursuant to an order approving such professional's and advisor's retention application, as applicable.**

**<u>RELEASES BY THE DEBTORS</u>**

**Except as expressly set forth in the Plan or the Confirmation Order, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by**

**the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights and remedies against the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the Debtors' evaluation and pursuit of strategic alternatives (including any process conducted by or under the direction of the Special Committee), the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission,**

**transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Debtors do not, pursuant to the Debtor Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and the Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Debtors, their Estates, or the Reorganized Debtors asserting any Claim or Cause of Action released pursuant to the Debtor Release against any of the Released Parties.**

**RELEASES BY THE RELEASING PARTIES**

**Effective on the Effective Date, except as expressly set forth in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable Law, as such Law may be extended or interpreted after the date upon which the Bankruptcy Court enters the Confirmation Order, on or after the Effective Date, each Released Party is hereby deemed expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, remedies, or liabilities, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure,**

**management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Releasing Parties do not, pursuant to the Third-Party Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Third-Party Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the**

**Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release against any of the Released Parties.**

**<u>EXCULPATION</u>**

**To the fullest extent permitted by applicable Law, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place between the Petition Date and the Effective Date related or relating to the foregoing, except for claims related to any act or omission that is determined in a final order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, including the issuance of securities thereunder, and, therefore, are not, and on account of such solicitation, distributions, or issuance shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan, including the issuance of securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability.**

**Notwithstanding anything to the contrary in the foregoing, the exculpation set forth in the Plan shall not be construed as exculpating any party or Entity from its post-**

**Effective Date obligations under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**INJUNCTION**

**Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation (in each case, as set forth in the above Discharge, Release, Third-Party Release, and Exculpation sections of the Plan), whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, affiliates, and Related Parties, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action unless such Holder has timely Filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise (*provided* that this clause (d) shall not apply to any Bank Product Provider in respect of the Bank Product Obligations, as set forth in Article VI.L of the Plan); and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action released or settled pursuant to the Plan.**

**By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above. The injunctions set forth above shall extend to any successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any post-Effective Date obligations of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Item 4. Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

1. as of the Voting Record Date, it is the Holder (or an authorized signatory for a Holder) of the Class 4 Secured Funded Debt Claim(s) set forth in Item 1;

2. it is eligible to be treated as the Holder of the Class 4 Secured Funded Debt Claim(s) set forth in Item 1 for the purposes of voting on the Plan;

3. it has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

4. it has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package materials;

5. it has cast the same vote with respect to each of the Holder's Class 4 Secured Funded Debt Claims;

6. it understands the treatment provided for its Class 4 Secured Funded Debt Claim(s) under the Plan;

7. it understands the recoveries provided for in the Plan are expressly conditioned upon confirmation and consummation of the Plan;

8. it acknowledges and agrees that the Debtors may make conforming changes to the Plan as may be reasonably necessary, subject to section 1127 of the Bankruptcy Code and in accordance with the terms and conditions set forth in the Restructuring Support Agreement; provided that the Debtors will not resolicit acceptances or rejections of the Plan in the event of such conforming changes unless otherwise required to by the Bankruptcy Court;

9. it understands and acknowledges that only the last properly executed, valid ballot actually received by the Solicitation Agent prior to the Voting Deadline with respect to the Class 4 Secured Funded Debt Claim(s) set forth in Item 1 will be counted, and, if any other ballot has been previously received with respect to the Class 4 Secured Funded Debt Claim(s) set forth in Item 1, such other ballot shall be deemed revoked and defective;

10. it understands that, if it does not complete the Opt-In election in Item 3, it or the Holder on whose behalf it is submitting this Ballot, as applicable, shall not be a "Releasing Party" under the Plan (unless such Holder is otherwise a "Releasing Party" under the Plan, including as an Affiliate or Related Party of an Entity that opts in to the releases contained in the Plan and is legally entitled to bind such Holder to such releases under applicable Law);

11. it confirms that the Holder of the Class 4 Secured Funded Debt Claim(s) set forth in Item 1 is either (i) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act); (ii) an "accredited investor" (as defined in Rule 501 of

Regulation D under the Securities Act); or (iii) located outside the United States, is not a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act), and is not participating on behalf of or on account of a U.S. person; provided that, where this Ballot is executed by an authorized signatory for a Holder, the certification in this clause is made solely in reliance on a certification provided to the undersigned by such Holder, and the undersigned assumes no liability or responsibility for such Holder's status and makes no representation or warranty with respect thereto;

12. it understands and acknowledges that the securities being distributed pursuant to the Plan are not being distributed pursuant to a registration statement filed with the United States Securities and Exchange Commission, and that such securities will be acquired for the Holder's own account and not with a view to any distribution of such securities in violation of the United States Securities Act of 1933, 15 U.S.C. §§ 77a–77aa;

13. it has full and complete authority to execute and submit this Ballot;

14. it consents to the disclosure of the information set forth in this Ballot among the Solicitation Agent, the Debtors and their agents, and the Bankruptcy Court, to the extent required for the purposes of the Plan; and

15. it understands and acknowledges that any Claims it holds in Classes other than Class 4 (Secured Funded Debt Claims), and any Class 4 Secured Funded Debt Claims it holds in other accounts or record names, will be voted on a separate Ballot, and that this Ballot votes only the Class 4 Secured Funded Debt Claim(s) set forth in Item 1.

## Item 5. Holder Information and Signature.

**BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION (type or print)**

Name of Holder: ______________________________

Signature: ______________________________

Signatory Name
(If other than Holder): ______________________________

Title: ______________________________

Address: ______________________________

Email Address: ______________________________

________________________________________

Telephone Number: ________________________________________

Date Completed: ________________________________________

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED.**

**THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT PRIOR TO THE VOTING DEADLINE.**

[*Remainder of page intentionally left blank*]

INSTRUCTIONS FOR COMPLETING THIS BALLOT

1. The Debtors are soliciting the votes of Holders of Class 4 Secured Funded Debt Claims with respect to the Plan. The Plan and Disclosure Statement are included in the packet you are receiving with this Ballot. Capitalized terms used and not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Class that votes on the Plan and if the Plan otherwise satisfies the requirements of section 1129(a) of the Bankruptcy Code. If the Requisite Acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

3. To ensure that your vote is counted, you must deliver this Ballot directly to Kroll Restructuring Administration LLC by regular mail, overnight courier or hand delivery or via the Solicitation Agent's E-Ballot Portal so as to be actually received by the Solicitation Agent before the Voting Deadline.

4. Any ballot received by the Solicitation Agent after the Voting Deadline will not be counted unless the Debtors determine otherwise or as permitted by the Bankruptcy Court. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent actually receives the executed ballot. In all cases, Holders should allow sufficient time to assure timely delivery. No ballot should be sent to the Debtors or the Debtors' financial or legal advisors. The method of delivery of this Ballot to the Solicitation Agent is at your election and risk.

5. If you deliver multiple ballots to the Solicitation Agent, as applicable, the last properly executed, valid ballot timely received by the Solicitation Agent will supersede and revoke any earlier received ballot.

6. This Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with this Ballot.

7. This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim.

8. You must vote all of your Claims within a particular Class either to accept or reject the Plan (i.e., you may not split your vote).

9. If you hold Claims in more than one Class under the Plan, or in multiple accounts, you will receive more than one ballot coded for each different Class or account. Each ballot votes only your Claims indicated on that ballot. Please complete and return each ballot you receive.

10. Please be sure to sign and date this Ballot. If you are signing this Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by the Solicitation Agent or the Debtors, must submit proper evidence of such capacity to the requesting party. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to this Ballot.

11. The following ballots shall not be counted in determining the acceptance or rejection of the Plan: (a) any ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (b) any ballot not actually received by the Solicitation Agent before the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Bankruptcy Court; (c) any unsigned ballot; (d) any ballot that partially rejects and partially accepts the Plan; (e) any ballot not marked to either accept or reject the Plan, or marked to both accept and reject the Plan; (f) any ballot superseded by a later, timely received valid ballot; and (g) any ballot submitted by a party who did not hold a Secured Funded Debt Claim as of the Voting Record Date.

12. If you believe you have received the wrong ballot, you should contact the Solicitation Agent.

13. If (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

14. Nothing contained in this Ballot or in the enclosed documents renders you or any other person an agent of the Debtors or the Solicitation Agent, or authorizes you or any other person to use any document or make any statement on behalf of any of them with respect to the Plan, except for the statements contained in the Solicitation Materials.

**PLEASE MAIL YOUR BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE PROCEDURE FOR VOTING ON THE PLAN, OR IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT, DISCLOSURE STATEMENT, PLAN, OR OTHER RELATED MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT.**

[*Remainder of page intentionally left blank.*]

# EXHIBIT 6B

**Form of Beneficial Holder Ballot for Holders of Class 4 Secured Funded Debt Claims**

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

IMPORTANT: NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF THE DISTRIBUTION OF THIS BENEFICIAL BALLOT. THE DEBTORS INTEND TO FILE CHAPTER 11 CASES AND SEEK CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT SHORTLY THEREAFTER AS DESCRIBED IN GREATER DETAIL IN THE ACCOMPANYING DISCLOSURE STATEMENT.

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| GETTY IMAGES HOLDINGS, INC., *et al.*,[1] | ) | **IMPORTANT:** No chapter 11 case has been commenced as of the date of the distribution of this ballot. This ballot is being distributed to you as a part of a prepetition solicitation of votes on a prepackaged plan of reorganization. The Voting Deadline is November 30, 2026 at 5:00 p.m. (prevailing Eastern Time). |
| Debtors. | ) | |

**BENEFICIAL HOLDER BALLOT FOR VOTING ON THE JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF GETTY IMAGES HOLDINGS, INC. AND ITS DEBTOR SUBSIDIARIES**

**CLASS 4 – SECURED FUNDED DEBT CLAIMS (BENEFICIAL HOLDER)**

PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.

THIS BALLOT MUST BE ACTUALLY RECEIVED BY KROLL RESTRUCTURING ADMINISTRATION LLC (THE "SOLICITATION AGENT" OR "KROLL") ON OR BEFORE **NOVEMBER 30, 2026 AT 5:00 P.M. (PREVAILING EASTERN TIME)** (AS MAY BE EXTENDED BY THE DEBTORS, SUBJECT TO THE CONSENT RIGHTS SET FORTH IN THE RESTRUCTURING SUPPORT AGREEMENT, THE "VOTING DEADLINE"). IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE YOUR BALLOT BEFORE THE VOTING DEADLINE, AND UNLESS THE DEBTORS DETERMINE OTHERWISE OR AS PERMITTED BY THE BANKRUPTCY COURT, YOUR VOTE WILL NOT BE COUNTED.

[1] The anticipated Debtors in the Chapter 11 Cases, along with the last four digits of each anticipated Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the anticipated Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE VOTING PROCEDURES, OR ANY OF THE SOLICITATION MATERIALS YOU HAVE RECEIVED, OR YOU NEED TO OBTAIN ADDITIONAL SOLICITATION MATERIALS, PLEASE CONTACT KROLL BY: (1) CALLING (844) 408-3675 (U.S./CANADA, TOLL-FREE) OR +1 (646) 825-2402 (INTERNATIONAL, TOLL), (2) EMAILING GETTYIMAGESINFO@RA.KROLL.COM AND REFERENCING "GETTY IMAGES BALLOT PROCESSING" IN THE SUBJECT LINE, (3) VISITING THE DEBTORS' SOLICITATION WEBSITE AT HTTPS://RESTRUCTURING.RA.KROLL.COM/GETTYIMAGES, AND/OR (4) WRITING TO THE SOLICITATION AGENT AT THE FOLLOWING ADDRESS: GETTY IMAGES BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 THIRD AVENUE, SUITE 412, BROOKLYN, NEW YORK 11232.

This Beneficial Ballot is being sent to you in connection with the *Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* (as may be amended, modified, or supplemented from time to time in accordance with its terms and including all exhibits or supplements thereto, the "Plan")[2] because the records maintained by your Nominee[3] indicate that you are a Beneficial Holder[4] of Class 4 Secured Funded Debt Claim(s) as of October 9, 2026 (the "Voting Record Date"), and, accordingly, you may have a right to vote to accept or reject the Plan. This Beneficial Ballot may not be used for any purpose other than for submitting votes with respect to the Plan. If you believe you have received this Beneficial Ballot in error, please contact the Solicitation Agent at the email address or telephone number set forth above.

**Your receipt of this Beneficial Ballot does not indicate that a Beneficial Holder's Claim has been or will be Allowed. This Beneficial Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance of, or distribution on account of, any Claim.**

**The CUSIPs / ISINs for Class 4 Secured Funded Debt Claims entitled to vote are identified on Exhibit A attached hereto.**

Your rights are described in the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement"). The solicitation procedures are described in the *Motion of Debtors for Entry of an Order (I) Scheduling Combined Hearing on Adequacy of the Disclosure Statement and Confirmation of the Plan; (II) Fixing Deadline to Object to*

[2] Capitalized terms used but not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

[3] "Nominee" means the broker, dealer, commercial bank, trust company, savings and loan, financial institution, or other such party in whose name your beneficial ownership in Class 4 Secured Funded Debt Claims is registered or held of record on your behalf as of the Voting Record Date.

[4] A "Beneficial Holder" is a beneficial owner of Class 4 Secured Funded Debt Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

*Disclosure Statement and the Plan; (III) Conditionally Approving Prepetition Solicitation Procedures and Form and Manner of Notice of Commencement, Combined Hearing and Objection Deadline; (IV) Conditionally Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (V) Conditionally (A) Directing the United States Trustee not to Convene Section 341(A) Meeting of Creditors and (B) Waiving Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities and Rule 2015.3 Reports; and (VI)* Granting Related Relief, which the Debtors intend to file on the Petition Date (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Scheduling and Solicitation Motion"), pursuant to which the Debtors will request that the Bankruptcy Court conditionally approve the solicitation procedures (any order granting the Scheduling and Solicitation Motion, the "Scheduling and Solicitation Order"). The Plan and the Disclosure Statement are included in the packet you are receiving together with this Ballot (collectively, with a pre-addressed, postage pre-paid return envelope, the "Solicitation Package"). Upon request, the Solicitation Agent will provide paper copies of the Plan and the Disclosure Statement at the Debtors' expense. The Solicitation Package has been distributed to all Holders of Class 4 Secured Funded Debt Claims who are reasonably believed to be either (i) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act), (ii) an "accredited investor" (as defined in Rule 501 of Regulation D under the Securities Act), or (iii) a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act).

**You should carefully and thoroughly review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan. Your Claim has been placed in Class 4 (Secured Funded Debt Claims) under the Plan.**

The Debtors intend to commence voluntary cases under chapter 11 of the Bankruptcy Code. The Plan can thereafter be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by at least one impaired Class of creditors and if the Plan otherwise satisfies the applicable requirements of sections 1129(a) and (if not accepted by all Classes of creditors) 1129(b) of the Bankruptcy Code. A Class of creditors accepts the Plan if the Holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims in such Class vote to accept the Plan (the "Requisite Acceptances").

Creditors with Claims sufficient to satisfy the Requisite Acceptances for all impaired Classes entitled to vote have signed a Restructuring Support Agreement obligating such creditors to accept the Plan. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you regardless of whether you vote to accept or reject the Plan.

**IF YOU RECEIVED A PRE-VALIDATED BENEFICIAL BALLOT FROM YOUR NOMINEE WITH A RETURN ENVELOPE ADDRESSED TO THE SOLICITATION AGENT, YOUR COMPLETED, SIGNED, AND DATED BENEFICIAL BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BEFORE THE VOTING DEADLINE.**

**IF YOU RECEIVED A BENEFICIAL BALLOT AND A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, YOUR VOTE, WHETHER SUBMITTED USING A COMPLETED, SIGNED, AND DATED BENEFICIAL BALLOT, OR OTHERWISE ACCORDING TO YOUR NOMINEE'S INSTRUCTIONS, MUST BE SENT TO YOUR NOMINEE, NOT THE SOLICITATION AGENT, ALLOWING SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR VOTE,**

**COMPLETE A MASTER BALLOT, AND TRANSMIT THE MASTER BALLOT TO THE SOLICITATION AGENT SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BEFORE THE VOTING DEADLINE.**

**FOR YOUR VOTE TO COUNT, YOU MUST ACT IN ACCORDANCE WITH YOUR NOMINEE'S INSTRUCTIONS, INCLUDING SUBMISSION OF YOUR VOTE ON OR BEFORE YOUR NOMINEE'S INTERNAL VOTING DEADLINE, WHICH WILL LIKELY BE AT MINIMUM ONE TO TWO BUSINESS DAYS PRIOR TO THE VOTING DEADLINE MANDATED BY THE BANKRUPTCY COURT.**

**Item 1. Principal Amount of Class 4 Secured Funded Debt Claim(s).**

The undersigned hereby certifies that, as of the Voting Record Date, it was the Beneficial Holder (or authorized signatory for a Beneficial Holder) of Class 4 Secured Funded Debt Claim(s) in the following aggregate unpaid principal amount (*insert amount in box below; if the Claim amount for voting purposes has not been pre-filled in the box below and you do not know the amount of your Secured Funded Debt Claim as of the Voting Record Date, please contact your Nominee for this information without delay*):[5]

$_______________

**Item 2. Vote of Class 4 Secured Funded Debt Claim(s).**

The Beneficial Holder of the Class 4 Secured Funded Debt Claim(s) set forth in Item 1 votes to (*please check only one*):

| **Accept the Plan** | **Reject the Plan** |
|---|---|
| ☐ | ☐ |

**BECAUSE THE 11.25% SECURED NOTES ARE ISSUED OR GUARANTEED BY CERTAIN OF THE DEBTORS UNDER THE 11.25% SECURED NOTES INDENTURE, YOUR VOTE ON THIS BENEFICIAL BALLOT WILL BE TABULATED AGAINST EACH DEBTOR THAT IS THE ISSUER OF, OR A GUARANTOR UNDER, THE 11.25% SECURED NOTES INDENTURE. CLASS 4**

[5] Only the aggregate unpaid principal amount of your Class 4 Secured Funded Debt Claim(s) should be entered above. Under Article III.B.4 of the Plan, the Secured Funded Debt Claims in respect of the 11.25% Secured Notes are Allowed in the aggregate principal amount outstanding under the 11.25% Secured Notes Indenture, plus accrued and unpaid interest at the non-default rate, fees, costs, and other amounts due and owing thereunder as of the Effective Date (but excluding any prepayment premium, make-whole, call protection, or similar amount). The Solicitation Agent may therefore adjust the amount entered above during its tabulation of votes to reflect accrued but unpaid prepetition interest, fees, and costs, and the amount tabulated for voting purposes may differ from the amount entered above. If any portion of your Class 4 Secured Funded Debt Claims(s) is denominated in a currency other than U.S. dollars, such amount will be converted to U.S. dollars for voting purposes as set forth in the Scheduling and Solicitation Motion.

