**<u>Exhibit B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| GETTY IMAGES HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-11643 (___) |
| Debtors. | ) | (Jointly Administered)<br>**Re: Docket No. __** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THE CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE INTERCOMPANY TRANSACTIONS, (II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of a final order (this "Final Order"): (a) authorizing, but not directing, the Debtors to (i) continue to operate their Cash Management System and maintain their existing Debtor Bank Accounts, (ii) honor certain prepetition and postpetition obligations related thereto, (iii) maintain existing Business Forms in the ordinary course of business, and (iv) continue Intercompany Transactions; (b) granting administrative expense status to postpetition Intercompany Claims among the Debtors; and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the Debtors' service address for purposes of these chapter 11 cases is: 605 5*th* Ave. S., Suite 400, Seattle, WA 98104.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

§ 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on a final basis as set forth herein.

2. Any objections to the entry of this Final Order, to the extent not withdrawn or settled, are overruled.

3. The Debtors are authorized, but not directed, in all cases in the ordinary course of business and consistent with past practice, to: (a) continue operating the Cash Management System, substantially as described in the Motion; (b) honor their prepetition obligations related thereto; (c) use, in their present form, all correspondence and Business Forms, all Books and Records, and all checks and other documents related to the Debtor Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in

possession; (d) continue to perform and record Intercompany Transactions in the ordinary course of business and treat postpetition Intercompany Claims in a manner consistent with this Court's grant of administrative expense status thereto; (e) continue the Credit Card Program and honor all obligations thereunder, including all Credit Card Obligations; (f) continue to use, with the same account numbers, the Debtor Bank Accounts in existence as of the Petition Date, including those accounts identified on Exhibit 1 attached hereto without the need to comply with certain guidelines set forth in the U.S. Trustee Guidelines (to the extent applicable); (g) treat the Debtor Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (h) deposit funds in and withdraw funds from the Debtor Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; (i) open new debtor in possession bank accounts; and (j) pay all Bank Fees, including any ordinary course bank fees, processing fees, and transport fees incurred in connection with the Debtor Bank Accounts, whether incurred pre- or postpetition, and to otherwise perform their obligations under the documents governing the Debtor Bank Accounts, in each case subject to the terms, conditions, and limitations of this Final Order and the DIP Orders. Notwithstanding clause (c) of this paragraph, with respect to any checks generated electronically, and once the Debtors' existing check stock has been exhausted, the Debtors shall ensure that such checks bear the legend "Debtor in Possession" and the corresponding bankruptcy case number.

4. The Cash Management Banks are authorized to continue to maintain, service, and administer the Debtor Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, electronic fund transfers, credit card payments, and ACH transfers or other items presented or issued, whether before or after the Petition Date, and drawn on the Debtor Bank Accounts, after the Petition Date, by the holders or

makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

5. The Cash Management Banks are authorized to debit the Debtor Bank Accounts in the ordinary course of business and consistent with past practice and the Cash Management System, without the need for further order of this Court for: (a) all checks drawn on the Debtor Bank Accounts which are cashed at such Cash Management Bank's counters or exchanged for cashier's checks by the payees thereof prior to or after the Petition Date; (b) all checks, automated clearing house entries, and other items deposited in or credited to one of the Debtor Bank Accounts with such Cash Management Bank prior to or after the Petition Date that have been dishonored, reversed, or returned unpaid for any reason, including returned items that result from wire transfers, ACH transactions, or other electronic transfers of any kind, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (c) all undisputed prepetition and postpetition amounts outstanding as of the date hereof, if any, owed to any Cash Management Bank as service charges for the maintenance of the Cash Management System, including any Bank Fees incurred in the ordinary course of business.

6. In the course of providing cash management services to the Debtors, the Cash Management Banks are authorized, without further order of this Court and in the ordinary course of business, to deduct the applicable fees, including Bank Fees (whether arising prior to or after the Petition Date) from the applicable Debtor Bank Accounts, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other

electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers. Any such fees arising after the Petition Date, including Bank Fees, that are charged by the applicable Cash Management Bank in the ordinary course of business are entitled to administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.

7. Notwithstanding any other provision of this Final Order, any Cash Management Bank may rely upon the representations of the Debtors, without a duty of inquiry, with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to, on, or after the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition or postpetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonably customary handling procedures, shall be deemed to be, nor shall be, liable to the Debtors or their estates or any other person or entity on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

8. Any prepetition deposit, cash management, and treasury services agreements existing between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the applicable Cash Management Bank and, subject to applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights, and remedies afforded under such agreements, shall remain in full force and effect absent further order of the

Court (including, for the avoidance of doubt, any rights of the Cash Management Bank to use funds from the Debtor Bank Accounts to remedy any overdraft of another Debtor Bank Account to the extent permitted under the applicable deposit agreement) unless the Debtors and such Cash Management Bank agree otherwise, and any other legal rights and remedies afforded to the Cash Management Bank under applicable law shall be preserved, subject to applicable bankruptcy law.

