**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| GETTY IMAGES HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-11643 (__) |
| Debtors. | ) | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) MAINTAIN INSURANCE, SURETY COVERAGE, AND LETTER OF CREDIT ENTERED INTO PREPETITION AND SATISFY PREPETITION OBLIGATIONS RELATED THERETO, (B) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE INSURANCE POLICIES, SURETY BONDS, AND LETTERS OF CREDIT, AND (C) CONTINUE TO PAY BROKER FEES, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (this "Motion"):[2]

## Relief Requested

1. By this Motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "Interim Order" and the "Final Order," respectively): (a) authorizing, but not directing, the Debtors to (i) maintain coverage under the Insurance Policies, Surety Bonds, and Letter of Credit (each as defined herein) and pay any related

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Craig Peters, Chief Executive Officer of Getty Images Holdings, Inc. and Its Debtor Subsidiaries, in Support of the Debtors' Chapter 11 Petitions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

obligations, (ii) renew, amend, supplement, extend, or purchase insurance, surety coverage, and letters of credit, in the ordinary course of business and consistent with prepetition practice, and (iii) continue to pay certain broker fees; and (b) granting related relief. In addition, the Debtors request that the Court schedule a final hearing approximately twenty-one (21) days from the Petition Date.

## Jurisdiction and Venue

2. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 105(a), 363(b), 503, 1107(a), 1108, and 1112(b)(4)(C) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1 and 9013-1.

## Background

5. On October 21, 2026 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code. Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

**The Insurance Policies and Related Payment Obligations**

6. In the ordinary course of business, the Debtors maintain approximately 56 insurance policies (collectively, the "Insurance Policies") that are administered by multiple third-party insurance carriers (collectively, the "Insurance Carriers"). The Insurance Policies provide coverage for both general and commercial business risks, including, but not limited to, coverage for the Debtors' directors' and officers' liability, general liability, property, foreign liability, automobile liability, umbrella coverage, and crime.[3] A schedule of the Insurance Policies is attached hereto as **Exhibit C**.[4]

7. The Debtors' ability to maintain the Insurance Policies, to renew, supplement, and modify the same as needed, and to enter into new insurance policies as needed in the ordinary course of business is essential to preserving the value of the Debtors' business, operations, and

[3] Although the workers' compensation policies are included on **Exhibit C** attached hereto, the Debtors do not seek authority to maintain workers' compensation coverage and to pay prepetition amounts related thereto under this Motion, but rather request such authority as part of the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief* (the "Wages Motion") filed contemporaneously herewith.

[4] The descriptions of the Insurance Policies set forth in this Motion constitute summaries only. The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the descriptions in this Motion. Although **Exhibit C** is intended to be comprehensive, the Debtors may have inadvertently omitted Insurance Policies from **Exhibit C**. The Debtors request authority, but not direction, to honor existing Insurance Policies and renew Insurance Policies, as applicable, regardless of whether the Debtors inadvertently failed to include a particular Insurance Policy on **Exhibit C**, and any such omitted Insurance Policy is hereby included in the defined term "Insurance Policies" as used herein and in the Interim Order and Final Order.

estates. Moreover, in many instances, insurance coverage is required by statutes, rules, regulations, and contracts that govern the Debtors' commercial activities, including the Bankruptcy Code and the *Region 3 Operating Guidelines for Chapter 11 Cases* (the "U.S. Trustee Guidelines") published by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), which require, among other things, that a debtor maintain adequate coverage given the circumstances of its chapter 11 case. *See* 11 U.S.C. § 1112(b)(4)(C) and U.S. Trustee Guidelines at III(A). Accordingly, the Debtors seek authority to maintain the Insurance Policies, to pay related prepetition obligations, to renew, amend, supplement, or modify the Insurance Policies as needed, and to enter into new insurance policies, including ancillary policies, in the ordinary course of business on a postpetition basis and consistent with prepetition practice, without further Court approval.

