**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| GETTY IMAGES HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-11643 (JKS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | Re: Docket Nos. 18, 133, 137 & 181 |

**Hearing Date: November 18, 2026 at 10:00 a.m. (ET)**

**JOINDER OF THE SECURED AD HOC GROUP TO THE DEBTORS' OBJECTION TO THE MOTION OF THE AD HOC GROUP OF EQUITY SECURITY HOLDERS FOR ENTRY OF AN ORDER DIRECTING THE APPOINTMENT OF AN OFFICIAL EQUITY COMMITTEE AND REPLY IN SUPPORT OF THE DIP MOTION**

The Secured Ad Hoc Group,[2] by and through its undersigned counsel, hereby joins in (i) the objection of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") [Docket No. 181] (the "**Debtors' Objection**") to the motion of the ad hoc group of equity security holders (the "**Equity Ad Hoc Group**") for the appointment of an official equity committee [Docket No. 133] (the "**Equity Committee Motion**") and (ii) the Debtors' forthcoming reply (the "**Debtors' Reply**") to the Equity Ad Hoc Group's objection [Docket No. 137] (the "**DIP Objection**") to the Debtors' motion for approval of postpetition financing and the use of cash

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S., Suite 400, Seattle, WA 98104.

[2] The Secured Ad Hoc Group consists of the holders, beneficial holders, and investment advisors or managers identified in the *Verified Statement of the Secured Ad Hoc Group Pursuant to Bankruptcy Rule 2019* [Docket No. 102] (the "**Rule 2019 Statement**"). Capitalized terms used but not defined herein have the meanings given to them in the interim order approving the Debtors' postpetition financing [Docket No. 124] (the "**Interim DIP Order**") or the Plan [Docket No. 31], as applicable.

collateral [Docket No. 18] (the "**DIP Motion**"), and further submits this joinder (this "**Joinder**"). In support hereof, the Secured Ad Hoc Group respectfully states as follows:

## JOINDER

1. The Secured Ad Hoc Group joins in the Debtors' Objection and the Debtors' Reply and adopts, as if stated herein, the legal and factual arguments set forth in each. It adds the following from the perspective of the Debtors' senior secured creditors.

## OBJECTION AND REPLY

2. The Secured Ad Hoc Group holds approximately 74% of the Debtors' term loans and secured notes. Rule 2019 Statement, Ex. A. Its members have no affiliation with the Debtors or the Plan Sponsors. They negotiated the Restructuring Support Agreement at arm's length, accepted impaired treatment under the Plan, and consented to the DIP Facility and to the use of their Cash Collateral. First Day Decl. [Docket No. 29] ¶¶ 11, 13; Preiss Decl. [Docket No. 24] ¶ 12.

3. The Equity Committee Motion should be denied. The U.S. Trustee, after receiving extensive briefing, has already declined to appoint a committee. Equity Committee Motion, Ex. A [Docket No. 133-1] at 51. The appointment of an official equity committee "is considered 'extraordinary relief' and should be 'the rare exception.'" *In re Spansion, Inc.*, 421 B.R. 151, 156 (Bankr. D. Del. 2009) (citations omitted). The Equity Ad Hoc Group must show that "(i) there is a substantial likelihood that they will receive a meaningful distribution in the case under a strict application of the absolute priority rule, and (ii) they are unable to represent their interests in the bankruptcy case without an official committee." *Id.* It has shown neither.

4. *First*, the Debtors have approximately $1.46 billion of funded debt, against an enterprise value that the Debtors' valuation analysis estimates at approximately $1.3 billion to $1.5

billion. First Day Decl. ¶ 57; Disclosure Statement [Docket No. 32] at 105. After the events of the first half of 2026 that led to the Debtors' financial distress, the Debtors' secured debt traded between 70 and 80 cents on the dollar and their unsecured debt traded in the 40s. Equity Committee Motion, Ex. A at 17. Holders of approximately 90% of the Secured Funded Debt Claims and approximately 83% of the Unsecured Notes then agreed to a Plan that extends the maturities and lowers the interest rates of the secured debt and pays the Unsecured Notes approximately 63% in cash. First Day Decl. ¶ 18; Disclosure Statement at 10; Equity Committee Motion, Ex. A at 17. Sophisticated creditor constituents do not make concessions of that kind when value extends to equity.

