**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| GETTY IMAGES HOLDINGS, INC., *et al.*,[1] | ) | Case No. 26-11643 (JKS) |
| Debtors. | ) | (Jointly Administered) |
| | ) | Re: Docket Nos. 18, 124 & 137 |

**DEBTORS' REPLY IN SUPPORT OF THE MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL AND OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) PROVIDING ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") submit this reply (this "Reply") in further support of the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral and Obtain Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Providing Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 18] (the "DIP Motion")[2] and in response to the *Objection of the Ad Hoc Group of Equity Security Holders to the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral and Obtain Postpetition*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the DIP Motion, the Interim DIP Order [Docket No. 124] (the "Interim Order"), the proposed Final DIP Order [Docket No. 136] (the "Final Order"), the DIP Credit Agreement, the RSA, the Objection, or elsewhere in this Reply, as applicable. The operative terms of the Final Order track the Interim Order. "Preiss Decl." or the "Preiss Declaration" and "Brantley Decl." or the "Brantley Declaration" refer to Docket Nos. 24 and 23, respectively. "Plan" refers to the *Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and Its Debtor Subsidiaries* [Docket No. 31]; "Disclosure Statement" refers to the Disclosure Statement for the Plan [Docket No. 32]; and "RSA" refers to the Restructuring Support Agreement [Disclosure Statement, Ex. B].

*Financing; (II) Granting Liens* and *Superpriority Administrative Expense Claims; (III) Providing Adequate Protection; (IV) Modifying* the *Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 137] (the "Objection") filed by the ad hoc group of equity security holders (the "Ad Hoc Group").[3] In further support of the DIP Motion and this Reply, the Debtors respectfully state as follows.

**PRELIMINARY STATEMENT**

1. The Objection is really not at all about the DIP. Nor could it credibly be. The record frames the two fundamental points that the Ad Hoc Group cannot dispute: (a) the Debtors unquestionably need the DIP Facility to fund their operations and the administration of these chapter 11 cases through emergence; and (b) the DIP Facility is the best financing available to them. Brantley Decl. ¶¶ 10–11, 15–16, 18; Preiss Decl. ¶ 8. The Objection disputes neither point. Approval of the Final Order is thus appropriate and necessary.

2. The Objection is rather a restatement of many of the arguments raised in the Appointment Motion and a preview of the Ad Hoc Group's purported confirmation objections. Under the Plan, existing equity, including the approximately 73% of the equity held by the Plan Sponsors, will be cancelled without a distribution, and the Plan Sponsors will receive new equity in the Reorganized Debtors only in exchange for capital contributions the Plan Sponsors will make at emergence, in addition to the conversion of the new money DIP Loans they have extended to the Debtors and prepetition secured claims they have agreed to convert to equity instead of receiving the hard currency provided under the Plan for claims in such class. Disclosure Statement §§ III (Class 9), VII.F.iv. The Ad Hoc Group's disagreement with that outcome is a valuation dispute for confirmation, and the Final Order does not prejudge it. Equitization of the DIP Claims

---

[3] The Objection incorporates by reference the Ad Hoc Group's motion for appointment of an official equity committee [Docket No. 133] (the "Appointment Motion"). Obj. ¶ 1.

remains subject to this Court's approval under section 1129 of the Bankruptcy Code; and if not approved, the DIP is repaid at maturity. Final Order ¶¶ 37, 45.

3. Nor are the Milestones a device to rush these cases. Importantly, the Milestones provide ***more than*** the statutory notice periods required for disclosure statement approval and plan confirmation. A prolonged stay in chapter 11 would harm the Debtors' business. The Debtors and the sophisticated, independently advised third-party stakeholders party to the RSA share that view, and together they negotiated the RSA milestones (which were simply carried over into the DIP), to ensure an adequate process that best protects the business as a going concern.

4. The Objection's remaining arguments either misread the DIP Documents or raise issues with DIP terms that are customary and routine and regularly approved in this District. The Debtors respond to each such argument in the chart attached as Exhibit A hereto. The Debtors respectfully request that the Court overrule the Objection and enter the Final Order.

