# EXHIBIT D

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>GETTY IMAGES HOLDINGS, INC., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-11643 (JKS)<br>(Jointly Administered) |

**THE AD HOC GROUP OF EQUITY SECURITY HOLDERS'**
**FIRST REQUESTS TO THE DEBTORS FOR THE PRODUCTION OF DOCUMENTS**

TO: Getty Images Holdings, Inc. and its affiliated Debtors
c/o Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Attn: Elisha Graff, Esq.; Alan Turner, Esq.; Brian Schartz, Esq.; Rachael Foust, Esq.; Dov Gottlieb, Esq.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable to this contested matter by Rules 7034 and 9014(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Ad Hoc Group of Equity Security Holders (the "Equity Security Holders") in the above-captioned Chapter 11 cases of Getty Images Holdings, Inc. and its affiliated debtors (collectively, the "Debtors"), by and through their undersigned counsel, hereby serve the following requests for production of documents (the "Requests for Production") on the Debtors in connection with (i) the DIP Motion (defined below) and the Equity Security Holders' objection thereto and (ii) the Appointment Motion (defined below) and the Debtors'

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Getty Images Holdings, Inc. (4229); Griffey Midco (DE), LLC (7122); Abe Investment Holdings, Inc. (5107); Getty Images, Inc. (7556); Getty Images (US), Inc. (8819); Getty Images News Services (PRC), Inc. (1849); and Getty Images (Seattle), Inc. (6863). The location of the Debtors' service address for purposes of these chapter 11 cases is: 605 5th Ave. S. Suite 400, Seattle, WA 98104.

forthcoming objection thereto (the DIP Motion and the Appointment Motion, together, the "Motions").

These Requests for Production are targeted to the issues raised by the Equity Security Holders in the Appointment Motion and in their Objection to the DIP Motion, both of which are or will become contested matters ("Contested Matters").

All documents produced in response to these Requests for Production should be produced in native file format. If You determine that You cannot comply with the production of documents in a native file format, You shall promptly inform the requesting party why compliance is impracticable and meet and confer to establish a reasonably useable format for production.

In light of the expedited schedule and the hearing on the Motions set for November 18, 2026, please produce all documents responsive to these Requests for Production on a rolling basis, by electronic means, to undersigned counsel no later than **5:00 p.m. prevailing Eastern Time on November 13, 2026.**

## DEFINITIONS

For the purposes of these Requests for Production, the following Definitions shall apply:

1. All capitalized terms not otherwise specifically defined herein shall have the meanings provided in the DIP Motion.

2. The terms "all," "any," and "each" shall each be construed as encompassing any and all. The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation." The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

3. "Chapter 11 Cases" means the above-captioned chapter 11 cases of the Debtors pending before the United States Bankruptcy Court for the District of Delaware.

4. "Communications" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and includes all oral and written communications of any nature, type or kind including, but not limited to, any ESI, including metadata (and any attachments thereto), Documents, telephone conversations, text messages, discussions, meetings, facsimiles, e-mails, pagers, memoranda, and any other medium through which any information is conveyed or transmitted.

5. "Concerning" means and includes relating to, constituting, defining, evidencing, mentioning, containing, describing, discussing, embodying, reflecting, edifying, analyzing, stating, referring to, dealing with, or in any way pertaining to the subject matter.

6. "Debtors" means Getty Images Holdings, Inc. ("Getty Images") and its affiliated debtors and debtors in possession in the Chapter 11 Cases, and any of their respective directors, officers, employees, advisors, agents, and representatives.

7. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule 34(a)(1)(A) of the Civil Rules, and includes without limitation electronic data, electronic databases, electronic media, the original and any draft, version or copy which differs in any way from the original of any written or graphic matter, however produced or reproduced, of any kind or description, whether sent or received (or neither), and it shall include, without limitation, any paper, book, account, minutes, photograph, agreement, contract, memorandum, advertising material, letter, e-mail (or other electronic communication), any written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any database or data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all

memoranda, notes, records, letters, envelopes, e-mails, voicemails, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes or meetings, correspondence, and communications of any type (including, but not limited to, video files, audio files, inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, webcasts, presentations (*e.g.*, Microsoft PowerPoint), tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into useable forms), documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, electronically stored information (of any kind), object, report, record, summary accounting, transcript, study, notation, working paper, interoffice or intraoffice communication, charts or minutes, index sheet, computer software, check, check stub, ledger entry, delivery ticket, bill of sale, invoice, recording of telephone or other conversations (or of interviews or conferences), or any written, recorded, transcribed, punched, taped, filmed or other graphic matter or data compilations, however produced or reproduced, to which you have access or of which you are aware and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of you or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in your possession, custody or control, and/or in the possession, custody or control of your former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on your behalf.