**DOES NOT APPLY TO GETTY IMAGES HOLDINGS, INC., AND CLASS 9 (HOLDINGS INTERESTS) APPLIES ONLY TO GETTY IMAGES HOLDINGS, INC.**

**<u>Item 3. Important information regarding the Releases by Holders of Claims and Interests of the Debtors, Exculpation and Injunction Provisions, and Optional Opt-In Election.</u>**

**VOTING TO ACCEPT THE PLAN IN ITEM 2 DOES NOT, BY ITSELF, MAKE YOU A "RELEASING PARTY" UNDER THE PLAN. IF YOU (I) VOTE TO ACCEPT THE PLAN, (II) ABSTAIN FROM VOTING ON THE PLAN, (III) ARE PRESUMED TO ACCEPT OR DEEMED TO REJECT THE PLAN, OR (IV) VOTE TO REJECT THE PLAN, YOU MUST AFFIRMATIVELY OPT IN TO THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII.D OF THE PLAN TO BE A "RELEASING PARTY" BY CHECKING THE BOX BELOW, UNLESS YOU ARE OTHERWISE A "RELEASING PARTY" UNDER THE PLAN.**

**IF YOU VOTE TO ACCEPT THE PLAN AND WISH TO GRANT THE THIRD-PARTY RELEASE, YOU MUST CHECK BOTH THE "ACCEPT" BOX IN ITEM 2 AND THE OPT-IN BOX IN THIS ITEM 3. IF YOU ARE A RELEASING PARTY, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE PROVISIONS CONTAINED IN THE PLAN. YOUR DECISION ON THIS ELECTION DOES NOT AFFECT THE AMOUNT OF THE DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

**<u>Important Information Regarding the Releases.</u>** Voting to accept the Plan in Item 2 does not, by itself, make you a Releasing Party under the Plan. Whether you vote to accept the Plan, abstain from voting on the Plan, are presumed to accept or deemed to reject the Plan, or vote to reject the Plan, the election to grant the Third-Party Release contained in Article VIII.D of the Plan is at your option and is made only by checking the opt-in box in this Item 3, unless you are otherwise a Releasing Party under the Plan. If you vote to accept the Plan and wish to grant the Third-Party Release, please check both boxes. If you do not make that election, you will forgo the benefit of obtaining the releases set forth in Article VIII of the Plan if you would otherwise be a Released Party in connection therewith, because the Plan's definition of Released Parties, subject to the exceptions set forth therein, excludes an Entity that does not affirmatively opt into the releases in the Plan. You will receive the same treatment on account of your Claim under the Plan regardless of whether you make that election.

Please note that, under the Plan, an Entity that timely objects to the releases contained in the Plan, where such objection is not resolved before entry of the Confirmation Order, shall not be a Released Party.

| The Holder of the Class 4 (Secured Funded Debt Claims) Claims Against the Debtors Set Forth in Item 1 Elects to (check the box below to indicate your Opt-In election): | |
|---|---|
| ☐ | **OPT IN** to the Third-Party Release set forth below |

The Plan contains a series of releases that are part of the overall restructuring set forth in the Plan and described in greater detail in the Disclosure Statement. In that respect, parties should be aware that, if the Plan is confirmed and the Effective Date occurs, certain parties will be

getting releases and certain parties will be giving releases as set forth in Article VIII of the Plan. For your convenience, excerpts of the release provisions from the Plan are set forth below, however, you should carefully read the enclosed Disclosure Statement and Plan with respect to the releases.

**EACH OF THE RELEASING PARTIES EXPRESSLY ACKNOWLEDGES THAT THE RELEASES AND COVENANTS NOT TO SUE CONTAINED IN THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS OR RELEASED CLAIMS OR CAUSES OF ACTION ARE PRESENTLY KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, OR FORESEEN OR UNFORESEEN.**

**Relevant Definitions:**

**Under the Plan, "Releasing Parties" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Holder of Claims or Interests that affirmatively opts in to the releases provided for in the Plan; (h) each current and former Affiliate of each Entity in clause (a) through clause (g) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan under applicable Law; and (i) each Related Party of each Entity in clause (a) through clause (h) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable Law; *provided* that no Agent/Trustee shall be deemed to grant any release on behalf of, or to bind, any Holder for which it acts, and no Agent/Trustee shall be required to take any action in connection with the solicitation of opt-in elections.**

**Under the Plan, "Released Parties" means collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Releasing Party; (h) each current and former Affiliate of each Entity in clause (a) through clause (g); and (i) each Related Party of each Entity in clause (a) through clause (h); provided that, in each case, an Entity (other than the Debtors, the Reorganized Debtors, the Plan Sponsors, and their respective Related Parties) shall not be a Released Party if it does not affirmatively opt into the releases in the Plan by returning an "opt in" form.**

**Under the Plan, "Related Party" means, with respect to any Entity, (a) such Entity, (b) such Entity's predecessors, successors and assigns, parents, subsidiaries, Affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers, (c) with respect to each Plan Sponsor, its associated trusts (and its holding vehicles who are direct holders of interests in the applicable Plan Sponsor, its affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers) that are Holders of Interests in Holdings, (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's respective current and former officers, directors, principals, current or former equity holders (regardless of whether such interests are held directly or indirectly and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, managers, partners, employees, agents, trustees, beneficiaries, settlors, protectors, family offices, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other**

**professionals; and (e) with respect to each of the foregoing in clauses (a)–(d), such Entity's respective heirs, executors, estates, servants, and nominees.**

**Under the Plan, "Exculpated Parties" means, collectively, each of the following in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) members of the Special Committee; (d) each Unsecured Notes Trustee and Credit Agreement Agent, solely to the extent acting as a Disbursing Agent or otherwise making, directing, or facilitating distributions under, or taking any other action in the administration or consummation of, this Plan; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), (i) their respective current officers, their current and former directors, and limited liability company managers, who served in such capacity at any time between the Petition Date and the Effective Date, and (ii) each of their attorneys, financial advisors, investment bankers, consultants, and other professionals or advisors whose retentions were approved by the Bankruptcy Court pursuant to an order approving such professional's and advisor's retention application, as applicable.**

**RELEASES BY THE DEBTORS**

**Except as expressly set forth in the Plan or the Confirmation Order, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or**

**other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights and remedies against the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the Debtors' evaluation and pursuit of strategic alternatives (including any process conducted by or under the direction of the Special Committee), the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Debtors do not, pursuant to the Debtor Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and the Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Debtors, their Estates, or the Reorganized Debtors asserting any Claim or Cause of Action released pursuant to the Debtor Release against any of the Released Parties.**

**RELEASES BY THE RELEASING PARTIES**

**Effective on the Effective Date, except as expressly set forth in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable Law, as such Law may be extended or interpreted after the date upon which the Bankruptcy Court enters the Confirmation Order, on or after the Effective Date, each Released Party is hereby deemed expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, remedies, or liabilities, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Releasing Parties do not, pursuant to the Third-Party Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Third-Party Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release against any of the Released Parties.**

**<u>EXCULPATION</u>**

**To the fullest extent permitted by applicable Law, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and**

**implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place between the Petition Date and the Effective Date related or relating to the foregoing, except for claims related to any act or omission that is determined in a final order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, including the issuance of securities thereunder, and, therefore, are not, and on account of such solicitation, distributions, or issuance shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan, including the issuance of securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability.**

**Notwithstanding anything to the contrary in the foregoing, the exculpation set forth in the Plan shall not be construed as exculpating any party or Entity from its post-Effective Date obligations under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**INJUNCTION**

**Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation (in each case, as set forth in the above Discharge, Release, Third-Party Release, and Exculpation sections of the Plan), whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, affiliates, and Related Parties, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action**

**unless such Holder has timely Filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise (*provided* that this clause (d) shall not apply to any Bank Product Provider in respect of the Bank Product Obligations, as set forth in Article VI.L of the Plan); and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action released or settled pursuant to the Plan.**

**By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above. The injunctions set forth above shall extend to any successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any post-Effective Date obligations of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan**.

**Item 4. Class 4 Secured Funded Debt Claim(s) held in Additional Accounts.**

By completing and returning this Beneficial Ballot, the Beneficial Holder of the Secured Funded Debt Claims identified in Item 1 certifies that (a) this Beneficial Ballot is the only Beneficial Ballot submitted for the Class 4 Secured Funded Debt Claim(s) owned by such Beneficial Holder as indicated in Item 1, except for the Secured Funded Debt Claims identified in the following table (please use additional sheets of paper if necessary); and (b) all Ballots for Secured Funded Debt Claims submitted by the Beneficial Holder indicate the same vote to accept or reject the Plan that the Beneficial Holder has indicated in Item 2 of this Ballot. **To be clear, if any Beneficial Holder holds Secured Funded Debt Claims through one or more Nominees, such Beneficial Holder must identify all Secured Funded Debt Claims held through each Nominee in the following table, and must confirm the same vote to accept or reject the Plan on all ballots submitted. For each position identified in the following table, the Beneficial Holder must also report the release election made in Item 3 of the Ballot submitted for that position.**

**ONLY COMPLETE THIS ITEM 4 IF YOU HAVE SUBMITTED OTHER BENEFICIAL BALLOTS**

| Your Customer Account Number at Nominee of Other Class 4 Secured Funded Debt Claims Voted | Name of Registered Holder[6] and DTC Participant Number, if Applicable, of Nominee of Other Class 4 Secured Funded Debt Claims Voted | Principal Amount of Other Class 4 Secured Funded Debt Claims Voted | CUSIP of Other Class 4 Secured Funded Debt Claims Voted | Plan Vote of Other Class 4 Secured Funded Debt Claims Voted (Accept or Reject) | Release Election Made in Item 3 of the Ballot Submitted for Such Other Class 4 Secured Funded Debt Claims |
|---|---|---|---|---|---|

6 Insert your name if you are the Holder of record (i.e., the registered holder) of the Class 4 Secured Funded Debt Claims, or, if held in a “street name,” insert the name of your Nominee.

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Item 5. Certifications.**

Upon execution of this Beneficial Ballot, the undersigned certifies that:

1. as of the Voting Record Date, it was the Beneficial Holder (or an authorized signatory for a Beneficial Holder) of the Class 4 Secured Funded Debt Claim(s) set forth in Item 1;

2. it is eligible to be treated as the Holder of the Class 4 Secured Funded Debt Claim(s) set forth in Item 1 for the purposes of voting on the Plan;

3. it has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

4. it has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package materials;

5. it has cast the same vote with respect to each of the Holder's Class 4 Secured Funded Debt Claims;

6. it understands the treatment provided for its Class 4 Secured Funded Debt Claim(s) under the Plan;

7. it understands the recoveries provided for in the Plan are expressly conditioned upon confirmation and consummation of the Plan;

8. it acknowledges and agrees that the Debtors may make conforming changes to the Plan as may be reasonably necessary, subject to section 1127 of the Bankruptcy Code and in accordance with the terms and conditions set forth in the Restructuring Support Agreement; provided that the Debtors will not resolicit acceptances or rejections of the Plan in the event of such conforming changes unless otherwise required to by the Bankruptcy Court;

9. it understands and acknowledges that only the last properly executed ballot cast prior to the Voting Deadline with respect to the Class 4 Secured Funded Debt Claim(s) set forth in Item 1 will be counted, and, if any other ballot has been previously cast with respect to the Class 4 Secured Funded Debt Claim(s) set forth in Item 1, such other ballot shall be deemed revoked;

10. it understands that, if it does not complete the Opt-In election in Item 3, it or the Holder on whose behalf it is submitting this Ballot, as applicable, shall not be a "Releasing Party" under the Plan (unless such Holder is otherwise a "Releasing Party" under the

Plan, including as an Affiliate or Related Party of an Entity that opts in to the releases contained in the Plan and is legally entitled to bind such Holder to such releases under applicable Law);

11. it understands and acknowledges that the securities being distributed pursuant to the Plan are not being distributed pursuant to a registration statement filed with the United States Securities and Exchange Commission, and that such securities will be acquired for the Holder's own account and not with a view to any distribution of such securities in violation of the United States Securities Act of 1933, 15 U.S.C. §§ 77a–77aa;

12. it confirms that the Beneficial Holder of the Class 4 Secured Funded Debt Claim(s) set forth in Item 1 is either (i) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act); (ii) an "accredited investor" (as defined in Rule 501 of Regulation D under the Securities Act); or (iii) located outside the United States, is not a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act), and is not participating on behalf of or on account of a U.S. person; provided that, where this Beneficial Ballot is executed by an authorized signatory for a Beneficial Holder, the certification in this clause 12 is made solely in reliance on a certification provided to the undersigned by such Beneficial Holder, and the undersigned assumes no liability or responsibility for such Beneficial Holder's status and makes no representation or warranty with respect thereto;

13. it has full and complete authority to execute and submit this Beneficial Ballot; and

14. it consents to the disclosure of the information set forth in this Beneficial Ballot among the Solicitation Agent, the Debtors and their agents, and the Bankruptcy Court, to the extent required for the purposes of the Plan.

**Item 6. Holder Information and Signature.**

BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION (type or print)

| | |
|---|---|
| Name of the Beneficial Holder: | ______________________________ |
| Signature: | ______________________________ |
| Nominee's DTC Participant Number | ______________________________ |
| Signatory Name (if other than the Beneficial Holder): | ______________________________ |
| Title: | ______________________________ |
| Address: | ______________________________ |
| Email Address: | ______________________________ |

____________________________________

Telephone Number: ____________________________________

Date Completed: ____________________________________

**PLEASE COMPLETE, SIGN, AND DATE THIS BENEFICIAL BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED.**

**THIS BENEFICIAL BALLOT (IF PRE-VALIDATED BY YOUR NOMINEE) OR, IF APPLICABLE, THE MASTER BALLOT CONTAINING YOUR VOTE AND CAST BY YOUR NOMINEE ON YOUR BEHALF, MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT PRIOR TO THE VOTING DEADLINE.**

Your Nominee is authorized to employ its customary practices to forward solicitation information and materials to, and/or collect votes from, its Beneficial Holder clients, whether by e-mail, telephone, or other customary means of communication, including the use of a voter information form or an online platform in lieu of, or in addition to, sending the paper Beneficial Ballot and/or Solicitation Package.

[*Remainder of page intentionally left blank*]

**INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL BALLOT**

1. The Debtors are soliciting the votes of Holders of Class 4 Secured Funded Debt Claims with respect to the Plan. The Plan and Disclosure Statement are included in the packet you are receiving with this Beneficial Ballot. Capitalized terms used and not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Class that votes on the Plan and if the Plan otherwise satisfies the requirements of section 1129(a) of the Bankruptcy Code. If the Requisite Acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

3. Your Nominee may elect to "pre-validate" the Beneficial Ballot by (i) signing the Beneficial Ballot; (ii) indicating on the Beneficial Ballot the principal amount of Secured Funded Debt Claims owned by the Beneficial Holder as of the Voting Record Date, DTC participant number, and the account number of the Claims held by the Nominee for the Beneficial Holder; (iii) including a medallion guarantee stamp or authorized signatory list (certifying the Beneficial Holder's Secured Funded Debt Claims as of the Voting Record Date) with the Beneficial Ballot, and (iv) forwarding such Beneficial Ballot (including any DTC participant number) and other materials requested to be forwarded, to the Beneficial Holder for voting. The Beneficial Holder must then complete the information requested in the Beneficial Ballot, and return the pre-validated Beneficial Ballot directly to the Solicitation Agent via email to GettyImagesBallots@ra.kroll.com (with "Getty Images Ballot Processing" in the subject line) or by regular mail, overnight courier, or hand delivery to Kroll's mailing address at Getty Images Holdings, Inc. Ballot Processing Center, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232 so that it is **ACTUALLY RECEIVED** by Kroll on or before the Voting Deadline.

4. If your Beneficial Ballot has been "pre-validated" by your Nominee, you can return it directly to the Solicitation Agent by one of the following methods. For the avoidance of doubt, Beneficial Ballots that have not been "pre-validated" can only be submitted according to voting instructions provided by your Nominee:

| **If by First Class Mail, Overnight Courier, or Hand Delivery:** |
| --- |
| **Getty Images Holdings, Inc. Ballot Processing Center**<br>**c/o Kroll Restructuring Administration LLC**<br>**850 Third Avenue, Suite 412**<br>**Brooklyn, NY 11232**<br><br>(to arrange hand delivery, please email GettyImagesBallots@ra.kroll.com (with "Getty Images Ballot Processing" in the subject line) at least 24 hours prior to arrival at the Kroll address above and provide the anticipated date and time of delivery) |

| |
|---|
| **If by Electronic Mail (Preferred Method of Delivery)** |
| **GettyImagesBallots@ra.kroll.com**<br>**(with "Getty Images Ballot Processing" in the subject line)**<br>**If you return this "Pre-Validated" Beneficial Holder Ballot via electronic mail, you should NOT return a hard copy as well. "Pre-Validated" Beneficial Holder Ballots will not be accepted by telecopy, facsimile or other electronic means of transmission (other than by e-mail to GettyImagesBallots@ra.kroll.com).** |

5. To ensure that your vote is counted, you must deliver this Beneficial Ballot to the following, as applicable:

   a. If you received this Beneficial Ballot and a return envelope addressed to your Nominee, you must return your completed Beneficial Ballot directly to your Nominee in accordance with the instructions provided by your Nominee, and, in any event, with sufficient time to permit your Nominee to deliver your vote(s) on a completed Master Ballot so that it is actually received by the Solicitation Agent before the Voting Deadline.