9. Subject to the terms of this Final Order, the Debtors are authorized, but not directed, in the ordinary course of business, to open new accounts (including the Segregated DIP Account) or close any existing Debtor Bank Accounts and enter into any ancillary agreements, including deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate in their sole discretion (subject to the consent requirements set forth in this Final Order); *provided*, *however*, that (i) the Debtors shall open any such new bank accounts at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement, (ii) the Debtors shall provide notice of any such opening of new accounts (except the Segregated DIP Account) or closing of any existing Debtor Bank Account to the Notice Parties at least three (3) business days (or as soon as practicable thereafter) prior to any such opening or closure thereof, and (iii) the Debtors shall not enter into any deposit account control agreement or similar agreement in respect of any Debtor Bank Account, other than the Segregated Account Control Agreement or as otherwise expressly provided in the DIP Orders, without the prior written consent of the Plan Sponsors and Consenting Secured Lenders. The relief granted in this Final Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a "Debtor Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Cash Management Bank."

10. As soon as reasonably practicable after entry of this Final Order, the Debtors shall (a) serve a copy of this Final Order on the Debtor Cash Management Banks, (b) to the extent not provided pursuant to the Final Order, provide the Debtor Cash Management Banks with the employer identification numbers of each Debtor, and (c) to the extent not identified pursuant to the Final Order, identify each of the Debtor Bank Accounts held at the respective Debtor Cash Management Banks as being held by a debtor in possession and the case number of such Debtor's chapter 11 case. The Debtors shall also serve a copy of this Final Order on any bank at which the Debtors open a new bank account immediately upon the opening of the new account.

11. All banks provided with notice of this Final Order maintaining any of the Debtor Bank Accounts shall not honor or pay any bank payments drawn on the listed Debtor Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue timely stop payment orders in accordance with the documents governing such Debtor Bank Accounts.

12. Except as otherwise set forth herein, the Debtors and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the policies and procedures related to the Cash Management System in the ordinary course of business.

13. Notwithstanding anything to the contrary in the Motion or this Final Order, the Debtors shall not, without the prior written consent (email from counsel being sufficient) of each Plan Sponsor and the other Required Consenting Stakeholders (in each case, which consent shall not be unreasonably withheld, conditioned, or delayed) or further order of the Court: (a) modify, alter, amend, terminate, or replace the Cash Management System or any related policies, procedures, or programs in any material respect, or implement a new cash management system; (b) grant any lien on, or control over, any Debtor Bank Account or any cash of the Debtors, other

than as expressly provided in the DIP Orders or as in effect as of the Petition Date; or (c) other than in the ordinary course of business consistent with past practice or as expressly provided in the DIP Orders or the Plan, pledge or deposit any cash as collateral or into any escrow, reserve, or other restricted account, or take any other action that would cause any cash of the Debtors to become subject to any lien or restriction on use.

14. Subject to the terms of this Final Order, the Debtors are authorized, but not directed, to continue engaging in Intercompany Transactions in connection with the Cash Management System in the ordinary course of business and consistent with past practice and to the extent that the net aggregate effect of the Intercompany Transactions does not reduce property of the Debtors' estates, unless in accordance with the Approved Budget (as defined in the DIP Orders). Any and all Intercompany Transactions shall be undertaken in accordance with the Prepetition Secured Facilities Documents (as defined in the DIP Orders) and any and all subordination or other requirements included therein. The Debtors shall maintain accurate and detailed records of all Intercompany Transactions and the payment of Intercompany Claims so that all transactions, including Intercompany Transactions and the payment of Intercompany Claims, may be readily traced, ascertained, and recorded properly on applicable intercompany accounts (if any) and distinguished between prepetition and postpetition transactions for the purposes of determining administrative expense status. All postpetition payments from a Debtor to another Debtor under any postpetition Intercompany Transactions authorized hereunder that result in an Intercompany Claim are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code, which administrative expense claims shall not affect the priority of the Carve Out, the DIP Superpriority Claim, and the Adequate Protection Claims (each as defined in the DIP Orders) and shall not prejudice the treatment of Intercompany Claims under the Plan.

15. The Debtors are authorized, but not directed, to set off mutual postpetition obligations relating to Intercompany Claims through the Cash Management System in the ordinary course of business and consistent with past practice, subject to the consent requirements set forth in paragraph 16 herein. The Debtors shall continue to maintain accurate, current, and detailed records with respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.