**I. Insurance Premiums.**

8. The annual premiums for the Insurance Policies (the "Insurance Premiums") total approximately $9.54 million in the aggregate for the 2026-2027 term, not including applicable Deductibles or Self-Insured Retentions (each as defined herein). The Insurance Premiums are paid in full at issuance.

9. The Debtors estimate that, as of the Petition Date, there is approximately $2.33 million in outstanding Insurance Premiums due on account of the Insurance Policies, approximately $1.25 million of which will come due during the first twenty-one (21) days of these chapter 11 cases. The Debtors seek authority to pay any prepetition amounts due and owing in connection with the Insurance Policies in the ordinary course of business and consistent with prepetition practice to ensure uninterrupted coverage, and to pay related postpetition obligations due in the ordinary course.

10. In addition, certain of the Insurance Policies are subject to regular audits during their respective policy periods, which may result in an adjustment of Insurance Premiums owed on account thereof. Accordingly, the Debtors seek authority, but not direction, to honor any amounts owed on account of any Insurance Policy audits in the ordinary course of business.

## II. Deductibles and Self-Insured Retentions.

11. Under certain Insurance Policies, the Debtors are required to pay various deductibles[5] (the "Deductibles") or self-insured retentions[6] (the "Self-Insured Retentions"), depending upon the type of claim and Insurance Policy involved. Generally, if a claim is made against the Insurance Policies that is subject to a Deductible, the applicable Insurance Carrier administers the claim and makes payments in connection therewith and then invoices the Debtors for any Deductible, or issues claims payments to the Debtors minus any applicable Deductible.

12. As a result, the Insurance Carriers may have prepetition claims against the Debtors on account of claims paid by the Insurance Carriers without the corresponding Deductible having been paid by the Debtors. The Debtors seek authority, but not direction, to satisfy any prepetition amounts that may be due and owing on account of the Deductibles or the Self-Insured Retentions and to continue honoring all payment obligations under the Deductibles and the Self-Insured Retentions in the ordinary course of business to ensure uninterrupted coverage thereunder.

---

[5] When a policy is subject to a deductible, a compensable claim is typically assessed from dollar one, and then the deductible is subtracted from the claim.

[6] A self-insured retention is the required portion of the insured claim to be paid or incurred by the covered party before the insurance policy will be triggered and is a condition precedent to coverage for payment of the portion of a loss in excess of the self-insured retention.

## The Surety Bonds and Letter of Credit

### I. Surety Bond Program.

13. In the ordinary course of business, the Debtors provide surety bonds (each, a "Surety Bond" and collectively, the "Surety Bonds") to secure the payment or performance of certain obligations, including obligations related to litigation matters (the "Surety Bond Program"). The issuance of a surety bond shifts the risk of the Debtors' nonperformance or nonpayment from an obligee to a surety by providing that the surety will perform or tender payment. Unlike an insurance policy, if a surety incurs a loss on a surety bond, it is entitled to recover the full amount of that loss from the principal. In turn, to preserve the value of the Debtors' estates, the Debtors must be able to maintain the existing Surety Bonds, including payment of the Surety Premiums (as defined herein), providing collateral (subject to any budget approved in connection with the Debtors' postpetition financing and use of cash collateral, including permitted variances), renewing or potentially acquiring additional bonding capacity as needed in the ordinary course of business, and executing other agreements as appropriate, in connection with the Surety Bonds.

14. The Debtors maintain two active supersedeas Surety Bonds issued by Ascot Surety & Casualty Company (including affiliate Ascot Insurance Company) (the "Surety") in an aggregate bond amount of approximately $7.8 million for the benefit of two litigation plaintiffs. A schedule of the Surety Bonds is attached hereto as **Exhibit D**.[7] The total annual premiums for the Surety Bonds (the "Surety Premiums") are approximately $45,000 in the aggregate. The Surety Premiums are generally assessed on an annual basis and paid by the Debtors at each renewal period.

---

[7] The descriptions of the Surety Bonds set forth in this Motion constitute summaries only. The actual terms of the Surety Bonds and related agreements will govern in the event of any inconsistency with the description in this Motion. The Debtors request authority to honor obligations and renew all Surety Bonds, as applicable, regardless of whether the Debtors inadvertently fail to include a particular Surety Bond on **Exhibit D**.