5. The Equity Ad Hoc Group argues that trading prices and creditor concessions are not evidence of value, and that the exit capital structure implies an enterprise value of $1.47 billion. Equity Committee Motion ¶¶ 4, 48, 55–58. A motion to appoint an equity committee, however, "is not a valuation hearing, and the Court may consider any available evidence that informs its discretion." *In re SunEdison, Inc.*, 556 B.R. 94, 105 (Bankr. S.D.N.Y. 2016). Even on the Equity Ad Hoc Group's own arithmetic, the implied value is within approximately $10 million of the funded debt, before any other claims are counted. The arithmetic also counts as existing value the up to $433 million of new money that the Plan Sponsors will invest under the Plan. First Day Decl. ¶¶ 15, 19. That is not a substantial likelihood of a meaningful distribution.

6. *Second*, the Equity Ad Hoc Group is able to represent its own interests. It is organized and represented by experienced counsel, has standing to be heard on any issue, and may seek reimbursement if it makes a substantial contribution. 11 U.S.C. §§ 503(b)(3)(D), 1109(b); *see In re Spansion*, 421 B.R. at 163–64 (ad hoc equity committee was "well organized, well

represented by counsel, and adequate to the task of representing its interests without 'official' status").

7. An official committee would also impose cost and delay on the Debtors' creditors. Its professionals would be paid from the Prepetition Secured Parties' Cash Collateral and the proceeds of the DIP Facility, to contest valuation at confirmation on a schedule that the milestones in the Restructuring Support Agreement do not allow. First Day Decl., Ex. A (Restructuring Support Agreement), Schedule 1. Those costs "cannot be justified" where "the only remaining purpose of an equity committee in this case . . . would be to object to confirmation, and litigate the valuation issue." *In re Kalvar Microfilm, Inc.*, 195 B.R. 599, 601 (Bankr. D. Del. 1996).

8. The DIP Objection should be overruled. Like the Restructuring Support Agreement, the DIP Facility was the product of extensive, arm's-length negotiations, and the terms are fair and reasonable under the circumstances. DIP Motion ¶ 5; Preiss Decl. ¶¶ 14, 18.

9. The provisions of the Interim DIP Order that protect the Prepetition Secured Parties are the consideration for their consent to the DIP Facility and to the use of Cash Collateral. Interim DIP Order ¶¶ F, 33(a). The Debtors' stipulations and release bind other parties only if no Challenge is commenced by the Challenge Deadline. *Id.* ¶ 34(a). The Equity Ad Hoc Group objects that the order confers no standing to bring a Challenge. DIP Objection ¶ 16. That reflects the law of this Circuit. Derivative standing requires leave of the Court and "is the exception rather than the rule." *In re DeCurtis Holdings LLC*, No. 23-10548 (JKS), 2023 Bankr. LEXIS 2006, at *7-8 (Bankr. D. Del. Aug. 14, 2023) (citations omitted). In any event, the Equity Ad Hoc Group does not identify any claim against the members of the Secured Ad Hoc Group that those provisions would foreclose.

10. The Secured Ad Hoc Group expressly reserves all of its rights to supplement, modify, and amend this Joinder, including after the Debtors' Reply is filed, and to raise additional arguments in writing or orally at the hearing on the Equity Committee Motion and the DIP Motion.

## CONCLUSION

WHEREFORE, for the reasons set forth herein and in the Debtors' Objection and the Debtors' Reply, the Secured Ad Hoc Group respectfully requests that the Court (i) deny the Equity Committee Motion, (ii) overrule the DIP Objection and grant the DIP Motion on a final basis, and (iii) grant such other relief as the Court deems just and proper.

Dated: November 14, 2026
Wilmington, Delaware

Respectfully submitted,

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
joneill@pszjlaw.com
ecorma@pszjlaw.com

- and -

**GIBSON, DUNN & CRUTCHER LLP**
Scott J. Greenberg (admitted *pro hac vice*)
Matthew M. Roose (admitted *pro hac vice*)
Rob E. Fitzgerald (admitted *pro hac vice*)
Immanuel Z. Vorbach (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email: SGreenberg@gibsondunn.com
MRoose@gibsondunn.com
RFitzgerald@gibsondunn.com
IVorbach@gibsondunn.com

- and -

Francis Petrie (admitted *pro hac vice*)
333 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
Email: FPetrie@gibsondunn.com

*Counsel to the Secured Ad Hoc Group*