## REPLY

### A. The DIP Facility Is the Best Financing Available and Satisfies Any Standard of Review.

5. Courts typically defer to a debtor's business judgment in selecting a postpetition lender, and they evaluate the financing terms as a whole. *See In re Spansion, Inc.*, 426 B.R. 114, 140 (Bankr. D. Del. 2010); *In re Farmland Indus., Inc.*, 294 B.R. 855, 879–92 (Bankr. W.D. Mo. 2003). The Ad Hoc Group's own authority shows the narrow circumstances where that typical deference is replaced by a higher standard of review, and a principled review of this authority shows why that higher standard is not applicable here. In *Dodgers*, the court denied a DIP loan because a materially better offer was on the table and the debtors had refused to engage with it. *In re Los Angeles Dodgers LLC*, 457 B.R. 308, 312-14 (Bankr. D. Del. 2011). This case is the reverse: the DIP Lenders' proposal is the materially better offer. Preiss Decl. ¶ 10. It beat the secured

lenders' competing proposal. Of the twelve third-party financing sources the Debtors approached, most declined to submit a proposal because they did not believe they could provide terms that would be competitive with the DIP Facility. Preiss Decl. ¶¶ 10–12. Whatever standard applies, the DIP Facility satisfies it.

6. Entire Fairness. The Debtors do not concede that entire fairness applies.[4] The Court need not decide the question, however, because the DIP Facility is entirely fair. Entire fairness requires a showing that "the transaction was the product of both fair dealing and fair price," which the Court examines together, as a whole. *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1162–63 (Del. 1995) (quoting *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993)); *Weinberger v. UOP, Inc.*, 457 A.2d 701, 711 (Del. 1983).

7. Fair Dealing. The Special Committees were not merely "brought in only to review a transaction." Obj. ¶ 13. On August 6, 2026, more than a month before DIP discussions began, the boards of the Debtors formed the Special Committees, composed of independent and disinterested directors. Each Special Committee retained its own counsel. Preiss Decl. ¶ 13. The Special Committees directed the evaluation and negotiation of the DIP Facility through exchanged term sheets, mark-ups, and several calls. They recommended the resulting transaction, and all unconflicted directors of each Debtor then approved it. Preiss Decl. ¶¶ 13–14; Disclosure Statement § V.B. The Objection's baseless attempt to impugn the integrity of the Special Committees should be disregarded.

[4] The transaction was negotiated by fully independent Special Committees of disinterested directors. Amended section 144 of the Delaware General Corporation Law, which the Delaware Supreme Court upheld in *Rutledge v. Clearway Energy Group LLC*, No. 248, 2025 (Del. Feb. 27, 2026), confirms that even a controlling-stockholder transaction (which the Debtors do not concede the DIP Facility to be) that is fair as to the corporation and its stockholders is not subject to equitable relief or damages. 8 Del. C. § 144(b)(3). The DIP Facility is fair for the reasons set out below.

8. Fair Price. The price of a DIP loan is measured against the market for DIP loans. This DIP was market tested. The DIP Lenders offered "materially better economic terms, including on rate and fees," than the Consenting Secured Lenders. Preiss Decl. ¶ 10. Guggenheim Securities then canvassed twelve third-parties, including established DIP providers, several of which had already been given diligence access. *Id.* ¶ 11. Eight declined because they could not provide more competitive terms, two did not engage, one would lend only on a first lien on all assets (a priming facility the Consenting Secured Lenders would not accept), and the last never made an actionable proposal. *Id.* ¶¶ 11–12. By contrast, the DIP is ***non-priming financing*** at Term SOFR + 5.00%, paid in kind, with no upfront, commitment, or backstop fee, no original issue discount, no call protection, no amortization, and no roll-up. *Id.* at ¶ 15.

9. In short, the DIP Facility was negotiated by the disinterested Special Committees and approved by the other disinterested directors, and has pricing terms significantly better than all other offers made. This is a "fair process" and a "fair price." The DIP is "entirely fair."

**B. The DIP Facility Is Not a Sub Rosa Plan.**

10. The Ad Hoc Group's sub rosa argument rests on *Latam*, where the court refused an insider DIP whose equity-conversion feature would fix plan terms without "creditor comment or Court review." Obj. ¶ 10; *In re Latam Airlines Grp. S.A.*, 620 B.R. 722 (Bankr. S.D.N.Y. 2020). The DIP Documents were drafted specifically ***to avoid that problem***. Equitization of the DIP Claims is "subject to the Court's approval at the confirmation hearing for any chapter 11 plan as well as the standards set forth in section 1129 of the Bankruptcy Code." Final Order ¶ 37. The Final Order's approval of the DIP Obligations and its findings on the DIP terms are expressly subject to that paragraph. *Id.* ¶¶ 2(e), G(vii). If the Court does not approve the Plan at confirmation, the DIP will be repaid as an administrative claim at maturity. *Id.* ¶ 45. And unlike the 20% discount in *Latam*, which there was "no way of knowing" was appropriate, there is no DIP-specific discount