8. "ESI" has the meaning ascribed to it in Rules 16, 26, and 34(a) of the Civil Rules.

9. "DIP Motion" means the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral and Obtain Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Providing Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 18]; the "DIP Facility" means the postpetition financing facility described therein; and the "DIP Budget" means the budget approved or submitted in connection therewith.

10. "Appointment Motion" means the *Motion of the Ad Hoc Group of Equity Security Holders for Entry of an Order Directing the Appointment of an Official Committee of Equity Security Holders Pursuant to 11 U.S.C. § 1102* [Docket No. 133], and the "Motions" means, collectively, the DIP Motion and the Appointment Motion.

11. "RSA" means the Restructuring Support Agreement, dated as of October 12, 2026, among the Debtors and the consenting stakeholders party thereto, together with all exhibits, schedules, and term sheets thereto, including the DIP term sheet and the exit term sheet.

12. "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association, a group of natural persons acting in a collegial capacity (*e.g.*, as a committee, board of directors), an entity, including without limitations sole proprietorship, firm, association, company, partnership, joint venture corporation or division or subsidiary thereof, trust, estate, and other incorporated or unincorporated business.

13. "Plan" means the Joint Prepackaged Chapter 11 Plan of Reorganization of Getty Images Holdings, Inc. and its Debtor subsidiaries, filed October 21, 2026, as it may be amended, modified, or supplemented.

14. "Special Committees" means the special committees of the boards of directors of Getty Images and of the other Debtors, and their respective members and advisors, including any

such committee described in the *Declaration of Craig Peters, Chief Executive Officer of Getty Images Holdings, Inc. and Its Debtor Subsidiaries, in Support of the Debtors' Chapter 11 Petitions* [Docket No. 29].

15. "Guggenheim" means Guggenheim Securities, LLC, the Debtors' proposed investment banker.

16. "Getty Parties" means the Getty family, Getty Investments L.L.C., and any related or affiliated holders of equity interests in Getty Images.

17. "Koch Parties" means Koch Equity Development LLC and its affiliates, including the DIP Lenders and the Equity Investors party to the RSA.

18. "Ad Hoc Noteholder Group" means holders of the Unsecured Notes that negotiated the treatment of the Unsecured Notes under the RSA and the Plan, and are parties to the RSA.

19. "Unsecured Notes" means the 9.750% Senior Notes due 2027 and the 14.00% Senior Notes due 2028 issued by the Debtors.

20. "Shutterstock Merger" means the proposed merger of the Debtors with Shutterstock, Inc. pursuant to the Agreement and Plan of Merger dated January 6, 2025, which was terminated on or about June 30, 2026.

21. "Warrants" and "Warrant Agreement" mean the warrants to purchase shares of Getty Images and the agreement governing such warrants that are the subject of the Warrant Litigation.

22. "Warrant Litigation" means *Alta Partners, LLC v. Getty Images Holdings, Inc.*, *Funicular Funds LP v. Getty Images Holdings, Inc.*, Index No. 653410/2024, and the related actions in the state and federal courts in the Southern District of New York concerning the exercise, redemption, or treatment of the Warrants.

23. "Warrant Holders" means the holders of the Warrants, including the plaintiffs in the Warrant Litigation, and any of their respective advisors, agents, attorneys, and representatives.

24. "Relevant Period" means, unless a Request specifies otherwise, the period beginning January 1, 2025 and continuing through the date of production.

25. "You" and "Your" means the Debtors and anyone authorized to act on their behalf, unless otherwise specified.

## INSTRUCTIONS

The preceding Definitions apply to each of these Instructions, and for purposes of these Requests for Production, the following Instructions shall be followed:

1. Rule 34 of the Federal Rules of Civil Procedure, made applicable to this proceeding pursuant to Bankruptcy Rules 7034 and 9014(c), is hereby incorporated by reference and applies to each of the following instructions.