   -or-

   b. If you received this Beneficial Ballot and a return envelope addressed to the Solicitation Agent, you must deliver a Pre-Validated Ballot directly to the Solicitation Agent by using the enclosed return envelope addressed to the Solicitation Agent so as to be actually received by the Solicitation Agent before the Voting Deadline.

6. Any pre-validated Beneficial Ballot or Master Ballot received by the Solicitation Agent after the Voting Deadline will not be counted unless the Debtors determine otherwise or as permitted by the Bankruptcy Court. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent actually receives the executed Beneficial Ballot or Master Ballot, as applicable. In all cases, Holders should allow sufficient time to assure timely delivery. No Ballot should be sent to the Bankruptcy Court, the Debtors or the Debtors' financial or legal advisors; and such ballots will not be counted. The method of delivery of this Beneficial Ballot to your Nominee or to the Solicitation Agent, as applicable, is at your election and risk.

7. If you deliver multiple Beneficial Ballots to your Nominee or (if pre-validated) to the Solicitation Agent, as applicable, the last valid ballot timely received will supersede and revoke any earlier received ballot.

8. This Beneficial Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with this Beneficial Ballot.

9. This Beneficial Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim.

10. You must vote all of your Claims within a particular Class either to accept or reject the Plan (i.e., you may not split your vote).

11. If you hold Claims in multiple accounts, you will receive more than one ballot coded for each different account. Each ballot votes only your Claims indicated on that ballot. Please complete and return each ballot you receive.

12. Please be sure to sign and date this Beneficial Ballot. If you are signing this Beneficial Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by the Solicitation Agent or the Debtors, must submit proper evidence of such capacity to the requesting party. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to this Beneficial Ballot.

13. The following Beneficial Ballots or Master Ballots, as applicable, shall not be counted in determining the acceptance or rejection of the Plan: (a) any Beneficial Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (b) any Beneficial Ballot or Master Ballot not actually received by the Solicitation Agent before the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Bankruptcy Court; (c) any unsigned Beneficial Ballot or Master Ballot; (d) any Beneficial Ballot or Master Ballot that partially rejects and partially accepts the Plan; (e) any Beneficial Ballot or Master Ballot not marked to either accept or reject the Plan, or marked to both accept and reject the Plan; (f) any Beneficial Ballot, pre-validated Beneficial Ballot, or Master Ballot submitted on behalf of a party who was not a Holder of Secured Funded Debt Claims as of the Voting Record Date; and (g) any Beneficial Ballot or Master Ballot superseded by a later, timely submitted valid ballot.

14. If you believe you have received the wrong ballot, you should contact your Nominee.

15. If (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Beneficial Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

16. Nothing contained in this Beneficial Ballot or in the enclosed documents renders you or any other person an agent of the Debtors or the Solicitation Agent, or authorizes you or any other person to use any document or make any statement on behalf of any of them with respect to the Plan, except for the statements contained in the Solicitation Materials.

**PLEASE MAIL YOUR BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL BALLOT OR THE PROCEDURE FOR VOTING ON THE PLAN, OR IF YOU HAVE RECEIVED A DAMAGED BENEFICIAL BALLOT OR HAVE LOST YOUR BENEFICIAL BALLOT, OR IF YOU NEED ADDITIONAL COPIES OF THE BENEFICIAL BALLOT, DISCLOSURE STATEMENT, PLAN, OR OTHER RELATED MATERIALS, PLEASE CONTACT YOUR NOMINEE.**

YOUR BENEFICIAL BALLOT, IF IT HAS NOT BEEN PRE-VALIDATED, MUST BE RETURNED TO YOUR NOMINEE SUFFICIENTLY IN ADVANCE OF THE VOTING DEADLINE, WHICH IS **5:00 P.M. (PREVAILING EASTERN TIME) ON NOVEMBER 30, 2026**, TO ENABLE YOUR NOMINEE TO ENTER YOUR VOTE IN A MASTER BALLOT AND RETURN SUCH MASTER BALLOT TO KROLL ON OR BEFORE THE VOTING DEADLINE. UNLESS YOUR PRE-VALIDATED BENEFICIAL BALLOT OR THE MASTER BALLOT CONTAINING YOUR VOTE IS ACTUALLY RECEIVED BY KROLL BEFORE THE VOTING DEADLINE, YOUR VOTE WILL NOT BE COUNTED.

[*Remainder of page intentionally left blank.*].

**EXHIBIT A**

***Your Nominee may have checked a box below to indicate the CUSIP / ISIN to which this Beneficial Ballot pertains, or otherwise provided that information to you on a label or schedule attached to the Beneficial Ballot. Please check one and only one box below. Multiple checked boxes below risk invalidation of your vote.***

**CLASS 4 – SECURED FUNDED DEBT CLAIMS**

| | DESCRIPTION | CUSIP / ISIN |
|---|---|---|
| ☐ | 11.25% Secured Notes (144A) | 374276AM5 / US374276AM59 |
| ☐ | 11.25% Secured Notes (AI) | 374276AN3 / US374276AN33 |
| ☐ | 11.25% Secured Notes (Reg S) | U3742LAC1 / USU3742LAC10 |
| ☐ | 11.25% Secured Notes (Temp Reg S) | U3742LAD9 / USU3742LAD92 |

# EXHIBIT 6C

**Form of Master Ballot for Holders of Class 4 Secured Funded Debt Claims**

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

**<u>IMPORTANT</u>**: NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF THE DISTRIBUTION OF THIS BALLOT. THE DEBTORS INTEND TO FILE CHAPTER 11 CASES AND SEEK CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT SHORTLY THEREAFTER AS DESCRIBED IN GREATER DETAIL IN THE ACCOMPANYING DISCLOSURE STATEMENT.

| | | |
|---|---|---|
| In re:<br><br>GETTY IMAGES HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | ) | Chapter 11<br><br>**IMPORTANT:** No chapter 11 case has been commenced as of the date of the distribution of this ballot. This ballot is being distributed to you as a part of a prepetition solicitation of votes on a prepackaged plan of reorganization. The Voting Deadline is November 30, 2026 at 5:00 p.m. (prevailing Eastern Time). |

**MASTER BALLOT FOR VOTING ON THE JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF GETTY IMAGES HOLDINGS, INC. AND ITS DEBTOR SUBSIDIARIES**

**<u>CLASS 4 – SECURED FUNDED DEBT CLAIMS (MASTER BALLOT)</u>**

PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.

THIS BALLOT MUST BE ACTUALLY RECEIVED BY KROLL RESTRUCTURING ADMINISTRATION LLC (THE "<u>SOLICITATION AGENT</u>" OR "<u>KROLL</u>") ON OR BEFORE **NOVEMBER 30, 2026 AT <u>5:00 P.M. (PREVAILING EASTERN TIME)</u>** (AS MAY BE EXTENDED BY THE DEBTORS, SUBJECT TO THE CONSENT RIGHTS SET FORTH IN THE RESTRUCTURING SUPPORT AGREEMENT, THE "<u>VOTING DEADLINE</u>"). IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE YOUR BALLOT BEFORE THE VOTING DEADLINE, AND UNLESS THE DEBTORS DETERMINE OTHERWISE OR AS PERMITTED BY THE BANKRUPTCY COURT, YOUR VOTE WILL NOT BE COUNTED.

1 The anticipated Debtors in the Chapter 11 Cases, along with the last four digits of each anticipated Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the anticipated Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

| |
|---|
| IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE VOTING PROCEDURES, OR ANY OF THE SOLICITATION MATERIALS YOU HAVE RECEIVED, OR YOU NEED TO OBTAIN ADDITIONAL SOLICITATION MATERIALS, PLEASE CONTACT KROLL BY: (1) CALLING (844) 408-3675 (U.S./CANADA, TOLL FREE) OR +1 (646) 825-2402 (INTERNATIONAL TOLL), (2) EMAILING GETTYIMAGESINFO@RA.KROLL.COM AND REFERENCING "GETTY IMAGES BALLOT PROCESSING" IN THE SUBJECT LINE, (3) VISITING THE DEBTORS' SOLICITATION WEBSITE AT HTTPS://RESTRUCTURING.RA.KROLL.COM/GETTYIMAGES, AND/OR (4) WRITING TO THE SOLICITATION AGENT AT THE FOLLOWING ADDRESS: GETTY IMAGES BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 THIRD AVENUE, SUITE 412, BROOKLYN, NEW YORK 11232. |

The Debtors are sending this master ballot (this "Master Ballot") to brokers, dealers, commercial banks, trust companies, or other agent nominees (each a "Nominee") of Beneficial Holders[2] of Class 4 Secured Funded Debt Claims as of October 9, 2026 (the "Voting Record Date") in connection with the *Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* (as may be amended, modified, or supplemented from time to time in accordance with its terms and including all exhibits or supplements thereto, the "Plan").[3]

The solicitation procedures are described in the *Motion of Debtors for Entry of an Order (I) Scheduling Combined Hearing on Adequacy of the Disclosure Statement and Confirmation of the Plan; (II) Fixing Deadline to Object to Disclosure Statement and the Plan; (III) Conditionally Approving Prepetition Solicitation Procedures and Form and Manner of Notice of Commencement, Combined Hearing and Objection Deadline; (IV) Conditionally Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (V) Conditionally (A) Directing the United States Trustee not to Convene Section 341(A) Meeting of Creditors and (B) Waiving Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities and Rule 2015.3 Reports; and (VI) Granting Related Relief*, which the Debtors intend to file on the Petition Date (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Scheduling and Solicitation Motion"), pursuant to which the Debtors will request that the Bankruptcy Court conditionally approve the solicitation procedures (any order granting the Scheduling and Solicitation Motion, the "Scheduling and Solicitation Order"). Nominees should use this Master Ballot to (a) cast votes to accept or reject the Plan and (b) make elections, each on behalf of and in accordance with the votes cast by the Beneficial Holders holding Class 4 Secured Funded Debt Claims through them.

**The CUSIPs / ISINs for Class 4 Secured Funded Debt Claims entitled to vote are identified on Exhibit A attached hereto**.

---

[2] A "Beneficial Holder" is a beneficial owner of Class 4 Secured Funded Debt Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

[3] Capitalized terms used but not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

In lieu of submitting this Master Ballot, Nominees may also send Beneficial Holders a pre-validated Class 4 Secured Funded Debt Claims beneficial ballot (a "Pre-Validated Beneficial Ballot"). Based on your decision whether or not to pre-validate the ballot, the below guidance with respect to pre-validation is mutually exclusive.

PRE-VALIDATED BENEFICIAL BALLOT. You may pre-validate a beneficial ballot by completing a beneficial ballot with the exception of Items 2 and 3 and indicating on the ballot: (a) the name and DTC participant number of the Nominee; (b) the aggregate principal amount of Class 4 Secured Funded Debt Claim(s) held by such Nominee for the Beneficial Holder as of the Voting Record Date; (c) the account number(s) for the account(s) in which such Class 4 Secured Funded Debt Claim(s) are held by the Nominee for the Beneficial Holder; and (d) signing the beneficial ballot and affixing a medallion guarantee thereto (or appending a list of the Nominee's authorized signers), certifying the Beneficial Holder's position in the Secured Funded Debt Claims as of the Voting Record Date. Once you pre-validate a Beneficial Ballot, you must **IMMEDIATELY** forward the solicitation materials to each applicable Beneficial Holder, including (i) the Pre-Validated Beneficial Ballot, (ii) the Plan and the Disclosure Statement, (iii) a postage pre-paid return envelope addressed to the Solicitation Agent, and (iv) clear instructions that the Beneficial Holder must return its completed and executed Beneficial Ballot directly to the Solicitation Agent before the Voting Deadline. In addition to submission in the return envelope provided, if any, or otherwise via regular mail, overnight courier, or hand delivery, Pre-Validated Beneficial Ballots may be returned to the Solicitation Agent by electronic mail to GettyImagesBallots@ra.kroll.com (with "Getty Images Ballot Processing" in the subject line).

NOT PRE-VALIDATED BALLOT. If you choose not to pre-validate Beneficial Ballots, you must **IMMEDIATELY** forward the solicitation materials to each Beneficial Holder, including (a) the Beneficial Ballot, (b) the Plan and the Disclosure Statement (c) a return envelope addressed to you, its Nominee, and (d) clear instructions stating that the Beneficial Holder must return its ballot directly to you in sufficient time to allow you to execute this Master Ballot and return it to the Solicitation Agent before the Voting Deadline. Upon receipt of completed and executed Beneficial Ballots returned to you by the Beneficial Holders, you must compile and validate the Beneficial Holders' votes and other relevant information using the customers' names or account numbers. You must then execute this Master Ballot and transmit it to the Solicitation Agent by the Voting Deadline. You must retain such Beneficial Ballots in your files for a period of one (1) year after the effective date of the Plan (as you may be ordered to produce the Beneficial Holder ballots to the Debtors or the Bankruptcy Court).

NO fees or commissions or other remuneration will be payable to you in your capacity as Nominee for soliciting votes on the proposals related to the Plan. The Debtors will, however, upon written request, reimburse you for customary mailing and handling expenses you incur in forwarding the ballot and other enclosed materials to Beneficial Holders.

This Master Ballot may not be used for any purpose other than for submitting votes with respect to Plan. Your rights and the rights of Beneficial Holders are described in the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement"). The Plan, the Disclosure Statement, and the Class 4 Secured Funded Debt Claims ballot (the "Beneficial Ballot," collectively, together with a pre-addressed, postage pre-paid return envelope, the "Solicitation Package") were sent to you as Nominee for the Beneficial Holders of Class 4 Secured Funded Debt Claims. If you believe you have received this Master

Ballot in error, or if you believe you received the wrong Master Ballot, please contact the Solicitation Agent immediately at the email address or telephone number set forth above.

**Your receipt of this Master Ballot does not indicate that a Beneficial Holder's Claim has been or will be Allowed. This Master Ballot is solely for purposes of casting votes to accept or reject the Plan and not for the purpose of allowance of, or distribution on account of, any Claim.**

You are authorized to transmit solicitation information and materials to and/or collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Ballot, and providing solicitation information and materials to and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means, including the use of an online platform.

**THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BEFORE 5:00 P.M. (PREVAILING EASTERN TIME) ON NOVEMBER 30, 2026 (AS MAY BE EXTENDED BY THE DEBTORS, SUBJECT TO THE CONSENT RIGHTS SET FORTH IN THE RESTRUCTURING SUPPORT AGREEMENT, THE "VOTING DEADLINE").**

IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE YOUR MASTER BALLOT BEFORE THE VOTING DEADLINE, AND UNLESS THE DEBTORS DETERMINE OTHERWISE OR AS PERMITTED BY THE BANKRUPTCY COURT, THE VOTES INCLUDED IN YOUR MASTER BALLOT WILL NOT BE COUNTED.

**Item 1. Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐ is a Nominee for Beneficial Holder(s) on account of the Class 4 Secured Funded Debt Claim(s) listed in Item 2 below;

☐ is acting under a power of attorney and/or agency (a copy of which must be provided upon request) granted by the Beneficial Holder(s) or a Nominee that is the registered Holder of the Class 4 Secured Funded Debt Claim(s) listed in Item 2 below; or

☐ has been granted a proxy from (a) a Nominee; or (b) the Beneficial Holder that is the registered Holder of the Class 4 Secured Funded Debt Claim(s) listed in Item 2 below.

Accordingly, the undersigned certifies that it has full power and authority to vote to accept or reject the Plan on behalf of such Beneficial Holder(s) on account of such Class 4 Secured Funded Debt Claims.

**Item 2. Vote of Class 4 Secured Funded Debt Claim(s).**

The undersigned transmits the following vote(s) of the Beneficial Holder(s) in respect of their Class 4 Secured Funded Debt Claim(s), and certifies that the following Beneficial Holders, as

identified by their respective customer account numbers set forth below, are a Beneficial Holder as of the Voting Record Date and have delivered to the undersigned, as Nominee, properly executed Beneficial Ballots casting such votes:[4]

| Please indicate the CUSIP/ISIN to which this Master Ballot pertains by checking the applicable box in **Exhibit A** hereto | | | |
|---|---|---|---|
| Customer Account Number or Name of Each Beneficial Holder | Item 2 of Beneficial Ballot<br>Indicate the vote cast on the Beneficial Ballot by entering the voting amount in the appropriate column below. | | Item 3 of the Beneficial Ballot If the Third-Party Release Opt-In box in item 3 of the Beneficial Ballot was checked, place an "X" in the column below |
| | Accept the Plan | Reject the Plan | |
| 1. | $ | $ | |
| 2. | $ | $ | |
| 3. | $ | $ | |
| 4. | $ | $ | |
| 5. | $ | $ | |
| 6. | $ | $ | |
| 7. | $ | $ | |
| 8. | $ | $ | |
| 9. | $ | $ | |
| 10. | $ | $ | |
| TOTAL | $ | $ | |

**IF YOU ARE ACTING AS A VOTING NOMINEE FOR MORE THAN TEN BENEFICIAL HOLDERS, PLEASE ATTACH ADDITIONAL SHEETS, AS NECESSARY.**

**BECAUSE THE 11.25% SECURED NOTES ARE ISSUED OR GUARANTEED BY CERTAIN OF THE DEBTORS UNDER THE 11.25% SECURED NOTES INDENTURE, THE VOTES REPORTED ON THIS MASTER BALLOT WILL BE**

[4] Indicate in the appropriate column the aggregate unpaid principal amount voted for each account, or attach such information to this Master Ballot in the form of the following table. Please note each Beneficial Holder must vote all of each such Beneficial Holder's Class 4 Secured Funded Debt Claims to accept or to reject the Plan, and may not split such vote. Any Beneficial Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan, or which indicates both an acceptance and a rejection of the Plan, shall not be counted. Under Article III.B.4 of the Plan, the Secured Funded Debt Claims in respect of the 11.25% Secured Notes are Allowed in the aggregate principal amount outstanding under the 11.25% Secured Notes Indenture, plus accrued and unpaid interest at the non-default rate, fees, costs, and other amounts due and owing thereunder as of the Effective Date (but excluding any prepayment premium, make-whole, call protection, or similar amount). The Solicitation Agent may therefore adjust the amounts reported on this Master Ballot during its tabulation of votes to reflect accrued but unpaid prepetition interest, fees, and costs, and the amounts tabulated for voting purposes may differ from the amounts reported above.