16. The Debtors shall not make any payment to Non-Debtor Affiliates without the prior written consent of the Required Consenting RCF Lenders, the Required Consenting Secured Lenders, the DIP Lenders, and the Plan Sponsors, unless such payment is consistent with the Approved Budget (as defined in the DIP Orders). The Debtors shall not enter into any new intercompany loans with any Non-Debtor Affiliate that are not in the ordinary course of business and consistent with prepetition practices absent further order of the Court.

17. The Debtors are authorized, but not directed, to continue using the Credit Card Program in the ordinary course of business and consistent with past practice, including by paying all prepetition and postpetition Credit Card Obligations outstanding with respect thereto, subject to the limitations of this Final Order and any other applicable interim and/or final orders of this Court. Any existing agreements between or among the Debtors and any bank in respect of the Credit Card Program shall continue to govern the postpetition relationship between the Debtors and such banks, and all the provisions of such agreements, including the termination and fee provisions, rights, benefits, offset or setoff rights, and remedies afforded under such agreements, shall remain in full force and effect. The Debtors and such bank may, without further order of this

Court, agree to and implement changes related to the Credit Card Program in the ordinary course of business, pursuant to the terms of those existing agreements.

18. The Debtors' credit card processors are authorized to process payments in the ordinary course of business, including the netting out of any fees and/or chargebacks arising before, on, or after the Petition Date to the extent permitted under the existing agreements.

19. Any requirement to establish separate bank accounts for cash collateral and/or tax payments is hereby waived.

20. Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

21. Nothing contained herein shall permit the Cash Management Banks to terminate any cash management services without thirty days' prior written notice; *provided* that in the event any agreement between the Debtors and such Cash Management Bank provides for a shorter notice period or no notice period, such agreement shall control and govern termination of such cash management services notwithstanding anything herein to the contrary. Each Cash Management Bank is hereby granted relief from the stay imposed under section 362 of the Bankruptcy Code for purposes of exercising the rights authorized under this Final Order, including, without limitation, for purposes of exercising the setoff rights, debit rights, and termination rights under the applicable agreements.

22. Notwithstanding the Debtors' use of the Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity makes those disbursements.

23. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are not honored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Final Order.

24. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

25. Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief (including any payment made in accordance with this Final Order), nothing in this Final Order is intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Final Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law;

(h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease; or (l) a waiver, modification, or limitation of any right of any party under the Restructuring Support Agreement. Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

26. Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment to be made or obligation, relief, or authorization granted hereunder shall be subject to the requirements imposed on the Debtors under the terms of any interim or final (as applicable) order entered by the Court in these chapter 11 cases approving any postpetition financing entered into by the Debtors and/or the Debtors' use of cash collateral, including the adequate protection obligations contained therein (each, a "DIP Order," and, collectively, the "DIP Orders"), the documentation in respect of any such postpetition financing facilities and/or the use of cash collateral, and any budget governing any such postpetition financing facilities and/or use of cash collateral. To the extent there is any conflict between this Final Order and an applicable DIP Order, such DIP Order shall govern.

27. Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion and such notice satisfies the requirements of Bankruptcy Rule 6004(a) and the Local Rules.

28. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

29. The Debtors are authorized, but not directed, to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

30. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**Exhibit 1**
**Debtor Bank Accounts**

| Account # | Debtor Cash Management Bank | Debtor |
|---|---|---|
| 8504 | Bank of America | Getty Images (US), Inc. |
| 2513 | Bank of America | Getty Images (US), Inc. |
| 9020 | Bank of America | Getty Images (US), Inc. |
| 3011 | Bank of America | Getty Images (US), Inc. |
| 0414 | Bank of America | Getty Images, Inc. |
| 0427 | Bank of America | Getty Images, Inc. |
| 0430 | Bank of America | Getty Images, Inc. |
| 2816 | Bank of America | Getty Images, Inc. |
| 8813 | Bank of America | Getty Images, Inc. |
| 5111 | State Street | Getty Images, Inc. |
| 6442 | US Bank | Getty Images (Seattle), Inc. |
| 9339 | US Bank | Getty Images (Seattle), Inc. |
| 6434 | US Bank | Getty Images (US), Inc. |
| 1914 | US Bank | Getty Images (US), Inc. |
| 9057 | US Bank | Getty Images (US), Inc. |
| 9065 | US Bank | Getty Images (US), Inc. |
| 6173 | US Bank | Getty Images, Inc. |
| 9040 | US Bank | Getty Images, Inc. |
| TBD | Western Alliance Bank | Getty Images Holdings, Inc. |
| 8077 | Western Alliance Bank | Getty Images Holdings, Inc. |