15. As of the Petition Date, the Debtors do not believe that they owe any outstanding amounts on account of the Surety Premiums. Nevertheless, out of an abundance of caution, to ensure uninterrupted coverage in connection with the Surety Bonds, the Debtors seek authority, but not direction, to pay any prepetition obligations that may be owed on account of the Surety Bonds in the ordinary course of business, and to continue honoring their obligations in connection with the Surety Bonds on a postpetition basis in the ordinary course of business, consistent with prepetition practices. For the avoidance of doubt, the Debtors shall remain entitled to discontinue or otherwise terminate any Surety Bonds on a postpetition basis.

**II. Letter of Credit.**

16. The Debtors maintain one letter of credit in connection with certain obligations related to an office lease (the "Letter of Credit"). The Letter of Credit was issued by Bank of America (the "Letter of Credit Issuer"), in an amount of approximately $770,000. The Debtors pay fees in connection with the Letter of Credit on a quarterly basis (the "Letter of Credit Fees"). The Letter of Credit Fees are approximately $3,000 per quarter, and as of the Petition Date, the Debtors estimate that they owe approximately $3,000 on account of the Letter of Credit Fees. A schedule listing the Letter of Credit is attached hereto as **Exhibit E**.

**The Debtors' Broker**

17. The Debtors obtain most of their Insurance Policies and Surety Bonds through AON Risk Insurance Services West Inc. (the "Broker"). The Broker, among other things: (a) assists the Debtors in obtaining comprehensive insurance coverage for their operations in a cost-effective manner; (b) manages renewal data; and (c) provides ongoing support throughout the applicable policy periods for the Insurance Policies (such services, collectively, the "Broker Services"). In exchange for these services, the Debtors pay broker commissions, and such amounts (the "Broker Fees") are incorporated into the Insurance Premiums and Surety

Premiums. Accordingly, any Broker Fees that will become due and payable are covered by the Debtors' request for relief with respect to the Insurance Premiums and the Surety Premiums. Nevertheless, out of an abundance of caution and to ensure uninterrupted coverage under the Insurance Policies and Surety Bonds, the Debtors seek authority, but not direction, to pay any prepetition Broker Fees and to continue to honor their obligations to the Broker on a postpetition basis, in the ordinary course of business and consistent with past practice.

## <u>Basis for Relief</u>

### I. Continuation of the Insurance Policies is Required by the Bankruptcy Code and U.S. Trustee Guidelines.

18. The Debtors' existing Insurance Policies provide a comprehensive range of protection of the Debtors' business and assets. Therefore, it is essential that the Debtors' Insurance Policies continue in full force and effect during the course of these chapter 11 cases. Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). In addition, in many instances, the coverage of the Insurance Policies is required by various state and federal regulations, laws, certain credit agreements, and contracts that govern the Debtors' commercial activities.

19. Further, the U.S. Trustee Guidelines require that a debtor in possession under chapter 11 of the Bankruptcy Code maintain insurance and pay all insurance premiums as they come due. *See* U.S. Trustee Guidelines at III(A). The U.S. Trustee Guidelines further require, absent an order of the court otherwise, a debtor in possession under chapter 11 of the Bankruptcy Code to maintain (if applicable) casualty insurance, workers' compensation insurance, and general liability insurance along with any other insurance customary in such debtors' business. *Id.* at III(B). The relief requested in this Motion is necessary to ensure that the Debtors comply with

their obligations under the Bankruptcy Code, applicable law, and the U.S. Trustee Guidelines, in the ordinary course.

## II. Renewing, Amending, Supplementing, Extending, Purchasing, or Entering Into New Insurance Policies, Surety Bonds, and Letters of Credit, Paying Obligations Related to the Insurance Policies, the Surety Bond Program, and the Letter of Credit, and Maintaining the Insurance Policies, the Surety Bond Program, and the Letter of Credit in the Ordinary Course of Business Are Each Warranted.