here: the DIP Claims are proposed to convert at the same price as the new money equity investment. *See* ECL § 2 [Docket No. 32-2]; *Latam*, 620 B.R. at 819. The DIP disposes of no claims, restricts no one's vote, and fixes no plan term. *See In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 513 (Bankr. D. Del. 2010). Nor does the DIP foreclose a market test of the Plan. The RSA preserves the Debtors' fiduciary out and their ability to pursue Alternative Restructuring Proposals, and the Special Committee of Getty Images Holdings, Inc. holds full authority over those provisions. RSA §§ 7.01–7.02, 12.02(b); Disclosure Statement § V.B.i. The DIP Lenders' only fee is a modest 2.0% exit fee, payable only if the fiduciary out is exercised. Preiss Decl. ¶ 15; Final Order ¶ 36. Further, unlike the shareholder tranche of the DIP facility in *Latam*, which could not be prepaid, the DIP Facility may be prepaid at any time with no premium beyond that fee, so any superior transaction could take out the DIP Facility, making the fiduciary out a meaningful exit. *See* DIP Credit Agreement § 2.05(a)(i); *Latam*, 620 B.R. at 789. More fundamentally, *Latam* arose in a wholly different setting. The objectors there were the official committee of unsecured creditors and unsecured bondholders, whose recoveries had yet to be determined, and the court's concern was that the equity-conversion feature would allocate reorganized equity to existing shareholders "at the potential expense of unsecured creditors." *Latam*, 620 B.R. at 730–31; *see id.* at 797–98, 819–20. Here, general unsecured creditors are unimpaired and will be paid in full, and the only objector is a group of existing stockholders (and subordinated warrant holders)—the most junior constituency in these cases. Final Order ¶ C; Disclosure Statement § III (Class 6). The harm that drove the result in *Latam*, a transfer of value from creditors to equity, is simply absent. Accordingly, every objection the Ad Hoc Group has to the Plan's treatment of existing equity should be preserved for confirmation.

## C. The Challenged Terms Are Customary and Confer No Case Control.

11. Milestones. The Milestones mirror the RSA milestones, which the Debtors negotiated with their independently-advised secured and unsecured creditor groups, and they extend automatically whenever the RSA milestones are extended. DIP Credit Agreement § 6.20; RSA Sched. 1. The RSA milestones were carefully negotiated by all parties to the RSA to ensure a fair process without prolonging these chapter 11 cases or jeopardizing the Debtors' going-concern value. Nor does a missed Milestone hand the DIP Lenders "the Company." Obj. ¶ 16. Any enforcement against collateral must await a Remedies Notice Period, during which any party in interest may seek an emergency hearing before the Court. Final Order ¶¶ 20(a)–(c). And the DIP Lenders may not enforce remedies against the Prepetition Collateral at all until the Prepetition Secured Obligations are paid in full. Remedies against that collateral are controlled by the non-insider Prepetition Secured Parties. *Id.* ¶¶ 21(b), (d). Finally, the Milestones do not force confirmation at a "lightning pace." Obj. ¶ 16. The Bankruptcy Rules require 28 days' notice of the deadline to object to, and the hearing to consider, approval of a disclosure statement and confirmation of a chapter 11 plan, and that same 28-day notice runs to equity security holders. Fed. R. Bankr. P. 2002(b)(1)–(2), 3017(a)(1)(A), 3017(d)(2). The 55-day confirmation Milestone affords parties in interest, including the Ad Hoc Group, more than the statutory notice period. DIP Motion ¶ 27; DIP Credit Agreement § 6.20. Courts in this District routinely approve comparable, and often tighter, milestones in prepackaged chapter 11 cases.[5] That is unsurprising: "[t]o realize