2. All responses shall comply with the requirements of the Federal Rules of Civil Procedure and the Bankruptcy Rules.

3. These Requests for Production shall be deemed continuing in nature. In the event You become aware of or acquire additional information relating or referring to any of the following Requests for Production, such additional information is to be promptly produced.

4. You must produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, including in the possession, custody, or control of current or former employees, officers, directors, agents, agents' representatives, consultants, contractors, vendors, or any fiduciary or other third parties, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless

devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

5. You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf. You must produce all such Documents even if they were deleted or in draft form. Without limitation, hardware where such data may be stored includes: servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives. Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records, data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

6. You must produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

7. Documents not otherwise responsive to these Requests for Production should be produced: if such Documents (a) mention, discuss, refer to, explain, or concern one or more Documents that are called for by these Requests for Production; (b) are attached to, enclosed with,

or accompany Documents called for by these Requests for Production; or (c) constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar materials.

8. Documents attached to each other should not be separated; separate Documents should not be attached to each other.

9. Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

10. If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

a. Identify the type, title and subject matter of the Document;

b. State the place, date, and manner of preparation of the Document;

c. Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

d. Identify the legal privilege(s) and the factual basis for the claim.

11. Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine. In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 10 above must be provided.

12. To the extent a Document sought herein was at one time, but is no longer, in Your actual or constructive possession, custody, or control, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred to others; and/or (d) has been otherwise disposed of. In each instance, identify the Document, state the time period during which it was maintained, state the circumstance and date surrounding authorization for such disposition, identify each person

having knowledge of the circumstances of the disposition, and identify each person who had possession, custody, or control of the Document. Documents prepared prior to, but which relate or refer to, the time period covered by these Requests for Production are to be identified and produced.

13. If any part of the following Requests for Production cannot be responded to in full, please respond to the extent possible, specifying the reason(s) for Your inability to respond to the remainder and stating whatever information or knowledge You have concerning the portion to which You do not respond.

14. If You object to any of these Requests for Production, state in writing with specificity the grounds of Your objections. Any ground not stated shall be waived. If You object to a particular portion of any Request for Production, You shall respond to any other portions of such Request for Production as to which there is no objection and state with specificity the grounds of the objection.

15. The fact that an investigation is continuing or that discovery is incomplete shall not be a justification for failing to respond to these Requests for Production based on the knowledge or information that You possess at the time You respond to these Requests for Production. If an investigation is continuing or discovery is not complete with respect to the matter inquired into by any Request for Production, so state in Your response to that Request for Production.

16. If the identity of Documents responding to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response. If any information requested is not in Your possession but is known or believed to be in the possession of another person or entity, then identify that person or entity and state the basis of Your belief or knowledge that the requested information is in such person's or entity's possession.

17. These Requests for Production are continuing in nature so as to require prompt supplemental responses in accordance with the Bankruptcy Rules and the Civil Rules.

## REQUESTS FOR PRODUCTION

### I. Negotiations with the Ad Hoc Noteholder Group

1. Documents sufficient to identify, for each member of the Ad Hoc Noteholder Group, the date(s) on which, and the price or cost basis at which, such member acquired its Unsecured Notes.

2. All Communications between or among the Debtors, the Getty Parties, the Koch Parties, and the Ad Hoc Noteholder Group (or their respective advisors) concerning the negotiation of the treatment of the Unsecured Notes under the RSA or the Plan, including the discount to par, haircut, or recovery percentage reflected in that treatment.

3. All Documents and Communications Concerning the marketing or presentation of the proposed restructuring, the RSA, or the proposed treatment of the Unsecured Notes to the Ad Hoc Noteholder Group, including any analysis of recovery, yield, or return prepared for, provided to, or received from the Ad Hoc Noteholder Group.

### II. Negotiation of the Plan and the RSA

4. All Documents and Communications concerning the appointment, composition, mandate, and scope of authority of the Special Committees, including board and committee resolutions, agendas, minutes, written consents, presentations, charters, and engagement materials (and all materials provided to or considered by the boards of directors or the Special Committees), and any Documents addressing whether the Special Committees' authority was binding or non-binding and whether it extended to the DIP Facility, the RSA, and the Plan.

5. All Communications between or among the Debtors (or their advisors), the Special Committees (or their advisors), and the Getty Parties or the Koch Parties (or their advisors)

concerning the RSA, the Plan, the DIP Facility, or the new-money equity investment contemplated by the RSA.