**TABULATED AGAINST EACH DEBTOR THAT IS THE ISSUER OF, OR A GUARANTOR UNDER, THE 11.25% SECURED NOTES INDENTURE. CLASS 4 DOES NOT APPLY TO GETTY IMAGES HOLDINGS, INC., AND CLASS 9 (HOLDINGS INTERESTS) APPLIES ONLY TO GETTY IMAGES HOLDINGS, INC.**

**Item 3. Releases.**

The language with respect to Third-Party Releases included in Item 3 of the Beneficial Ballot is shown in Annex A attached hereto.

**Item 4. Certification as to Transcription of Information from Item 4 of the Beneficial Ballots as to Class 4 Secured Funded Debt Claims Voted Through Other Beneficial Ballots.**

The undersigned certifies that it has transcribed in the following table the information, if any, that the Beneficial Holders have provided in Item 4 of the Beneficial Ballot, identifying any Class 4 Secured Funded Debt Claims for which such Beneficial Holders have submitted other ballots (other than to the undersigned), including the release election reported by each such Beneficial Holder for each such position:

| **Your Customer Account Number for Each Beneficial Holder That Completed Item 4 of the Beneficial Ballot** | **TRANSCRIBE FROM ITEM 4 OF THE BENEFICIAL BALLOTS:** | | | | | |
|---|---|---|---|---|---|---|
| | **Customer Account Number at Nominee of Other Class 4 Secured Funded Debt Claims Voted** | **Name of Registered Holder and DTC Participant Number, if Applicable, of Nominee of Other Class 4 Secured Funded Debt Claims Voted** | **Principal Amount of Other Class 4 Secured Funded Debt Claims Voted** | **CUSIP of Other Class 4 Secured Funded Debt Claims Voted** | **Plan Vote of Other Class 4 Secured Funded Debt Claims Voted (Accept or Reject)** | **Release Election Made in Item 3 of the Ballot Submitted for Such Other Class 4 Secured Funded Debt Claims** |
| 1. | | | $ | | | |
| 2. | | | $ | | | |
| 3. | | | $ | | | |
| 4. | | | $ | | | |
| 5. | | | $ | | | |
| 6. | | | $ | | | |
| 7. | | | $ | | | |

**Item 5. Certifications.**

By signing this Master Ballot, the undersigned certifies that:

1. (i) it has received a copy of the Disclosure Statement, the Plan, the Beneficial Ballot, and the Solicitation Package, and has delivered the same to the Beneficial Holders holding Class 4 Secured Funded Debt Claims through the undersigned; (ii) it has received a completed and signed Beneficial Ballot from each such Beneficial Holder; (iii) it is the registered Holder of the securities being voted, or is the agent thereof; and

(iv) it has been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

2. it has properly disclosed: (i) the number of Beneficial Holders holding Class 4 Secured Funded Debt Claims through the undersigned; (ii) the respective amounts of Class 4 Secured Funded Debt Claims owned by each Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; and (iv) the customer account or other identification number for each such Beneficial Holder;

3. if it is a Beneficial Holder and uses this Master Ballot to vote the undersigned's Class 4 Secured Funded Debt Claims, it confirms and attests to each of the certifications in Item 5 of the applicable Beneficial Ballot; each such Beneficial Holder has certified to it, or an intermediary Nominee, as applicable, that the Beneficial Holder is eligible to vote on the Plan;

4. each Beneficial Holder on whose behalf a vote is transmitted on this Master Ballot has certified to the undersigned that such Beneficial Holder is either (i) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act); (ii) an "accredited investor" (as defined in Rule 501 of Regulation D under the Securities Act); or (iii) located outside the United States, is not a "U.S. person" (as defined in Rule 902(k) of Regulation S under the Securities Act), and is not participating on behalf of or on account of a U.S. person; provided that the certification in this clause 4 is made solely in reliance on the certification provided to the undersigned by such Beneficial Holder, and the undersigned assumes no liability or responsibility for any Beneficial Holder's status and makes no representation or warranty with respect thereto;

5. it will maintain the Beneficial Ballots and evidence of separate transactions returned by the Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered; and

6. it consents to the disclosure of the information set forth in this Master Ballot among the Solicitation Agent, the Debtors and their agents, and the Bankruptcy Court, to the extent required for the purposes of the Plan.

**Item 6. Voter Information and Signature.**

BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION

Nominee Name: ______________________________________________

DTC Participant Number: ________________________________________

Name of Agent for Nominee
(if applicable): ______________________________________________

Signature: ___________________________________________________

Signatory Name
(if other
than Nominee): ______________________________________________

Title: ______________________________________________

Address: ______________________________________________

Email Address: ______________________________________________

Telephone: ______________________________________________

Date Completed: ______________________________________________

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND RETURN IT PROMPTLY!**

**THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED BY ONE OF THE FOLLOWING RETURN METHODS SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT PRIOR TO THE VOTING DEADLINE:**

IN THE ENCLOSED PRE-PAID, PRE-ADDRESSED RETURN ENVELOPE OR OTHERWISE BY REGULAR MAIL OR VIA OVERNIGHT COURIER OR HAND DELIVERY TO THE ADDRESS SET FORTH BELOW:

**Getty Images Ballot Processing**
**c/o Kroll Restructuring Administration LLC**
**850 Third Avenue, Suite 412**
**Brooklyn, New York 11232**
(to arrange hand delivery, please email GettyImagesBallots@ra.kroll.com (with "Getty Images Ballot Processing" in the subject line) at least 24 hours prior to arrival at the Kroll address above and provide the anticipated date and time of delivery)

-OR-

VIA EMAIL (ATTACHING A SCANNED PDF OF THE FULLY EXECUTED MASTER BALLOT) TO GETTYIMAGESBALLOTS@RA.KROLL.COM, WITH "GETTY IMAGES BALLOT PROCESSING" IN THE SUBJECT LINE.

**PLEASE CHOOSE *ONLY ONE* METHOD TO RETURN THIS MASTER BALLOT. THIS MASTER BALLOT MUST BE RECEIVED BEFORE THE VOTING DEADLINE.**

## MASTER BALLOT INSTRUCTIONS

1. The Debtors are soliciting the votes of Holders of Class 4 Secured Funded Debt Claims with respect to the Plan. The Plan and Disclosure Statement are included in the packet you are receiving with this Master Ballot. Capitalized terms used and not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

2. The Court may confirm the Plan and thereby bind Beneficial Holders of Secured Funded Debt Claims. Please review the Disclosure Statement for more information.

3. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Class that votes on the Plan and if the Plan otherwise satisfies the requirements of section 1129(a) of the Bankruptcy Code. If the Requisite Acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

4. You should immediately distribute, and in no event no later than three (3) business days after receipt, the Beneficial Ballots and the Solicitation Package to all Beneficial Holders of Class 4 Secured Funded Debt Claims and take any action required to enable each such Beneficial Holder to timely vote the Claims that it holds. If your customary practice is to forward the solicitation information to and/or collect votes from Beneficial Holders by e-mail, telephone, or other customary means of communication, you are authorized to employ that method of communication, including use of an online platform, in lieu of sending the paper Ballot and/or Solicitation Package. Any vote transmitted to you, whether by Beneficial Ballot or otherwise, by a Beneficial Holder of a Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to Kroll, a Master Ballot that reflects the vote of such Beneficial Holders by the Voting Deadline of 5:00 p.m. (prevailing Eastern Time) on November 30, 2026 or otherwise validate the Master Ballot in a manner acceptable to Kroll. If your customary practice is to collect votes from your Beneficial Holders by voter information form, e-mail, telephone, or other accepted methods of communication, you are authorized to collect the votes and opt-in elections in that manner.

5. To have the votes of your Beneficial Holders count, you should already have done one of the following:

   a. delivered the Beneficial Ballots and the Solicitation Package to each Beneficial Holder with clear instructions on when to return such ballots to you to allow you to complete and return this Master Ballot so that the Solicitation Agent actually receives it prior to the Voting Deadline;

-or-

b. if you are not submitting this Master Ballot, sent the Beneficial Holders the Pre-Validated Beneficial Ballots in their Solicitation Package for direct return to the Solicitation Agent.

6. With regard to any votes returned to you by a Beneficial Holder (whether through Beneficial Ballot or otherwise), you must compile and validate the votes, execute the Master Ballot, and deliver the Master Ballot to Kroll so that it is actually received by Kroll on or before the Voting Deadline. All Beneficial Ballots (or customary communications for transmitting votes) returned by Beneficial Holders should be retained for inspection for at least one (1) year from the Voting Deadline. You may be ordered to produce the Beneficial Ballots (or customary communications for transmitting votes) to the Debtors or the Bankruptcy Court. The method of delivery of this Master Ballot to the Solicitation Agent is at your election and risk.

7. You may complete and deliver to Kroll multiple Master Ballots. Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the latest received valid Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior received Master Ballot. Likewise, if a Beneficial Holder submits to you more than one Beneficial Ballot, (i) the latest received Ballot from a Beneficial Holder before the submission deadline that you impose shall be deemed to supersede any prior Ballot submitted by the Beneficial Holder; and (ii) you should complete the Master Ballot accordingly.

8. You must use a separate Master Ballot for each CUSIP / ISIN. The 11.25% Secured Notes are outstanding in four tranches, each bearing a separate CUSIP and ISIN as set forth on Exhibit A hereto, and a Master Ballot may report votes for only one such CUSIP / ISIN.

9. If you are both the Nominee and Beneficial Holder, and you wish to vote such Class 4 Secured Funded Debt Claims for which you are a Beneficial Holder, you may return this Master Ballot for such Class 4 Secured Funded Debt Claims.

10. This Master Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with this Master Ballot.

11. This Master Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim.

12. You must vote all of your Claims within a particular Class either to accept or reject the Plan (i.e., you may not split your vote).

13. For purposes of tabulating votes, you or a Beneficial Holder will be deemed to have voted the principal amount of your or its Claims in a particular Class, although any principal amounts may be adjusted by the Solicitation Agent to reflect the amount of the Claim actually voted, including prepetition interest.

14. For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Creditor in a particular Class may be aggregated and treated as if such Creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; provided, however, that if separate affiliated entities hold Claims in a particular Class, such Claims will not be aggregated and will not be treated as if such Creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

15. Please be sure to sign and date this Master Ballot. If you are signing this Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by the Solicitation Agent or the Debtors, must submit proper evidence of such capacity to the requesting party. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to this Master Ballot.

16. Votes cast by your Beneficial Holder clients on this Master Ballot will be applied to the applicable positions you as the Nominee hold, as of the Voting Record Date, as evidenced by the applicable securities position report(s) obtained from the Indenture Trustee and/or the Depository Trust Company ("DTC") or other applicable depository firm. Votes submitted pursuant to a Master Ballot will not be counted in excess of the amount of Secured Funded Debt Claims you hold as of the Voting Record Date.

17. If you submit conflicting votes or "over-votes," the Solicitation Agent will use reasonable efforts to reconcile discrepancies with the applicable Nominee. If over-votes on a Master Ballot are not reconciled prior to the preparation of the voting report, the Debtors shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Master Ballot that contained the over-vote, but only to the extent of your position in the particular Class.

18. The following ballots or Master Ballots, as applicable, shall not be counted in determining the acceptance or rejection of the Plan: (a) any ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (b) any ballot or Master Ballot not actually received by the Solicitation Agent before the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Bankruptcy Court; (c) any unsigned ballot or Master Ballot; (d) any ballot that does not contain a signature; (e) any ballot or Master Ballot that partially rejects and partially accepts the Plan; (f) any ballot or Master Ballot not marked to either accept or reject the Plan, or marked to both accept and reject the Plan; and (g) any ballot or Master Ballot superseded by a later, timely submitted valid ballot.

19. If you believe you have received the wrong ballot, you should contact the Solicitation Agent immediately at (844) 408-3675 (U.S./Canada, toll-free) or +1 (646) 825-2402 (international, toll).

20. The Debtors will, upon written request, reimburse you for customary mailing and handling expenses you incur in forwarding the Solicitation Package and Ballot to the Beneficial Holders for which you are the Nominee. No fees or commissions or other

remuneration will be payable to any broker, dealer, or other person for soliciting votes from Beneficial Holders with respect to the Plan.

21. If (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

22. Nothing contained in this Master Ballot or in the enclosed documents renders you or any other person an agent of the Debtors or the Solicitation Agent, or authorizes you or any other person to use any document or make any statement on behalf of any of them with respect to the Plan, except for the statements contained in the Solicitation Materials.

**PLEASE MAIL YOUR BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE PROCEDURE FOR VOTING ON THE PLAN, OR IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT, DISCLOSURE STATEMENT, PLAN, OR OTHER RELATED MATERIALS, PLEASE CONTACT KROLL RESTRUCTURING ADMINISTRATION LLC (THE DEBTORS' SOLICITATION AGENT) AT: (844) 408-3675 (U.S./CANADA, TOLL FREE) OR +1 (646) 825-2402 (INTERNATIONAL TOLL) OR VIA EMAIL: GETTYIMAGESINFO@RA.KROLL.COM, SUBJECT LINE: "GETTY IMAGES BALLOT PROCESSING."**

**PLEASE BE ADVISED THAT THE SOLICITATION AGENT IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL ADVICE.**

[*Remainder of page intentionally left blank*]

# EXHIBIT A

***Please check one and only one box below to indicate the CUSIP / ISIN to which this Master Ballot pertains, or otherwise provide that information on a label or schedule attached to the Master Ballot. Multiple checked boxes below risk invalidation of the votes contained in this Master Ballot.***

**CLASS 4 – SECURED FUNDED DEBT CLAIMS**

| | DESCRIPTION | CUSIP / ISIN |
|---|---|---|
| ☐ | 11.25% Secured Notes (144A) | 374276AM5 / US374276AM59 |
| ☐ | 11.25% Secured Notes (AI) | 374276AN3 / US374276AN33 |
| ☐ | 11.25% Secured Notes (Reg S) | U3742LAC1 / USU3742LAC10 |
| ☐ | 11.25% Secured Notes (Temp Reg S) | U3742LAD9 / USU3742LAD92 |

## ANNEX A

## Release Language from Beneficial Ballot

Important information regarding the Releases by Holders of Claims and Interests of the Debtors, Exculpation and Injunction Provisions, and Optional Opt-In Election.

**Important Information Regarding the Releases.** A Beneficial Holder that votes to accept the Plan is not, by virtue of that vote alone, a Releasing Party under the Plan. Whether a Beneficial Holder votes to accept the Plan, abstains from voting on the Plan, is presumed to accept or deemed to reject the Plan, or votes to reject the Plan, the election to grant the Third-Party Release contained in Article VIII.D of the Plan is at that Beneficial Holder's option and is made only by checking the opt-in box in Item 3 of its Beneficial Ballot, unless it is otherwise a Releasing Party under the Plan. A Beneficial Holder that votes to accept the Plan and wishes to grant the Third-Party Release should check both boxes. A Beneficial Holder that does not make that election will forgo the benefit of obtaining the releases set forth in Article VIII of the Plan if it would otherwise be a Released Party in connection therewith, because the Plan's definition of Released Parties, subject to the exceptions set forth therein, excludes an Entity that does not affirmatively opt into the releases in the Plan. Each Beneficial Holder will receive the same treatment on account of its Claim under the Plan regardless of whether it makes that election.

Please note that, under the Plan, an Entity that timely objects to the releases contained in the Plan, where such objection is not resolved before entry of the Confirmation Order, shall not be a Released Party.

The Plan contains a series of releases that are part of the overall restructuring set forth in the Plan and described in greater detail in the Disclosure Statement. In that respect, parties should be aware that, if the Plan is confirmed and the Effective Date occurs, certain parties will be getting releases and certain parties will be giving releases as set forth in Article VIII of the Plan. For your convenience, excerpts of the release provisions from the Plan are set forth below, however, you should carefully read the enclosed Disclosure Statement and Plan with respect to the releases.