20. The Debtors believe that they have authority to pay their obligations in connection with the Insurance Policies, the Surety Bond Program, and the Letter of Credit, renew, amend, supplement, extend, purchase, or enter into new insurance policies, surety bonds, and letters of credit, and maintain the Insurance Policies, the Surety Bond Program, and the Letter of Credit in the ordinary course of business during these chapter 11 cases. *See* 11 U.S.C. § 363(c) ("[T]he trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing."). Out of an abundance of caution, however, this Motion seeks the relief set forth herein if payment of these obligations and the administration of the Debtors' Insurance Policies and Surety Bond Program in a manner consistent with past practices are not considered ordinary course.

21. In authorizing payments of prepetition obligations, courts have relied on several legal theories rooted in sections 105(a), 363(b), 503, and 1107(a) of the Bankruptcy Code. Pursuant to these sections of the Bankruptcy Code, this Court may authorize the Debtors to pay any prepetition amounts due on account of the Insurance Policies, the Surety Bond Program, and the Letter of Credit and to maintain the Insurance Policies, the Surety Bond Program, and the Letter of Credit, including renewing or entering into new insurance policies, surety bonds, and letters of credit on a postpetition basis, because the relief requested is consistent with the value preservation policy of chapter 11.

22. Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983).

23. Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so. *See, e.g.*, *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) of the Bankruptcy Code provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor in possession to 'protect and preserve the estate, including an operating business' going-concern value." *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *CoServ*, 273 B.R. at 497).

24. Further, this Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court and empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This Court's power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations is popularly referred to as the "necessity of payment" rule or the "doctrine of necessity." *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of

prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *See Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.

25. The doctrine of necessity is satisfied here. Failure to maintain the Insurance Policies, the Surety Bond Program, and the Letter of Credit could have a detrimental impact on the Debtors' business, operations, and the value of their estates. The non-payment of any Insurance Premiums, Deductibles, Self-Insured Retentions, Broker Fees, or related fees under the Insurance Policies, Surety Bonds, or Letter of Credit could result in one or more of the Insurance Carriers or the Surety terminating or declining to renew the Insurance Policies or Surety Bonds or refusing to enter into new insurance policies or surety bonds with the Debtors. Any interruption in coverage would expose the Debtors to a number of risks, including potential (a) direct liability for the payment of claims that otherwise would have been covered under the Insurance Policies, (b) material costs and other losses that otherwise would have been reimbursed, (c) inability to obtain similar insurance coverage on terms as equally favorable as the present coverage, and (d) higher costs for reestablishing lapsed Insurance Policies or obtaining new insurance coverage. If any of these situations arise, the Debtors and their advisors would be forced to address these matters, thus expending limited time and resources.

26. Here, the Debtors seek to continue, renew, amend, supplement, and extend their existing Insurance Policies, Surety Bond Program, and Letter of Credit, purchase new policies and coverage, and execute other agreements as needed, in the ordinary course of business on a postpetition basis consistent with past practice. Related to that process, the Debtors believe that failure to timely honor any outstanding prepetition obligations on account of the Insurance Policies, the Surety Bond Program, and the Letter of Credit could negatively affect the Debtors' ability to enter into such amendments, supplements, extensions, or new policies and coverage. Continuation of the Insurance Policies, the Surety Bond Program, and the Letter of Credit is essential to preserving the value of the Debtors' assets and minimizing exposure to risk during the pendency of these chapter 11 cases. Therefore, the Debtors should be authorized to pay any prepetition obligations related to the Insurance Policies and the Surety Bond Program and to renew, supplement, purchase, or enter into new insurance or surety bond coverage, including related letters of credit, in the ordinary course of business on a postpetition basis consistent with past practice.