---

[5] *See, e.g.*, *In re GoHealth, Inc.*, Case No. 26-10914 (TMH) (Bankr. D. Del. July 1, 2026) [Docket No. 107] (final cash collateral order; confirmation 50 days and effective date 60 days after petition date); *In re iRobot Corp.*, Case No. 25-12197 (BLS) (Bankr. D. Del. Jan. 8, 2026) [Docket No. 101] (final cash collateral order; confirmation 45 days and effective date 75 days after petition date); *In re Appgate, Inc.*, Case No. 24-10956 (CTG) (Bankr. D. Del. June 12, 2024) [Docket No. 126] (final DIP order; confirmation 43 days and effective date 45 days after petition date); *In re CalAmp Corp.*, Case No. 24-11136 (LSS) (Bankr. D. Del. June 27, 2024) [Docket No. 105] (final cash collateral order; confirmation 45 days and effective date 60 days after petition date); *In re View, Inc.*, Case No. 24-10692 (CTG) (Bankr. D. Del. Apr. 23, 2024) [Docket No. 132] (final DIP order; confirmation 45 days and effective date 60 days after petition date); *In re Airspan Networks Holdings Inc.*, Case No. 24-10621 (TMH) (Bankr. D. Del. Apr. 19, 2024) [Docket No. 99] (final DIP order; confirmation 45 days and effective date 60 days after petition date); *In re Charge Enterprises, Inc.*, Case No. 24-10349 (TMH) (Bankr. D. Del. Apr. 8, 2024) [Docket

the goals of Chapter 11, a reorganization must be accomplished quickly and efficiently." *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 137 (3d Cir. 1982); *see also Nassau Smelting & Refining Works, Ltd. v. Brightwood Bronze Foundry Co.*, 265 U.S. 269, 272 (1924); *Farmland*, 294 B.R. at 881 ("[I]t is not unreasonable for the DIP Lenders to insist on having a definite timetable.").

12. Defaults. The DIP does not default "if any stakeholder introduces any 'adversary challenge.'" Obj. ¶ 2. The challenge-related defaults are triggered only when a Debtor commences, joins, assists, or supports a challenge. Final Order ¶ 19(i); DIP Credit Agreement § 8.01(l)(v), (ix). Section 4.03(e), on which the Objection relies, is a condition to borrowing, and the Objection itself will be resolved before it matters: the Final DIP Loans cannot be funded until the Final Order is entered. DIP Credit Agreement § 4.03(e). These defaults are customary and routine in DIP financings; no lender wants to lend, nor should be required to lend, to a chapter 11 debtor that violates its own stipulations in favor of those lenders.

13. Collateral. Nor is the collateral package "the Company." Obj. ¶ 16. The DIP Liens are junior on the Prepetition Collateral, which is substantially all of the Debtors' operating assets. The Prepetition Secured Parties control enforcement on the Prepetition Collateral, and the DIP Standstill bars the DIP Lenders from acting against the Prepetition Collateral until the Prepetition Secured Obligations are paid in full, absent the Prepetition Agents' consent. Final Order ¶¶ F(vi), 5(a)(ii), 21(b), (d). The DIP Liens are senior only on the DIP Priority Collateral, which consists of previously unencumbered property, the Segregated DIP Account, 35% of the equity of first-tier foreign subsidiaries, and avoidance proceeds. *Id.* ¶ 5(a)(i).

---

No. 159] (final DIP order; confirmation 48 days and effective date 59 days after petition date); *In re Novation Companies, Inc.*, Case No. 23-11153 (JTD) (Bankr. D. Del. Sept. 11, 2023) [Docket No. 109] (final DIP order; confirmation 54 days and effective date 61 days after petition date).

14. Investigation. The use-of-funds limits in paragraph 26 are standard. They bar using the DIP Loans, the secured parties' collateral, and the Carve Out to investigate or sue the DIP Lenders or the Prepetition Secured Parties in their capacities as such, and they preserve the Debtors' right to contest whether a default has occurred. Final Order ¶ 26. They do not foreclose scrutiny. Paragraph 26(h), which limits the Debtors' ability to investigate claims, is narrowly tailored and reaches only the categories it lists, such as avoidance actions, lender liability, and challenges to the secured parties' liens and claims, and it does not reach claims outside those categories. *Id.* ¶ 26(h). Any party-in-interest with requisite standing may bring a Challenge, and the Challenge Deadline may be extended by agreement or by the Court for cause and is tolled for a proposed Challenge attached to a motion timely filed and served with any applicable period if the Court grants that motion. *Id.* ¶ 34(a)–(c).

**D. The DIP Lenders Are Entitled to Good-Faith Findings.**

15. The DIP Lenders extended credit in express reliance on section 364(e). Final Order ¶ G(vi). The Objection offers no evidence of fraud, collusion, or improper purpose; it simply relabels its plan objections as a lack of "good faith." Obj. ¶ 17. Nor does *EDC Holding* help the Ad Hoc Group. Obj. ¶¶ 11–12; *In re EDC Holding Co.*, 676 F.2d 945 (7th Cir. 1982). *Latam* rejected the same argument, holding that *EDC Holding* does not bar a good-faith finding where the propriety of the financing is "hotly contested," because the good-faith requirement does not "deny protection to lenders who can advance reasonable legal arguments in support of their actions, even if their arguments are ultimately deemed unpersuasive." *Latam*, 620 B.R. at 795 (quoting *In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987)). The Ad Hoc Group's own lead authority thus confirms that good faith turns on misconduct, none of which is alleged here. *Id.* at 792, 796. The record instead shows a good-faith, arm's-length transaction:

(a) The terms were negotiated at arm's length, with exchanged term sheets and mark-ups, between parties represented by separate counsel, under the direction of the Special Committees. Preiss Decl. ¶¶ 13–14.