6. All Documents and Communications concerning the Debtors' engagement or instruction to Guggenheim to prepare any valuation of the Debtors or the reorganized Debtors, including engagement letters, scoping instructions, and any assumptions, inputs, or direction provided to Guggenheim in connection with that engagement.

7. The valuation, fairness, or solvency materials prepared by Guggenheim and provided to, or presented to, the Board of Directors or the Special Committees that are summarized in or that underlie the Valuation Analysis attached as Exhibit F to the Disclosure Statement, including any such presentation or board/committee deck as actually delivered.

**III. Termination of the Shutterstock Merger**

8. All Documents and Communications Concerning the decision to terminate the Shutterstock Merger, including board materials, analyses, and advisor presentations addressing that decision.

9. All Documents and Communications Concerning any alternative to terminating the Shutterstock Merger that was considered, including, but not limited to, the divestiture or sale of Shutterstock's editorial business to satisfy the condition imposed by the U.K. Competition and Markets Authority.

**IV. Future Revenue Streams and Costs**

10. The Debtors' unaudited income statement, statement of cash flows, and balance sheet as of September 30, 2026, together with Documents sufficient to show the Debtors' recognized revenue for the period ended September 30, 2026. To the extent the September 30, 2026 statements do not yet exist in final form, produce the most recent draft, interim, or month-end versions and the Debtors' internal monthly and management financial statements and reports

covering any period through September 30, 2026, in each case in the most current form prepared as of the date of production.

11. The Debtors' 13-week cash flow budget or forecast, to the extent not already reflected or broken out in the DIP Budget, together with any supporting work papers.

12. Documents sufficient to show the Debtors' expected or projected revenue, billings, collections, and cash receipts to be realized through December 31, 2026 and during the ninety (90) days immediately following the expiration of the 13-week period covered by the DIP Budget, including any projections, forecasts, or analyses reflecting anticipated large, seasonal, or year-end customer payments, renewals, subscription auto-renewals, or collections, and any Documents comparing such expected revenue or cash receipts to the amounts reflected in the DIP Budget.

13. Documents sufficient to identify any prospective, pipeline, or pending revenue opportunity of the Debtors, including, but not limited to, any proposed or contemplated content-licensing or generative-artificial-intelligence arrangement.

**V. The Warrant Litigation**

14. All Documents and Communications Concerning the Debtors' decision to decline, forego, or refuse to permit exercise of the Warrants, including any analysis of the cash proceeds that exercise of the Warrants would have generated for the Debtors from January 1, 2022 through the date of production.

15. All Documents and Communications between or among the Debtors, the Getty Parties, the Koch Parties, and any Warrant Holder (or their respective advisors) Concerning the Warrant Litigation, the exercise, redemption, settlement, or treatment of the Warrants from January 1, 2022 through the date of production, or the treatment, settlement, compromise, or resolution of any claims relating to the Warrants under the RSA or the Plan.

**VI. Documents and Communications to Be Relied Upon at the Hearing**

16. All Documents and Communications that the Debtors intend to, or may, rely upon, offer, cite, use, or introduce as evidence or otherwise at any hearing on either of the Motions, including all exhibits, declarations, witness statements, demonstratives, deposition testimony, and expert materials.

Dated: November 11, 2026

Respectfully submitted,

By: */s/ Lucian Murley*

**AKERMAN LLP**

Lucian B. Murley (DE Bar No. 4892)
Stephen A. Smith (DE Bar No. 7456)
222 Delaware Avenue
Suite 1710
Wilmington, DE 19801
Telephone: (302) 596-9200
Email: luke.murley@akerman.com
stephen.smith@akerman.com

-and-

**BROWN RUDNICK LLP**

Robert J. Stark (*pro hac vice* forthcoming)
Jeffrey L. Jonas (*pro hac vice* forthcoming)
Bennett S. Silverberg (*pro hac vice* forthcoming)
Andrew M. Carty (*pro hac vice* forthcoming)
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Email: rstark@brownrudnick.com
jjonas@brownrudnick.com
bsilverberg@brownrudnick.com
acarty@brownrudnick.com

Sharon I. Dwoskin (*pro hac vice* forthcoming)
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Email: sdwoskin@brownrudnick.com

*Counsel for the Ad Hoc Group of*
*Equity Security Holders*