**EACH OF THE RELEASING PARTIES EXPRESSLY ACKNOWLEDGES THAT THE RELEASES AND COVENANTS NOT TO SUE CONTAINED IN THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS OR RELEASED CLAIMS OR CAUSES OF ACTION ARE PRESENTLY KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, OR FORESEEN OR UNFORESEEN.**

**Relevant Definitions:**

**Under the Plan, "Releasing Parties" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Holder of Claims or Interests that affirmatively opts in to the releases provided for in the Plan; (h) each current and former Affiliate of each Entity in clause (a) through clause (g) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan under applicable Law; and (i) each Related Party of each Entity in clause (a) through clause (h) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable**

**Law; *provided* that no Agent/Trustee shall be deemed to grant any release on behalf of, or to bind, any Holder for which it acts, and no Agent/Trustee shall be required to take any action in connection with the solicitation of opt-in elections.**

**Under the Plan, "Released Parties" means collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Releasing Party; (h) each current and former Affiliate of each Entity in clause (a) through clause (g); and (i) each Related Party of each Entity in clause (a) through clause (h); provided that, in each case, an Entity (other than the Debtors, the Reorganized Debtors, the Plan Sponsors, and their respective Related Parties) shall not be a Released Party if it does not affirmatively opt into the releases in the Plan by returning an "opt in" form.**

**Under the Plan, "Related Party" means, with respect to any Entity, (a) such Entity, (b) such Entity's predecessors, successors and assigns, parents, subsidiaries, Affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers, (c) with respect to each Plan Sponsor, its associated trusts (and its holding vehicles who are direct holders of interests in the applicable Plan Sponsor, its affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers) that are Holders of Interests in Holdings, (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's respective current and former officers, directors, principals, current or former equity holders (regardless of whether such interests are held directly or indirectly and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, managers, partners, employees, agents, trustees, beneficiaries, settlors, protectors, family offices, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (e) with respect to each of the foregoing in clauses (a)–(d), such Entity's respective heirs, executors, estates, servants, and nominees.**

**Under the Plan, "Exculpated Parties" means collectively, each of the following in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) members of the Special Committee; (d) each Unsecured Notes Trustee and Credit Agreement Agent, solely to the extent acting as a Disbursing Agent or otherwise making, directing, or facilitating distributions under, or taking any other action in the administration or consummation of, this Plan; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), (i) their respective current officers, their current and former directors, and limited liability company managers, who served in such capacity at any time between the Petition Date and the Effective Date, and (ii) each of their attorneys, financial advisors, investment bankers, consultants, and other professionals or advisors whose retentions were approved by the Bankruptcy Court pursuant to an order approving such professional's and advisor's retention application, as applicable.**

**<u>RELEASES BY THE DEBTORS</u>**

**Except as expressly set forth in the Plan or the Confirmation Order, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by**

**the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights and remedies against the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the Debtors' evaluation and pursuit of strategic alternatives (including any process conducted by or under the direction of the Special Committee), the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission,**

**transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Debtors do not, pursuant to the Debtor Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and the Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Debtors, their Estates, or the Reorganized Debtors asserting any Claim or Cause of Action released pursuant to the Debtor Release against any of the Released Parties.**

**RELEASES BY THE RELEASING PARTIES**

**Effective on the Effective Date, except as expressly set forth in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable Law, as such Law may be extended or interpreted after the date upon which the Bankruptcy Court enters the Confirmation Order, on or after the Effective Date, each Released Party is hereby deemed expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, remedies, or liabilities, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure,**

**management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Releasing Parties do not, pursuant to the Third-Party Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Third-Party Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the**

**Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release against any of the Released Parties.**

**EXCULPATION**

**To the fullest extent permitted by applicable Law, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place between the Petition Date and the Effective Date related or relating to the foregoing, except for claims related to any act or omission that is determined in a final order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, including the issuance of securities thereunder, and, therefore, are not, and on account of such solicitation, distributions, or issuance shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan, including the issuance of securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability.**

**Notwithstanding anything to the contrary in the foregoing, the exculpation set forth in the Plan shall not be construed as exculpating any party or Entity from its post-**

**Effective Date obligations under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**<u>INJUNCTION</u>**

**Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation (in each case, as set forth in the above Discharge, Release, Third-Party Release, and Exculpation sections of the Plan), whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, affiliates, and Related Parties, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action unless such Holder has timely Filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise (*provided* that this clause (d) shall not apply to any Bank Product Provider in respect of the Bank Product Obligations, as set forth in Article VI.L of the Plan); and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action released or settled pursuant to the Plan.**

**By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above. The injunctions set forth above shall extend to any successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any post-Effective Date obligations of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

# EXHIBIT 7A

**Form of Beneficial Holder Ballot for Holders of Class 5 Unsecured Notes Claims**

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

IMPORTANT: NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF THE DISTRIBUTION OF THIS BENEFICIAL BALLOT. THE DEBTORS INTEND TO FILE CHAPTER 11 CASES AND SEEK CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT SHORTLY THEREAFTER AS DESCRIBED IN GREATER DETAIL IN THE ACCOMPANYING DISCLOSURE STATEMENT.

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| GETTY IMAGES HOLDINGS, INC., *et al.*,[1] | ) | **IMPORTANT:** No chapter 11 case has been commenced as of the date of the distribution of this ballot. This ballot is being distributed to you as a part of a prepetition solicitation of votes on a prepackaged plan of reorganization. The Voting Deadline is November 30, 2026 at 5:00 p.m. (prevailing Eastern Time). |
| Debtors. | ) | |

**BENEFICIAL HOLDER BALLOT FOR VOTING ON THE JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF GETTY IMAGES HOLDINGS, INC. AND ITS DEBTOR SUBSIDIARIES**

**CLASS 5 – UNSECURED NOTES CLAIMS (BENEFICIAL HOLDER)**

PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.

THIS BALLOT MUST BE ACTUALLY RECEIVED BY KROLL RESTRUCTURING ADMINISTRATION LLC (THE "SOLICITATION AGENT" OR "KROLL") ON OR BEFORE **NOVEMBER 30, 2026 AT 5:00 P.M. (PREVAILING EASTERN TIME)** (AS MAY BE EXTENDED BY THE DEBTORS, SUBJECT TO THE CONSENT RIGHTS SET FORTH IN THE RESTRUCTURING SUPPORT AGREEMENT, THE "VOTING DEADLINE"). IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE YOUR BALLOT BEFORE THE VOTING DEADLINE, AND UNLESS THE DEBTORS DETERMINE OTHERWISE OR AS PERMITTED BY THE BANKRUPTCY COURT, YOUR VOTE WILL NOT BE COUNTED.

1 The anticipated Debtors in the Chapter 11 Cases, along with the last four digits of each anticipated Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the anticipated Debtors' service address for purposes of the Chapter 11 Cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE VOTING PROCEDURES, OR ANY OF THE SOLICITATION MATERIALS YOU HAVE RECEIVED, OR YOU NEED TO OBTAIN ADDITIONAL SOLICITATION MATERIALS, PLEASE CONTACT KROLL BY: (1) CALLING (844) 408-3675 (U.S./CANADA, TOLL FREE) OR +1 (646) 825-2402 (INTERNATIONAL TOLL), (2) EMAILING GETTYIMAGESINFO@RA.KROLL.COM AND REFERENCING "GETTY IMAGES BALLOT PROCESSING" IN THE SUBJECT LINE, (3) VISITING THE DEBTORS' SOLICITATION WEBSITE AT HTTPS://RESTRUCTURING.RA.KROLL.COM/GETTYIMAGES, AND/OR (4) WRITING TO THE SOLICITATION AGENT AT THE FOLLOWING ADDRESS: GETTY IMAGES BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 THIRD AVENUE, SUITE 412, BROOKLYN, NEW YORK 11232.

This Beneficial Ballot is being sent to you in connection with the *Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* (as may be amended, modified, or supplemented from time to time in accordance with its terms and including all exhibits or supplements thereto, the "Plan")[2] because the records maintained by your Nominee[3] indicate that you are a Beneficial Holder[4] of Class 5 Unsecured Notes Claim(s) as of October 9, 2026 (the "Voting Record Date"), and, accordingly, you may have a right to vote to accept or reject the Plan. This Beneficial Ballot may not be used for any purpose other than for submitting votes with respect to the Plan. If you believe you have received this Beneficial Ballot in error, please contact the Solicitation Agent at the email address or telephone number set forth above.

**Your receipt of this Beneficial Ballot does not indicate that a Beneficial Holder's Claim has been or will be Allowed. This Beneficial Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance of, or distribution on account of, any Claim.**

**The CUSIPs / ISINs for Class 5 Unsecured Notes Claims entitled to vote are identified on Exhibit A attached hereto.**

Your rights are described in the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Disclosure Statement"). The solicitation procedures are described in the *Motion of Debtors for Entry of an Order (I) Scheduling Combined Hearing on Adequacy of the Disclosure Statement and Confirmation of the Plan; (II) Fixing Deadline to Object to*

---

[2] Capitalized terms used but not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

[3] "Nominee" means the broker, dealer, commercial bank, trust company, savings and loan, financial institution, or other such party in whose name your beneficial ownership in Class 5 Unsecured Notes Claims is registered or held of record on your behalf as of the Voting Record Date.

[4] A "Beneficial Holder" is a beneficial owner of Class 5 Unsecured Notes Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

*Disclosure Statement and the Plan; (III) Conditionally Approving Prepetition Solicitation Procedures and Form and Manner of Notice of Commencement, Combined Hearing and Objection Deadline; (IV) Conditionally Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (V) Conditionally (A) Directing the United States Trustee not to Convene Section 341(A) Meeting of Creditors and (B) Waiving Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities and Rule 2015.3 Reports; and (VI) Granting Related Relief*, which the Debtors intend to file on the Petition Date (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Scheduling and Solicitation Motion"), pursuant to which the Debtors will request that the Bankruptcy Court conditionally approve the solicitation procedures (any order granting the Scheduling and Solicitation Motion, the "Scheduling and Solicitation Order"). The Plan and the Disclosure Statement are included in the packet you are receiving together with this Beneficial Ballot (collectively, with a pre-addressed, postage pre-paid return envelope, the "Solicitation Package"). Upon request, the Solicitation Agent will provide paper copies of the Plan and the Disclosure Statement at the Debtors' expense.

**You should carefully and thoroughly review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan. Your Claim has been placed in Class 5 (Unsecured Notes Claims) under the Plan.**

The Debtors intend to commence voluntary cases under chapter 11 of the Bankruptcy Code. The Plan can thereafter be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the Holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in at least one Impaired Class and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the Requisite Acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan; and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you regardless of whether you vote or if you vote to reject the Plan.

**IF YOU RECEIVED A PRE-VALIDATED BENEFICIAL BALLOT FROM YOUR NOMINEE WITH A RETURN ENVELOPE ADDRESSED TO THE SOLICITATION AGENT, YOUR COMPLETED, SIGNED, AND DATED BENEFICIAL BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BEFORE THE VOTING DEADLINE.**

**IF YOU RECEIVED A BENEFICIAL BALLOT AND A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, YOUR VOTE, WHETHER SUBMITTED USING A COMPLETED, SIGNED, AND DATED BENEFICIAL BALLOT, OR OTHERWISE ACCORDING TO YOUR NOMINEE'S INSTRUCTIONS, MUST BE SENT TO YOUR NOMINEE, NOT THE SOLICITATION AGENT, ALLOWING SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR VOTE, COMPLETE A MASTER BALLOT, AND TRANSMIT THE MASTER BALLOT TO THE SOLICITATION AGENT SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT BEFORE THE VOTING DEADLINE.**

**FOR YOUR VOTE TO COUNT, YOU MUST ACT IN ACCORDANCE WITH YOUR NOMINEE'S INSTRUCTIONS, INCLUDING SUBMISSION OF YOUR VOTE ON OR BEFORE YOUR NOMINEE'S INTERNAL VOTING DEADLINE, WHICH WILL LIKELY BE AT MINIMUM ONE TO TWO BUSINESS DAYS PRIOR TO THE VOTING DEADLINE MANDATED BY THE BANKRUPTCY COURT.**

**Item 1. Principal Amount of Class 5 Unsecured Notes Claim(s).**

The undersigned hereby certifies that, as of the Voting Record Date, it was the Beneficial Holder (or authorized signatory for a Beneficial Holder) of Class 5 Unsecured Notes Claim(s) in the following aggregate unpaid principal amount (*insert amount in box below; if the Claim amount for voting purposes has not been pre-filled in the box below and you do not know the amount of your Unsecured Notes Claim as of the Voting Record Date, please contact your Nominee for this information without delay*):[5]

$_______________

**Item 2. Vote of Class 5 Unsecured Notes Claim(s).**

The Beneficial Holder of the Class 5 Unsecured Notes Claim(s) set forth in Item 1 votes to (*please check only one*):

| **Accept the Plan** | **Reject the Plan** |
| --- | --- |
| ☐ | ☐ |

**BECAUSE THE UNSECURED NOTES ARE ISSUED OR GUARANTEED BY CERTAIN OF THE DEBTORS UNDER THE 9.75% NOTES INDENTURE AND THE 14.00% NOTES INDENTURE, YOUR VOTE ON THIS BENEFICIAL BALLOT WILL BE TABULATED AGAINST EACH DEBTOR THAT IS THE ISSUER OF, OR A GUARANTOR UNDER, THE 9.75% NOTES INDENTURE OR THE 14.00% NOTES INDENTURE, AS APPLICABLE. CLASS 9 (HOLDINGS INTERESTS) APPLIES ONLY TO GETTY IMAGES HOLDINGS, INC.**

[5] Only the aggregate unpaid principal amount of your Class 5 Unsecured Notes Claim(s) should be entered above. Under Article III.B.5 of the Plan, the Unsecured Notes Claims are Allowed in the aggregate principal amount outstanding under the 9.75% Notes Indenture and the 14.00% Notes Indenture, as applicable, plus any accrued and unpaid interest owed thereunder, in each case as of the Petition Date. The Solicitation Agent may therefore adjust the amount entered above during its tabulation of votes, and the amount tabulated for voting purposes may differ from the amount entered above. For voting purposes, the amount of each Unsecured Notes Claim was established based on the principal amount outstanding under the 9.75% Notes Indenture and the 14.00% Notes Indenture, as applicable, as of the Voting Record Date, as evidenced by the records of the applicable indenture trustee and securities depository.

**Item 3. Important information regarding the Releases by Holders of Claims and Interests of the Debtors, Exculpation and Injunction Provisions, and Optional Opt-In Election.**

**VOTING TO ACCEPT THE PLAN IN ITEM 2 DOES NOT, BY ITSELF, MAKE YOU A "RELEASING PARTY" UNDER THE PLAN. IF YOU (I) VOTE TO ACCEPT THE PLAN, (II) ABSTAIN FROM VOTING ON THE PLAN, (III) ARE PRESUMED TO ACCEPT OR DEEMED TO REJECT THE PLAN, OR (IV) VOTE TO REJECT THE PLAN, YOU MUST AFFIRMATIVELY OPT IN TO THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII.D OF THE PLAN TO BE A "RELEASING PARTY" BY CHECKING THE BOX BELOW, UNLESS YOU ARE OTHERWISE A "RELEASING PARTY" UNDER THE PLAN.**

**IF YOU VOTE TO ACCEPT THE PLAN AND WISH TO GRANT THE THIRD-PARTY RELEASE, YOU MUST CHECK BOTH THE "ACCEPT" BOX IN ITEM 2 AND THE OPT-IN BOX IN THIS ITEM 3. IF YOU ARE A RELEASING PARTY, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE PROVISIONS CONTAINED IN THE PLAN. YOUR DECISION ON THIS ELECTION DOES NOT AFFECT THE AMOUNT OF THE DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN.**

**Important Information Regarding the Releases.** Voting to accept the Plan in Item 2 does not, by itself, make you a Releasing Party under the Plan. Whether you vote to accept the Plan, abstain from voting on the Plan, are presumed to accept or deemed to reject the Plan, or vote to reject the Plan, the election to grant the Third-Party Release contained in Article VIII.D of the Plan is at your option and is made only by checking the opt-in box in this Item 3, unless you are otherwise a Releasing Party under the Plan. If you vote to accept the Plan and wish to grant the Third-Party Release, please check both boxes. If you do not make that election, you will forgo the benefit of obtaining the releases set forth in Article VIII of the Plan if you would otherwise be a Released Party in connection therewith, because the Plan's definition of Released Parties, subject to the exceptions set forth therein, excludes an Entity that does not affirmatively opt into the releases in the Plan. You will receive the same treatment on account of your Claim under the Plan regardless of whether you make that election.

Please note that, under the Plan, an Entity that timely objects to the releases contained in the Plan, where such objection is not resolved before entry of the Confirmation Order, shall not be a Released Party.

| |
|---|
| **The Holder of the Class 5 (Unsecured Notes Claims) Claims Against the Debtors Set Forth in Item 1 Elects to (check the box below to indicate your Opt-In election):** |
| ☐ **OPT IN** to the Third-Party Release set forth below |

The Plan contains a series of releases that are part of the overall restructuring set forth in the Plan and described in greater detail in the Disclosure Statement. In that respect, parties should be aware that, if the Plan is confirmed and the Effective Date occurs, certain parties will be getting releases and certain parties will be giving releases as set forth in Article VIII of the Plan. For your convenience, excerpts of the release provisions from the Plan are set forth

below, however, you should carefully read the enclosed Disclosure Statement and Plan with respect to the releases.