27. Courts in this district have granted relief similar to the relief requested herein under sections 105(a) and 363(b) of the Bankruptcy Code. *See In re WW Int'l, Inc.,* No. 25-10829 (CTG) (Bankr. D. Del. May 28, 2025) (authorizing the debtors to continue their current insurance policies, pay related prepetition obligations, and renew, supplement, modify, or purchase insurance and surety coverage); *In re At Home Grp. Inc.,* No. 25-11120 (JKS) (Bankr. D. Del. July 14, 2025) (same); *In re Marelli Auto. Lighting USA LLC,* No. 25-11034 (CTG) (Bankr. D. Del. July 22, 2025) (same); *In re Finch Therapeutics Grp., Inc.,* No. 26-10409 (LSS) (Bankr. D. Del. Apr. 20, 2026) (authorizing the debtors to maintain their existing insurance policies, pay related obligations,

and renew, supplement, modify, or purchase insurance coverage); *In re GoHealth, Inc.*, No. 26-10914 (TMH) (Bankr. D. Del. July 1, 2026) (same).

28. Accordingly, to preserve the value of their estates and minimize exposure to risk during the pendency of these chapter 11 cases, the Debtors seek to (a) maintain the Insurance Policies, Surety Bond Program, and Letter of Credit and pay related obligations and (b) renew, supplement, modify, or purchase insurance and surety coverage, including entering into letters of credit, in the ordinary course of business on a postpetition basis.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

29. The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of access to cash on hand and anticipated access to cash collateral and debtor-in-possession financing. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors do not believe that checks or wire transfer requests, other than those relating to authorized payments, will be inadvertently honored. Therefore, the Debtors request authority, but not direction, to authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

**The Requirements of Bankruptcy Rule 6003(a) Are Satisfied**

30. Bankruptcy Rule 6003(a) empowers a court to grant certain relief within the first twenty-one (21) days after the Petition Date only to the extent that "relief is needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(a). For the reasons discussed above, an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations. Failure to receive the requested relief during the first twenty-one (21) days of these

chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and cause immediate and irreparable harm. The requested relief is necessary for the Debtors to operate their business in the ordinary course, preserve the ongoing value of their operations, and maximize the value of their estates for the benefit of all stakeholders. The Debtors have demonstrated that the requested relief is "needed to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003(a), and request that the Court grant the requested relief.

**Reservation of Rights**

31. Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied

pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease; or (l) a waiver, modification, or limitation of any right of any party under the Restructuring Support Agreement. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim. Nothing in this Motion shall modify, limit, or impair any of the Debtors' directors' and officers' liability insurance policies or any indemnification obligations in favor of current and former directors, officers, managers, and employees of the Debtors, including any such Entity or individual designated by or affiliated with any Plan Sponsor.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

32. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) for the reasons set forth herein.

**Notice**

33. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the office of the attorney general for each of the states in which the Debtors operate; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the Insurance Carriers; (g) the Surety; (h) the Broker; (i) the Letter of Credit Issuer; (j) the Credit Agreement Agent; (k) counsel to the Credit Agreement Agent;

(l) counsel to the Plan Sponsors; (m) counsel to the Unsecured Noteholders Ad Hoc Committee; (n) counsel to the Consenting Secured Lenders; and (o) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). As this Motion is seeking "first day" relief, the Debtors will serve copies of this Motion and any order entered in respect of this Motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: October 21, 2026
Wilmington, Delaware

*/s/ Justin R. Alberto*
**COLE SCHOTZ P.C.**
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (DE Bar No. 5126)
Patrick J. Reilley (DE Bar No. 4451)
Sarah A. Carnes (*pro hac vice* pending)
Jack M. Dougherty (DE Bar No. 6784)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: svanaalten@coleschotz.com
jalberto@coleschotz.com
preilley@coleschotz.com
scarnes@coleschotz.com
jdougherty@coleschotz.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**SIMPSON THACHER & BARTLETT LLP**
Brian E. Schartz (*pro hac vice* pending)
Elisha D. Graff (*pro hac vice* pending)
Rachael L. Foust (*pro hac vice* pending)
Dov Gottlieb (*pro hac vice* pending)
Olivia F. Acuña (*pro hac vice* pending)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-3702
Facsimile: (212) 455-2502
Email: brian.schartz@stblaw.com
egraff@stblaw.com
rachael.foust@stblaw.com
dov.gottlieb@stblaw.com
olivia.acuna@stblaw.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*