(b) The DIP Lenders' terms were superior to a competing secured-lender proposal on rate and fees, and they agreed to subordinate their liens to the Prepetition Liens on the Prepetition Collateral. *Id.* ¶ 10; Final Order ¶¶ H, 5, 21(b).

(c) The release is narrow. Only the Debtors give it; it runs to the DIP Lenders and the Prepetition Secured Parties "solely in their respective capacities as such"; it is subject to the Challenge as to the Prepetition Secured Parties; and it excludes claims arising from actual fraud, willful misconduct, or gross negligence. Final Order ¶ 44.[6]

### E. **<u>No Stay Pending Appeal Is Warranted.</u>**

16. The request for a stay pending appeal (Obj. ¶¶ 18–19) is premature: no Final Order has been entered, and no stay motion has been filed. *See* Fed. R. Bankr. P. 8007(a). It also fails on the merits. A stay would block the $28.0 million of Final DIP Loans, without which the Debtors cannot continue operations in the ordinary course with required liquidity levels. DIP Credit Agreement §§ 4.03(c), 8.01(l)(iii); Brantley Decl. ¶¶ 15–16; DIP Budget, Weeks 5–11. Putting employees, vendors, and content contributors at risk at the behest of a group of out-of-the-money prepetition equityholders (and subordinated warrant holders) would cause clear and irreparable harm to the estate and its stakeholders.

[*Remainder of page intentionally left blank*]

---

[6] Courts in this District routinely approve releases on these terms in final DIP orders. *See, e.g.*, *In re WW International, Inc.*, Case No. 25-10829 (CTG) (Bankr. D. Del. May 29, 2025) [Docket No. 121]; *In re Molecular Templates, Inc.*, Case No. 25-10739 (BLS) (Bankr. D. Del. May 23, 2025) [Docket No. 113]; *In re Benson Hill, Inc.*, Case No. 25-10539 (TMH) (Bankr. D. Del. Apr. 23, 2025) [Docket No. 192]; *In re LL Flooring Holdings, Inc.*, Case No. 24-11680 (BLS) (Bankr. D. Del. Sept. 4, 2024) [Docket No. 219]; *In re Solar Biotech, Inc.*, Case No. 24-11402 (LSS) (Bankr. D. Del. July 19, 2024) [Docket No. 118]; *In re New Rue21 Holdco, Inc.*, Case No. 24-10939 (BLS) (Bankr. D. Del. June 17, 2024) [Docket No. 310]; *In re Novation Companies, Inc.*, Case No. 23-10939 (JTD) (Bankr. D. Del. Sept. 11, 2023) [Docket No. 109].

**WHEREFORE**, the Debtors respectfully request that the Court (a) overrule the Objection, (b) enter the Final Order, and (c) grant such other relief to the Debtors as is just and proper.

Dated: November 15, 2026
Wilmington, Delaware

*<u>/s/ Justin R. Alberto</u>*
**COLE SCHOTZ P.C.**
Seth Van Aalten (admitted *pro hac vice*)
Justin R. Alberto (DE Bar No. 5126)
Patrick J. Reilley (DE Bar No. 4451)
Sarah A. Carnes (admitted *pro hac vice*)
Jack M. Dougherty (DE Bar No. 6784)
500 Delaware Avenue, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: svanaalten@coleschotz.com
jalberto@coleschotz.com
preilley@coleschotz.com
scarnes@coleschotz.com
jdougherty@coleschotz.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**SIMPSON THACHER & BARTLETT LLP**
Brian E. Schartz (admitted *pro hac vice*)
Elisha D. Graff (admitted *pro hac vice*)
Rachael L. Foust (admitted *pro hac vice*)
Dov Gottlieb (admitted *pro hac vice*)
Olivia F. Acuña (admitted *pro hac vice*)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
Email: brian.schartz@stblaw.com
egraff@stblaw.com
rachael.foust@stblaw.com
dov.gottlieb@stblaw.com
olivia.acuna@stblaw.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*