**EACH OF THE RELEASING PARTIES EXPRESSLY ACKNOWLEDGES THAT THE RELEASES AND COVENANTS NOT TO SUE CONTAINED IN THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS OR RELEASED CLAIMS OR CAUSES OF ACTION ARE PRESENTLY KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, OR FORESEEN OR UNFORESEEN.**

**Relevant Definitions:**

**Under the Plan, "Releasing Parties" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Holder of Claims or Interests that affirmatively opts in to the releases provided for in the Plan; (h) each current and former Affiliate of each Entity in clause (a) through clause (g) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan under applicable Law; and (i) each Related Party of each Entity in clause (a) through clause (h) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable Law; *provided* that no Agent/Trustee shall be deemed to grant any release on behalf of, or to bind, any Holder for which it acts, and no Agent/Trustee shall be required to take any action in connection with the solicitation of opt-in elections.**

**Under the Plan, "Released Parties" means collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Releasing Party; (h) each current and former Affiliate of each Entity in clause (a) through clause (g); and (i) each Related Party of each Entity in clause (a) through clause (h); provided that, in each case, an Entity (other than the Debtors, the Reorganized Debtors, the Plan Sponsors, and their respective Related Parties) shall not be a Released Party if it does not affirmatively opt into the releases in the Plan by returning an "opt in" form.**

**Under the Plan, "Related Party" means, with respect to any Entity, (a) such Entity, (b) such Entity's predecessors, successors and assigns, parents, subsidiaries, Affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers, (c) with respect to each Plan Sponsor, its associated trusts (and its holding vehicles who are direct holders of interests in the applicable Plan Sponsor, its affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers) that are Holders of Interests in Holdings, (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's respective current and former officers, directors, principals, current or former equity holders (regardless of whether such interests are held directly or indirectly and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, managers, partners, employees, agents, trustees, beneficiaries, settlors, protectors, family offices, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (e) with respect to each of the foregoing in clauses (a)–(d), such Entity's respective heirs, executors, estates, servants, and nominees.**

**Under the Plan, "Exculpated Parties" means, collectively, each of the following in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) members of the Special Committee; (d) each Unsecured Notes Trustee and Credit Agreement Agent, solely to the extent acting as a Disbursing Agent or otherwise making, directing, or facilitating distributions under, or taking any other action in the administration or consummation of, this Plan; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), (i) their respective current officers, their current and former directors, and limited liability company managers, who served in such capacity at any time between the Petition Date and the Effective Date, and (ii) each of their attorneys, financial advisors, investment bankers, consultants, and other professionals or advisors whose retentions were approved by the Bankruptcy Court pursuant to an order approving such professional's and advisor's retention application, as applicable.**

**<u>RELEASES BY THE DEBTORS</u>**

**Except as expressly set forth in the Plan or the Confirmation Order, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights and remedies against the Debtors, any Avoidance Actions (but excluding**

**Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the Debtors' evaluation and pursuit of strategic alternatives (including any process conducted by or under the direction of the Special Committee), the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Debtors do not, pursuant to the Debtor Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and the Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Debtors, their Estates, or the Reorganized Debtors asserting any Claim or Cause of Action released pursuant to the Debtor Release against any of the Released Parties.**

**<u>RELEASES BY THE RELEASING PARTIES</u>**

**Effective on the Effective Date, except as expressly set forth in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and**

**the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable Law, as such Law may be extended or interpreted after the date upon which the Bankruptcy Court enters the Confirmation Order, on or after the Effective Date, each Released Party is hereby deemed expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, remedies, or liabilities, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Releasing Parties do not, pursuant to the Third-Party Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order of a court of competent jurisdiction to have constituted**

**actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Third-Party Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release against any of the Released Parties.**

**<u>EXCULPATION</u>**

**To the fullest extent permitted by applicable Law, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place between the Petition Date**

**and the Effective Date related or relating to the foregoing, except for claims related to any act or omission that is determined in a final order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, including the issuance of securities thereunder, and, therefore, are not, and on account of such solicitation, distributions, or issuance shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan, including the issuance of securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability.**

**Notwithstanding anything to the contrary in the foregoing, the exculpation set forth in the Plan shall not be construed as exculpating any party or Entity from its post-Effective Date obligations under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**INJUNCTION**

**Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation (in each case, as set forth in the above Discharge, Release, Third-Party Release, and Exculpation sections of the Plan), whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, affiliates, and Related Parties, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action unless such Holder has timely Filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable**

**Law or otherwise (*provided* that this clause (d) shall not apply to any Bank Product Provider in respect of the Bank Product Obligations, as set forth in Article VI.L of the Plan); and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action released or settled pursuant to the Plan.**

**By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above. The injunctions set forth above shall extend to any successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any post-Effective Date obligations of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan**.

**Item 4. Class 5 Unsecured Notes Claim(s) held in Additional Accounts.**

By completing and returning this Beneficial Ballot, the Beneficial Holder of the Unsecured Notes Claims identified in Item 1 certifies that (a) this Beneficial Ballot is the only Beneficial Ballot submitted for the Class 5 Unsecured Notes Claim(s) owned by such Beneficial Holder as indicated in Item 1, except for the Unsecured Notes Claims identified in the following table (please use additional sheets of paper if necessary); and (b) all Ballots for Unsecured Notes Claims submitted by the Beneficial Holder indicate the same vote to accept or reject the Plan that the Beneficial Holder has indicated in Item 2 of this Ballot. **To be clear, if any Beneficial Holder holds Unsecured Notes Claims through one or more Nominees, such Beneficial Holder must identify all Unsecured Notes Claims held through each Nominee in the following table, and must confirm the same vote to accept or reject the Plan on all ballots submitted. For each position identified in the following table, the Beneficial Holder must also report the release election made in Item 3 of the Ballot submitted for that position.**

**ONLY COMPLETE THIS ITEM 4 IF YOU HAVE SUBMITTED OTHER BENEFICIAL BALLOTS**

| Your Customer Account Number at Nominee of Other Class 5 Unsecured Notes Claims Voted | Name of Registered Holder[6] and DTC Participant Number, if Applicable, of Nominee of Other Class 5 Unsecured Notes Claims Voted | Principal Amount of Other Class 5 Unsecured Notes Claims Voted | CUSIP of Other Class 5 Unsecured Notes Claims Voted | Plan Vote of Other Class 5 Unsecured Notes Claims Voted (Accept or Reject) | Release Election Made in Item 3 of the Ballot Submitted for Such Other Class 5 Unsecured Notes Claims |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Item 5. Certifications.**

Upon execution of this Beneficial Ballot, the undersigned certifies that:

1. as of the Voting Record Date, it was the Beneficial Holder (or an authorized signatory for a Beneficial Holder) of the Class 5 Unsecured Notes Claim(s) set forth in Item 1;

2. it is eligible to be treated as the Holder of the Class 5 Unsecured Notes Claim(s) set forth in Item 1 for the purposes of voting on the Plan;

3. it has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

4. it has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package materials;

5. it has cast the same vote with respect to each of the Holder's Class 5 Unsecured Notes Claims;

6. it understands the treatment provided for its Class 5 Unsecured Notes Claim(s) under the Plan;

7. it understands the recoveries provided for in the Plan are expressly conditioned upon confirmation and consummation of the Plan;

8. it acknowledges and agrees that the Debtors may make conforming changes to the Plan as may be reasonably necessary, subject to section 1127 of the Bankruptcy Code and in accordance with the terms and conditions set forth in the Restructuring Support Agreement; provided that the Debtors will not resolicit acceptances or rejections of the Plan in the event of such conforming changes unless otherwise required to by the Bankruptcy Court;

[6] Insert your name if you are the Holder of record (i.e., the registered holder) of the Class 5 Unsecured Notes Claims, or, if held in a "street name," insert the name of your Nominee.

9. it understands and acknowledges that only the last properly executed ballot cast prior to the Voting Deadline with respect to the Class 5 Unsecured Notes Claim(s) set forth in Item 1 will be counted, and, if any other ballot has been previously cast with respect to the Class 5 Unsecured Notes Claim(s) set forth in Item 1, such other ballot shall be deemed revoked;

10. it understands that, whether or not it votes to accept the Plan in Item 2, it or the Beneficial Holder on whose behalf it is submitting this Beneficial Ballot, as applicable, shall not be a "Releasing Party" under the Plan unless it completes the Opt-In election in Item 3 (or is otherwise a "Releasing Party" under the Plan, including as an Affiliate or Related Party of an Entity that opts in to the releases contained in the Plan and is legally entitled to bind it to such releases under applicable Law);

11. it has full and complete authority to execute and submit this Beneficial Ballot; and

12. it consents to the disclosure of the information set forth in this Beneficial Ballot among the Solicitation Agent, the Debtors and their agents, and the Bankruptcy Court, to the extent required for the purposes of the Plan.

**Item 6. Holder Information and Signature.**

BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION (type or print)

| | |
|---|---|
| Name of the Beneficial Holder: | ______________________________ |
| Signature: | ______________________________ |
| Signatory Name (if other than the Beneficial Holder): | ______________________________ |
| Title: | ______________________________ |
| Address: | ______________________________ |
| Email Address: | ______________________________ |
| Telephone Number: | ______________________________ |
| Date Completed: | ______________________________ |

**PLEASE COMPLETE, SIGN, AND DATE THIS BENEFICIAL BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED OR AS OTHERWISE DIRECTED.**

**THIS BENEFICIAL BALLOT (IF PRE-VALIDATED BY YOUR NOMINEE) OR, IF APPLICABLE, THE MASTER BALLOT CONTAINING YOUR VOTE AND CAST**

**BY YOUR NOMINEE ON YOUR BEHALF, MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT PRIOR TO THE VOTING DEADLINE.**

Your Nominee is authorized to employ its customary practices to forward solicitation information and materials to, and/or collect votes from, its Beneficial Holder clients, whether by e-mail, telephone, or other customary means of communication, including the use of a voter information form or an online platform in lieu of, or in addition to, sending the paper Beneficial Ballot and/or Solicitation Package.

[*Remainder of page intentionally left blank*]

**INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL BALLOT**

1. The Debtors are soliciting the votes of Holders of Class 5 Unsecured Notes Claims with respect to the Plan. The Plan and Disclosure Statement are included in the packet you are receiving with this Beneficial Ballot. Capitalized terms used and not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Class that votes on the Plan and if the Plan otherwise satisfies the requirements of section 1129(a) of the Bankruptcy Code. If the Requisite Acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

3. Your Nominee may elect to "pre-validate" the Beneficial Ballot by (i) signing the Beneficial Ballot; (ii) indicating on the Beneficial Ballot the principal amount of Unsecured Notes Claims owned by the Beneficial Holder as of the Voting Record Date, DTC participant number, and the account number of the Claims held by the Nominee for the Beneficial Holder; (iii) including a medallion guarantee stamp or authorized signatory list (certifying the Beneficial Holder's Unsecured Notes Claims as of the Voting Record Date) with the Beneficial Ballot, and (iv) forwarding such Beneficial Ballot (including any DTC participant number) and other materials requested to be forwarded, to the Beneficial Holder for voting. The Beneficial Holder must then complete the information requested in the Beneficial Ballot, and return the pre-validated Beneficial Ballot directly to the Solicitation Agent via email to GettyImagesBallots@ra.kroll.com (with "Getty Images Ballot Processing" in the subject line) or by regular mail, overnight courier, or hand delivery to Kroll's mailing address at Getty Images Ballot Processing, c/o Kroll Restructuring Administration LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232 so that it is **ACTUALLY RECEIVED** by Kroll on or before the Voting Deadline.

4. If your Beneficial Ballot has been "pre-validated" by your Nominee, you can return it directly to the Solicitation Agent by one of the following methods. For the avoidance of doubt, Beneficial Ballots that have not been "pre-validated" can only be submitted according to voting instructions provided by your Nominee:

| **If by First Class Mail, Overnight Courier, or Hand Delivery:** |
|---|
| **Getty Images Holdings, Inc. Ballot Processing Center**<br>**c/o Kroll Restructuring Administration LLC**<br>**850 Third Avenue, Suite 412**<br>**Brooklyn, NY 11232**<br><br>(to arrange hand delivery, please email GettyImagesBallots@ra.kroll.com (with "Getty Images Ballot Processing" in the subject line) at least 24 hours prior to arrival at the Kroll address above and provide the anticipated date and time of delivery) |

| **If by Electronic Mail (Preferred Method of Delivery)** |
|---|
| **GettyImagesBallots@ra.kroll.com**<br>**(with "Getty Images Ballot Processing" in the subject line)**<br>**If you return this "Pre-Validated" Beneficial Holder Ballot via electronic mail, you should NOT return a hard copy as well. "Pre-Validated" Beneficial Holder Ballots will not be accepted by telecopy, facsimile or other electronic means of transmission (other than by e-mail to GettyImagesBallots@ra.kroll.com).** |

5. To ensure that your vote is counted, you must deliver this Beneficial Ballot to the following, as applicable:

   a. If you received this Beneficial Ballot and a return envelope addressed to your Nominee, you must return your completed Beneficial Ballot directly to your Nominee in accordance with the instructions provided by your Nominee, and, in any event, with sufficient time to permit your Nominee to deliver your vote(s) on a completed Master Ballot so that it is actually received by the Solicitation Agent before the Voting Deadline.

   -or-

   b. If you received this Beneficial Ballot and a return envelope addressed to the Solicitation Agent, you must deliver a Pre-Validated Ballot directly to the Solicitation Agent by using the enclosed return envelope addressed to the Solicitation Agent so as to be actually received by the Solicitation Agent before the Voting Deadline.

6. Any pre-validated Beneficial Ballot or Master Ballot received by the Solicitation Agent after the Voting Deadline will not be counted unless the Debtors determine otherwise or as permitted by the Bankruptcy Court. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent actually receives the executed Beneficial Ballot or Master Ballot, as applicable. In all cases, Holders should allow sufficient time to assure timely delivery. No Ballot should be sent to the Bankruptcy Court, the Debtors or the Debtors' financial or legal advisors; and such ballots will not be counted. The method of delivery of this Beneficial Ballot to your Nominee or to the Solicitation Agent, as applicable, is at your election and risk.

7. If you deliver multiple Beneficial Ballots to your Nominee or (if pre-validated) to the Solicitation Agent, as applicable, the last valid ballot timely received will supersede and revoke any earlier received ballot.

8. This Beneficial Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with this Beneficial Ballot.

9. This Beneficial Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim.

10. You must vote all of your Claims within a particular Class either to accept or reject the Plan (i.e., you may not split your vote).

11. For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Beneficial Holder in Class 5 (Unsecured Notes Claims) may be aggregated and treated as if such Beneficial Holder held one Claim in Class 5 (Unsecured Notes Claims), and all votes related to such Claim shall be treated as a single vote to accept or reject the Plan; provided that if separate affiliated entities hold Claims in Class 5 (Unsecured Notes Claims), such Claims shall not be aggregated and shall not be treated as if such Beneficial Holder held one Claim in Class 5 (Unsecured Notes Claims), and the vote of each affiliated entity shall be counted separately as a vote to accept or reject the Plan.

12. If you hold Claims in multiple accounts, you will receive more than one ballot coded for each different account. Each ballot votes only your Claims indicated on that ballot. Please complete and return each ballot you receive.

13. Please be sure to sign and date this Beneficial Ballot. If you are signing this Beneficial Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by the Solicitation Agent or the Debtors, must submit proper evidence of such capacity to the requesting party. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to this Beneficial Ballot.

14. The following Beneficial Ballots or Master Ballots, as applicable, shall not be counted in determining the acceptance or rejection of the Plan: (a) any Beneficial Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (b) any Beneficial Ballot or Master Ballot not actually received by the Solicitation Agent before the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Bankruptcy Court; (c) any unsigned Beneficial Ballot or Master Ballot; (d) any Beneficial Ballot or Master Ballot that partially rejects and partially accepts the Plan; (e) any Beneficial Ballot or Master Ballot not marked to either accept or reject the Plan, or marked to both accept and reject the Plan; (f) any Beneficial Ballot, pre-validated Beneficial Ballot, or Master Ballot submitted on behalf of a party who was not a Holder of Unsecured Notes Claims as of the Voting Record Date; and (g) any Beneficial Ballot or Master Ballot superseded by a later, timely submitted valid ballot.

15. If you believe you have received the wrong ballot, you should contact your Nominee.

16. If (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Beneficial Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

17. Nothing contained in this Beneficial Ballot or in the enclosed documents renders you or any other person an agent of the Debtors or the Solicitation Agent, or authorizes you or any other person to use any document or make any statement on behalf of any of

them with respect to the Plan, except for the statements contained in the Solicitation Materials.

**PLEASE MAIL YOUR BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE PROCEDURE FOR VOTING ON THE PLAN, OR IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT, DISCLOSURE STATEMENT, PLAN, OR OTHER RELATED MATERIALS, PLEASE CONTACT KROLL RESTRUCTURING ADMINISTRATION LLC (THE DEBTORS' SOLICITATION AGENT) AT: (844) 408-3675 (U.S./CANADA, TOLL FREE) OR +1 (646) 825-2402 (INTERNATIONAL TOLL) OR VIA EMAIL: "GETTYIMAGESINFO@RA.KROLL.COM, SUBJECT LINE: "GETTY IMAGES BALLOT PROCESSING."**

YOUR BENEFICIAL BALLOT, IF IT HAS NOT BEEN PRE-VALIDATED, MUST BE RETURNED TO YOUR NOMINEE SUFFICIENTLY IN ADVANCE OF THE VOTING DEADLINE, WHICH IS **5:00 P.M. (PREVAILING EASTERN TIME) ON NOVEMBER 30, 2026**, TO ENABLE YOUR NOMINEE TO ENTER YOUR VOTE IN A MASTER BALLOT AND RETURN SUCH MASTER BALLOT TO KROLL ON OR BEFORE THE VOTING DEADLINE. UNLESS YOUR PRE-VALIDATED BENEFICIAL BALLOT OR THE MASTER BALLOT CONTAINING YOUR VOTE IS ACTUALLY RECEIVED BY KROLL BEFORE THE VOTING DEADLINE, YOUR VOTE WILL NOT BE COUNTED.

[*Remainder of page intentionally left blank.*].

# EXHIBIT A

***Your Nominee may have checked a box below to indicate the CUSIP / ISIN to which this Beneficial Ballot pertains, or otherwise provided that information to you on a label or schedule attached to the Beneficial Ballot. Please check one and only one box below. Multiple checked boxes below risk invalidation of your vote. A separate Beneficial Ballot must be submitted for each CUSIP / ISIN tranche in which you hold a Class 5 Unsecured Notes Claim.***

**CLASS 5 – UNSECURED NOTES CLAIMS**

| | DESCRIPTION | CUSIP / ISIN |
|---|---|---|
| ☐ | 9.75% Notes (144A) | 374276AJ2 / US374276AJ21 |
| ☐ | 9.75% Notes (AI) | 374276AK9 / US374276AK93 |
| ☐ | 9.75% Notes (Reg S) | U3742LAA5 / USU3742LAA53 |
| ☐ | 14.00% Notes (144A) | 374276AP8 / US374276AP80 |
| ☐ | 14.00% Notes (AI) | 374276AQ6 / US374276AQ63 |
| ☐ | 14.00% Notes (Reg S) | U3742LAE7 / USU3742LAE75 |

# EXHIBIT 7B

## Form of Master Ballot for Holders of Class 5 Unsecured Notes Claims

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

**IMPORTANT**: NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF THE DISTRIBUTION OF THIS BALLOT. THE DEBTORS INTEND TO FILE CHAPTER 11 CASES AND SEEK CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT SHORTLY THEREAFTER AS DESCRIBED IN GREATER DETAIL IN THE ACCOMPANYING DISCLOSURE STATEMENT.

| | | |
|---|---|---|
| In re:<br><br>GETTY IMAGES HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | ) | Chapter 11<br><br>**IMPORTANT:** No chapter 11 case has been commenced as of the date of the distribution of this ballot. This ballot is being distributed to you as a part of a prepetition solicitation of votes on a prepackaged plan of reorganization. The Voting Deadline is November 30, 2026 at 5:00 p.m. (prevailing Eastern Time). |

**MASTER BALLOT FOR VOTING ON THE JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF GETTY IMAGES HOLDINGS, INC. AND ITS DEBTOR SUBSIDIARIES**

**CLASS 5 – UNSECURED NOTES CLAIMS (MASTER BALLOT)**

PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.

THIS BALLOT MUST BE ACTUALLY RECEIVED BY KROLL RESTRUCTURING ADMINISTRATION LLC (THE "SOLICITATION AGENT" OR "KROLL") ON OR BEFORE **NOVEMBER 30, 2026 AT 5:00 P.M. (PREVAILING EASTERN TIME)** (AS MAY BE EXTENDED BY THE DEBTORS, SUBJECT TO THE CONSENT RIGHTS SET FORTH IN THE RESTRUCTURING SUPPORT AGREEMENT, THE "VOTING DEADLINE"). IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE YOUR BALLOT BEFORE THE VOTING DEADLINE, AND UNLESS THE DEBTORS DETERMINE OTHERWISE OR AS PERMITTED BY THE BANKRUPTCY COURT, YOUR VOTE WILL NOT BE COUNTED.

[1] The anticipated Debtors in the Chapter 11 Cases, along with the last four digits of each anticipated Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the anticipated Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE VOTING PROCEDURES, OR ANY OF THE SOLICITATION MATERIALS YOU HAVE RECEIVED, OR YOU NEED TO OBTAIN ADDITIONAL SOLICITATION MATERIALS, PLEASE CONTACT KROLL BY: (1) CALLING (844) 408-3675 (U.S./CANADA, TOLL-FREE) OR +1 (646) 825-2402 (INTERNATIONAL, TOLL), (2) EMAILING GETTYIMAGESINFO@RA.KROLL.COM AND REFERENCING "GETTY IMAGES BALLOT PROCESSING" IN THE SUBJECT LINE, (3) VISITING THE DEBTORS' SOLICITATION WEBSITE AT HTTPS://RESTRUCTURING.RA.KROLL.COM/GETTYIMAGES, AND/OR (4) WRITING TO THE SOLICITATION AGENT AT THE FOLLOWING ADDRESS: GETTY IMAGES BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC, 850 THIRD AVENUE, SUITE 412, BROOKLYN, NEW YORK 11232.

The Debtors are sending this master ballot (this "Master Ballot") to brokers, dealers, commercial banks, trust companies, or other agent nominees (each a "Nominee") of Beneficial Holders[2] of Class 5 Unsecured Notes Claims as of October 9, 2026 (the "Voting Record Date") in connection with the *Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* (as may be amended, modified, or supplemented from time to time in accordance with its terms and including all exhibits or supplements thereto, the "Plan").[3]

The solicitation procedures are described in the *Motion of Debtors for Entry of an Order (I) Scheduling Combined Hearing on Adequacy of the Disclosure Statement and Confirmation of the Plan; (II) Fixing Deadline to Object to Disclosure Statement and the Plan; (III) Conditionally Approving Prepetition Solicitation Procedures and Form and Manner of Notice of Commencement, Combined Hearing and Objection Deadline; (IV) Conditionally Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (V) Conditionally (A) Directing the United States Trustee not to Convene Section 341(A) Meeting of Creditors and (B) Waiving Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities and Rule 2015.3 Reports; and (VI) Granting Related Relief*, which the Debtors intend to file on the Petition Date (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "Scheduling and Solicitation Motion"), pursuant to which the Debtors will request that the Bankruptcy Court conditionally approve the solicitation procedures (any order granting the Scheduling and Solicitation Motion, the "Scheduling and Solicitation Order"). Nominees should use this Master Ballot to (a) cast votes to accept or reject the Plan and (b) make elections, each on behalf of and in accordance with the votes cast by the Beneficial Holders holding Class 5 Unsecured Notes Claims through them.

---

[2] A "Beneficial Holder" is a beneficial owner of Class 5 Unsecured Notes Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

[3] Capitalized terms used but not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

**The CUSIPs / ISINs for Class 5 Unsecured Notes Claims entitled to vote are identified on <u>Exhibit A</u> attached hereto**.

In lieu of submitting this Master Ballot, Nominees may also send Beneficial Holders a pre-validated Class 5 Unsecured Notes Claims beneficial ballot (a "<u>Pre-Validated Beneficial Ballot</u>"). Based on your decision whether or not to pre-validate the ballot, the below guidance with respect to pre-validation is mutually exclusive.

<u>PRE-VALIDATED BENEFICIAL BALLOT</u>. You may pre-validate a beneficial ballot by completing a beneficial ballot with the exception of Items 2 and 3 and indicating on the ballot: (a) the name and DTC participant number of the Nominee; (b) the aggregate principal amount of Class 5 Unsecured Notes Claim(s) held by such Nominee for the Beneficial Holder as of the Voting Record Date; (c) the account number(s) for the account(s) in which such Class 5 Unsecured Notes Claim(s) are held by the Nominee for the Beneficial Holder; and (d) signing the beneficial ballot and affixing a medallion guarantee thereto (or appending a list of the Nominee's authorized signers), certifying the Beneficial Holder's position in the Unsecured Notes Claims as of the Voting Record Date. Once you pre-validate a Beneficial Ballot, you must **<u>IMMEDIATELY</u>** forward the solicitation materials to each applicable Beneficial Holder, including (i) the Pre-Validated Beneficial Ballot, (ii) the Plan and the Disclosure Statement, (iii) a postage pre-paid return envelope addressed to the Solicitation Agent, and (iv) clear instructions that the Beneficial Holder must return its completed and executed Beneficial Ballot directly to the Solicitation Agent before the Voting Deadline. In addition to submission in the return envelope provided, if any, or otherwise via regular mail, overnight courier, or hand delivery, Pre-Validated Beneficial Ballots may be returned to the Solicitation Agent by electronic mail to GettyImagesBallots@ra.kroll.com (with "Getty Images Ballot Processing" in the subject line).

<u>NOT PRE-VALIDATED BALLOT</u>. If you choose not to pre-validate Beneficial Ballots, you must **<u>IMMEDIATELY</u>** forward the solicitation materials to each Beneficial Holder, including (a) the Beneficial Ballot, (b) the Plan and the Disclosure Statement (c) a return envelope addressed to you, its Nominee, and (d) clear instructions stating that the Beneficial Holder must return its ballot directly to you in sufficient time to allow you to execute this Master Ballot and return it to the Solicitation Agent before the Voting Deadline. Upon receipt of completed and executed Beneficial Ballots returned to you by the Beneficial Holders, you must compile and validate the Beneficial Holders' votes and other relevant information using the customers' names or account numbers. You must then execute this Master Ballot and transmit it to the Solicitation Agent by the Voting Deadline. You must retain such Beneficial Ballots in your files for a period of one (1) year after the effective date of the Plan (as you may be ordered to produce the Beneficial Holder ballots to the Debtors or the Bankruptcy Court).

<u>NO</u> fees or commissions or other remuneration will be payable to you in your capacity as Nominee for soliciting votes on the proposals related to the Plan. The Debtors will, however, upon written request, reimburse you for customary mailing and handling expenses you incur in forwarding the ballot and other enclosed materials to Beneficial Holders.

This Master Ballot may not be used for any purpose other than for submitting votes with respect to Plan. Your rights and the rights of Beneficial Holders are described in the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* (as may be amended, modified, or supplemented from time to time and including all exhibits or supplements thereto, the "<u>Disclosure Statement</u>"). The Plan, the Disclosure Statement, and the Class 5 Unsecured Notes Claims

ballot (the "Beneficial Ballot," collectively, together with a pre-addressed, postage pre-paid return envelope, the "Solicitation Package") were sent to you as Nominee for the Beneficial Holders of Class 5 Unsecured Notes Claims. If you believe you have received this Master Ballot in error, or if you believe you received the wrong Master Ballot, please contact the Solicitation Agent immediately at the email address or telephone number set forth above.

**Your receipt of this Master Ballot does not indicate that a Beneficial Holder's Claim has been or will be Allowed. This Master Ballot is solely for purposes of casting votes to accept or reject the Plan and not for the purpose of allowance of, or distribution on account of, any Claim.**

You are authorized to transmit solicitation information and materials to and/or collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Ballot, and providing solicitation information and materials to and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means, including the use of an online platform.

**THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BEFORE 5:00 P.M. (PREVAILING EASTERN TIME) ON NOVEMBER 30, 2026 (AS MAY BE EXTENDED BY THE DEBTORS, SUBJECT TO THE CONSENT RIGHTS SET FORTH IN THE RESTRUCTURING SUPPORT AGREEMENT, THE "VOTING DEADLINE").**

IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE YOUR MASTER BALLOT BEFORE THE VOTING DEADLINE, AND UNLESS THE DEBTORS DETERMINE OTHERWISE OR AS PERMITTED BY THE BANKRUPTCY COURT, THE VOTES INCLUDED IN YOUR MASTER BALLOT WILL NOT BE COUNTED.

**Item 1. Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐ is a Nominee for Beneficial Holder(s) on account of the Class 5 Unsecured Notes Claim(s) listed in Item 2 below;

☐ is acting under a power of attorney and/or agency (a copy of which must be provided upon request) granted by the Beneficial Holder(s) or a Nominee that is the registered Holder of the Class 5 Unsecured Notes Claim(s) listed in Item 2 below; or

☐ has been granted a proxy from (a) a Nominee; or (b) the Beneficial Holder that is the registered Holder of the Class 5 Unsecured Notes Claim(s) listed in Item 2 below.

Accordingly, the undersigned certifies that it has full power and authority to vote to accept or reject the Plan on behalf of such Beneficial Holder(s) on account of such Class 5 Unsecured Notes Claims.

**Item 2. Vote of Class 5 Unsecured Notes Claim(s).**

The undersigned transmits the following vote(s) of the Beneficial Holder(s) in respect of their Class 5 Unsecured Notes Claim(s), and certifies that the following Beneficial Holders, as identified by their respective customer account numbers set forth below, are a Beneficial Holder as of the Voting Record Date and have delivered to the undersigned, as Nominee, properly executed Beneficial Ballots casting such votes:[4]

| Please indicate the CUSIP/ISIN to which this Master Ballot pertains by checking the applicable box in **Exhibit A** hereto | | | |
|---|---|---|---|
| Customer Account Number or Name of Each Beneficial Holder | Item 2 of Beneficial Ballot<br>Indicate the vote cast on the Beneficial Ballot by entering the voting amount in the appropriate column below. | | Item 3 of the Beneficial Ballot If the Third-Party Release Opt-In box in item 3 of the Beneficial Ballot was checked, place an "X" in the column below |
| | Accept the Plan | Reject the Plan | |
| 1. | $ | $ | |
| 2. | $ | $ | |
| 3. | $ | $ | |
| 4. | $ | $ | |
| 5. | $ | $ | |
| 6. | $ | $ | |
| 7. | $ | $ | |
| 8. | $ | $ | |
| 9. | $ | $ | |
| 10. | $ | $ | |
| TOTAL | $ | $ | |

**IF YOU ARE ACTING AS A VOTING NOMINEE FOR MORE THAN TEN BENEFICIAL HOLDERS, PLEASE ATTACH ADDITIONAL SHEETS, AS NECESSARY.**

[4] Indicate in the appropriate column the aggregate unpaid principal amount voted for each account, or attach such information to this Master Ballot in the form of the following table. Please note each Beneficial Holder must vote all of each such Beneficial Holder's Class 5 Unsecured Notes Claims to accept or to reject the Plan, and may not split such vote. Any Beneficial Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan, or which indicates both an acceptance and a rejection of the Plan, shall not be counted. Under Article III.B.5 of the Plan, the Unsecured Notes Claims are Allowed in the aggregate principal amount outstanding under the 9.75% Notes Indenture and the 14.00% Notes Indenture, as applicable, plus any accrued and unpaid interest owed thereunder, in each case as of the Petition Date. The Solicitation Agent may therefore adjust the amounts reported on this Master Ballot during its tabulation of votes, and the amounts tabulated for voting purposes may differ from the amounts reported above.

**BECAUSE THE UNSECURED NOTES ARE ISSUED OR GUARANTEED BY CERTAIN OF THE DEBTORS UNDER THE 9.75% NOTES INDENTURE AND THE 14.00% NOTES INDENTURE, THE VOTES REPORTED ON THIS MASTER BALLOT WILL BE TABULATED AGAINST EACH DEBTOR THAT IS THE ISSUER OF, OR A GUARANTOR UNDER, THE 9.75% NOTES INDENTURE OR THE 14.00% NOTES INDENTURE, AS APPLICABLE. CLASS 9 (HOLDINGS INTERESTS) APPLIES ONLY TO GETTY IMAGES HOLDINGS, INC.**

**Item 3. Releases.**

The language with respect to Third-Party Releases included in Item 3 of the Beneficial Ballot is shown in Annex A attached hereto.

**Item 4. Certification as to Transcription of Information from Item 4 of the Beneficial Ballots as to Class 5 Unsecured Notes Claims Voted Through Other Beneficial Ballots.**

The undersigned certifies that it has transcribed in the following table the information, if any, that the Beneficial Holders have provided in Item 4 of the Beneficial Ballot, identifying any Class 5 Unsecured Notes Claims for which such Beneficial Holders have submitted other ballots (other than to the undersigned), including the release election reported by each such Beneficial Holder for each such position:

| **Your Customer Account Number for Each Beneficial Holder That Completed Item 4 of the Beneficial Ballot** | **TRANSCRIBE FROM ITEM 4 OF THE BENEFICIAL BALLOTS:** | | | | | |
|---|---|---|---|---|---|---|
| | **Customer Account Number at Nominee of Other Class 5 Unsecured Notes Claims Voted** | **Name of Registered Holder and DTC Participant Number, if Applicable, of Nominee of Other Class 5 Unsecured Notes Claims Voted** | **Principal Amount of Other Class 5 Unsecured Notes Claims Voted** | **CUSIP of Other Class 5 Unsecured Notes Claims Voted** | **Plan Vote of Other Class 5 Unsecured Notes Claims Voted (Accept or Reject)** | **Release Election Made in Item 3 of the Ballot Submitted for Such Other Class 5 Unsecured Notes Claims** |
| 1. | | | $ | | | |
| 2. | | | $ | | | |
| 3. | | | $ | | | |
| 4. | | | $ | | | |
| 5. | | | $ | | | |
| 6. | | | $ | | | |
| 7. | | | $ | | | |

**Item 5. Certifications.**

By signing this Master Ballot, the undersigned certifies that:

1. (i) it has received a copy of the Disclosure Statement, the Plan, the Beneficial Ballot, and the Solicitation Package, and has delivered the same to the Beneficial Holders holding Class 5 Unsecured Notes Claims through the undersigned; (ii) it has received a completed and signed Beneficial Ballot from each such Beneficial Holder; (iii) it is the registered Holder of the securities being voted, or is the agent thereof; and (iv) it has

been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

2. it has properly disclosed: (i) the number of Beneficial Holders holding Class 5 Unsecured Notes Claims through the undersigned; (ii) the respective amounts of Class 5 Unsecured Notes Claims owned by each Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; and (iv) the customer account or other identification number for each such Beneficial Holder;

3. if it is a Beneficial Holder and uses this Master Ballot to vote the undersigned's Class 5 Unsecured Notes Claims, it confirms and attests to each of the certifications in Item 5 of the applicable Beneficial Ballot; each such Beneficial Holder has certified to it, or an intermediary Nominee, as applicable, that the Beneficial Holder is eligible to vote on the Plan;

4. it will maintain the Beneficial Ballots and evidence of separate transactions returned by the Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered; and

5. it consents to the disclosure of the information set forth in this Master Ballot among the Solicitation Agent, the Debtors and their agents, and the Bankruptcy Court, to the extent required for the purposes of the Plan.

**Item 6. Voter Information and Signature.**

BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION (type or print)

| | |
|---|---|
| Nominee Name: | ______________________________ |
| Signature: | ______________________________ |
| Nominee's DTC Participant Number | ______________________________ |
| Signatory Name (if other than the Nominee): | ______________________________ |
| Title: | ______________________________ |
| Address: | ______________________________ |
| Email Address: | ______________________________ |
| Telephone Number: | ______________________________ |

Date Completed: ______________________________________________

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND RETURN IT PROMPTLY!**

**THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED BY ONE OF THE FOLLOWING RETURN METHODS SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AGENT PRIOR TO THE VOTING DEADLINE:**

IN THE ENCLOSED PRE-PAID, PRE-ADDRESSED RETURN ENVELOPE OR OTHERWISE BY REGULAR MAIL OR VIA OVERNIGHT COURIER OR HAND DELIVERY TO THE ADDRESS SET FORTH BELOW:

**Getty Images Ballot Processing**
**c/o Kroll Restructuring Administration LLC**
**850 Third Avenue, Suite 412**
**Brooklyn, New York 11232**

(to arrange hand delivery, please email GettyImagesBallots@ra.kroll.com (with "Getty Images Ballot Processing" in the subject line) at least 24 hours prior to arrival at the Kroll address above and provide the anticipated date and time of delivery)

-OR-

VIA EMAIL (ATTACHING A SCANNED PDF OF THE FULLY EXECUTED MASTER BALLOT) TO GETTYIMAGESBALLOTS@RA.KROLL.COM, WITH "GETTY IMAGES BALLOT PROCESSING" IN THE SUBJECT LINE.

**PLEASE CHOOSE *ONLY ONE* METHOD TO RETURN THIS MASTER BALLOT. THIS MASTER BALLOT MUST BE RECEIVED BEFORE THE VOTING DEADLINE.**

**MASTER BALLOT INSTRUCTIONS**

1. The Debtors are soliciting the votes of Holders of Class 5 Unsecured Notes Claims with respect to the Plan. The Plan and Disclosure Statement are included in the packet you are receiving with this Master Ballot. Capitalized terms used and not defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

2. The Court may confirm the Plan and thereby bind Beneficial Holders of Unsecured Notes Claims. Please review the Disclosure Statement for more information.

3. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Class that votes on the Plan and if the Plan otherwise satisfies the requirements of section 1129(a) of the Bankruptcy Code. If the Requisite Acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

4. You should immediately distribute, and in no event no later than three (3) business days after receipt, the Beneficial Ballots and the Solicitation Package to all Beneficial Holders of Class 5 Unsecured Notes Claims and take any action required to enable each such Beneficial Holder to timely vote the Claims that it holds. If your customary practice is to forward the solicitation information to and/or collect votes from Beneficial Holders by e-mail, telephone, or other customary means of communication, you are authorized to employ that method of communication, including use of an online platform, in lieu of sending the paper Ballot and/or Solicitation Package. Any vote transmitted to you, whether by Beneficial Ballot or otherwise, by a Beneficial Holder of a Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to Kroll, a Master Ballot that reflects the vote of such Beneficial Holders by the Voting Deadline of 5:00 p.m. (prevailing Eastern Time) on November 30, 2026 or otherwise validate the Master Ballot in a manner acceptable to Kroll. You should set an internal voting deadline for your Beneficial Holder clients of at least one to two Business Days prior to the Voting Deadline in order to allow sufficient time to compile and validate votes and to deliver this Master Ballot to Kroll before the Voting Deadline. If your customary practice is to collect votes from your Beneficial Holders by voter information form, e-mail, telephone, or other accepted methods of communication, you are authorized to collect the votes and opt-in elections in that manner.

5. To have the votes of your Beneficial Holders count, you should already have done one of the following:

   a. delivered the Beneficial Ballots and the Solicitation Package to each Beneficial Holder with clear instructions on when to return such ballots to you to allow you to complete and return this Master Ballot so that the Solicitation Agent actually receives it prior to the Voting Deadline;

-or-

b. if you are not submitting this Master Ballot, sent the Beneficial Holders the Pre-Validated Beneficial Ballots in their Solicitation Package for direct return to the Solicitation Agent.

6. With regard to any votes returned to you by a Beneficial Holder (whether through Beneficial Ballot or otherwise), you must compile and validate the votes, execute the Master Ballot, and deliver the Master Ballot to Kroll so that it is actually received by Kroll on or before the Voting Deadline. All Beneficial Ballots (or customary communications for transmitting votes) returned by Beneficial Holders should be retained for inspection for at least one (1) year from the Voting Deadline. You may be ordered to produce the Beneficial Ballots (or customary communications for transmitting votes) to the Debtors or the Bankruptcy Court. The method of delivery of this Master Ballot to the Solicitation Agent is at your election and risk.

7. You may complete and deliver to Kroll multiple Master Ballots. Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the latest received valid Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior received Master Ballot. Likewise, if a Beneficial Holder submits to you more than one Beneficial Ballot, (i) the latest received Ballot from a Beneficial Holder before the submission deadline that you impose shall be deemed to supersede any prior Ballot submitted by the Beneficial Holder; and (ii) you should complete the Master Ballot accordingly.

8. You must use a separate Master Ballot for each CUSIP / ISIN. The Unsecured Notes are outstanding in six tranches across the 9.75% Notes Indenture and the 14.00% Notes Indenture, each bearing a separate CUSIP and ISIN as set forth on Exhibit A hereto, and a Master Ballot may report votes for only one such CUSIP / ISIN.

9. If you are both the Nominee and Beneficial Holder, and you wish to vote such Class 5 Unsecured Notes Claims for which you are a Beneficial Holder, you may return this Master Ballot for such Class 5 Unsecured Notes Claims.

10. This Master Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with this Master Ballot.

11. This Master Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim.

12. You must vote all of your Claims within a particular Class either to accept or reject the Plan (i.e., you may not split your vote).

13. For purposes of tabulating votes, you or a Beneficial Holder will be deemed to have voted the principal amount of your or its Claims in a particular Class, although any principal amounts may be adjusted by the Solicitation Agent to reflect the amount of the Claim actually voted, including prepetition interest.

14. For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single Creditor in a particular Class may be aggregated and treated as if such Creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; provided, however, that if separate affiliated entities hold Claims in a particular Class, such Claims will not be aggregated and will not be treated as if such Creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

15. Please be sure to sign and date this Master Ballot. If you are signing this Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you should indicate such capacity when signing and, if requested by the Solicitation Agent or the Debtors, must submit proper evidence of such capacity to the requesting party. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to this Master Ballot.

16. Votes cast by your Beneficial Holder clients on this Master Ballot will be applied to the applicable positions you as the Nominee hold, as of the Voting Record Date, as evidenced by the applicable securities position report(s) obtained from the applicable indenture trustee and/or the Depository Trust Company ("DTC") or other applicable depository firm. Votes submitted pursuant to a Master Ballot will not be counted in excess of the amount of Unsecured Notes Claims you hold as of the Voting Record Date.

17. If you submit conflicting votes or "over-votes," the Solicitation Agent will use reasonable efforts to reconcile discrepancies with the applicable Nominee. If over-votes on a Master Ballot are not reconciled prior to the preparation of the voting report, the Debtors shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Master Ballot that contained the over-vote, but only to the extent of your position in the particular Class.

18. The following ballots or Master Ballots, as applicable, shall not be counted in determining the acceptance or rejection of the Plan: (a) any ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (b) any ballot or Master Ballot not actually received by the Solicitation Agent before the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Bankruptcy Court; (c) any unsigned ballot or Master Ballot; (d) any ballot that does not contain a signature; (e) any ballot or Master Ballot that partially rejects and partially accepts the Plan; (f) any ballot or Master Ballot not marked to either accept or reject the Plan, or marked to both accept and reject the Plan; and (g) any ballot or Master Ballot superseded by a later, timely submitted valid ballot.

19. If you believe you have received the wrong ballot, you should contact the Solicitation Agent immediately at (844) 408-3675 (U.S./Canada, toll-free) or +1 (646) 825-2402 (international, toll).

20. The Debtors will, upon written request, reimburse you for customary mailing and handling expenses you incur in forwarding the Solicitation Package and Ballot to the Beneficial Holders for which you are the Nominee. No fees or commissions or other

remuneration will be payable to any broker, dealer, or other person for soliciting votes from Beneficial Holders with respect to the Plan.

21. If (i) the Debtors revoke or withdraw the Plan or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

22. Nothing contained in this Master Ballot or in the enclosed documents renders you or any other person an agent of the Debtors or the Solicitation Agent, or authorizes you or any other person to use any document or make any statement on behalf of any of them with respect to the Plan, except for the statements contained in the Solicitation Materials.

**PLEASE MAIL YOUR BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE PROCEDURE FOR VOTING ON THE PLAN, OR IF YOU HAVE RECEIVED A DAMAGED MASTER BALLOT OR HAVE LOST YOUR MASTER BALLOT, OR IF YOU NEED ADDITIONAL COPIES OF THE MASTER BALLOT, BENEFICIAL BALLOT, DISCLOSURE STATEMENT, PLAN, OR OTHER RELATED MATERIALS, PLEASE CONTACT KROLL RESTRUCTURING ADMINISTRATION LLC (THE DEBTORS' SOLICITATION AGENT) AT: (844) 408-3675 (U.S./CANADA, TOLL-FREE) OR +1 (646) 825-2402 (INTERNATIONAL, TOLL) OR VIA EMAIL: GETTYIMAGESINFO@RA.KROLL.COM, SUBJECT LINE: "GETTY IMAGES BALLOT PROCESSING".**

**PLEASE BE ADVISED THAT THE SOLICITATION AGENT IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL ADVICE.**

[*Remainder of page intentionally left blank*]

## EXHIBIT A

***Please check one and only one box below to indicate the CUSIP / ISIN to which this Master Ballot pertains, or otherwise provide that information on a label or schedule attached to the Master Ballot. Multiple checked boxes below risk invalidation of the votes contained in this Master Ballot. A separate Master Ballot must be submitted for each CUSIP / ISIN tranche.***

**CLASS 5 – UNSECURED NOTES CLAIMS**

| | DESCRIPTION | CUSIP / ISIN |
|---|---|---|
| ☐ | 9.75% Notes (144A) | 374276AJ2 / US374276AJ21 |
| ☐ | 9.75% Notes (AI) | 374276AK9 / US374276AK93 |
| ☐ | 9.75% Notes (Reg S) | U3742LAA5 / USU3742LAA53 |
| ☐ | 14.00% Notes (144A) | 374276AP8 / US374276AP80 |
| ☐ | 14.00% Notes (AI) | 374276AQ6 / US374276AQ63 |
| ☐ | 14.00% Notes (Reg S) | U3742LAE7 / USU3742LAE75 |

## ANNEX A

## Release Language from Beneficial Ballot

Important information regarding the Releases by Holders of Claims and Interests of the Debtors, Exculpation and Injunction Provisions, and Optional Opt-In Election.

**Important Information Regarding the Releases.** A Beneficial Holder that votes to accept the Plan is not, by virtue of that vote alone, a Releasing Party under the Plan. Whether a Beneficial Holder votes to accept the Plan, abstains from voting on the Plan, is presumed to accept or deemed to reject the Plan, or votes to reject the Plan, the election to grant the Third-Party Release contained in Article VIII.D of the Plan is at that Beneficial Holder's option and is made only by checking the opt-in box in Item 3 of its Beneficial Ballot, unless it is otherwise a Releasing Party under the Plan. A Beneficial Holder that votes to accept the Plan and wishes to grant the Third-Party Release should check both boxes. A Beneficial Holder that does not make that election will forgo the benefit of obtaining the releases set forth in Article VIII of the Plan if it would otherwise be a Released Party in connection therewith, because the Plan's definition of Released Parties, subject to the exceptions set forth therein, excludes an Entity that does not affirmatively opt into the releases in the Plan. Each Beneficial Holder will receive the same treatment on account of its Claim under the Plan regardless of whether it makes that election.

Please note that, under the Plan, an Entity that timely objects to the releases contained in the Plan, where such objection is not resolved before entry of the Confirmation Order, shall not be a Released Party.

The Plan contains a series of releases that are part of the overall restructuring set forth in the Plan and described in greater detail in the Disclosure Statement. In that respect, parties should be aware that, if the Plan is confirmed and the Effective Date occurs, certain parties will be getting releases and certain parties will be giving releases as set forth in Article VIII of the Plan. For your convenience, excerpts of the release provisions from the Plan are set forth below, however, you should carefully read the enclosed Disclosure Statement and Plan with respect to the releases.

**EACH OF THE RELEASING PARTIES EXPRESSLY ACKNOWLEDGES THAT THE RELEASES AND COVENANTS NOT TO SUE CONTAINED IN THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS OR RELEASED CLAIMS OR CAUSES OF ACTION ARE PRESENTLY KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, OR FORESEEN OR UNFORESEEN.**

**Relevant Definitions:**

**Under the Plan, "Releasing Parties" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Holder of Claims or Interests that affirmatively opts in to the releases provided for in the Plan; (h) each current and former Affiliate of each Entity in clause (a) through clause (g) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan under applicable Law; and (i) each Related Party of each Entity in clause (a) through clause (h) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable**

**Law; *provided* that no Agent/Trustee shall be deemed to grant any release on behalf of, or to bind, any Holder for which it acts, and no Agent/Trustee shall be required to take any action in connection with the solicitation of opt-in elections.**

**Under the Plan, "Released Parties" means collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each of the Agents/Trustees; (e) each DIP Lender; (f) each New Equity Investor; (g) each Releasing Party; (h) each current and former Affiliate of each Entity in clause (a) through clause (g); and (i) each Related Party of each Entity in clause (a) through clause (h); provided that, in each case, an Entity (other than the Debtors, the Reorganized Debtors, the Plan Sponsors, and their respective Related Parties) shall not be a Released Party if it does not affirmatively opt into the releases in the Plan by returning an "opt in" form.**

**Under the Plan, "Related Party" means, with respect to any Entity, (a) such Entity, (b) such Entity's predecessors, successors and assigns, parents, subsidiaries, Affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers, (c) with respect to each Plan Sponsor, its associated trusts (and its holding vehicles who are direct holders of interests in the applicable Plan Sponsor, its affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, subadvisors, or managers) that are Holders of Interests in Holdings, (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's respective current and former officers, directors, principals, current or former equity holders (regardless of whether such interests are held directly or indirectly and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, managers, partners, employees, agents, trustees, beneficiaries, settlors, protectors, family offices, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (e) with respect to each of the foregoing in clauses (a)–(d), such Entity's respective heirs, executors, estates, servants, and nominees.**

**Under the Plan, "Exculpated Parties" means, collectively, each of the following in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) members of the Special Committee; (d) each Unsecured Notes Trustee and Credit Agreement Agent, solely to the extent acting as a Disbursing Agent or otherwise making, directing, or facilitating distributions under, or taking any other action in the administration or consummation of, this Plan; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), (i) their respective current officers, their current and former directors, and limited liability company managers, who served in such capacity at any time between the Petition Date and the Effective Date, and (ii) each of their attorneys, financial advisors, investment bankers, consultants, and other professionals or advisors whose retentions were approved by the Bankruptcy Court pursuant to an order approving such professional's and advisor's retention application, as applicable.**

**<u>RELEASES BY THE DEBTORS</u>**

**Except as expressly set forth in the Plan or the Confirmation Order, effective on the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged by**

**the Debtors, their Estates, the Reorganized Debtors, and any Person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action whatsoever, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, Reorganized Debtors, and their Estates, that the Debtors, their Estates, or the Reorganized Debtors, including any successors to the Debtors or any Estate representatives appointed or selected, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, their Estates, or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights and remedies against the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the Debtors' evaluation and pursuit of strategic alternatives (including any process conducted by or under the direction of the Special Committee), the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission,**

**transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Debtors do not, pursuant to the Debtor Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and the Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Debtor Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the Debtors, their Estates, or the Reorganized Debtors asserting any Claim or Cause of Action released pursuant to the Debtor Release against any of the Released Parties.**

**<u>RELEASES BY THE RELEASING PARTIES</u>**

**Effective on the Effective Date, except as expressly set forth in the Plan or the Confirmation Order, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable Law, as such Law may be extended or interpreted after the date upon which the Bankruptcy Court enters the Confirmation Order, on or after the Effective Date, each Released Party is hereby deemed expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties (other than the Debtors or the Reorganized Debtors), in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, remedies, or liabilities, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action arising at any time prior to the Effective Date, including any Avoidance Actions and any derivative Claims asserted or assertable on behalf of any of the Debtors, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors and their Estates (including the capital structure,**

**management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, any prior investments in, loans to, or transactions with the Debtors by any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing, or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the Releasing Parties do not, pursuant to the Third-Party Release set forth above, release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any Claims or Causes of Action identified in the Schedule of Retained Causes of Action, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Plan Supplement, any Restructuring Transaction, any Definitive Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement and Exit Facility Documents) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which shall include by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) given in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims or Causes of Action released by the Third-Party Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after due notice and opportunity for a hearing; and (vi) a bar to any of the**

**Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release against any of the Released Parties.**

**EXCULPATION**

**To the fullest extent permitted by applicable Law, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action for any claim related to any act or omission in connection with, relating to, or arising out of the Debtors and their Estates (including the capital structure, management, ownership, or operation thereof), the purchase, sale, rescission, or ownership of any security of the Debtors or the Reorganized Debtors, the Credit Agreement, the 11.25% Secured Notes, the Unsecured Notes, the Warrant Agreement and the Warrants, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the Debtors' in- or out-of-court restructuring efforts, including all prior recapitalizations, restructurings, or refinancing efforts and transactions, intercompany transactions, the Debtors' merger and acquisition efforts, the DIP Documents, the New Notes Documents, the New Term Loan Documents, the New RCF Documents, the ECL, the Chapter 11 Cases, the Restructuring Transactions, the Restructuring Support Agreement, the Plan (including the Plan Supplement), the Disclosure Statement and all Solicitation Materials, all other Definitive Documents, the filing of the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, filing or consummation of any Restructuring Transactions, any Definitive Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Restructuring Transactions, or the Definitive Documents, the pursuit of confirmation, consummation, administration, and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan and the distribution of property under the Plan or any other related agreement, the solicitation of votes on the Plan, or upon any other act, or omission, transaction, agreement, event, or other occurrence taking place between the Petition Date and the Effective Date related or relating to the foregoing, except for claims related to any act or omission that is determined in a final order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan, including the issuance of securities thereunder, and, therefore, are not, and on account of such solicitation, distributions, or issuance shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan, or such distributions made pursuant to the Plan, including the issuance of securities thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability.**

**Notwithstanding anything to the contrary in the foregoing, the exculpation set forth in the Plan shall not be construed as exculpating any party or Entity from its post-**

**Effective Date obligations under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**INJUNCTION**

**Except as otherwise expressly provided in the Plan or the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been extinguished, released, discharged, or are subject to exculpation (in each case, as set forth in the above Discharge, Release, Third-Party Release, and Exculpation sections of the Plan), whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, affiliates, and Related Parties, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims, interests, or Causes of Action unless such Holder has timely Filed a motion with the Bankruptcy Court expressly requesting the right to perform such setoff, subrogation or recoupment on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise (*provided* that this clause (d) shall not apply to any Bank Product Provider in respect of the Bank Product Obligations, as set forth in Article VI.L of the Plan); and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, interests, or Causes of Action released or settled pursuant to the Plan.**

**By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above. The injunctions set forth above shall extend to any successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any post-Effective Date obligations of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Restructuring Transactions or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**